Lars C. Golumbic, admitted *pro hac vice*
Sarah M. Adams, admitted *pro hac vice*
GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Ave. NW
Washington, DC 20006
Tel: (202) 857-0620
Fax: (202) 659-4503
Email: lgolumbic@groom.com
sadams@groom.com

Andrew J. Waxler (SBN 113682)
KAUFMAN DOLOWICH & VOLUCK LLP
11755 Wilshire Blvd., Suite 2400
Los Angeles, CA 90025
Tel: (310) 775-6511
Fax: (310) 575-9720
Email: awaxler@kdvlaw.com

Counsel for Defendant ALERUS FINANCIAL, N.A.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

DANIELLE GAMINO,

Plaintiff,

v.

KPC Healthcare Holdings, Inc., et al.,

Defendants.

Case No. 5:20-cv-01126-JGB-SHK

**DEFENDANT ALERUS FINANCIAL, N.A.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

Date: November 2, 2020
Time: 9:00 a.m.
Judge: Hon. Jesus G. Bernal
Courtroom: Riverside, Courtroom 1

# TABLE OF CONTENTS

BACKGROUND ........................................ 1
I. Legal Background ........................................ 1
II. 2015 Transaction ........................................ 2
STANDARD OF REVIEW ........................................ 3
ARGUMENT ........................................ 3
CONCLUSION ........................................ 10

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................3

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................3

*Bussian v. RJR Nabisco, Inc.*,
223 F.3d 286 (5th Cir. 2000) ..........................................................5

*Donovan v. Cunningham*,
716 F.2d 1455 (5th Cir. 1983) ................................................ 2, 4, 5, 7

*Fifth Third Bancorp v. Dudenhoeffer*,
573 U.S. 409 (2014) ......................................................................1, 5

*Harris v. Amgen*,
788 F.3d 916 (9th Cir. 2015), *rev'd on other grounds*, 136 S. Ct. 758 (2016)......5

*Henry v. Champlain Enters., Inc.*,
445 F.3d 610 (2d Cir. 2006) ...........................................................4

*In re Syncor ERISA Litig.*,
351 F. Supp. 2d 970 (C.D. Cal. 2004)...............................................1

*Lee v. Argent Trust Co.*, 5:19-cv-156,
2019 WL 3729721 (E.D.N.C. Aug. 7, 2019) ......................................7

*Perez v. Commodity Control Corp.*, 1:16-cv-20245,
2017 WL 1293619 (S.D. Fla. Mar. 7, 2017) ......................................4

*Zavala v. Kruse-Western, Inc.*,
398 F. Supp. 3d 731 (E.D. Cal. 2019)...............................................5

**Statutes**

29 U.S.C. § 1002(18)(b) .....................................................................4

29 U.S.C. § 1104............................................................................ 3, 4, 5

29 U.S.C. § 1106 .......... 4, 5

29 U.S.C. § 1108(e)(1) .......... 4

**Rules**

Fed. R. Civ. P. 12(b)(6) .......... 3

**Other Authorities**

Staff on the S. Comm. on Fin., 95 th Cong., ESOPS and TRASOPs: An Explanation for Employees 10 (Comm. Print 1978) .......... 2

# MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff Danielle Gamino brings this lawsuit against KPC Healthcare Holdings, Inc., certain of its board members, and Alerus Financial, N.A. ("Alerus") on the theory that they all engaged in a prohibited transaction and breached their fiduciary duties under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), in connection with the formation of the KPC Healthcare, Inc. Employee Stock Ownership Plan ("the Plan" or "the ESOP"). Plaintiff's complaint turns on her conclusory assertion that the Plan paid more than fair market value to acquire 100 percent of the outstanding shares of the Plan sponsor, KPC Healthcare, Inc. ("KPC"). This conclusion, however, is built upon generic factual allegations that do not plausibly suggest the Plan overpaid and that reflect a fundamental misunderstanding of leveraged employee stock ownership plan transactions. Plaintiff's transaction-related challenges fail to state a viable cause of action and should be dismissed.[1]

## BACKGROUND

### I. Legal Background

An employee stock ownership plan, or ESOP, is a type of defined contribution pension benefit plan "designed to invest primarily in the common stock of the company." *In re Syncor ERISA Litig.*, 351 F. Supp. 2d 970, 974 (C.D. Cal. 2004). Employers are under no obligation to provide their employees with retirement plans of any sort, let alone ESOPs. *See* Howard Pianko, *ERISA Fiduciary Duties: Overview, Practical Law Practice Note* (May 14, 2018) ("ERISA does not require employers to establish an employee benefit plan."). Yet Congress saw fit to offer certain tax benefits to encourage companies to establish ESOPs for their employees. *See, e.g., Fifth Third Bancorp v. Dudenhoeffer*, 573

[1] This motion addresses only those claims made against Alerus in connection with the Plan's formation (Counts I and III).

U.S. 409, 416 (2014) (describing Congress's interest in encouraging ESOPs). Congress believed that facilitating employee ownership of corporations would align the interests of employees and employers, to the benefit of both. *In re Syncor ERISA Litig.*, 351 F. Supp. 2d at 979 ("The purpose behind ESOP's is to increase employee ownership interest in companies."); Staff of the S. Comm. on Fin., 95th Cong., ESOPs and TRASOPs: An Explanation for Employees 10 (Comm. Print 1978) ("ESOPs and TRASOPs") (stating that ESOPs benefited employees by providing them with a stake in the profits that they helped generate for their employers).

Because a newly-established ESOP has no assets of its own with which to purchase shares in the company, ESOPs are permitted to borrow in order to invest in the employer's stock. ESOPs and TRASOPs at 10 (describing how an ESOP may borrow funds to acquire company stock). In a typical arrangement, the employer or other selling shareholder(s) loans the ESOP the money to purchase stock of the company. *See Donovan v. Cunningham*, 716 F.2d 1455, 1459 (5th Cir. 1983) (describing the mechanics of a typical ESOP transaction). Of course, the ESOP debt is no burden to the plan participants themselves, as they are not personally liable for it. Rather, it is the company that ultimately bears the debt burden, because it makes periodic contributions to the ESOP sufficient to allow the ESOP to repay the debt obligation. *Id.* As these contributions are made and the debt is gradually retired, shares of stock are released from the encumbrance of the debt and allocated to the ESOP participants' accounts, where the value may rise and fall as it would for any shareholder. *See generally id.*

**II. 2015 Transaction**

In 2015, KPC established the KPC Healthcare, Inc. Employee Stock Ownership Plan. In connection with the establishment of the Plan, KPC entered into an agreement with Alerus under which Alerus was engaged to act as an

Independent Trustee for purposes of the transaction. As the Independent Trustee, Alerus would represent the Plan in connection with its proposed acquisition of 100 percent of the outstanding shares of KPC. On August 28, 2015, the newly formed Plan acquired 100 percent of the outstanding shares of KPC for an aggregate purchase price of $227 million, which was financed through a $217 million loan from KPC and a $10 million cash contribution from KPC. Compl. ¶ 64.

Five years later, Plaintiff filed the instant complaint.

## STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), Plaintiff must plead "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). As the Supreme Court explained "[a] claim has facial plausibility [only] when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678. As explained below, Plaintiff's challenges to the 2015 Transaction must be dismissed because they have failed to satisfy these minimum pleading requirements.

## ARGUMENT

Count I alleges Alerus caused the Plan to engaged in a transaction prohibited by ERISA section 406(a)(1), 29 U.S.C. § 1106, "by failing to ensure that the ESOP paid no more than fair market value for KPC Healthcare stock purchased in the 2015 Transaction." Compl. ¶ 100. Count III alleges Alerus breached fiduciary duties imposed by section 404(a) of ERISA, 29 U.S.C. § 1104, by failing to "undertake an appropriate and independent investigation of the fair market value of KPC Healthcare stock in the 2015 Transaction." Compl. ¶ 113. These counts overlap. Both rest on the same, conclusory premise—that the Plan "overpaid" for

KPC stock in the 2015 Transaction. The Complaint, however, does not plausibly support Plaintiff's theory, and both counts should be dismissed.

To satisfy ERISA's fiduciary obligations, a plan fiduciary must act with the "care, skill, prudence, and diligence" of a "prudent man" acting under like circumstances and "for the exclusive purpose of providing benefits to plan beneficiaries." 29 U.S.C. § 1104(a). In the context of an ESOP transaction, a plan fiduciary must also adhere to ERISA's prohibited transaction rules. Those provisions provide that "[a] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—(A) sale or exchange, or leasing, of any property between the plan and a party in interest[] . . . [or] (D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan." 29 U.S.C. § 1106(a)(1). On their face, ERISA's broad prohibited transaction rules would encompass any ESOP transaction, because the plan is transacting with the plan sponsor or its shareholders, both parties in interest. Recognizing that such a prohibition would hamper the creation of ESOPs, Congress included a set of exemptions to work in tandem with these rules. *See Henry v. Champlain Enters., Inc.*, 445 F.3d 610, 618 (2d Cir. 2006). Under ERISA section 408(e), a plan may purchase employer securities so long as it does so for no more than "adequate consideration." 29 U.S.C. § 1108(e)(1). "Adequate consideration" in the context of closely-held corporations means "the fair market value of the asset as determined in good faith by the trustee or named fiduciary." *Henry*, 445 F.3d at 618 (citing 29 U.S.C. § 1002(18)(b)).

In the ESOP transaction context, the fiduciary obligations of section 1104 overlap with the adequate consideration exemption of section 1108—under either section, the fiduciary's process is tantamount. *See Donovan*, 716 F.2d at 1467 ("[T]he adequate consideration test, like the prudent man rule, is expressly focused

upon the *conduct* of the fiduciaries.”). Indeed, adequate consideration is determined not by focusing on the dollar amount paid, but instead on the process the fiduciary applied when determining the value to be paid. *See Henry*, 445 F.3d at 619 (“[T]he adequate consideration test focuses on the conduct of the fiduciaries in determining the price, not the price itself.”); *Perez v. Commodity Control Corp.*, 1:16-cv-20245, 2017 WL 1293619, *9-10 (S.D. Fla. Mar. 7, 2017) (“[T]he good faith requirement ‘must be read in light of the overriding duties of Section 404 . . . ESOP fiduciaries will carry their burden to prove that adequate consideration was paid by showing that they . . . [engaged in] a prudent investigation . . . . In other words, fiduciaries must show that they satisfied their fiduciary duties . . . .”) (quoting *Donovan*, 716 F.2d at 1467-68)).

To determine whether no more than adequate consideration was paid for a company’s shares, the ESOP fiduciary must determine the range of fair market value of the stock to be acquired. For companies with publicly traded stock, this determination is often simple—a fiduciary may rely on the market price, with certain limited exceptions. *See Fifth Third Bancorp*, 573 U.S. at 426. Appraisal of privately held stock, on the other hand, is a “very inexact science.” *Donovan*, 716 F.2d at 1473. Because of the “uncertainty inherent in the process and the variety of potential fact patterns,” ESOP fiduciaries, when dealing with privately held companies, rely upon the expertise of others to determine whether no more than adequate consideration is to be paid. *Donovan*, 716 F.2d at 1473. While reliance on a qualified appraiser alone does not guarantee that an ESOP fiduciary discharged its obligations under ERISA, fiduciaries may point to an appraiser’s guidance as evidence of a good faith investigation. *See Bussian v. RJR Nabisco, Inc.*, 223 F.3d 286, 300-01 (5th Cir. 2000). ESOP fiduciaries establish adequate consideration based on a determination of fair market value by way of a prudent

investigation under "the circumstances *then prevailing*," 29 U.S.C. § 1104 (emphasis added), not with the benefit of hindsight.

Although some courts have held plaintiffs generally are not required to plead around section 408's "adequate consideration" exemption, "a court may nonetheless dismiss a cause of action under § 1106 where the affirmative defense of adequate consideration 'is clearly indicated and appears on the face of the pleading.'" *Zavala v. Kruse-Western, Inc.*, 398 F. Supp. 3d 731, 742 (E.D. Cal. 2019) (quoting *Harris v. Amgen*, 788 F.3d 916, 943 (9th Cir. 2015), *rev'd on other grounds*, 136 S. Ct. 758 (2016)). Such is the case here.

The alleged failure "to ensure that the ESOP paid no more than fair market value" stands at the core of Plaintiff's prohibited transaction claim. Compl. ¶ 100 ("Alerus caused the Plan to engaged in a prohibited transaction… **by failing to ensure that the ESOP paid no more than fair market value**.") (emphasis added). It forms the entire basis of her lawsuit. Compl. ¶ 32 ("Plaintiff and all Class members have been harmed **by the ESOP paying more than fair market value** for KPC Healthcare stock in the 2015 Transaction.") (emphasis added); *id.* ¶¶ 3, 23, 74, 75, 77, 114, 154 (alleging the Plan paid more than fair market value). Thus, she is required to put forth plausible allegations supporting her claim that the 2015 Transaction was for "more than adequate consideration." While Plaintiff has made conclusory allegations that the Plan paid more than fair market value, she has offered no plausible facts to support her conclusion.

The Complaint fails to plausibly allege Alerus's process for reviewing the 2015 Transaction and determining adequate consideration was flawed or that Alerus caused the Plan to overpay. Indeed, the Complaint is silent as to the process Alerus used to value or approve the sale of KPC stock. Plaintiff offers no information concerning Alerus's due diligence process whatsoever, much less factual allegations from which this Court could infer it was deficient in some

respect. Rather, Plaintiff simply asserts "based on the information available, the purchase price for the 2015 Transaction was based in part on a valuation report that was unreliable." Compl. ¶ 74. Declaring in conclusory fashion that the Plan overpaid, she speculates Alerus's process must have been flawed because "an appropriate investigation would have revealed the valuations used for and the price paid by the ESOP in the 2015 Transaction did not reflect the fair market value." Compl. ¶ 114. Yet, there are no allegations to support *how* any valuation was "unreliable" or *why* an "appropriate" investigation would have revealed the Plan overpaid, much less that the investigation was faulty in the first instance. Ironically, Plaintiff complains elsewhere that she has never seen the valuation report, making clear that her assumption about its lack of reliability is simply the product of guesswork and not grounded in fact. Compl. ¶ 76.

Lack of process-related allegations aside, Plaintiff also fails to offer facts plausibly suggesting that the Plan overpaid for the stock. On this point, Plaintiff relies principally on the allegedly "precipitous" decline in "the value of the ESOP's KPC Healthcare stock." Compl. ¶ 68. Plaintiff claims that, whereas the 2015 Transaction purchase price was $227 million on August 28, 2015 (the date of the transaction), the ESOP's shares decreased to $27 million three days later and have remained "far below" the purchase price ever since. Compl. ¶¶ 64, 70-72. From this decline, Plaintiff attempts to draw an inference that KPC was necessarily overvalued at the time of the 2015 Transaction. Plaintiff, however, fails to comprehend the economic reality of a leveraged ESOP transaction.

Specifically, Plaintiff's concern about the decline in equity value following the transaction fails to account for the debt the ESOP took on at its formation in order to finance the transaction. Plaintiff's error can be illustrated by the example of a home buyer who takes out a mortgage to purchase a house. Assume the fair market value of the house is $100,000. If the buyer puts $20,000 in cash toward

the purchase price and borrows $80,000 to finance the remainder of the purchase, the buyer's equity in the house is $20,000—but the house is still valued at $100,000. Each month after the purchase, the buyer pays down the principal on the mortgage loan, and her equity in the house increases proportionately.

Similar logic applies to ESOPs that purchase company equity through debt financing. *See Lee v. Argent Trust Co.*, 5:19-cv-156, 2019 WL 3729721, *3 (E.D.N.C. Aug. 7, 2019) (noting that, in the context of a leveraged ESOP transaction, "it is better to conceive of this transaction, as defendants have argued, as being comparable to the purchase of a mortgage-financed house"). Here, for example, Plaintiff alleges that the equity value decreased from $227 million on August 28, 2015 (the closing date) to $27 million only three days later. Compl. ¶ 68. What this allegation ignores is that the 2015 Transaction was financed, in part, through debt. Plaintiff acknowledges as much elsewhere. Compl. ¶ 64 ("To finance the purchase, the Plan entered into a $217,107,262 term loan agreement with KPC Healthcare. The remaining $10,000,000 was paid by a contribution of cash from KPC Healthcare to the Plan."). That is, all Plaintiff has alleged is that (unsurprisingly) debt can impact equity value. That is not enough to maintain her claim. *See Lee*, 2019 WL 3729721 (dismissing similar challenge to ESOP transaction).

Of course, there is one significant difference between Plaintiff and the example of a homebuyer—it is the company that indirectly pays down the debt, through cash contributions to the plan to cover the debt service, not the plan participants themselves. *See Donovan*, 716 F.2d at 1459 ("Unlike other ERISA-covered plans, an ESOP may also borrow in order to invest in the employer's stock. In that event, the employer's cash contributions to the ESOP would be used to retire the debt."). The participants enjoy the benefit of this transaction through the allocation of company stock to their accounts, all with no actual investment of

their own funds. In this respect, an ESOP participant's situation is more equivalent to a homebuyer whose parents incurred the debt and bought the home for her, as the participant neither contributed anything to the purchase of the stock nor incurred any personal obligation to repay the debt that allowed her to obtain the shares.

Just as Plaintiff's reliance on KPC's post-transaction value is misplaced, so too is her citation to the supposed value of a predecessor company years earlier. Compl. ¶ 65 (comparing the 2015 Transaction purchase price to "the price implied by Defendant Kali Pradip Chaudhuri's 2013 proposed and presumed price to acquire" a predecessor company known as "Integrated Health"). Although Plaintiff again hopes this Court will infer KPC was necessarily overvalued, there are no factual allegations to support that inference. The Complaint alleges virtually nothing about Integrated Health's business as compared to KPC and nothing about the market conditions existing at two different points in time. Even assuming Plaintiff's implied price calculations are correct, all she has done is allege that KPC was valued more in 2015 than a predecessor company, Integrated Health, was years earlier. That does not plausibly suggest the 2015 Transaction was flawed.

Unable to point to any specific facts to support her claim that the Plan overpaid, Plaintiff resorts to irrelevant accusations in an apparent effort to cast aspersions on the 2015 Transaction and the parties involved. For instance, she cites to the alleged bankruptcy of an unrelated company and its financial difficulties; criminal acts of a non-party with no connection to the ESOP or the 2015 Transaction; and irrelevant public criticism. Compl. ¶¶ 37-42. These allegations are unrelated to the ESOP and do not plausibly support the allegation that the Plan paid more than fair market value in the 2015 Transaction.[2]

[2] Plaintiff's additional claim that Alerus breached fiduciary duties by "failing to correct the 2015 Transaction", Compl. ¶ 116, is likewise flawed. Plaintiff relies on her allegations of a post-transaction "decline in value" and "red

In short, Plaintiff does not plausibly allege that Alerus's process for approving the 2015 Transaction was flawed, so her transaction-related claims must fail.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Counts I and III against Alerus with prejudice.

Dated: September 3, 2020

/s/ Andrew J. Waxler
Andrew J. Waxler (SBN 113682)
KAUFMAN DOLOWICH & VOLUCK LLP
11755 Wilshire Blvd., Suite 2400
Los Angeles, CA 90025
Tel: (310) 775-6511
Fax: (310) 575-9720
Email: awaxler@kdvlaw.com

Lars C. Golumbic, admitted *pro hac vice*
Sarah M. Adams, admitted *pro hac vice*
GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Ave. NW
Washington, DC 20006
Tel: (202) 857-0620
Fax: (202) 659-4503
Email: lgolumbic@groom.com
sadams@groom.com

COUNSEL FOR DEFENDANT ALERUS FINANCIAL, N.A.

---

flags." *See* Compl ¶ 77 ("[T]he decline in value of the KPC Healthcare stock owned by the ESOP following the 2015 Transaction should have caused Alerus as well as the ESOP Committee (which consisted of all of the Director Defendants), at a minimum, to investigate whether the ESOP had paid more than fair market value in the 2015 Transaction."). As explained above, those allegations are insufficient. Plaintiff simply fails to comprehend the economic realities of a leveraged ESOP transaction, leaving her with zero grounds on which to assert her breach of fiduciary duty claim.

# PROOF OF SERVICE

STATE OF CALIFORNIA )
COUNTY OF LOS ANGELES )

I am employed in Los Angeles County. My business address is 11755 Wilshire Blvd., Suite 2400, Los Angeles, CA 90025, where this mailing occurred. I am over the age of 18 years and am not a party to this cause. I am readily familiar with the practices of KAUFMAN DOLOWICH & VOLUCK LLP for collection and processing of correspondence for mailing with the United States Postal Service. Such correspondence is deposited with the United States Postal Service the same day in the ordinary course of business.

On September 3, 2020, I served the foregoing documents on the interested parties in this action entitled as follows:

**DEFENDANT ALERUS FINANCIAL, N.A.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

[XX] by placing [ ] the original [X] true copies thereof enclosed in sealed envelopes addressed as follows:

**SEE ATTACHED SERVICE LIST**

[ ] (**BY MAIL**) I placed such envelope for collection and mailing on this date following ordinary business practices.

[XX] (**BY E-MAIL ELECTRONIC TRANSMISSION**) Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the person(s) at the e-mail address(es) so indicated on the attached list. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was incomplete or unsuccessful.

[XX] (**BY THE COURT'S ECF SYSTEM)**: I caused each such document(s) to be transmitted electronically by posting such document electronically to the ECF website of the United States District Court for the Central District of California, on all ECF-registered parties in the action.

[ ] (**BY FEDEX**) I am "readily familiar with the firm's practice of collection and processing correspondence for mailing via Express Mail (or another method of delivery providing for overnight delivery pursuant to *C.C.P*. § 1005(b)). Under that practice, it would be deposited with the United States Postal Service or other overnight delivery carrier (in this case, FedEx) on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.

[XX] (**FEDERAL**) I declare that I am employed in the office of a member of the bar of this court at whose direction the services was made.

Executed on September 3, 2020, at Los Angeles, California.

*/s/ Susan Carty*
Susan Carty

**SERVICE LIST**

***Danielle Gamino v. KPC Healthcare Holdings, et al.***
**United States District Court Case No. 5:20-cv-01126-JGB-SHK**

| ***Attorneys for Plaintiff Danielle Gamino***<br>Robert J. Barton<br>Colin M. Downes *Pro Hac Vice*<br>BLOCK AND LEVITON LLP<br>1735 20th Street NW<br>Washington, CA 20009<br>Phone: (202) 734-7046<br>Fax: (617) 507-6020<br>Email: jbarton@blockleviton.com<br>Email: colin@blockesq.com<br><br>Richard E. Donahoo<br>William E. Donahoo<br>Sarah L. Kokonas<br>DONAHOO AND ASSOCIATES PC<br>440 West First Street, Suite 101<br>Tustin, CA 92780<br>Phone: (714) 953-1010<br>Fax: (714) 953-1777<br>Email: rdonahoo@donahoo.com<br>Email: wdonahoo@donahoo.com<br>Email: skokonas@donahoo.com | ***Attorneys for Defendants KPC Healthcare Holdings, Inc.; KPC Healthcare, Inc., Employees Stock Ownership Plan Committee, Kali Pradip Chaudhuri, Kali Priyo Chaudhuri, Amelia Hippert, William E. Thomas and Lori Van Arsdale***<br><br>Theodore M. Becker *(Pro Hac Vice admitted)*<br>Richard Pear *(Pro Hac Vice admitted)*<br>Maria Rodriguez<br>MCDERMOTT WILL & EMERY LLP<br>2049 Century Park East, Suite 3200<br>Los Angeles, CA 90067<br>Phone: (310) 277-4110<br>Fax: (310) 277-4730<br>Email: tbecker@mwe.com<br>Email: rpearl@mwe.com<br>Email: mcrodriguez@mwe.com |
|---|---|
| ***Attorneys for Defendant Alerus Financial, N.A.***<br><br>***Via Email***<br>Lars Golumbic *(Pro Hac Vice)*<br>Sarah M. Adams *(Pro Hac Vice)*<br>GROOM LAW GROUP<br>1701 Pennsylvania Avenue NW<br>Washington, DC 20006<br>Phone: (202) 857-0620<br>Fax: (202) 659-4503<br>Email: lgolumbic@groom.com<br>Email: sadams@groom.com | |