UNDER SEAL

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| | |
|---|---|
| Case No.:   5:20-cv-01126-SB-SHK | Date:   8/6/2021 |

| | |
|---|---|
| Title: | *Danielle Gamino v. KPC Healthcare Holdings, Inc. et al* |

| | |
|---|---|
| Present: The Honorable | **STANLEY BLUMENFELD, JR., U.S. District Judge** |

| Victor Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:**   **ORDER GRANTING IN PART MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT AND GRANTING MOTION FOR CLASS CERTIFICATION (DKT. NOS. 144, 152)**

Before the Court are Plaintiff Danielle Gamino's motions for leave to file a first amended complaint and for class certification.  The Court will address each in turn.

## I.   MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT

The Court begins with Plaintiff's motion for leave to file first amended complaint.  Dkt. Nos. 152, 152-2 (Mot. to Amend); *see* Dkt. Nos. 157 (Alerus Opp. to Amend.), 158 (KPC Opp. to Amend.), 161 (Reply to Alerus Opp. to Amend.), 162 (Reply to KPC Opp. to Amend.).

Plaintiff states leave is necessary because documents produced in discovery in April 2021 "revealed that the original complaint omitted a party to the transaction that gave rise to this lawsuit as well as claims that various parties to that transaction knowingly participated in each other's ERISA violations."  Mot. to

Amend 1.  Plaintiff provides a proposed amended complaint and summarizes the changes as follows:

> (1) Adding SPCP Group, LLC ("SPCP Group") as a Defendant, based on evidence that SPCP Group was a party to the 2015 ESOP Transaction; (2) Adding SPCP Group and Defendant William Thomas to Counts I and II (prohibited transactions claims) based on their knowing participation in Dr. Chaudhury's violations of ERISA § 406(a) and § 406(b); (3) Adding SPCP Group, Defendant Thomas, and Defendant Kali Pradip Chaudhuri to Count III based on their knowing participation in Alerus's breaches of fiduciary duty; (3) Adding Count VIII, a co-fiduciary liability claim under ERISA § 405 against the Committee Defendants, Director Defendants, Kali Pradip Chaudhury, Alerus, and Thomas based on their knowing participation in each other's ERISA violations; (5) Correcting factual allegations about the identities of the KPC Directors at the time of the ESOP transaction; and (6) Adding factual allegations regarding a previously-unknown step of the ESOP Transaction.

Mot. to Amend. 2; *see* Dkt. No. 151-1 (FAC).

Federal Rule of Civil Procedure 15 instructs courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2).  This policy is "to be applied with extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001).  Generally, in deciding whether leave is proper, courts consider the following factors: "(1) undue delay; (2) evidence of the movant's bad faith or dilatory motive; (3) repeated failures to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party; and, (5) futility of amendment." *AIG Prop. Cas. Co. v. Cosby*, No. CV 15-04842-BRO (RAOx), 2016 WL 6662730, at *2 (C.D. Cal. Jan. 8, 2016).  "Absent prejudice, or a strong showing of any of the remaining . . . factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

In large part, leave to amend appears appropriate in light of the Ninth Circuit liberality standard.  Both briefs in opposition contend that the proposed changes would prove futile because the amended complaint is deficient in various ways. Leave to amend should be denied when "it appears beyond doubt that the proposed pleading would be subject to dismissal." *Wizards of the Coast LLC v. Cryptozoic Entm't LLC*, 309 F.R.D. 645, 654 (W.D. Wash. 2015).  But denial of leave for

futility is "rare." *Netbula, LLC v. Distinct Corp.*, 212 F.R.D. 534, 539 (N.D. Cal. 2003) ("Ordinarily, courts will defer consideration of challenges to the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed."). Here, the proposed amendments are not so obviously improper as to require denial of the amendment on futility grounds. Rather, it is "more appropriate" to address the propriety of the various amendments to these complex ERISA claims after "a fully-briefed motion to dismiss than [an] opposition to a motion for leave to amend." *Toland v. CNA Ins.*, No. C19-5373 BHS, 2019 WL 6213302, at *2 (W.D. Wash. Nov. 21, 2019). Otherwise, neither opposition makes a sufficiently persuasive showing under the remaining factors to overcome the presumption in favor of granting leave to amend.

The Court declines, however, to allow amendment to add SPCP Group, LLC as an entirely new defendant to this action. The motion would bring in a new defendant into this class action 14 months after the complaint was filed and force that party to immediately face class certification. Such a late addition would either subject SPCP to serious prejudice or cause substantial delay. As KPC Defendants note, adding SPCP would necessarily delay resolution of the fully briefed motion for class certification, which SPCP would have an independent right to oppose. KPC Opp. to Amend. 15. Given the need to allow the new defendant sufficient time to respond to the class certification motion, Plaintiff's motion would require an amendment to the Court's scheduling order, which is permitted only upon "a timely showing of good cause." Dkt. No. 98 (Case Management Order). Plaintiff fails to provide such a showing. Though Plaintiff claims it did not learn of "the terms of and parties to the 2015 ESOP transaction" until April 2021, Plaintiff offers no specific showing for why SPCP's involvement was not reasonably knowable beforehand. More importantly, even once Plaintiff unquestionably knew about SPCP's purported involvement in the transaction, Plaintiff waited three months to seek to add SPCP to this case in the face of the class certification schedule. Given the potential for prejudice and the apparent lack of diligence, the Court declines to permit the leave to add the proposed new party.[1]

Thus, the motion for leave to amend is **GRANTED** except as to the addition of SPCP as a new defendant. Plaintiff must file an amended complaint by **August 13, 2021** and Defendants must file a responsive pleading by **September 3, 2021**.

---

[1] The Court does not find that any other of the proposed changes would affect the pending motion for class certification.

## II.   **MOTION FOR CLASS CERTIFICATION**

Also before the Court is Plaintiff's motion for class certification pursuant to Federal Rule of Civil Procedure 23.  Dkt. Nos. 144, 144-1 (Mot. to Cert.); *see* Dkt. Nos. 146 (KPC Opp. to Cert.), 149 (Alerus Opp. to Cert.), 166 (Reply ISO Cert.). With this motion, Plaintiff seeks to certify the following class as to Plaintiff's ERISA § 502(a)(2) and § 502(a)(3) claims:

> All participants in the KPC Healthcare, Inc. Employee Stock Ownership Plan from August 28, 2015 or any time thereafter (unless they terminated employment without vesting in the ESOP) and those participants' beneficiaries.

Dkt. No. 144.[2]

"A party seeking to certify a class must satisfy the four prerequisites enumerated in Federal Rule of Civil Procedure 23(a), as well as at least one of the requirements of Rule 23(b)."  *Barnes v. AT & T Pension Benefit Plan-Nonbargained Program*, 270 F.R.D. 488, 492 (N.D. Cal. 2010).  "The party seeking class certification bears the burden of establishing that the requirements of Rules 23(a) and 23(b) have been met."  *Id.*   The Court addresses the Rule 23 requirements below.

### A.   **RULE 23.1**

The Court starts with KPC Defendants' argument that this case should not proceed as a class action at all.  KPC Defendants submit that a procedure akin to that found in Federal Rule of Civil Procedure 23.1 is superior to a Rule 23 class action to resolve this matter.  Rule 23.1 governs "Derivative Actions" and "applies when one or more shareholders or members of a corporation or an unincorporated association bring a derivative action to enforce a right that the corporation or association may properly assert but has failed to enforce."  Fed. R. Civ. P. 23.1.

---

[2] The class definition is limited by the typical exclusions to avoid conflicts of interest.  *See* Dkt. No. 144 ("Excluded from the Class are (a) Defendants, (b) any fiduciary of the Plan; (c) the officers and directors of KPC Healthcare Holdings, Inc. or of any entity in which one of the individual Defendants has a controlling interest; (d) the immediate family members of any of the foregoing excluded persons, and (e) the legal representatives, successors, and assigns of any such excluded persons.").

According to KPC Defendants, this procedural mechanism is available because Plaintiff is pursuing claims on behalf of the ESOP "as a whole"—rather than "individual participant claims"—and is preferable because it is less time consuming and less expensive.  KPC Opp. to Cert. 1.  Supposedly, the only reason Plaintiff's counsel seeks to pursue a class action, over an equally available and more efficient derivative action, is "to collect additional legal fees under a common fund theory."  *Id.*

In *Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1462 (9th Cir. 1995), the Ninth Circuit reversed a district court's conclusion that plaintiffs bringing claims for breach of fiduciary duties under ERISA could not bring a class action but were required instead to satisfy the requirements of Rule 23.1.  Though the ERISA suit was "'derivative' in the broad sense, it clearly [did] not fall within the terms of Rule 23.1," which extend exclusively to derivative actions "brought by one or more *shareholders* or *members* to enforce a right of a *corporation* or of an unincorporated association."  *Id.* (quoting Fed. R. Civ. P. 23.1) (emphasis original). The ERISA plaintiffs, however, were not shareholders or members enforcing a corporation or association's unenforced right.  *Id.*  Rather, "they were suing as plan beneficiaries to enforce the right of the plan against its fiduciaries," and where "a trust beneficiary brings a derivative suit on behalf of a trust, the specific provisions of Rule 23.1 are not controlling."  *Id.* at 1462-63 (internal quotations omitted). Ultimately, the court concluded that "the district court erred in holding that an ERISA action must be brought under Rule 23.1 and . . . erroneously concluded that this suit could not be maintained as a class action."  *Id.* at 1462.

KPC Defendants did not cite or discuss *Kayes*, and the Court declines to adopt KPC Defendants' proposal.  The Court sees no reason to rely on Rule 23.1 in a case that does not implicate the specific type of derivative action contemplated by that rule.  *King v. Wal-Mart Stores, Inc.*, No. 2:06-CV-00225-PMP-PAL, 2008 WL 11450868, at *12 (D. Nev. Aug. 11, 2008) ("Rule 23.1, by its terms, does not apply to an ERISA action for breach of fiduciary duties brought by a participant or beneficiary."); *Bickley v. Caremark Rx, Inc.*, 361 F. Supp. 2d 1317, 1334 (N.D. Ala. 2004) ("it would be at odds with ERISA's statutory scheme to graft onto an ERISA enforcement action the additional requirements of Rule 23.1"); *see Moeckel v. Caremark RX Inc.*, 385 F. Supp. 2d 668, 685 (M.D. Tenn. 2005) (following *Kayes* and concluding Rule 23.1's requirements did not apply to ERISA action).

B.     **STANDING**

The Court next turns to Alerus's argument that Plaintiff lacks Article III standing to pursue the claims seeking "prospective declaratory and injunctive relief." Alerus Opp. to Cert. 20-22.  Alerus emphasizes that "Plaintiff is a terminated, cashed out participant" and thus "has no personal interest in any prospective declaratory or injunctive relief at any stage of this litigation." *Id.*  In support, Alerus cites the Supreme Court's recent standing decision, *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), for the proposition that "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." Alerus Opp. to Cert. 21 (quoting 141 S. Ct. at 2208).  According to this argument, Plaintiff lacks standing for any forward-looking relief because her relationship with the ESOP is wholly in the past.

The Court is not persuaded by this standing argument, which has been rejected by several other courts. *See, e.g. Cryer v. Franklin Templeton Res., Inc.*, No. C 16-4265 CW, 2017 WL 4023149, at *4 (N.D. Cal. July 26, 2017) (rejecting theory "that Plaintiff does not have standing to bring claims that seek injunctive relief because he has withdrawn his funds from the Plan"); *Johnson v. Meriter Health Servs. Emp. Ret. Plan*, 702 F.3d 364, 369 (7th Cir. 2012) (characterizing as "silly" the "argument that class members who are no longer participants in the plan are not entitled to declaratory or injunctive relief because such relief is forward looking").  The Ninth Circuit has held "that employees who cash out of a defined contribution ERISA plan are still 'participants' in that plan . . . regardless of whether they withdrew their assets voluntarily." *Harris v. Amgen, Inc.*, 573 F.3d 728, 734 (9th Cir. 2009).  Such participants can pursue claims under ERISA Section 502(a)(2), which are "based on breach of fiduciary duty and allow[] for the more expansive recovery of 'appropriate relief,' including disgorgement of profits and equitable remedies." *Id.* at 734 n.4.

Here, Plaintiff, who is a plan participant notwithstanding her prior "cashing out," may receive a meaningful benefit from the requested injunctive and declaratory relief if her suit is successful (e.g., additional shares of stock).  That is enough for Article III.  *Id.* at 735 (finding Article III standing where "plaintiff alleging breach of fiduciary duty claims under Section 502(a)(2)" could "gain redress" with a "favorable ruling"); *see Harzewski v. Guidant Corp.*, 489 F.3d 799, 803 (7th Cir. 2007) ("Obviously the named plaintiffs have [Article III] standing to sue . . .  because if they win they will obtain a tangible benefit."); Reply 22-23.

### C.   **RULE 23(a)**

#### 1.   **Numerosity**

Certification is proper only if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[C]ourts canvassing the precedent have concluded that the numerosity requirement is usually satisfied where the class comprises 40 or more members, and generally not satisfied when the class comprises 21 or fewer members." *Twegbe v. Pharmaca Integrative Pharmacy, Inc.*, No. CV 12-5080 CRB, 2013 WL 3802807, at *2 (N.D. Cal. July 17, 2013). Here, as Plaintiff explains, it is estimated that approximately "2,000 to 3,000 persons became vested participants in the ESOP between August 28, 2015, and June 1, 2020." Mot. to Cert. 23. Such a class is sufficiently numerous.

#### 2.   **Commonality**

Rule 23(a) also requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Ninth Circuit has instructed, however, that "commonality only requires a single significant question of law or fact." *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589 (9th Cir. 2012). Plaintiff identifies multiple common questions of law and fact, Mot. to Cert. 24-25, and Defendants do not dispute that commonality is satisfied, *see* KPC Opp. to Cert 24 ("agree[ing] that there are common questions in this case"). She claims that all proposed class members participated in the same plan, they were all owed the same duty by the plan's fiduciaries, the fiduciaries breached that duty with the same conduct, and recovery is sought on behalf of the plan as a whole. The resolution of this case will turn on several questions common to all class members: whether numerous individuals and entities breached their respective fiduciary duties, whether a prohibited transaction occurred, whether plan administrators made required disclosures, etc. This requirement is satisfied.

#### 3.   **Typicality**

The "test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). A plaintiff's claims are considered typical if they are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Castillo v. Bank of Am., NA*, 980 F.3d 723, 730 (9th Cir. 2020). Here, Defendants' alleged

acts and omissions were not directed to an individual but rather relate to the plan as a whole, such that the claims of Plaintiff and the unnamed class members all arise from the same course of conduct.  *See, e.g., In re First American Corp. Erisa Litigation*, 258 F.R.D. 610, 619 (C.D. Cal.2009) ("If the Plan Participants' claim is successful, all class members suffered the same injury through the same course of conduct. None of the facts or legal claims are unique to the named plaintiffs. This action is brought on behalf of the Plan as a whole, not individual claimants. If recovery is received and paid to the Plan, it is the responsibility of the Plan fiduciaries to determine the manner in which such recovery will be applied. Accordingly, the typicality requirement is satisfied.").  This requirement is met as well.[3]

### 4.     Adequacy

Rule 23(a) also allows certification of a class action only if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  "This factor requires: (1) that the proposed representative Plaintiffs do not have conflicts of interest with the proposed class, and (2) that Plaintiffs are represented by qualified and competent counsel."  *Giles v. St. Charles Health Sys., Inc.*, 294 F.R.D. 585, 592 (D. Or. 2013).  The motion argues that there are no known conflicts and highlights that Plaintiff's counsel all have extensive expertise in class action litigation, particularly with regards to ERISA and ESOPs. Mot. to Cert. 30-32; *see* KPC Opp. to Cert. 23-24 (conceding that "all three lawyers are qualified to be appointed . . . .").

KPC Defendants contend that Plaintiff has a "direct conflict of interest with the KPC ESOP and over 2,400 current KPC ESOP participants."  KPC Opp. to Cert. 1-2.  According to this argument, because Plaintiff is no longer employed by KPC Healthcare and has cashed out her shares from the ESOP, her primary interest is only "ensuring that the past value of her shares is retroactively increased." *Id.* By contrast, the KPC ESOP and the current ESOP participants all have a substantial interest in the future share value and financial success of KPC Healthcare.  *Id.*  But this purported conflict between Plaintiff and the many class members who are current employees and current ESOP members is speculative. Plaintiff is also a participant for purposes of ERISA, notwithstanding her status as a cashed-out former employee.  In that capacity, Plaintiff represents a class of

---

[3] KPC Defendants do not dispute typicality.  Alerus's standing argument is also framed as an attack on typicality.  That attack, however, is rejected for the reasons already stated.

"beneficiaries, not a class of employees" and so "must be a person who will seek to maximize ESOP benefits for the class." *Montgomery v. Aetna Plywood, Inc.*, No. 95 C 3193, 1996 WL 189347, at *6 (N.D. Ill. Apr. 16, 1996). There is no indication that Plaintiff and her counsel are inadequate for that purpose. KPC Defendants declare the conflict is clear and real because Plaintiff "is suing the very company that the KPC ESOP and its current participants own" and thus is "jeopardiz[ing] the financial stability of KPC Healthcare." KPC Opp. to Cert. 19. Such concerns about the financial stability of the company are speculative and would suggest that no participant could represent a class without creating a conflict; and, in any event, Defendants provide no reason to think that the remedies sought in this case would harm rather than benefit the class. *See, e.g., Glynn v. Maine Oxy-Acetylene Supply Co.*, No. 2:19-CV-00176-NT, 2020 WL 6528072, at *6 (D. Me. Nov. 5, 2020) (rejecting attack that former employee was inadequate as a class representative when argument that litigation would "jeopardize" company's viability was "largely unsupported" and there was "little reason to believe" the remedies sought "would cause collateral damage to current employees").

Alerus offers another argument for why Plaintiff is inadequate: she purportedly lacks any understanding of her ERISA claims and is allowing class counsel to exert total control over the case. Alerus Opp. to Cert. 13-20. Alerus argues that the evidence, including Plaintiff's deposition, shows that Plaintiff does not understand how the class definition excludes certain individuals, what type of benefit plan is at issue, the details of the transaction in question, or the specifics of the claims she brings or remedies she seeks. Alerus Opp. to Cert. 15-17. But the "threshold of knowledge required to qualify a class representative is low." *Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 611 (N.D. Cal. 2004). The party need only be "familiar with the basic elements of her claim" and will be deemed inadequate only if she is "startlingly unfamiliar" with the case. *Id.* This principle is especially germane "in a complex ERISA case such as this one, where the alleged violations are inseparable from the technicalities of securities transactions and corporate valuation." *Fernandez v. K-M Indus. Holding Co.*, No. C 06-7339 CW, 2008 WL 2625874, at *3 (N.D. Cal. June 26, 2008).

Here, Plaintiff articulated an understanding of the gravamen of this dispute and her complaint. Plaintiff was able to explain that the claims arose because "Chaudhuri sold his stock at an increased value to the ESOP" and that "Alerus caused the ESOP to buy" the stock at that higher value. Dkt. No. 133-17 (Gamino Depo.) at 42-43. Plaintiff identified that Chaudhuri should have sold the stock "at a fair value," that this action seeks to "mak[e] the ESOP parties whole," and that the action brought separate "disclosure claims" under ERISA. *Id.* at 43, 45, 144.

On this record, the Court cannot say that Plaintiff demonstrates the level of unfamiliarity with the basic aspects of this case needed to render her inadequate. Nor has Plaintiff merely served as the "key to the courthouse door," as Alerus suggests. *See* Alerus Opp. to Cert. 17-20. The motion cites evidence that Plaintiff assisted in the preparation of the complaint, participated in discovery, and sat for a deposition. Mot. to Cert. 31-32; *see Allen v. Hyland's Inc.*, 300 F.R.D. 643, 663 (C.D. Cal. 2014) (finding representative plaintiffs adequate when they "made themselves available for depositions and demonstrated familiarity with the case").

The Court thus finds the adequacy requirement met and, consequently, Rule 23(a) satisfied.

### D.   RULE 23(b)

The Court next turns to whether this case meets one of the at least one of the requirements of Rule 23(b). Plaintiff asserts that these claims "meet[] the requirements of Rule 23(b)(1)" but that they would also satisfy both Rule 23(b)(2) and Rule 23(b)(3). Mot. to Cert. 18.

"Most ERISA class action cases are certified under Rule 23(b)(1)." *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 111 (N.D. Cal. 2008). That provision permits certification where:

> prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

Fed. R. Civ. P. 23(b)(1). "Rule 23(b)(1)(A) considers possible prejudice to a defendant, while 23(b)(1)(B) looks to prejudice to the putative class members." *Kanawi*, 254 F.R.D. at 111.

Here, the soon-to-be-operative first amended complaint seeks relief under ERISA § 502(a)(2) against fiduciary Defendant for recovery of losses on behalf of the plan and under § 502(a)(3) for appropriate equitable relief to redress the wrongdoing of all Defendants. Dkt. No. 152-1 ¶¶ 205-06. If the thousands of

individual members of the putative class were to bring these claims against Defendants, it very well might lead to "[c]onflicting interpretations by separate tribunals [that] could result in countervailing directives" to Defendants. *Hurtado v. Rainbow Disposal Co.*, No. 8:17-cv-01605-JLS-DFM, 2019 WL 1771797, at *10 (C.D. Cal. Apr. 22, 2019). Moreover, given the shared character of the rights invoked under the ESOP and the relief sought on behalf of the ESOP, a "judgment for or against one ESOP Participant . . . plainly affects the rights of all ESOP Participants." *Id.*; *see In re Northrop Grumman Corp. ERISA Litig.*, No. CV 06-06213 MMM JCX, 2011 WL 3505264, at *18 (C.D. Cal. Mar. 29, 2011) (finding Rule 23(b)(1)(B) satisfied where plaintiffs asserted "§ 502(a)(2) and (3) claims on behalf of the plan" that would have, if proved, "affect[ed] every plan participant"). Thus, the class appears suitable for certification under both Rule 23(b)(1)(A) and Rule 23(b)(1)(B).

Alerus argues that the proposed class cannot be certified under Rule 23(b)(1) or 23(b)(2) because the class definition improperly excludes allegedly injured participants from a non-opt-out class. Alerus Opp. to Cert. 5-10. Alerus takes issue with the class definition's exclusion of participants who "terminated employment without vesting in the ESOP," because "[u]nder the terms of the Plan, the timing of termination of employment and vesting do not line up." Alerus Opp. to Cert. 6-7. In particular, the plan purportedly permits participants who have terminated employment to retain their unvested benefits and resume vesting if they return to service within 5 years. *Id.* (citing Dkt. No. 133-6 (Plan) §§ 5.3(a), 5.4(a), 5.8(b)). According to Alerus, this means the proposed class specifically excludes a group who may have rights under ERISA and "expose[s] Defendants to the risk of inconsistent verdicts from lawsuits by excluded participants," thus defeating the purpose of certification under Rule 23(b)(1). Alerus Opp. to Cert. 10.

But a class should "be defined in such a way that anyone within it would have standing." *Burdick v. Union Sec. Ins. Co.*, No. CV 07-4028 ABC (JCX), 2009 WL 4798873, at *4 (C.D. Cal. Dec. 9, 2009). And former employees generally only have standing to sue under ERISA if they have "a reasonable expectation of returning to covered employment [or] a colorable claim to vested benefits." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 118 (1989). Here, Alerus would sweep in individuals without a reasonable expectation of returning or any vested benefits—i.e., individuals who lack standing to sue under ERISA and likely should not be included in the class. Moreover, it is not clear that this issue would defeat certification rather than just result in an expansion of the class definition. If it becomes evident that the Court should expand the class definition, the parties may move the Court to do so. *Snipes v. Dollar Tree Distribution, Inc.*,

No. 2:15-CV-00878-MCE-DB, 2019 WL 5830052, at *5 (E.D. Cal. Nov. 7, 2019) (noting courts' "inherent authority and broad discretion to modify class definitions").

The Court finds that the class is suitable for certification under Rule 23(b)(1).  The Court thus need not address Plaintiff's alternative proposals to certify under Rule 23(b)(2) or 23(b)(3).

## E.    RULE 23(g)

Plaintiff seeks to appoint R. Joseph Barton of Block & Leviton LLP, Daniel Feinberg of Feinberg, Jackson, Worthman & Wasow LLP, and Richard Donahoo of Donahoo & Associates, P.C. as co-lead class counsel under Rule 23(g)(1).  Mot. to Cert. 32.  Alerus and KPC Defendants argue that only one lawyer, rather than all three, should be appointed to serve as class counsel.  Alerus Opp. to Cert. 22-25; KPC Opp. to Cert. 23-24.

"The adequacy of counsel is considered under . . . Rule 23(g)."  *Allen*, 300 F.R.D. at 664 (citing *Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1122-23 (9th Cir. 2014)).  Rule 23(g) factors include "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A).

There is no dispute that each of these lawyers is individually qualified for appointment under Rule 23(g)(1).  KPC Opp. to Cert. 23-24.  Instead, Alerus contends that this is not a case in "which the firms can adequately litigate . . . only by combining their expertise or resources."  Alerus Opp. to Cert. 24.  But this argument is belied by the amount of factual and legal claims presented, voluminous motion practice, and number of potential witnesses in this case.  Given this complexity, the Court finds the appointment of three co-lead class counsel is appropriate. *See Hurtado*, 2019 WL 1771797, at *11 (appointing attorneys from multiple firms as class counsel in ESOP litigation); *Guidry v. Wilmington Tr.*, 333 F.R.D. 324, 330 (D. Del. 2019) (citing "the complexity of ERISA litigation" in appointing two firms as class counsel in an ESOP class action).

Alerus also argues that appointing lawyers from multiple firms as co-lead class counsel "would lead to . . . a waste of resources" and "would waste Defendants' money."  Alerus Opp. to Cert. 23.  The Court is not persuaded by this

argument.  As Plaintiff points out, Rule 23(g) requires the Court to consider class "counsel's ability to fairly and adequately represent the interests of the class," not Defendants' interests.  Fed. R. Civ. P. Rule 23(b)(1)(B); Reply ISO Cert. 39.  The Court, however, will ensure that the appointment of co-lead counsel does not lead to excessive fees by examining any potential fee request with special scrutiny.

Accordingly, the Court finds that the appointment of Mr. Barton, Mr. Feinberg, and Mr. Donahoo as co-lead class counsel is appropriate under Rule 23(g)(1).[4]

For these reasons, the Court **GRANTS** the motion for class certification.  The parties should meet and confer and submit proposed trial date and pretrial deadlines and a specific justification for the proposal by **August 20, 2021**.  In doing so, the parties should be mindful that the case was filed on June 1, 2020, and the Court expects to bring this case to trial expeditiously.

---

[4] In objecting to the appointment of Messrs. Barton, Feinberg, and Donahoo as co-lead class counsel, Defendants only cursorily assert that such appointment is unauthorized by Rule 23(g).  They do not address the statement in the Advisory Notes contemplating the appointment of "numerous attorneys who are not otherwise affiliated but are collaborating on the action."  Fed. R. Civ. P. 23 advisory committee note to 2003 amendment.  Nor do they otherwise develop the argument.