Richard E. Donahoo (SBN 186957)
DONAHOO & ASSOCIATES, PC.
440 W. First Street, Suite 101
Tustin, CA 92780
Tel: (714) 953-1010
Email: rdonahoo@donahoo.com

*Counsel for the Plaintiff*
*[additional counsel listed below]*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## EASTERN DIVISION

| | |
|---|---|
| DANIELLE GAMINO, individually and on behalf of all others similarly situated, | Case No.: 5:20-cv-01126-SB (SHK) |
| *Plaintiff,* | |
| v. | **FIRST AMENDED COMPLAINT FOR VIOLATIONS OF ERISA** |
| KPC HEALTHCARE HOLDINGS, INC., KPC HEALTHCARE, INC. EMPLOYEE STOCK OWNERSHIP PLAN COMMITTEE, ALERUS FINANCIAL, N.A., KALI PRADIP CHAUDHURI, KALI PRIYO CHAUDHURI, AMELIA HIPPERT, WILLIAM E. THOMAS, LORI VAN ARSDALE, | **CLASS ACTION** |
| *Defendants* | |
| and | |
| KPC HEALTHCARE, INC. EMPLOYEE STOCK OWNERSHIP PLAN | |
| *Nominal Defendant* | |

FIRST AMENDED CLASS ACTION COMPLAINT

## I. JURISDICTION AND VENUE

1. Plaintiff brings this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq*. This Court has subject matter jurisdiction over this action pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because this action arises under the laws of the United States and pursuant to 29 U.S.C. § 1132(e)(1).

2. Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the breaches and violations giving rise to the claims occurred in this District, and one or more of the Defendants may be found in this District.

## II. INTRODUCTION

3. This ERISA action is brought on behalf of a Class of participants in and beneficiaries of the KPC Healthcare, Inc. Employee Stock Ownership Plan ("the KPC ESOP," "the ESOP" or "the Plan") to restore losses to the Plan, disgorge any profits, and to obtain other remedies arising out of Defendants' breaches of fiduciary duties and other violations of ERISA. These claims arise out of a transaction that took place on August 28, 2015 (the "2015 ESOP Transaction"), through which Defendant Kali Pradip Chaudhuri sold 100% of the stock of KPC Healthcare Holdings, Inc. to the ESOP. This transaction was not designed to be in the best interests of the ESOP participants and caused the ESOP to pay in excess of fair market value. Indeed, the ESOP paid a price more than 400% greater than the price that Kali Pradip Chaudhuri had been willing to pay for and at which he likely acquired the company just two years earlier—even before taking into account any other consideration that Dr. Chaudhuri received as part of the 2015 ESOP Transaction.

4. In addition, the ESOP Committee, which serves as the Plan Administrator, has not provided disclosures required by ERISA. Prior to filing this lawsuit, Plaintiff sought to obtain a copy of the valuation/appraisal report that set

the price which the ESOP paid for the shares and the valuation/appraisal report that determined the value of her benefits, but the Plan Administrator refused to provide copies of those reports.

5.      Through this action, Plaintiff seeks to enforce her rights and those of other participants in the Plan under ERISA, to recover the losses incurred by the Plan as a result of Defendants' breaches of fiduciary duty or other violations of ERISA, and to ensure that the Plan and its assets have been properly administered. Among the relief sought for these breaches and violations, Plaintiff requests that the breaching fiduciaries be ordered to pay the losses to the Plan, to disgorge any profits, that the Court order other remedial and equitable relief and that any monies recovered for the Plan be allocated to the accounts of the Class.

## III.   INTRA-DISTRICT ASSIGNMENT

6.      Plaintiff resides in the State of Georgia.

7.      Based on Plaintiff's counsel's investigation, all but one of Defendants who reside in the District reside in the Eastern Division of the Central District of California (and the other Defendant resides in the Southern Division). Defendant Alerus Financial, N.A. is located outside the State of California.

8.      The alleged breaches took place in the Eastern Division of the Central District of California.

## IV.   PARTIES

### Plaintiff

9.      Plaintiff Danielle Gamino is a former employee of KPC. Plaintiff Gamino was employed as a medical coder by KPC from May 29, 2008 through December 17, 2016, first at Coastal Communities Hospital (now known as South Coast Global Medical Center) and then at the Orange County Global Medical Center, both in Santa Ana, California. As a result of her employment, Plaintiff Gamino became and is a participant, as defined in ERISA § 3(7), 29 U.S.C. §

FIRST AMENDED CLASS ACTION COMPLAINT

3

1002(7), in the KPC ESOP because she has a colorable claim for additional benefits under the Plan. Plaintiff Gamino resides in Buford, Georgia.

**Defendants**

10.     Defendant KPC Healthcare Holdings, Inc. ("KPC") is and has been a California Corporation with its principal place of business in Riverside, California (according to the Summary Plan Description) or Corona, California (according to statements of information filed with the California Secretary of State). Since the inception of the ESOP, KPC has been the sponsor of the ESOP within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B). Pursuant to KPC's authority to appoint and remove other fiduciaries of the ESOP, including the Trustee and the members of the ESOP Committee, KPC is and was a fiduciary of the ESOP under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). The current version of the Summary Plan Description for the ESOP identifies KPC's address as 6800 Indiana Avenue, Suite 130, Riverside CA 92506 (i.e. in the Eastern Division of this District).

*The Committee Defendants*

11.     Defendant KPC Healthcare, Inc. Employee Stock Ownership Plan Committee (the "ESOP Committee") is identified as the plan administrator in the ESOP's Plan Document within the meaning of ERISA § 3(16)(A), 29 U.S.C § 1002(16)(A). Pursuant to Section 11.15 of the written instrument of the Plan, the ESOP Committee is one of the named fiduciaries of the ESOP within the meaning of ERISA § 402, 29 U.S.C. § 1102. The ESOP Committee meets the definition of a person within the meaning of ERISA § 3(9), 29 U.S.C. § 1002(9), because ERISA defines the term person broadly and because a committee meets the definition of an association or an unincorporated organization. The Committee's address is believed to be 6800 Indiana Avenue, Suite 130, Riverside CA 92506 (i.e. in the Eastern Division of this District).

12.     The "Committee Defendants" means the ESOP Committee and the members of the Committee. According to the notes to the financial statements in

FIRST AMENDED CLASS ACTION COMPLAINT

Form 5500s filed with the United States Department of Labor, all members of the Board of Directors serve and have served on the ESOP Committee. As a result of the ESOP Committee being designated as the Plan Administrator and a named fiduciary of the ESOP under the terms of the Plan, and because the ESOP Committee and its members having discretionary authority or responsibility for the administration of the Plan, the ESOP Committee and its members are and were fiduciaries of the ESOP within the meaning of ERISA § 3(21)(A), 29 U.S.C § 1002(21)(A).

*The Trustee*

13. Defendant Alerus Financial, N.A. ("Alerus") acted as Trustee of the ESOP in connection with the 2015 ESOP Transaction. Alerus was appointed as the Trustee of the KPC ESOP pursuant to the KPC Healthcare, Inc. Employee Stock Ownership Trust dated April 1, 2015 (the "Trust Agreement"). Since the 2015 ESOP Transaction, Alerus has continued to be the Trustee of the KPC ESOP. Pursuant to Section 11.15 of the written instrument of the Plan, the Trustee is one of the named fiduciaries of the ESOP within the meaning of ERISA § 402, 29 U.S.C. § 1102. As a result of being the Trustee of the KPC ESOP, Alerus has been a fiduciary of the ESOP within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). Alerus is headquartered in Grand Forks, North Dakota.

*The Board of Directors*

14. Defendant Kali Pradip Chaudhuri ("Dr. Chaudhuri") is the Chief Executive Officer of KPC and the chairman of its board of directors. By virtue of his position as CEO, membership on the KPC Board of Directors and his membership on the ESOP Committee, Kali Pradip Chaudhuri is and has been a fiduciary of the ESOP within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), since at least the time of 2015 ESOP Transaction. At the time of the 2015 ESOP Transaction, Dr. Chaudhuri was a "party in interest" as to the ESOP as defined in ERISA § 3(14) (A) and (H), 29 U.S.C. § 1002(14) (A) and (H). Prior to

FIRST AMENDED CLASS ACTION COMPLAINT

the 2015 ESOP Transaction, Kali Pradip Chaudhuri was the sole shareholder of KPC. He sold his shares to the ESOP in the 2015 ESOP Transaction. Dr. Chaudhuri resides in Hemet, CA in Riverside County (i.e., in the Eastern Division of this District).

15.     Defendant Kali Priyo Chaudhuri, the son of Defendant Kali Pradip Chaudhuri, is the Chief Financial Officer of KPC, and is a member of its Board of Directors of KPC. Defendant Kali Priyo Chaudhuri was a member of the Board at the time of the 2015 ESOP Transaction. By virtue of his membership on the KPC Board of Directors and in turn, membership on the ESOP Committee, Kali Priyo Chaudhuri is and has been a fiduciary of the ESOP within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), since at least the time of 2015 ESOP Transaction. Kali Priyo Chaudhuri resides in Tustin, CA in Orange County (i.e., in the Southern Division of this District).

16.     Defendant Amelia Hippert is a member of the KPC Board of Directors. Defendant Amelia Hippert was appointed to the Board after the 2015 ESOP Transaction. By virtue of her membership on the KPC Board of Directors, and in turn, membership on the ESOP Committee, Amelia Hippert is and has been a fiduciary of the ESOP within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) since at least the time of her appointment to the KPC Board of Directors. Amelia Hippert resides in Hemet, CA in Riverside County (i.e. in the Eastern Division of this District).

17.     Defendant William E. Thomas is the secretary of KPC, in-house counsel for KPC, and a member of the Board of Directors of KPC. Defendant William E. Thomas was a member of the Board at the time of the 2015 ESOP Transaction. Upon information and belief, Defendant Thomas has been Defendant Kali Pradip Chaudhuri's long-standing attorney. By virtue of his membership on the KPC Board of Directors, and in turn, membership on the ESOP Committee, William E. Thomas is and has been a fiduciary of the ESOP within the meaning of

FIRST AMENDED CLASS ACTION COMPLAINT

6

ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), since at least the time of 2015 ESOP Transaction. ███████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ███████████████████████████████████ Upon information and belief, Defendant Thomas resides in Riverside County (i.e., the Eastern Division of this District).

18.     Defendant Lori Van Arsdale is a member of the KPC board of directors. Defendant Lori Van Arsdale was appointed to the Board after the 2015 ESOP Transaction. By virtue of her membership on the KPC Board of Directors, and in turn, membership on the ESOP Committee, Lori Van Arsdale is and has been at all relevant times been a fiduciary of the ESOP within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), since at least the time of her appointment to the KPC Board of Directors. Defendant Van Arsdale resides in Hemet, CA in Riverside County (i.e., in the Eastern Division of this District).

19.     The "Director Defendants" are Kali Pradip Chaudhuri, Kali Priyo Chaudhuri, Amelia Hippert, William E. Thomas, and Lori Van Arsdale.

**Nominal Defendant**

20.     Nominal Defendant KPC Healthcare, Inc. Employee Stock Ownership Plan, a/k/a the KPC Healthcare, Inc. ESOP (the "KPC ESOP"), is an "employee pension benefit plan" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A). As the Plan Administer is located in Riverside, California, the Plan is also believed to be administered in Riverside, California. The ESOP purports to be a "defined contribution plan" within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34), and an employee stock ownership plan under ERISA § 407(d)(6) that was intended to meet the requirements of Section 4975(e)(7) of the Internal Revenue Code (the "Code") and IRS Regulations § 54.4975-11. The written instrument, within the meaning of ERISA § 402, 29 U.S.C. §1102, by which the

FIRST AMENDED CLASS ACTION COMPLAINT

Plan is maintained is the KPC Healthcare, Inc. Employee Stock Ownership Plan (the "Plan Document"), effective as of April 1, 2015. The ESOP is named as a nominal defendant pursuant to Rule 19 to ensure that complete relief can be granted as to claims brought on behalf of the ESOP.

## V.    CLASS ACTION ALLEGATIONS

21.    Plaintiff brings these claims as a class action pursuant to Fed. R. Civ. P. 23 (a) and (b), on behalf of the following Class:

> All participants in the KPC ESOP from August 28, 2015 or any time thereafter (unless they terminated employment without vesting in the ESOP) and those participants' beneficiaries.

> Excluded from the Class are (a) Defendants, (b) any fiduciary of the Plan; (c) the officers and directors of KPC or of any entity in which one of the individual Defendants has a controlling interest; (d) the immediate family members of any of the foregoing excluded persons, and (e) the legal representatives, successors, and assigns of any such excluded persons.

**Impracticability of Joinder**

22.    The members of the Class are so numerous that joinder of all members is impracticable. According to the 2018 Form 5500 filed with the Department of Labor, which is the most recent available Form 5500, there were 2,655 participants (including 2,132 active participants, 228 retired or separated participants receiving benefits and 283 retired or separated participants entitled to future benefits) within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7), in the ESOP as of August 31, 2019.

**Commonality**

23.    The issues of liability are common to all members of the Class and are capable of common answers as those issues primarily focus on Defendants' acts (or failure to act). Questions of law and fact common to the Plaintiff Class as a whole include, but are not limited to, the following:

FIRST AMENDED CLASS ACTION COMPLAINT

a.     Whether Defendant Alerus caused the ESOP to engage in prohibited transactions under ERISA by causing or permitting the ESOP to purchase KPC stock for more than adequate consideration in the 2015 ESOP Transaction;

b.     Whether Defendants Dr. Chaudhuri and William Thomas knowingly participated in those prohibited transactions;

c.     Whether Alerus engaged in a prudent investigation of the proposed purchase of KPC stock by the ESOP in the 2015 ESOP Transaction;

d.     Whether Alerus breached its fiduciary duty to ESOP participants by causing the ESOP to purchase KPC stock in 2015 for more than fair market value;

e.     Whether the Committee Defendants violated certain disclosure provisions of ERISA or otherwise breached their fiduciary duties;

f.     Whether KPC (and/or the Director Defendants) breached their fiduciary duties by failing to adequately monitor the ESOP's Trustee and the Committee Defendants;

g.     Whether certain provisions of the Plan Document and Trust Agreement violate ERISA § 410;

h.     The amount of losses suffered by the ESOP as a result of Defendants' fiduciary violations and the nature of other appropriate remedial or equitable relief to remedy Defendants' breaches or violations.

**Typicality**

24.     Plaintiff's claims are typical of those of the Class because their claims arise from the same event, practice and/or course of conduct. Specifically, Plaintiff, on behalf of the Class, alleges that Defendants breached their fiduciary duties, engaged in prohibited transactions or otherwise violated ERISA in connection with the sale of stock to the ESOP, management of the Plan or in performing their

FIRST AMENDED CLASS ACTION COMPLAINT

fiduciary duties to the Plan. Plaintiff challenges the legality and appropriateness of a plan-wide transaction and disclosures, and Plaintiff like other ESOP participants in the Class, has received less in her ESOP account based on the same per share purchase price of KPC stock, and continue to suffer such losses in the present because Defendants have failed to correct the overpayment by the ESOP.

**Adequacy**

25.    Plaintiff will fairly and adequately represent and protect the interests of the Class.

26.    Plaintiff does not have any interests antagonistic to or in conflict with those of the Class.

27.    Defendants do not have any unique defenses against Plaintiff that would interfere with Plaintiff's representation of the Class.

28.    Plaintiff is represented by counsel with experience in complex class actions, ERISA, and with particular experience and expertise in ESOP litigation. Plaintiff's counsel has been appointed as class counsel in numerous class action ESOP cases.

**Fed. R. Civ. P. Rule 23(b)(1)**

29.    Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(1)(A). Fiduciaries of ERISA-covered plans have a legal obligation to act consistently with respect to all similarly situated participants and to act in the best interests of the Plan and their participants. This action challenges whether Defendants acted consistently with their fiduciary duties or otherwise violated ERISA as to the ESOP as a whole. As a result, prosecution of separate actions by individual members would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct relating to the Plan.

30.    Class certification is also appropriate pursuant to Fed. R. Civ. P. 23(b)(1)(B).  Administration of an ERISA-covered plan requires that all similarly situated participants be treated the same. Resolving whether Defendants fulfilled

FIRST AMENDED CLASS ACTION COMPLAINT

their fiduciary obligations to the Plans, engaged in prohibited transactions with respect to the Plan would, as a practical matter, be dispositive of the interests of the other participants in the ESOP even if they are not parties to this litigation and would substantially impair or impede their ability to protect their interests if they are not made parties to this litigation by being included in the Class.

**Fed. R. Civ. P. Rule 23(b)(2)**

31.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiff and the Class as a whole. This action challenges whether Defendants acted consistently with their fiduciary duties or otherwise violated ERISA as to the ESOP as a whole.  The members of the Class are entitled to declaratory and injunctive relief to remedy Defendants' fiduciary violations. As ERISA is based on trust law, any monetary relief consists of equitable monetary relief and is either provided directly by the declaratory or injunctive relief or flows as a necessary consequence of that relief.

**Fed. R. Civ. P. Rule 23(b)(3)**

32.     The requirements of Fed. R. Civ. P. 23(b)(3) are also satisfied. Common questions related to liability will necessarily predominate over any individual questions precisely because Defendants' duties and obligations were uniform to all participants and therefore all members of the Class. Plaintiff and all Class members have been harmed by the ESOP paying more than fair market value for KPC stock in the 2015 ESOP Transaction. As relief and any recovery will be on behalf of the Plan, common questions as to remedies will likewise predominate over any individual issues.

33.     A class action is a superior method to other available methods for the fair and efficient adjudication of this action. As the claims are brought on behalf of the Plan, resolution of the issues in this litigation will be efficiently resolved in a

FIRST AMENDED CLASS ACTION COMPLAINT

single proceeding rather than multiple proceedings and each of those individual proceedings could seek recovery for the entire Plan. The losses suffered by individual Class members are small compared to the expense and burden of individual prosecution of this action. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation which might result in inconsistent judgments about Defendants' duties with regard to the ESOP.

34.     The following factors set forth in Rule 23(b)(3) also favor certification of this case as a class action:

   a.  The members of the Class have an interest in a unitary adjudication of the issues presented in this action for the reasons that this case should be certified under Rule 23(b)(1).

   b.  No other litigation concerning this controversy has been filed by any other members of the Class.

   c.  This District is most desirable location for concentrating the litigation for reasons that include (but are not limited to) the following: (i) KPC is headquartered in this District, (ii) the KPC ESOP is administered in this District, (iii) most of Defendants reside, work and transact business in this District, and (iii) certain non-party witnesses are located in this District.

   d.  The names and addresses of the members of the Class are available from the ESOP. Notice can be provided to all members of the Class to the extent required by Rule 23.

## VI.   FACTUAL ALLEGATIONS

### Defendant Dr. Kali Pradip Chaudhuri Finances the Acquisition of Four Hospitals Over Community Objections

35.     Integrated Healthcare Holdings, Inc. ("Integrated Health") was formerly a publicly traded medical holding company. According to Integrated

FIRST AMENDED CLASS ACTION COMPLAINT

Health's Form 10-K for the fiscal year ended March 31, 2013, the company had no material operations until March 8, 2005, when it acquired four Orange County, California hospitals previously operated by Tenet Healthcare Corp.: Western Medical Center in Santa Ana; Western Medical Center in Anaheim; Coastal Communities Hospital in Santa Ana; and Chapman Medical Center in Orange. Integrated Health purchased the hospitals in part through debt financing provided by Defendant Dr. Chaudhuri.

36.     According to an article entitled "KCP Healthcare Bets on ESOP" published in the Orange County Business Journal on March 13, 2017, in 2005 Dr. Chaudhuri initially led Integrated Health's bid to acquire the four Tenet hospitals.

37.     Integrated Health's acquisition of these hospitals was met with vocal public opposition because of Dr. Chaudhuri's involvement. One of Dr. Chaudhuri's other companies, KPC Medical Management Inc., went bankrupt shortly after acquiring the Southern California provider network of MedPartners, resulting in the abrupt closure of 38 California clinics and abruptly leaving 300,000 patients without medical care.

38.     The KPC Medical Management bankruptcy was dogged by allegations of financial mismanagement and self-dealing by Dr. Chaudhuri. According to an article entitled "KPC Filings Spur More Questions" published by the California American College of Emergency Physicians in February of 2001, a bankrupt affiliate of KPC Medical Management paid $5 million to Dr. Chaudhuri in January 2000, even as KPC Medical Management was negotiating with HMOs for a bailout loan. The week before KPC Medical Management filed for bankruptcy, it paid $1.5 million to its attorneys, including $150,000 to Dr. Chaudhuri's personal attorney Defendant William Thomas (after he had already resigned as corporate counsel to KPC Medical Management). And creditors alleged that Chaudhuri had improperly moved assets between KPC Medical Management and his other businesses.

FIRST AMENDED CLASS ACTION COMPLAINT

39.     According to documents filed in litigation between Dr. Chaudhuri and Defendant William E. Thomas, among others, on the one hand, and two Southern California physician groups on the other hand, Dr. Chaudhuri systematically looted MedPartners—shutting down facilities, firing doctors and staff members, all under the pretense of cutting costs. Meanwhile, Dr. Chaudhuri lined his own pockets while continuing to draw income from MedPartners while refusing to pay independently contracted specialty physicians. Dr. Chaudhuri even had staff write checks to show health plans payments were being made while instructing them to stash those same checks in locked filing cabinets (instead of mailing them). Within the first 18 months following the MedPartners acquisition, $30 million in assets had disappeared from the company and it had run up debts of $450 million.

40.     In response to Dr. Chaudhuri's contemplated involvement in the Integrated Health purchase of the Tenet hospitals, a spokeswoman for the California Department of Health Services stated that they had "concerns… about the applicant's reputable and responsible character." California state senators Joseph Dunn and Deborah Ortiz stated in a letter to the director of the DHS that they were "deeply concerned" about Chaudhuri's involvement in the venture and sought "assurances that Dr. Chaudhuri's role would not result in the [Western Medical-Santa Ana] hospital going the KPC route."

41.     According to a January 27, 2005 OC Weekly article entitled, "Now With Less Chaudhuri!" then current and former chiefs of staff at the Western Medical of Santa Ana trauma facility, Michael Fitzgibbons, and Robert Steedman, opposed the deal because of Dr. Chaudhuri's involvement. Together with more than 70 other doctors, they created a competing acquisition group, Western Medical Center Acquisition, LLC, and organized protests of the Integrated Health purchase. But Fitzgibbons and Steedman were intimidated into silence and acquiescence to the Integrated Health transaction by Dr. Chaudhuri's litigation threats. Following the acquisition, Fitzgibbons would continue to face retaliation.

FIRST AMENDED CLASS ACTION COMPLAINT

14

The CEO of Integrated Health, Bruce Mogel, planted a loaded handgun in Fitzgibbon's car and called the police on him. Mogel also caused Fitzgibbon's daughter to be in a serious auto accident after her tires were slashed. Fitzgibbon would later win a $5.7 million jury verdict against both Integrated Health and Mogel for this conduct.

42.     As a result of the opposition by the public, doctors, regulatory authorities, and legislators to Chaudhuri's involvement in another acquisition of medical facilities, Dr. Chaudhuri reduced his planned stake in Integrated Health and its acquisition of the Tenet hospitals. According to a March 21, 2005 article in the Los Angeles Times entitled "Doctors Operate This Company," Dr, Chaudhuri took a reduced role at Integrated Health as part of its acquisition of the Tenet hospitals, providing debt financing for the transaction instead of a substantial equity investment. Cardiologist Anil Shah ("Shah") and a consortium of doctors led by him, Orange County Physicians Investment Network LLC ("OCPIN") provided the bulk of the equity investment and took an 83% ownership interest in Integrated Health. Chaudhuri also owned 49% of a real estate subsidiary formed by OCPIN to own land associated with three of the four hospitals. And Dr. Chaudhuri and his lawyer—Defendant William E. Thomas—retained a right to purchase up to 25% of Integrated Health.

43.     In that same March 21, 2005 article in the Los Angeles Times, Shah claimed that no one should be concerned by Dr. Chaudhuri's involvement in Integrated Health, because "He will never have a controlling interest." At the same time, according to the California Healthcare Daily Edition, Larry Anderson, president of Integrated Health, "repeatedly assured critics that Chaudhuri would have no role in the daily operations of the facilities…."

**Integrated Health's Stock Performance & Value 2010 to 2013**

44.     From April 2010 to March 2011, shares of Integrated Health traded on the OTCQB Venture Market at prices between $0.02 and $0.07 per share. Based

FIRST AMENDED CLASS ACTION COMPLAINT

15

on the 255,307,262 shares of common stock of Integrated Health outstanding between April 2010 and March 2011, these stock prices imply a market capitalization and equity value of between approximately $5.1 million and $17.9 million during that period.

45.     According to Integrated Health's 2011 Form 10-K, for the fiscal year ending March 31, 2011, Integrated Health had assets of $149.2 million and liabilities of $167.8 million, for a stockholders' deficiency of approximately $18.7 million.

46.     From April 2011 to March 2012, shares of Integrated Health traded on the OTCQB Venture Market at prices between $0.01 and $0.22 per share. Based on the 255,307,262 shares of common stock of Integrated Health outstanding between April 2011 and March 2012, these stock prices imply a market capitalization and equity value of between approximately $2.6 million and $56.2 million during that period.

47.     According to Integrated Health's 2012 Form 10-K, for the fiscal year ending March 31, 2012, Integrated Health had assets of $145 million and liabilities of $157 million, for a stockholders' deficiency of $11 million.

48.     From April 2012 to March 2013, shares of Integrated Health traded on the OTCQB Venture Market at prices between $0.04 and $0.11 per share. Based on the 255,307,262 shares of common stock of Integrated Health outstanding at that time, this implies a market capitalization and equity value of between approximately $10.2 million and $28.1 million between April 2012 and March 2013.

49.     According to Integrated Health's 2013 Form 10-K, for the fiscal year ending March 31, 2013, Integrated Health had assets of $167 million and liabilities of $197 million, for a stockholders' deficiency of $30 million.

FIRST AMENDED CLASS ACTION COMPLAINT

**Defendant Dr. Kali Pradip Chaudhuri Purchases 100% of the Shares of Integrated Health** ▮▮▮▮▮▮▮▮▮▮▮

50.     Between 2005 and 2010, Dr. Chaudhuri gradually acquired stock in and consolidated his control over Integrated Health. According to an Orange County Register article dated January 25, 2010 entitled "Controversial doctor gets more clout at Western Med," by 2010 Dr. Chaudhuri had amassed a majority ownership interest in Integrated Health in addition to being its principal lender.

51.     Based on documents publicly filed with the Securities and Exchange Commission, in April of 2010 Dr. Chaudhuri acquired two sets of common stock warrants collectively entitling the holder to acquire approximately 309,000 shares of Integrated Health common stock.

52. 

53.

. SPCP Group provided financing for Dr. Chaudhuri's acquisition of IHHI.

54.     By March 31, 2013, Integrated Health's Form 10-K identified Defendant Kali Pradip Chaudhuri as the beneficial owner of 77.55% of the outstanding stock of the company.

55.     On September 12, 2013, Defendant Kali Pradip Chaudhuri filed an Amended Schedule 13D with the SEC stating he "had reached an understanding as

FIRST AMENDED CLASS ACTION COMPLAINT

17

to the principal terms of a proposed transaction in which Dr. Chaudhuri or his affiliate will acquire an aggregate of 100,110,430 shares of common stock" held by Shah, OCPIN, and a Mr. Hari S. Lal. Dr. Chaudhuri further stated that after closing those purchases he intended to "acquire all of the remaining shares of common stock of the Issuer."

56.     According to an Amended Schedule 13-D filed by Silver Point Capital, L.P. with the SEC on September 12, 2013, Defendant Kali Pradip Chaudhuri agreed to pay $0.203 per share to acquire these 100,110,430 shares of Integrated Health stock and planned "a second step, 'short-form' merger in accordance with the laws of the State of Nevada pursuant to which all other shareholders of the Issuer would receive merger consideration that would approximate the consideration per share received by the Selling Shareholders."

57.     According to the Form 10-Q filed by Integrated Health with the Securities and Exchange Commission on November 14, 2013, Integrated Health had 255,307,262 shares of stock outstanding as of November 7, 2013—the same number that it had outstanding as of August 7, 2013, according to the Form 10-Q filed by Integrated Health with the Securities and Exchange Commission on August 14, 2013.

58.     The terms Dr. Chaudhuri disclosed under which he would acquire 100% of the outstanding common stock of Integrated Health therefore implied a value to the entire company of approximately $51,827,374 (255,307,262 shares at $0.203/share).

59.     Integrated Health then terminated the registration of its securities with the SEC effective January 7, 2014.

60.     On information and belief, Dr. Chaudhuri consummated the planned purchase of 100,110,430 shares of Integrated Health stock from Shah, OCPIN, and Mr. Lal.  for $0.203 per share.

FIRST AMENDED CLASS ACTION COMPLAINT

61.    According to contemporaneous postings to InvestorsHub, an internet forum for discussion of stock trades, remaining shareholders of Integrated Health were cashed out at a price of $0.203 per share in May of 2014—the price at which Dr. Chaudhuri had previously disclosed he would acquire 100% of the outstanding stock of Integrated Health.

62.    Dr. Chaudhuri acquired all the outstanding stock of Integrated Health through these transactions.

63.    ████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████
██████████████████████████████.

**Defendant Dr. Kali Pradip Chaudhuri Renames Integrated Health as KPC and Sells the Company to the ESOP at an Inflated Price**

64.    Between 2013 and 2015, Integrated Health experienced financial distress. Repeated rounds of layoffs and rehirings had long been characteristic of Integrated Health's employment practices. As a result of the financial difficulties and related layoffs, employees such as Plaintiff Gamino believed that their employment was increasingly precarious and were never sure if they would be employed the next day.

65.    According to the Articles of Incorporation obtained from the State of California Secretary of State, KPC was incorporated on July 24, 2015.

66.    According to an article published in the Press Enterprise on June 11, 2015, KPC was a new name for Integrated Health, which Defendant Kali Pradip Chaudhuri had taken private in 2014.

67.    According to an article published in the Orange County Business Journal on March 13, 2017, entitled "KPC Healthcare Bets on ESOP," KPC was owned by Defendant Kali Pradip Chaudhuri prior to the 2015 ESOP Transaction.

FIRST AMENDED CLASS ACTION COMPLAINT

In that article, Dr. Chaudhuri is quoted as stating that "*I give my shares to [employees]* but if they stay for five years [or more], it's a win for us." (emphasis added; brackets in original). By this statement, Dr. Chaudhuri acknowledged that he sold his share to the ESOP.

68.     According to the 2015 Form 5500 filed with the Department of Labor on June 15, 2017, KPC Healthcare adopted the ESOP effective April 1, 2015.

69.     On August 28, 2015, Alerus, acting as Trustee of the ESOP, caused the ESOP to purchase 100% of the shares of KPC common stock.

70.     ███████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████████
████████████████████████████████████████████████████
███████████████████████████████████████████████
████████████████████████████████████████████████████
█████████████████████████████████████████
██ ████████████████████████████████████████████
████████████████████████████████████████████████████
███████████████████████████████████████████
██████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████████.

72.     ███████████████████████████████████████████

████████████████████████████████████████████████

FIRST AMENDED CLASS ACTION COMPLAINT



1 ██████████████████████████████████████████

2 ████████████ .

3      77.     To finance the purchase, the Plan entered into a $207,574,000 term

4 loan agreement with KPC. The remaining $10,000,000 was paid by a contribution

5 of cash from KPC to the Plan.

6      78.     This purchase price for the KPC stock component of the 2015 ESOP

7 Transaction represented a more than 419% increase over the equity value implied

8 by Defendant Kali Pradip Chaudhuri's 2013 proposed and presumed price to

9 acquire the company's stock when it was known as Integrated Health.

10      79.     This purchase price for the KPC stock component of the 2015 ESOP

11 Transaction also represented an increase of between 774% and 2,133% from the

12 equity value implied by the prices at which Integrated Health traded on the public

13 market between April 2012 and March 2013.

14      80.     This purportedly spectacular rise in KPC's equity value is belied by

15 KPC's operating results. In a June 16, 2018 interview with KPC's then-CEO

16 Suzanne Richards, in *Modern Healthcare*, Ms. Richards candidly admitted that

17 approximately three years before KPC was losing money: "When I came in, the

18 facilities were not even close to making budget, and when you can't make budget

19 you can't have a profit." She further acknowledged that her tenure had been

20 marked by "reductions in force." Indeed, the introductory section of the interview

21 explained that when Ms. Richards started at KPC, the four hospitals that KPC then

22 owned "were losing $2.5 million a month." A June 19, 2015 article in the *Orange

23 County Business Journal*, "KPC Health Names Richards CEO of Health

24 Operations," reported that she was named to that position as of June 2015 and had

25 served as interim CEO since October 2014.

26

27

28

FIRST AMENDED CLASS ACTION COMPLAINT

81.    As shown by the chart below, the reported equity value of the ESOP's KPC stock declined precipitously following the 2015 ESOP Transaction and has remained far below the purchase price:



82.    As explained by the Form 5500s filed with the Department of Labor, the funds borrowed by the ESOP to finance the purchase of KPC are "collateralized by the *unallocated* shares of stock and guaranteed by the Company." But "[t]he lenders have no rights against shares once they are allocated under the ESOP." As explained by the Form 5500, the financial statements present separately the assets and liabilities of the stock allocated to the accounts of participants from the assets and liabilities of the unallocated shares. As the acquisition indebtedness is only a liability of the *unallocated* shares, the acquisition debt cannot explain the post-acquisition depressed price of the *allocated shares*.

83.    According to the 2015 Form 5500 filed with the Department of Labor on June 15, 2017, the purported fair market value for the KPC stock held by the ESOP was $27,600,000 as of August 31, 2015.

FIRST AMENDED CLASS ACTION COMPLAINT

23

84.   According to the 2015 Form 5500 filed with the Department of Labor on June 15, 2017, the purported fair market value for the KPC stock held by the ESOP was $56,000,000 as of August 31, 2016.

85.   According to the 2016 Form 5500 filed with the Department of Labor on February 19, 2019, the purported fair market value for the KPC stock held by the ESOP was $103,000,000 as of August 31, 2017.

86.   According to the 2017 Form 5500 filed with the Department of Labor on February 4, 2019, the purported fair market value for the KPC stock held by the ESOP was $123,000,000 as of August 31, 2018.

87.   According to the 2018 Form 5500 filed with the Department of Labor on July 9, 2020, the purported fair market value for the KPC stock held by the ESOP was $123,500,000 as of August 31, 2019.

88.   The ESOP paid more than fair market value for KPC stock in the 2015 ESOP Transaction.  Based on the information available prior to filing this lawsuit and information obtained in discovery, the purchase price for the 2015 ESOP Transaction was based in part on a valuation report that was unreliable and did not take into account the fact that less than two years before the transaction the selling shareholder had valued the Company at less than a quarter of the sale price and that during the intervening period the Company had experienced substantial financial distress, instability, layoffs, and persistent inability to make budgets.

89.   A prudent fiduciary who had conducted a prudent investigation would have concluded that the ESOP was paying more than fair market value for the KPC shares and/or the debt incurred in connection with the Transaction was excessive. Defendant Kali Pradip Chaudhuri's proposal to acquire the Company's predecessor in late 2013 was a matter of public record and was known or ought to have been known to the fiduciaries of the Plan.

90.   All of the Defendants would have had access to the financial information upon which the valuation for the 2015 ESOP Transaction was based

FIRST AMENDED CLASS ACTION COMPLAINT

1   and the fiduciaries for the ESOP would have had access to the valuation report

2   itself.  The valuation report was not provided to the participants of the ESOP. And

3   the Plan Administrator refused to provide a copy of the valuation to Plaintiff

4   pursuant to her ERISA § 104(b) request.

5          91.     Based on documents filed with the Securities and Exchange

6   Commission, Defendant SPCP Group had been an investor in Integrated Health

7   since at least 2010 and participated in the 2014 transaction by which Dr. Chaudhuri

8   took Integrated Healthcare private. Defendant SPCP Group was thus aware that Dr.

9   Chaudhuri was the chairman and CEO of KPC.

10         92.



19         93.

24         94.

27         95.     Even after the 2015 ESOP Transaction closed, the decline in value of

28   the KPC stock owned by the ESOP following the 2015 ESOP Transaction should

FIRST AMENDED CLASS ACTION COMPLAINT

have caused Alerus as well as the ESOP Committee (which consisted of all of the Director Defendants), at a minimum, to investigate whether the ESOP had paid more than fair market value in the 2015 ESOP Transaction. To the extent that any of the fiduciary Defendants had conducted such an investigation, that investigation as well as any corrective measures would have been reported in one of the Form 5500s filed with the Department of Labor. As none of the Form 5500s report any such investigation or corrective actions, none of the fiduciary Defendants investigated whether fiduciary violations had occurred in the 2015 ESOP Transaction despite red flags that should have raised concerns.

**Defendant Dr. Kali Pradip Chaudhuri Continues to Use the Employee Owned Company to Benefit Insiders**

96. Despite his sale of the Company to the ESOP in 2015 ███████ ████████████████████████████████████████████ Defendant Dr. Kali Pradip Chaudhuri continues to exercise operational control over KPC both directly and through a group of personally loyal insiders he has installed as directors and directors of the Company. According to an information statement filed with the California Secretary of State on March 7, 2019, Dr. Chaudhuri is the CEO of KPC as well as the Chairman of the Board.

97. According to an information statement filed with the California Secretary of State on March 7, 2019, William E. Thomas is the secretary of and a member of the Board of Directors of KPC. According to a News Release by University of California Riverside dated June 8, 2018, Defendant Thomas is the Executive Vice-President and General Counsel of the KPC Group of Companies. According to information from the California Bar website directory of lawyers, Defendant Thomas lists his business address as the headquarters for KPC Group. Even before joining KPC Group, Defendant Thomas was Dr. Chaudhuri's attorney.

98. According to an information statement filed with the California Secretary of State on March 7, 2019, Defendant Kali Priyo Chaudhuri is the chief

FIRST AMENDED CLASS ACTION COMPLAINT

financial officer and a director of the Company. Defendant Kali Priyo Chaudhuri is Defendant Kali Pradip Chaudhuri's son.

99.     Together, Defendant Kali Pradip Chaudhuri, his lawyer, and his son constitute a majority bloc of the five-person board of directors of KPC.

100.     According to a press release issued by "KPC Health" on December 4, 2018, on that date Dr. Sumanta Chaudhuri was appointed the Chief Medical Officer for Hemet Valley Medical Center and Menifee Valley Medical Center, two of the hospitals affiliated with KPC. According to a video posted to YouTube by Defendant Kali Pradip Chaudhuri on January 8, 2018, Dr. Sumanta Chaudhuri is the Defendant's daughter.

101.     According to an undated press release issued by "KPC Health," KPC is a "subsidiary" of KPC Group. KPC Group is Defendant Kali Pradip Chaudhuri's $10 billion conglomerate with interests in real state, pharmaceuticals, and engineering as well as healthcare. Upon information and belief, KPC is simply treated as one of the group of companies that KPC Group owns.

**Relevant Provisions of the Plan Document**

*Definitions*

102.     Article I of the Plan Document defines the following terms as follows:

a.     **ESOP Committee**: "ESOP Committee" means the KPC Healthcare Holdings, Inc. Employee Stock Ownership Plan Committee, which members are appointed by the Board, as from time to time constituted.

b.     **Fiduciary**: "Fiduciary" means any person who: (a) exercises any discretionary authority or discretionary control and management of this Plan or exercises any authority or control and management or disposition of Plan assets; (b) renders investment advice for a fee or other compensation, direct or indirect, with respect to any monies or other property of the Trust

FIRST AMENDED CLASS ACTION COMPLAINT

or has any authority or responsibility to do so; or (c) has any discretionary authority or discretionary responsibility in the management of this Plan and the Trust, including, but not limited to, the Trustee, the ESOP Committee, and any person designated under ERISA Section 405(c)(1)(B).

c. **Plan Administrator**: "Plan Administrator" is the ESOP Committee unless the Company designates another person or persons to hold the position of Plan Administrator. In addition to its other duties, the Plan Administrator has full responsibility for compliance with the reporting and disclosure rules under ERISA.

d. **Trust**: "Trust" means the KPC Healthcare, Inc. Stock Ownership Trust which is and becomes a part of this Plan.

e. **Trustee**: "Trustee" means the trustee or trustees acting at the time in question under the Trust, and its or his or her or their successor(s) as such.

103.   Section 11.15 of the Plan Document provides that the "Named Fiduciaries" of this Plan are (1) the Trustee, (2) the ESOP Committee, (3) the Appeal Committee (if appointed), and (4) any Investment Manager appointed hereunder.

*The ESOP Committee*

104.   Section 9.1 of the Plan Document provides that "the Company [i.e. KPC] may appoint an ESOP Committee to administer the Plan. In the absence of an ESOP Committee, the Board of Directors assumes the powers, duties and responsibilities of the ESOP Committee."

105.   Section 9.3 of the Plan Document provides that "the ESOP Committee is empowered to assist the Trustee to satisfy and operate this Plan in accordance with the terms of this Plan, the Trust, the Code, and ERISA."

FIRST AMENDED CLASS ACTION COMPLAINT

106.    Section 9.4 of the Plan Document provides that the ESOP Committee has full discretion and authority to perform the following powers and duties, among others:

> a.    To engage the service of agents whom it may deem advisable to assist it with the performance of its duties.
>
> b.    To engage the services of an Investment Manager or Managers (as defined in ERISA Section 3(38) each of whom will have full power and authority to manage, acquire or dispose (or direct the Trustee with respect to acquisition or disposition) of any Plan asset under its control.
>
> c.    To construe and interpret this Plan and the rules and regulations adopted and to answer all questions arising in the administration interpretation and application of this Plan document and documents related to this Plan's operation.
>
> d.    To establish procedures, correct any defect, and resolve any inconsistency in such manner and to such extent as shall be necessary or advisable to carry out the purpose of this Plan.

107.    Section 9.6 of the Plan Document provides that "the decision of a majority of the members of the ESOP Committee appointed and qualified controls."

*Trustee*

108.    Section 11.15 of the Plan Document provides that "[t]he ESOP Committee shall have the sole responsibility for the administration of this Plan."

109.    Section 11.15 of the Plan Document provides that the Trustee shall have the sole responsibility to, among other things, "determine that the purchase price paid to purchase Qualifying Employer Securities does not violate the prohibited transaction rules…."

FIRST AMENDED CLASS ACTION COMPLAINT

**Relevant Provisions of the Trust Agreement**

110.   Section 2.2 of the Trust Agreement provides that the Trustee "is the sole discretionary fiduciary with respect to borrowing money with respect to the purpose of purchasing Employer Securities and for the purchase or sale of Employer Securities."

111.   Section 2.4(a) of the Trust Agreement provides that the Trustee has "full discretion and authority… to invest the Trust Fund primarily in Employer Securities (provided the Trustee does not pay in excess of "Adequate consideration" and such purchase of Employer Securities would not otherwise constitute a "prohibited transaction" as such terms are defined by ERISA and the Code)...."

112.   Section 6.4 of the Trust Agreement provides that the Company shall fill any vacancy in the office of Trustee.

**COUNT I**
**Engaging in Prohibited Transaction Forbidden by ERISA §§ 406(a),**
**29 U.S.C. §§ 1106(a), Against Defendants Alerus, Dr. Kali Pradip Chaudhuri,**
**and William Thomas**

113.   Plaintiff incorporates the preceding paragraphs as though set forth herein.

114.   ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1), requires that a plan fiduciary "shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect (A) sale or exchange, or leasing of any property between the plan and a party in interest," or a "(D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan."

115.   ERISA § 3(14), 29 U.S.C. § 1002(14) defines a "party in interest" to include (A) any fiduciary … of such employee benefit plan", (E) a relative -- which includes a spouse, ancestor, lineal descendant or the spouse of a lineal descendant -- of a fiduciary, (G) a trust of or in which 50 percent or more the

FIRST AMENDED CLASS ACTION COMPLAINT

30

beneficial interest of such trust is held  by a fiduciary of such plan, and (H) an employee, officer or director or a 10 percent or more shareholder of an employer covered by the Plan.

116.   At least as a result of being a fiduciary of the ESOP, and as a result of being an officer of and director of KPC, Defendant Dr. Kali Pradip Chaudhuri qualified as a party in interest within the meaning of ERISA § 3(14).

117.   At least as a result of being a fiduciary of the ESOP, and as a result of being an officer of and director of KPC, Defendant Thomas qualified as a party in interest within the meaning of ERISA § 3(14).

118.   ERISA § 408(e), 29 U.S.C. § 1108(e) provides a conditional exemption from the prohibited transaction rules for sale of employer securities to or from a plan if a sale is made for adequate consideration. The burden is on the fiduciary and the parties-in-interest to demonstrate that conditions for the exemption are met.

119.   ERISA § 3(18)(B) defines adequate consideration as "the fair market of the asset as determined in good faith by the trustee or named fiduciary." ERISA § 3(18)(B) requires that the fiduciary or party-in-interest show that the price paid must reflect the fair market value of the asset at the time of the transaction, and the fiduciary conducted a prudent investigation to determine the fair market value of the asset.

120.   As Trustee, Alerus caused the Plan to engage in a prohibited transaction in violation of ERISA §§ 406(a)(1)(A) and (D), 29 U.S.C. §§ 1106(a)(1)(A) and (D), by failing to ensure that the ESOP paid no more than fair market value for KPC stock purchased in the 2015 ESOP Transaction. Specifically, the ESOP paid more than fair market value for shares sold by Defendant Kali Pradip Chaudhuri.

121.   As an officer and director of KPC, a fiduciary of the ESOP in the 2015 ESOP Transaction, as the purchaser of Integrated Health and the selling

FIRST AMENDED CLASS ACTION COMPLAINT

shareholder of KPC in the 2015 ESOP Transaction, Defendant Kali Pradip Chaudhuri was aware of facts sufficient to establish that the 2015 ESOP Transaction constituted a prohibited transaction with parties-in-interest.  As a party in interest, Defendant Kali Pradip Chaudhuri is liable for the violations of ERISA § 406(a)(1)(A) and (D), 29 U.S.C. § 1106(a)(1)(A) and (D).

122.   As an officer and director of KPC, a fiduciary of the ESOP in the 2015 ESOP Transaction, ███████████████████████████ ████████████████ Defendant William Thomas was aware of facts sufficient to establish that the 2015 ESOP Transaction constituted a prohibited transaction with parties-in interest. As a party in interest, Defendant William Thomas is liable for the violations of ERISA § 406(a)(1)(A) and (D), 29 U.S.C. § 1106(a)(1)(A) and (D).

## COUNT II
### Engaging in Prohibited Transaction Forbidden by ERISA §§ 406(b), 29 U.S.C. §§ 1106(b), Against Dr. Defendants Kali Pradip Chaudhuri and William Thomas

123.   Plaintiff incorporates the preceding paragraphs as though set forth herein.

124.   ERISA § 406(b), 29 U.S.C. § 1106(b), mandates that a plan fiduciary shall not (1) "act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants," or (2) "deal with the assets of the plan in his own interest or for his own account," or (3) "receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

125.   As chairman of the Board of Directors of KPC and in turn a member of the ESOP Committee, Defendant Kali Pradip Chaudhuri was a fiduciary of the ESOP at the time of the 2015 ESOP Transaction.

FIRST AMENDED CLASS ACTION COMPLAINT

126. As a member of the Board of Directors of KPC and in turn a member of the ESOP Committee, Defendant Thomas was a fiduciary of the ESOP at the time of the 2015 ESOP Transaction.

127. By selling his shares of KPC stock to the Plan in the 2015 ESOP Transaction, Dr. Chaudhuri acted in a transaction involving a plan where his own interests were adverse to those of the ESOP within the meaning of ERISA § 406(b)(1), he dealt with the assets of the Plan, which purchased his KPC stock, in his own interest within the meaning of ERISA § 406(b)(2), and as a result of the receipt of the proceeds from the sale of his KPC stock received consideration for the his own personal account in connection with a transaction involving assets of a plan within the meaning of ERISA § 406(b)(3).

128. ERISA § 408(e), 29 U.S.C. § 1108(e) provides a conditional exemption from the prohibited transaction rules for sale of employer securities to or from a plan if a sale is made for adequate consideration. The burden is on the fiduciary to demonstrate that conditions for the exemption are met.

129. ERISA § 3(18)(B) defines adequate consideration as "the fair market of the asset as determined in good faith by the trustee or named fiduciary." ERISA § 3(18)(B) requires that the price paid must reflect the fair market value of the asset, and the fiduciary must conduct a prudent investigation to determine the fair market value of the asset.

130. By selling his shares of KPC stock to the KPC ESOP in the 2015 ESOP Transaction, Defendant Kali Pradip Chaudhuri engaged in a prohibited transaction in violation of ERISA §§ 406(b), 29 U.S.C. §§ 1106(b) for which he is liable to restore the losses caused by these prohibited transactions, to disgorge profits or other appropriate remedial and equitable relief.

131. ████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████

FIRST AMENDED CLASS ACTION COMPLAINT

33

1 ████████████████████████████████████████████████

2 ████████████████████████████████████████████████████

3 ████████████████████████████████████████████████

4 ██████████████ .

5      132.   As an officer and director of KPC, a fiduciary of the ESOP in the

6 2015 ESOP Transaction, as the purchaser of Integrated Health, and as the selling

7 shareholder of KPC in the 2015 ESOP Transaction, Defendant Dr. Kali Pradip

8 Chaudhuri was aware of facts sufficient to establish that the 2015 ESOP

9 Transaction constituted a prohibited transaction with a Plan fiduciary, Mr. Thomas.

10 As a party in interest, Defendant Kali Pradip Chaudhuri is liable for the violations

11 of ERISA § 406(b), 29 U.S.C. § 1106(b), and/or is subject to appropriate equitable

12 relief for the violations of ERISA § 406(b), 29 U.S.C. § 1106(b).

13      133.   As an officer and director of KPC, a fiduciary of the ESOP in the

14 2015 ESOP Transaction, ████████████████████████████████████████

15 ████████████ , Defendant William Thomas was aware of facts sufficient to

16 establish that the 2015 ESOP Transaction constituted a prohibited transaction with

17 a Plan fiduciary, Dr. Chaudhuri. As a party in interest, Defendant William Thomas

18 is liable for the violations of ERISA § 406(b), 29 U.S.C. § 1106(b), and/or is

19 subject to appropriate equitable relief for the violations of ERISA § 406(b), 29

20 U.S.C. § 1106(b).

### COUNT III
**Breach of Fiduciary Duty Under ERISA §§ 404(a)(1)(A) and (B),
29 U.S.C. §§ 1104(a)(1)(A) and (B) Against Defendant Alerus, and Knowing
Participation in Such Breaches by Defendants Kali Pradip Chaudhuri and
William Thomas**

25      134.   Plaintiff incorporates the preceding paragraphs as though set forth

26 herein.

FIRST AMENDED CLASS ACTION COMPLAINT

135.    ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries, (A) for the exclusive purpose of providing benefits to participants and the beneficiaries of the plan, (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

136.    In the context of a transaction involving the assets of the Plan, the duties of loyalty under ERISA § 404(a)(1)(A) and prudence under ERISA § 404(a)(1)(B) require a fiduciary to undertake an appropriate investigation to determine that the plan and its participants receives adequate consideration for the plan's assets and the participants' account in the plan.

137.    Pursuant to ERISA § 3(18), adequate consideration for an asset for which there is no generally recognized market means the fair market value of the asset determined in good faith by the trustee or named fiduciary pursuant to the terms of the plan and in accordance with the Department of Labor regulations.

138.    To fulfill its fiduciary duties, Alerus was required to undertake an appropriate and independent investigation of the fair market value of KPC stock in the 2015 ESOP Transaction in order to fulfill its fiduciary duties.  Among other things, Alerus was required to conduct a thorough and independent review of any "independent appraisal," to make certain that reliance on any and all valuation experts' advice was reasonably justified under the circumstances of the 2015 ESOP Transaction; to make an honest, objective effort to read and understand the valuation reports and opinions and question the methods and assumptions that did not make sense.

139.    An appropriate investigation would have revealed that the valuations used for and the price paid by the ESOP in the 2015 ESOP Transaction did not reflect the fair market value of the KPC stock purchased by the Plan, the 2015

FIRST AMENDED CLASS ACTION COMPLAINT

1   ESOP Transaction was not in the best interests of the Plan participants and the

2   2015 ESOP Transaction would cause the ESOP to take on excessive debt.

3       140.   Additionally, Alerus was required to remedy the ESOP's overpayment

4   for KPC stock after the date of the 2015 ESOP Transaction, including as necessary

5   correcting the prohibited transaction by seeking the overpayment from Defendant

6   Kali Pradip Chaudhuri and/or the breaching Trustee.

7       141.   By causing the ESOP to engage in the 2015 ESOP Transaction and

8   failing to correct the 2015 ESOP Transaction, Alerus breached its fiduciary duties

9   under ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A), (B) and caused

10  losses to the Plan and the accounts of the Class Members.

11      142.   As an officer and director of KPC, a fiduciary of the ESOP in the

12  2015 ESOP Transaction, and as the purchaser of Integrated Health, the selling

13  shareholder of KPC in the 2015 ESOP Transaction, Defendant Kali Pradip

14  Chaudhuri was aware of sufficient facts that Alerus causing the ESOP to engage in

15  the 2015 ESOP Transaction constituted a breach of fiduciary duty. As a party in

16  interest who knowingly participated in the 2015 ESOP Transaction, Defendant Dr.

17  Chaudhuri is liable for the violations of ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1)

18  and/or is subject to appropriate equitable relief for the violations of ERISA §

19  404(a)(1), 29 U.S.C. § 1104(a)(1).

20      143.   As an officer and director of KPC, a fiduciary of the ESOP in the

21  2015 ESOP Transaction, ██████████████████████████████████

22  ████████████████   Defendant Thomas was aware of sufficient facts that Alerus

23  causing the ESOP to engage in the 2015 ESOP Transaction constituted a breach of

24  fiduciary duty. As a party in interest who knowingly participated in the 2015 ESOP

25  Transaction, Defendant Thomas is liable for the violations of ERISA § 404(a)(1),

26  29 U.S.C. § 1104(a)(1) and/or is subject to appropriate equitable relief for the

27  violations of ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).

28

FIRST AMENDED CLASS ACTION COMPLAINT

**COUNT IV**

**Failure to Disclose Information Required by ERISA § 102, 29 U.S.C. § 1022 Against the ESOP Committee Defendants as the Plan Administrator**

144.   Plaintiff incorporates the preceding paragraphs as though set forth herein.

145.   As the Plan Administrator within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A), the ESOP Committee Defendants were obligated to comply with ERISA §§ 102 and 104(b), 29 U.S.C. § 1022 and 1024(b).

146.   ERISA § 102, 29 U.S.C. § 1022 mandates that an SPD "be furnished to participants and beneficiaries as provided in [ERISA 104(b), 29 U.S.C. §] 1024(b)" and include the information set forth in ERISA § 102(a) & (b), 29 U.S.C. § 1022(a) & (b). The DOL Regulation, 29 C.F.R. § 2520.102-3, governing the "contents of the summary plan description," requires that "the summary plan description must accurately reflect the contents of the plans" and sets forth specific information that must be required in the SPD.

147.   Pursuant to ERISA § 104(b)(1), 29 U.S.C. § 1024(b)(1) the Plan Administrator was required to furnish a current version of the SPD and any modifications and changes (A) to new participants within 90 days after that person became a participant and (B) to every participant in the Plan with an updated copy of an SPD to extent that there had been changes within the last 5 years concerning information described in 29 U.S.C. § 1022.

148.   As the Plan Administrator within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A) and a named fiduciary within the meaning of ERISA § 402(a), 29 U.S.C. § 1102(a), the ESOP Committee Defendants had fiduciary duties pursuant to ERISA § 404(a), 29 U.S.C. § 1104(a).

149.   ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of (i) providing

benefits to participants and their beneficiaries; and …. (B) with "care, skill, prudence, and diligence."

150.   An ERISA fiduciary's duty of loyalty and prudence under ERISA § 404(a)(1)(A) and (B) includes a duty to disclose and inform. Those duties not only require that a fiduciary comply the specific disclosure provisions in ERISA, but also require (a) a duty not to misinform, (b) an affirmative duty to inform when the fiduciary knows or should know that silence might be harmful, and (c) a duty to convey complete and accurate information material to the circumstances of the participants and beneficiaries.

151.   The Ninth Circuit has recognized that a participant in an ERISA plan is entitled to know exactly where he stands with respect to the plan, including the benefits to which he or she may be entitled, the circumstances which may preclude him from obtaining benefits, what procedures he must follow to obtain benefits, and *who are the persons to whom the management and investment of his plan funds have been entrusted*.

152.   The ESOP's Summary Plan Description dated September 1, 2017 (the "2017 SPD") is most recent SPD distributed to participants and the one provided in response to Plaintiff's ERISA § 104(b) request in February 2019.

153.   ERISA § 102(b), 29 U.S.C. § 1022(B) mandates that an SPD identify "the name and address of the administrator" of the Plan. 29 C.F.R. § 2520.102-3(f) requires that the SPD accurately disclose "the name, business address and business telephone number of the plan administrator as that term is defined by section 3(16) of the Act."

154.   The 2017 SPD does not identify the name, address, or telephone number of the Plan Administrator.

155.   ERISA § 102(b), 29 U.S.C. § 1022(b) mandates that an SPD must contain the "name and address of the person designated as agent for the service of legal process, if such person is not the administrator." 29 C.F.R. § 2520.102-3(g)

FIRST AMENDED CLASS ACTION COMPLAINT

38

requires that the SPD identify "[t]he name of the person designated as agent for service of legal process, and the address at which process may be served on such person, and in addition, a statement that service of legal process may be made upon a plan trustee or the plan administrator. While Section 12.4 of the 2017 SPD identifies the Company as the agent of service of process, the SPD fails to state that service of process may be made on the trustee or plan administrator.

156. ERISA § 102(b), 29 U.S.C. § 1022(b) mandates that an SPD must contain the "names, titles, and addresses of any trustee or trustees (if they are persons different from the administrator)." 29 C.F.R. § 2520.102-3(h) requires that the SPD identify "the name, title and address of the principal place of business of each trustee" of the Plan.

157. The 2017 SPD identifies Alerus Financial, N.A. as the Trustee in Section 6.2 but does provide Alerus's address, or principal place of business.

158. By failing to provide an SPD that provides the information required by ERISA § 102 and the DOL Regulations and/or by failing to update the SPD with correct information, the ESOP Committee Defendants, as the Plan Administrator have violated ERISA § 102, 29 U.S.C. § 1022, ERISA § 104(b)(1), 29 U.S.C. § 1024(b)(1) and ERISA § 404(a)(1)(A) & (B), 29 U.S.C. § 1104(a)(1)(A) & (B).

## COUNT V
**Failure to File Annual Report in violation of ERISA § 104, 29 U.S.C. § 1024 Against the ESOP Committee Defendants as the Plan Administrator**

159. Plaintiff incorporates the preceding paragraphs as though set forth herein.

160. As the Plan Administrator within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A), the ESOP Committee Defendants were obligated to comply with ERISA §§ 104(a) & (b), 29 U.S.C. § 1024(a) & (b).

FIRST AMENDED CLASS ACTION COMPLAINT

161.   Pursuant to ERISA § 104(a)(1), 29 U.S.C. § 1024(a)(1), the plan administrator is required to file with the Secretary of the United States Department of Labor the annual report (i.e., the Form 5500) within 210 days after the close the plan year.  Once field, the Secretary of the Department of Labor is required to make such annual reports available for inspection to the public.

162.   Pursuant to ERISA § 104(b)(3), 29 U.S.C. § 1024(b)(3), the plan administrator is required to provide a copy of the summary annual report to each participant and to each beneficiary receiving benefits under the plan, a copy of the summary annual report.

163.   The Plan Year for 2018 ended August 31, 2019.  As a result, the Form 5500 Annual Report for 2018 was due by February 29, 2020.  The Form 5500 Annual Report for 2018  was not filed until July 9, 2020 (i.e. after the original complaint in this lawsuit was filed).

164.   By failing to file an annual report as required by ERISA § 104, the ESOP Committee Defendants, as the Plan Administrator violated ERISA § 104(a), 29 U.S.C. § 1024(a).

**COUNT VI**
**Failure to Provide Documents Upon Request Pursuant to ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4) & ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A) Against the ESOP Committee Defendants as Plan Administrator**

165.   Plaintiff incorporates the preceding paragraphs as though set forth herein.

166.   ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4), provides that the administrator of an employee benefit plan "shall, upon written request of any participant or beneficiary, furnish a copy" of certain enumerated documents as well as "other instruments under which the plan is established or operated" to the requesting participant or beneficiary within 30 days of the Request.

FIRST AMENDED CLASS ACTION COMPLAINT
40

167.   The Ninth Circuit has also recognized that a fiduciary's duty under ERISA § 404(a)(1)(A) to disclose is not limited to those specified in the statute, but extends to additional disclosures to the extent that they relate to the provision of benefits or the defrayment of expenses.

168.   By a letter dated February 28, 2019, sent by certified mail to the KPC ESOP Plan Administrator pursuant to and referencing ERISA § 104(b) and 404(a)(1), Plaintiff Danielle Gamino requested that the Plan Administrator provide the documents specified by ERISA 104(b). Among the documents specifically requested by Ms. Gamino's letter was any valuation or other document used to determine the price at which her shares had been allocated and a copy of the most recent valuation and other documents setting forth how the value of her shares was determined.  Plaintiff's letter was received at the address in the SPD for KPC by no later than March 11, 2019.

169.   In a letter dated April 18, 2019, Allison Wilkerson, a partner at the law firm of McDermott Will & Emery in Dallas, Texas responded to Plaintiff's February 28, 2019 letter.  This was the first response to Plaintiff's ERISA § 104(b) request, which was sent by Ms. Wilkerson to Ms. Gamino by email on April 18, 2019, 38 days after the February 28, 2019 request was received.

170.   Enclosed with April 18, 2019 letter were some of the documents that Plaintiff had requested including the 2017 SPD, which was identified as the "current summary plan description;" however, Ms. Wilkerson advised that the Plan Administrator would not provide copies of the valuations that Ms. Gamino had specifically requested.

171.   In letter dated April 22, 2019, Plaintiff responded to Ms. Wilkerson and cited authorities in this Circuit and District recognizing that ESOP valuations must be disclosed in response to a request pursuant to ERISA § 104(b)(4).

FIRST AMENDED CLASS ACTION COMPLAINT

172.   In a letter dated May 4, 2019, Theodore Becker, "writing on behalf of the Plan Administrator of the" ESOP responded to Plaintiff's April 22, 2019 letter and again refused to produce the valuations.

173.   By failing to respond to Ms. Gamino's February 28, 2019 request within 30 days and by failing to provide the requested valuations, the ESOP Committee Defendants as the Plan Administrator violated ERISA §§ 104(b) and 404(a)(1)(A), 29 U.S.C. §§ 1024(b) and 1104(a)(1)(A).

174.   Pursuant to ERISA § 502(a)(1)(A) a participant may sue for the relief provided in ERISA § 502(c). Pursuant to ERISA § 502(c), 29 U.S.C. § 1132(c), "[a]ny administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by [ERISA] to furnish" by mailing the requested material to "the requesting participant . . . within 30 days after such request" may be liable for up to $110 per day in civil penalties. As a result of the failure to produce the requested documents, the Plan Administrator is liable for the penalties available under ERISA § 502(c).

175.   By breaching their fiduciary duties to Plaintiff Gamino pursuant to ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), the Committee Defendants should be liable via surcharge to the equivalent of the penalty under ERISA § 502(c).

## COUNT VII
### Breach of Fiduciary Duty Under ERISA §§ 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A) and (B) Against Director Defendants & KPC

176.   Plaintiff incorporates the preceding paragraphs as though set forth herein.

177.   ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries, (A) for the exclusive purpose of providing

FIRST AMENDED CLASS ACTION COMPLAINT

benefits to participants and the beneficiaries of the plan, (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with ERISA.

178.   Under ERISA § 404(a)(1)(A) and (B), a fiduciary with the authority to appoint and/or remove other fiduciaries has an obligation to undertake an appropriate investigation that the fiduciary is qualified to serve in the position as fiduciary and at reasonable intervals to ensure that the fiduciary who has been appointed remains qualified to act as fiduciary and is acting in compliance with the terms of the Plan and in accordance with ERISA.

179.   According to Section 11.15 of the Plan Document (and consistent with Section 6.2 of the Trust Agreement), KPC "has the sole authority to appoint and remove the Trustee." Pursuant to that authority, KPC had a duty to monitor the Trustee's conduct and to take appropriate action if the Trustee was not adequately protecting the interests of ESOP participants, including removing the Trustee and correcting any breaches.

180.   According to Section 1.33 of the Plan Document, the members of the ESOP Committee are appointed by the Board of Directors. Section 9.1 of the Plan Document provides that KPC "may appoint an ESOP Committee to administer this Plan." Section 11.15 of the Plan Document provides that KPC "has the sole authority to appoint and remove the Trustee." Pursuant to that authority, KPC (through the Board of Directors) had a duty to monitor the ESOP Committee's conduct and to take appropriate action if the Committee Defendants were not adequately protecting the interests of ESOP participants, including removing them and correcting any breaches.

FIRST AMENDED CLASS ACTION COMPLAINT

181.   Defendant KPC knew or in the exercise of reasonable diligence should have known that Alerus as Trustee breached its fiduciary duties and engaged in prohibited transactions as set forth in Counts I, II and III because (a) Defendant Kali Pradip Chaudhuri was aware of facts sufficient to establish that the 2015 ESOP Transaction constituted a prohibited transaction, including the terms of the 2015 ESOP Transaction and that the 2015 ESOP Transaction share price did not reflect fair market value for the stock of KPC, (b) Defendant Kali Pradip Chaudhuri knew that Alerus caused and closed the 2015 ESOP Transaction and took no steps to protect the Plan participants or to otherwise remedy the violations and (c) the knowledge of Defendant Kali Pradip Chaudhuri is imputed to KPC.

182.   Defendants Dr. Chaudhuri, William Thomas, and Kali Priyo Chaudhuri knew that Alerus had breached its fiduciary duties and engaged in prohibited transactions because they were officers and directors of KPC at the time of the 2015 ESOP Transaction and as to Dr. Chaudhuri and Defendant Thomas were parties to the 2015 ESOP Transaction.

183.   Defendants Hippert and van Arsdale knew or should have known that Alerus had breached its fiduciary duties because once they joined the Board of Directors (and thus the ESOP committee) and had responsibility for reviewing the performance of Alerus. Had Hippert and van Arsdale conducted an appropriate review of the performance of Alerus after the Transaction, including a review of the post-performance stock price, they would have concluded that an investigation should have been conducted about or a correction made concerning the 2015 ESOP Transaction.

184.   The Director Defendants knew that the ESOP Committee breached its fiduciary duties or other statutory obligations as set forth in Counts IV-VI because the Director Defendants were all members of the ESOP Committee at the time of the violations. To the extent that the power to remove the members of the ESOP

FIRST AMENDED CLASS ACTION COMPLAINT

Committee belonged to someone at KPC other than the Board of Directors, the knowledge of the Board of Directors is imputed to KPC.

185.    Despite knowing of the facts about these breaches by the ESOP Committee, nether KPC nor the Director Defendants took any steps to protect the ESOP participants from these breaches and violations, including by stopping or delaying the 2015 ESOP Transaction, removing the—or as to the Director Defendants, resigning as—members of the ESOP Committee, appointing successor members and/or remedying these breaches.

186.    By failing to properly monitor and/or take appropriate action against the Trustee, KPC and/or the Director Defendants breached their fiduciary duties under ERISA § 404(a)(1)(A) & (B), 29 U.S.C. § 1104(a)(1)(A) & (B).

## COUNT VIII
**Violation of ERISA § 410 & Breach of Fiduciary Under ERISA §§ 404(a)(1)(A) and (B), 29 U.S.C. § 1110 & §§ 1104(a)(1)(A) and (B) Against KPC, Alerus and the Committee Defendants**

187.    Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

188.    ERISA § 410(a), 29 U.S.C. § 1110(a), provides in relevant part (with exceptions not applicable here) that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part [ERISA Part IV] shall be void as against public policy." As Part IV of ERISA includes ERISA §§ 404, 405, and 406, 29 U.S.C. §§ 1104, 1105 and 1106, any provision that attempts to relieve a fiduciary of liability is void pursuant to ERISA § 410(a), unless there is an exception or exemption. No such exception or exemption is applicable here.

189.    The DOL Regulations promulgated under ERISA § 410, 29 C.F.R. § 2509.75-4, renders "void any arrangement for indemnification of a fiduciary of an employee benefit plan by the plan" because it would have "the same result as an

FIRST AMENDED CLASS ACTION COMPLAINT

exculpatory clause, in that it would, in effect, relieve the fiduciary of responsibility and liability to the plan by abrogating the plan's right to recovery from the fiduciary for breaches of fiduciary obligations."

190.   For a 100% ESOP-owned company, a provision requiring indemnity by the ESOP-owned company is treated as an indemnity provision by the Plan because it effectively requires ESOP participants to pay for the costs of the breaching fiduciaries' liability.

191.   Section 9.1 of the KPC Healthcare, Inc. Trust effective April 1, 2015 provides that "the Company shall indemnify the Indemnitees [including the Trustee] for any Expense (as herein defined) incurred or Loss (as herein defined suffered by any of the Indemnitees resulting from or incurred with respect to any Proceedings (as herein defined) related in any way to the performance of services by any one or more of the Indemnitees pursuant to this Agreement."

192.   Section 7.3 of the KPC Healthcare, Inc. Employee Stock Ownership Plan effective April 1, 2015 provides that KPC "indemnifies and holds harmless the Plan Administrator (if any) and any person or persons delegated with the power, duty, and responsibility to act on behalf of the Plan Administrator, from and against any and all loss resulting from liability to which the Plan Administrator or any person or persons delegated with the power, duty, and responsibility to act of behalf of the Plan Administrator, may be subjected by any reason of any act or conduct (except willful misconduct or gross negligence) associated with such persons' official capacities in the administration of this Plan, including all court costs and other expenses reasonably incurred in connection with the defense of such persons…."

193.   As these instruments governing the relationship between either the Trustee or the Plan Administrator and KPC attempt to relieve the Trustee and the Plan Administrator (or the members of the Committee) of his, her or its responsibility or liability to discharge his or her fiduciary duties or to have KPC

FIRST AMENDED CLASS ACTION COMPLAINT

(an ESOP-owned company) and thereby the ESOP be responsible for his or her liability or breaches, such agreements or other instruments are void as against public policy.

194.   To the extent that Defendants would agree to such a provision that is void against public policy under ERISA § 410, Defendants breached their fiduciary duties under ERISA by failing to discharge their duties with respect to the Plan solely in the interest of the participants and beneficiaries (A) for the exclusive purpose of providing benefits to participants and beneficiaries and (B) with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and aims, in violation of ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B).

195.   As such these indemnification provisions in these instruments (or any similar agreements) governing the relationship between Defendants and KPC should be declared void ab initio and should be reformed to strike or modified accordingly.

196.   As a result, Alerus and the Committee Defendants should be ordered to disgorge any indemnification payments made by KPC and/or the ESOP, plus interest.

**COUNT IX**
**Co-Fiduciary Liability Pursuant to ERISA § 405, 29 U.S.C. § 1105**
**Against the Committee Defendants, Director Defendants, Kali Pradip**
**Chaudhuri, Alerus, and William Thomas**

197.   Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

198.   ERISA § 405, 29 U.S.C. § 1105, makes a fiduciary of a Plan liable for another fiduciary of the same plan's breach when (1) "he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission of such other fiduciary is a breach;" (2) "by his

FIRST AMENDED CLASS ACTION COMPLAINT

failure to comply with section 404(a)(1) in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach;" or (3) "he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach."

199.   The Committee Defendants violated ERISA § 405(a)(1)-(3) when they knowingly participated in each other's violations when they acted as a Committee because (1) they each participated knowingly in the actions taken as a Committee and knew or were reckless in not knowing it was a breach, (2) failed to fulfill their duties as members of the Committee set forth in the Plan Document and (3) had knowledge of those breaches and made no apparent efforts to remedy the breach. As such, each of the Committee Defendants is liable for the breaches of the other members of the committee pursuant to ERISA § 405(a)(1)-(3).

200.   The Director Defendants violated ERISA § 405(a)(1) and (3) when they knowingly participated in each other's violations when they acted as a board because they each participated knowingly in the actions taken as a board, knew or were reckless in not knowing it was a breach, and had knowledge of those breaches and made no apparent efforts to remedy the breach. As such, each of the Director Defendants is liable for the breaches of the other members of the committee pursuant to ERISA § 405(a)(1), (3).

201.   Defendants Kali Pradip Chaudhuri, Alerus, and William Thomas violated ERISA § 405(a)(1) and (3) when they knowingly participated in each other's respective prohibited transactions because they each participated knowingly in the respective prohibited transactions, had knowledge of those breaches, and made no apparent efforts to remedy the breaches. As such, each of them is liable for the breaches of the others as to each of those transactions pursuant to ERISA § 405(a)(1) and (3).

FIRST AMENDED CLASS ACTION COMPLAINT

## ENTITLEMENT TO RELIEF

202.    By virtue of the violations set forth in the foregoing paragraphs, Plaintiff and the Class are entitled to sue each of the Defendants who are fiduciaries pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), for relief on behalf of the Plan as provided in ERISA § 409, 29 U.S.C. § 1109, including for recovery of any losses to the Plan, the recovery of any profits resulting from the breaches of fiduciary duty, and such other equitable or remedial relief as the Court may deem appropriate.

203.    By virtue of the violations set forth in the foregoing paragraphs, Plaintiff and the Class are entitled pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), to sue any of the Defendants for any appropriate equitable relief to redress the wrongs described above.

## PRAYER FOR RELIEF

Wherefore, Plaintiff on behalf of herself and the Class, pray that judgment be entered against Defendants on each claim and be awarded the following relief:

A.    Declare that Defendants have each breached their fiduciary duties under ERISA;

B.    Declare that Defendants Alerus and Defendant Kali Pradip Chaudhuri have each engaged in prohibited transactions in violation of ERISA §§ 406(a)-(b), 29 U.S.C. §§ 1106(a)-(b), by causing the ESOP to engage in the 2015 ESOP Transaction;

C.    Enjoin Defendants, and each of them, from further violations of their fiduciary responsibilities, obligations and duties;

D.    Remove each of the Defendants as fiduciaries of the ESOP and/or bar each of them from serving as fiduciaries of the ESOP in the future, and appoint a new independent fiduciary to manage the ESOP and order the costs of such independent fiduciary be paid for by Defendants;

FIRST AMENDED CLASS ACTION COMPLAINT

49

E.      Order that Defendants found to have breached his/her/its fiduciary duties to the ESOP to jointly and severally restore all the losses resulting from their breaches or by virtue of liability pursuant to ERISA § 405, and disgorge all profits they have made through use of assets of the ESOP;

F.      Order that Defendants provide other appropriate equitable relief to the ESOP, including but not limited to, by forfeiting their ESOP accounts, providing an accounting for profits, imposing a constructive trust and/or equitable lien on any funds wrongfully held by any of the Defendants;

G.      Order pursuant to ERISA § 206(d)(4) that any amount to be paid to the ESOP accounts of the Class can be satisfied by using or transferring any breaching fiduciary's ESOP account in the Plan (or the proceeds of that account) to the extent of that fiduciary's liability.

H.      Order the Plan Administrator to provide a Summary Plan Description that complies with ERISA § 102, 29 U.S.C. § 1022 and to file an Annual Report pursuant to ERISA § 104, 29 U.S.C. § 104.

I.      Award Plaintiff Gamino statutory penalties in the amount of $110 per day, per violation, for the failure to provide each of the requested documents that the Plan Administrator failed to provide or to the extent appropriate a surcharge against the Committee Defendants in an equivalent amount.

J.      Declare that any indemnification agreement between the Defendants, or any of them, and KPC or the ESOP violates ERISA § 410, 29 U.S.C. § 1110, and is therefore null and void.

K.      Order Defendants to reimburse the ESOP or KPC for any money advanced by the ESOP or KPC, respectively, under any indemnification agreement or other instrument between Defendants and the ESOP or KPC;

L.      Require Defendants to pay attorneys' fees and costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or ordering payment of fees and

FIRST AMENDED CLASS ACTION COMPLAINT

expenses to Plaintiff's counsel on the basis of the common benefit or common fund doctrine out of any money recovered for the Class;

M.   Order Alerus to disgorge any fees they received in conjunction with the 2015 ESOP Transaction;

N.   Order that Defendants and each of them provide other appropriate equitable relief to the Plan, including but not limited to rescission, surcharge, providing an accounting for profits, and imposing a constructive trust and/or equitable lien on any funds wrongfully held by Defendants;

O.   Award pre-judgment interest and post-judgment interest; and

P.   Award such other and further relief that the Court determines that Plaintiff and the Class are entitled to pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a) or pursuant to Rule 54(c) of the Federal Rules of Civil Procedure or that is equitable and just.

FIRST AMENDED CLASS ACTION COMPLAINT

Dated: August 13, 2021                Respectfully submitted,


*/s/ Richard Donahoo*
Richard E. Donahoo (SBN 186957)
Sarah L. Kokonas (SBN 262875)
William E. Donahoo (SBN 322020)
DONAHOO & ASSOCIATES, PC.
440 W. First Street, Suite 101.
Tustin, CA 92780
Tel: (714) 953-1010
Email: rdonahoo@donahoo.com
Email: skokonas@donahoo.com
Email: wdonahoo@donahoo.com

R. Joseph Barton (SBN 212340)
Colin M. Downes (*pro hac vice*)
BLOCK & LEVITON LLP
1735 20th Street, N.W.
Washington, DC 20009
Tel: (202) 734-7046
Fax: (617) 507-6020
Email: joe@blockesq.com
Email: colin@blockesq.com

Daniel Feinberg (SBN 135983)
Darin Ranahan (SBN 273532)
Nina Wasow (SBN 242047)
FEINBERG, JACKSON, WORTHMAN
& WASOW LLP
2030 Addison Street, Suite 500
Berkeley, CA 94704
Tel: (510) 269-7998
Fax: (510) 269-7994
Email: dan@feinbergjackson.com
darin@feinbergjackson.com
nina@feinbergjackson.com

FIRST AMENDED CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Major Khan
(*pro hac vice*)
MKLLC LAW
1120 Avenue of the Americas, 4th Fl.
New York, NY 10036
Tel: (646) 546-5664
Email: mk@mk-llc.com

*Attorneys for Plaintiff*

FIRST AMENDED CLASS ACTION COMPLAINT