Lars C. Golumbic, admitted *pro hac vice*
Sarah M. Adams, admitted *pro hac vice*
William J. Delany, admitted *pro hac vice*
Shaun A. Gates, admitted *pro hac vice*
Rachael E. Hancock, admitted *pro hac vice*
GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Ave. NW
Washington, DC 20006
Tel: (202) 857-0620
Fax: (202) 659-4503
Email: lgolumbic@groom.com
        sadams@groom.com
        wdelany@groom.com
        sgates@groom.com
        rhancock@groom.com

Andrew J. Waxler (SBN 113682)
KAUFMAN DOLOWICH & VOLUCK LLP
11755 Wilshire Blvd., Suite 2400
Los Angeles, CA 90025
Tel: (310) 775-6511
Fax: (310) 575-9720
Email: awaxler@kdvlaw.com

Counsel for Defendant ALERUS FINANCIAL, N.A.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIELLE GAMINO, <br><br> Plaintiff, <br><br> v. <br><br> KPC Healthcare Holdings, Inc., et al., <br><br> Defendants. | No. 5:20-cv-01126-SB-SHK <br><br> **DEFENDANT ALERUS FINANCIAL, N.A.'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT** |

Defendant Alerus Financial, N.A. ("Alerus"), by and through the undersigned counsel, answers the claims in the First Amended Complaint filed by Plaintiff Danielle Gamino on August 13, 2021 (Dkt. No. 179), as follows:

ALERUS'S ANSWER TO PLAINTIFF'S FIRST – 1
AMENDED COMPLAINT

## I.  JURISDICTION AND VENUE

1.      Plaintiff brings this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq.  This Court has subject matter jurisdiction over this action pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2) because this action arises under the laws of the United States and pursuant to 29 U.S.C. § 1132(e)(1).

**ANSWER:**  Alerus admits that Plaintiff purports to bring this action under certain sections of the Employee Retirement Income Security Act of 1974, as amended ("ERISA").  The allegations in the second sentence of paragraph 1 state a legal conclusion, to which no response is required.  To the extent a response is required, Alerus denies the allegations in the second sentence of paragraph 1.

2.      Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the breaches and violations giving rise to the claims occurred in this District, and one or more of the Defendants may be found in this District.

**ANSWER:**  Paragraph 2 states legal conclusions, to which no response is required.  To the extent a response is required, Alerus denies any breach or violations occurred.  Alerus lacks knowledge or information sufficient to form a belief as to which Defendant(s) Plaintiff alleges "may be found in this District" and therefore denies this allegation.  Alerus denies the remaining allegations in paragraph 2.

## II.  INTRODUCTION

3.      This ERISA action is brought on behalf of a Class of participants in and beneficiaries of the KPC Healthcare, Inc. Employee Stock Ownership Plan ("the KPC ESOP," "the ESOP" or "the Plan") to restore losses to the Plan, disgorge any profits, and to obtain other remedies arising out of Defendants'

ALERUS'S ANSWER TO PLAINTIFF'S FIRST – 2
AMENDED COMPLAINT

breaches of fiduciary duties and other violations of ERISA.  These claims arise out of a transaction that took place on August 28, 2015 (the "2015 ESOP Transaction"), through which Defendant Kali Pradip Chaudhuri sold 100% of the stock of KPC Healthcare Holdings, Inc. to the ESOP.  This transaction was not designed to be in the best interests of the ESOP participants and caused the ESOP to pay in excess of fair market value.  Indeed, the ESOP paid a price more than 400% greater than the price that Kali Pradip Chaudhuri had been willing to pay for and at which he likely acquired the company just two years earlier—even before taking into account any other consideration that Dr. Chaudhuri received as part of the 2015 ESOP Transaction.

**ANSWER:**  Paragraph 3 states legal arguments and conclusions, to which no response is required.  To the extent a response is required, Alerus admits that Plaintiff filed the First Amended Complaint, but Alerus relies on the First Amended Complaint to speak for itself, rather than on Plaintiff's characterization thereof.  Alerus otherwise denies the allegations in paragraph 3.

4.      In addition, the ESOP Committee, which serves as the Plan Administrator, has not provided disclosures required by ERISA.  Prior to filing this lawsuit, Plaintiff sought to obtain a copy of the valuation/appraisal report that set the price which the ESOP paid for the shares and the valuation/appraisal report that determined the value of her benefits, but the Plan Administrator refused to provide copies of those reports.

**ANSWER:**  Paragraph 4 states legal arguments and conclusions, to which no response is required.  To the extent a response is required, Alerus lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 4, and therefore denies them.

5.      Through this action, Plaintiff seeks to enforce her rights and those of other participants in the Plan under ERISA, to recover the losses incurred by the Plan as a result of Defendants' breaches of fiduciary duty or other violations of ERISA, and to ensure that the Plan and its assets have been properly administered. Among the relief sought for these breaches and violations, Plaintiff requests that the breaching fiduciaries be ordered to pay the losses to the Plan, to disgorge any profits, that the Court order other remedial and equitable relief and that any monies recovered for the Plan be allocated to the accounts of the Class.

**ANSWER:**  Paragraph 5 states legal arguments and conclusions, to which no response is required.  To the extent a response is required, Alerus admits that Plaintiff filed the First Amended Complaint, but Alerus relies on the First Amended Complaint to speak for itself, rather than on Plaintiff's characterization thereof.  Alerus otherwise denies the allegations in paragraph 5.

## III.   INTRA-DISTRICT ASSIGNMENT

6.      Plaintiff resides in the State of Georgia.

**ANSWER:**  Alerus lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 6, and therefore denies them.

7.      Based on Plaintiff's counsel's investigation, all but one of defendants who reside in the District reside in the Eastern Division of the Central District of California (and the other defendant resides in the Southern Division).  Defendant Alerus Financial, N.A. is located outside the State of California.

**ANSWER:**  Alerus lacks knowledge or information sufficient to form a belief as to what "Plaintiff's counsel's investigation" refers to and therefore denies the allegations in the first sentence of paragraph 7.  Alerus admits that it is located outside the State of California.

8.     The alleged breaches took place in the Eastern Division of the Central District of California.

**ANSWER:**  Alerus denies the allegations in paragraph 8.

**IV.   PARTIES Plaintiff**

9.     Plaintiff Danielle Gamino is a former employee of KPC.  Plaintiff Gamino was employed as a medical coder by KPC from May 29, 2008 through December 17, 2016, first at Costal Communities Hospital (now known as South Coast Global Medical Center) and then at the Orange County Global Medical Center, both in Santa Ana, California.  As a result of her employment, Plaintiff Gamino became and is a participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), in the KPC ESOP because she has a colorable claim for additional benefits under the Plan.  Plaintiff Gamino resides in Buford, Georgia.

**ANSWER:**  Alerus lacks knowledge as to the first two sentences of paragraph 9 and therefore denies them.  The third sentence of paragraph 9 states legal conclusions, to which no response is required.  To the extent a response is required Alerus denies the allegations in the third sentence of paragraph 9.  Alerus lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations, and therefore denies them.

**Defendants**

10.     Defendant KPC Healthcare Holdings, Inc. ("KPC") is and has been a California Corporation with its principal place of business in Riverside, California (according to the Summary Plan Description) or Corona, California (according to statements of information filed with the California Secretary of State).  Since the inception of the ESOP, KPC has been the sponsor of the ESOP within the meaning of ERISA § 3(16)(B), 29 U.S.C. §1002(16)(B).  Pursuant to KPCs authority to appoint and remove other fiduciaries of the ESOP, including the Trustee and the

ALERUS'S ANSWER TO PLAINTIFF'S FIRST – 5
AMENDED COMPLAINT

members of the ESOP Committee, KPC is and was a fiduciary of the ESOP under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).  The current version of the Summary Plan Description for the ESOP identifies KPC's address as 6800 Indiana Avenue, Suite 130, Riverside CA 92506 (i.e. in the Eastern Division of this District).

**ANSWER:**  Alerus admits that KPC Healthcare Holdings, Inc. was incorporated in California.  The allegations in the first and fourth sentences of paragraph 10 purport to paraphrase certain Plan documents and statements of information.  Alerus relies on those sources to speak for themselves, rather than on Plaintiff's characterization thereof.  To the extent such characterizations are inconsistent with the cited documents, Alerus denies the allegations in the first and fourth sentences of paragraph 10.  The remaining allegations in paragraph 10 state legal conclusions, to which no response is required.  To the extent a response is required Alerus denies the remaining allegations in paragraph 10.

*The Committee Defendants*

11.    Defendant KPC Healthcare, Inc. Employee Stock Ownership Plan Committee (the "ESOP Committee") is identified as the plan administrator in the ESOP's Plan Document within the meaning of ERISA § 3(16)(A), 29 U.S.C § 1002(16)(A).  Pursuant to Section 11.15 of the written instrument of the Plan, the ESOP Committee is one of the named fiduciaries of the ESOP within the meaning of ERISA § 402, 29 U.S.C. § 1102.  The ESOP Committee meets the definition of a person within the meaning of ERISA § 3(9), 29 U.S.C. § 1002(9), because ERISA defines the term person broadly and because a committee meets the definition of an association or an unincorporated organization.  The Committee's address is believed to be 6800 Indiana Avenue, Suite 130, Riverside CA 92506 (i.e. in the Eastern Division of this District).

**ANSWER:**  The allegations in the first and second sentences of paragraph 11 purport to paraphrase and/or cite to certain Plan provisions.  Alerus relies on those provisions to speak for themselves, rather than on Plaintiff's characterization thereof.  To the extent such characterization is inconsistent with the terms of the Plan provision, Alerus denies them.  The third sentence of paragraph 11 states a legal conclusion, to which no response is required.  To the extent a response is required, Alerus denies the allegations in the third sentence of paragraph 11. Alerus lacks knowledge or information sufficient to form a belief as to what "is believed," and therefore denies this allegation.

12.    The "Committee Defendants" means the ESOP Committee and the members of the Committee.  According to the notes to the financial statements in Form 5500s filed with the United States Department of Labor, all members of the Board of Directors serve and have served on the ESOP Committee.  As a result of the ESOP Committee being designated as the Plan Administrator and a named fiduciary of the ESOP under the terms of the Plan, and because the ESOP Committee and its members having discretionary authority or responsibility for the administration of the Plan, the ESOP Committee and its members are and were fiduciaries of the ESOP within the meaning of ERISA § 3(21)(A), 29 U.S.C § 1002(21)(A).

**ANSWER:**  Alerus admits that Plaintiff purports to use the term "Committee Defendants" in paragraph 12.  The allegations in the second sentence of paragraph 12 purport to paraphrase and/or cite to certain Form 5500s.  Alerus relies on those documents to speak for themselves, rather than on Plaintiff's characterization thereof.  To the extent such characterization is inconsistent with the cited documents, Alerus denies the allegations in the second sentence of paragraph 12.  The allegations in the third sentence state legal conclusions, to

ALERUS'S ANSWER TO PLAINTIFF'S FIRST – 7
AMENDED COMPLAINT

which no response is required.  To the extent a response is required Alerus denies the allegations in the third sentence of paragraph 12.

*The Trustee*

13.    Defendant Alerus Financial, N.A. ("Alerus") acted as Trustee of the ESOP in connection with the 2015 ESOP Transaction.  Alerus was appointed as the Trustee of the KPC ESOP pursuant to the KPC Healthcare, Inc. Employee Stock Ownership Trust dated April 1, 2015 (the "Trust Agreement").  Since the 2015 Transaction, Alerus has continued to be the Trustee of the KPC ESOP. Pursuant to Section 11.15 of the written instrument of the Plan, the Trustee is one of the named fiduciaries of the ESOP within the meaning of ERISA § 402, 29 U.S.C. § 1102.  As a result of being the Trustee of the KPC ESOP, Alerus has been a fiduciary of the ESOP within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).  Alerus is headquartered in Grand Forks, North Dakota.

**ANSWER:**  Alerus admits that it acted as the independent trustee of the ESOP in connection with the 2015 Transaction, and has continued to act as independent trustee of the ESOP.  Alerus admits that it is headquartered in Grand Forks, North Dakota.  The allegations in the second and fourth sentences of paragraph 13 purport to paraphrase certain documents.  Alerus relies on those sources to speak for themselves, rather than on Plaintiff's characterization thereof. To the extent such characterizations are inconsistent with the cited documents, Alerus denies the allegations in the second and fourth sentences of paragraph 13. The remaining allegations in paragraph 13 state legal conclusions, to which no response is required.

*The Board of Directors*

14.    Defendant Kali Pradip Chaudhuri ("Dr. Chaudhuri") is the Chief Executive Officer of KPC and the chairman of its board of directors.  By virtue of

ALERUS'S ANSWER TO PLAINTIFF'S FIRST – 8
AMENDED COMPLAINT

his position as CEO, membership on the KPC Board of Directors and his membership on the ESOP Committee, Kali Pradip Chaudhuri is and has been a fiduciary of the ESOP within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), since at least the time of 2015 ESOP Transaction.  At the time of the 2015 Transaction, Dr. Chaudhuri was a "party in interest" as to the ESOP as defined in ERISA § 3(14) (A), and (H), 29 U.S.C. § 1002(14) (A) and (H).  Prior to the 2015 ESOP Transaction, Kali Pradip Chaudhuri was the sole shareholder of KPC.  He sold his shares to the ESOP in the 2015 ESOP Transaction.  Dr. Chaudhuri resides in Hemet, CA in Riverside County (i.e. in the Eastern Division of this District).

**ANSWER:**  Alerus admits that Kali Pradip Chaudhuri currently is the Chief Executive Officer and Chairman of KPC Healthcare, Inc.  The allegations in the second and third sentences of paragraph 14 state legal conclusions, to which no response is required.  To the extent a response is required, Alerus denies the allegations in the second and third sentences of paragraph 14.  Alerus admits that the ESOP purchased shares of KPC Healthcare Holdings Inc. from Kali Pradip Chaudhuri in the 2015 Transaction.  Alerus lacks knowledge or information sufficient to form a belief as to the truth of allegations in the sixth sentence, and therefore denies them.  Alerus denies the remaining allegations in paragraph 14.

15.    Defendant Kali Priyo Chaudhuri, the son of Defendant Kali Pradip Chaudhuri, is the Chief Financial Officer of KPC, and is a member of its Board of Directors of KPC.  Defendant Kali Priyo Chaudhuri was a member of the Board at the time of the 2015 ESOP Transaction.  By virtue of his membership on the KPC Board of Directors and in turn, membership on the ESOP Committee, Kali Priyo Chaudhuri is and has been a fiduciary of the ESOP within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) since at least the time of 2015 Transaction.

ALERUS'S ANSWER TO PLAINTIFF'S FIRST – 9
AMENDED COMPLAINT

Kali Priyo Chaudhuri resides in Tustin, CA in Orange County (i.e. in the Southern Division of this District).

**ANSWER:**  Alerus denies that Defendant Kali Priyo Chaudhuri is the Chief Financial Officer of KPC.  Alerus denies the allegations in the second sentence in paragraph 15. The allegations in the third sentence of paragraph 15 state legal conclusions, to which no response is required.  To the extent a response is required Alerus denies the allegations in the third sentence of paragraph 15.  Alerus lacks knowledge or information sufficient to form a belief as to the truth of allegations in the fourth sentence, and therefore denies them.

16.    Defendant Amelia Hippert is a member of the KPC Board of Directors.  Defendant Amelia Hippert was appointed to the Board after the 2015 ESOP Transaction.  By virtue of her membership on the KPC Board of Directors, and in turn, membership on the ESOP Committee, Amelia Hippert is and has been a fiduciary of the ESOP within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) since at least the time of her appointment to the KPC Board of Directors.  Amelia Hippert resides in Hemet, CA in Riverside County (i.e. in the Eastern Division of this District).

**ANSWER:**  Alerus admits that Amelia Hippert currently is a member of the Board of Directors of KPC Healthcare, Inc. and was appointed to the Board after the 2015 ESOP Transaction.  The allegations in the third sentence of paragraph 16 state legal conclusions, to which no response is required.  To the extent a response is required, Alerus denies the allegations in the third sentence of paragraph 16. Alerus lacks knowledge or information sufficient to form a belief as to the truth of allegations in the fourth sentence, and therefore denies them.

17.    Defendant William E. Thomas is the secretary of KPC, in-house counsel for KPC, and a member of the Board of Directors of KPC.  Defendant

ALERUS'S ANSWER TO PLAINTIFF'S FIRST – 10
AMENDED COMPLAINT

William E. Thomas was a member of the Board at the time of the 2015 ESOP Transaction.  Upon information and belief, Defendant Thomas has been Defendant Kali Pradip Chaudhuri's long-standing attorney.  By virtue of his membership on the KPC Board of Directors, and in turn, membership on the ESOP Committee, William E. Thomas is and has been a fiduciary of the ESOP within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) since at least the time of 2015 Transaction.  Based on the Warrant Purchase Agreement between KPC and William E. Thomas entered into as part of the 2015 ESOP Transaction, Defendant Thomas was formerly the holder of a Common Stock Warrant which entitled him to acquire common stock of Integrated Healthcare Holdings, Inc.  Upon information and belief, Defendant Thomas resides in Riverside County (i.e. the Eastern Division of this District).

**ANSWER:**  Alerus admits the allegations in the first sentence of paragraph 17.  Alerus denies the allegations in the second sentence of paragraph 17.The allegations in the fourth sentence of paragraph 17 state legal conclusions, to which no response is required.  To the extent a response is required, Alerus denies the allegations in the fourth sentence of paragraph 17.  The fifth sentence in paragraph 17 purports to paraphrase or characterize detailed document financial transactions and loan agreements.  To the extent that such characterizations are inconsistent with the cited agreements, Alerus denies the allegations in the fifth sentence. Alerus lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 17 and therefore denies them.

18.     Defendant Lori Van Arsdale is a member of the KPC board of directors.  Defendant Lori Van Arsdale was appointed to the Board after the 2015 ESOP Transaction.  By virtue of her membership on the KPC Board of Directors, and in turn, membership on the ESOP Committee, Lori Van Arsdale is and has

been at all relevant times been a fiduciary of the ESOP within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) since at least the time of her appointment to the KPC Board of Directors.  Defendant Van Arsdale resides in Hemet, CA in Riverside County (i.e. in the Eastern Division of this District).

**ANSWER:** Alerus denies the allegations in the first and second sentences of paragraph 18.  The allegations in the third sentence of paragraph 18 state legal conclusions, to which no response is required.  To the extent a response is required, Alerus denies the allegations in the third sentence of paragraph 18.  Alerus lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the third sentence of paragraph 18 and therefore denies them.

19.    The "Director Defendants" are Kali Pradip Chaudhuri, Kali Priyo Chaudhuri, Amelia Hippert, William E. Thomas, and Lori Van Arsdale.

**ANSWER:**  Alerus admits that Plaintiff purports to use the term "Director Defendants" in paragraph 19.

*Nominal Defendant*

20.    Nominal Defendant KPC Healthcare, Inc. Employee Stock Ownership Plan, a/k/a the KPC Healthcare, Inc. ESOP (the "KPC ESOP"), is an "employee pension benefit plan" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A).  As the Plan Administer is located in Riverside, California, the Plan is also believed to be administered in Riverside, California.  The ESOP purports to be a "defined contribution plan" within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34) and an employee stock ownership plan under ERISA § 407(d)(6) that was intended to meet the requirements of Section 4975(e)(7) of the Internal Revenue Code (the "Code") and IRS Regulations § 54.4975-11.  The written instrument, within the meaning of ERISA § 402, 29 U.S.C. §1102, by which the Plan is maintained is the KPC Healthcare, Inc. Employee Stock Ownership Plan

ALERUS'S ANSWER TO PLAINTIFF'S FIRST – 12
AMENDED COMPLAINT

(the "Plan Document"), effective as of April 1, 2015. The ESOP is named as a nominal defendant pursuant to Rule 19 to ensure that complete relief can be granted as to claims brought on behalf of the ESOP.

**ANSWER:** The allegations in the first, third, fourth, and fifth sentences of paragraph 20 state legal conclusions, to which no response is required. To the extent a response is required Alerus admits that the Plan is an employee pension benefit plan and a defined contribution plan and ESOP under 29 U.S.C. § 1107(d)(6) that was intended to meet the requirements of Section 4975(e)(7) of the Internal Revenue Code and IRS Regulations § 54.4975-11. Alerus further admits that Plaintiff purports to name the Plan as a nominal defendant. Alerus otherwise denies the allegations in the first, third, fourth, and fifth sentences of paragraph 20. Alerus lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence, and therefore denies them.

## V.    CLASS ACTION ALLEGATIONS

21.    Plaintiff brings these claims as a class action pursuant to Fed. R. Civ. P. 23 (a) and (b), on behalf of the following Class:

> All participants in the KPC ESOP from August 28, 2015 or any time thereafter (unless they terminated employment without vesting in the ESOP) and those participants' beneficiaries.

> Excluded from the Class are (a) Defendants, (b) any fiduciary of the Plan; (c) the officers and directors of KPC or of any entity in which one of the individual Defendants has a controlling interest; (d) the immediate family members of any of the foregoing excluded persons, and (e) the legal representatives, successors, and assigns of any such excluded persons.

**ANSWER:** Alerus admits that Plaintiff purports to bring this action as a class action pursuant to Fed. R. Civ. P. 23(a) and (b). Alerus denies that a class

action is appropriate or that the proposed class definition would be appropriate if a class were certified.

### Impracticability of Joinder

22.     The members of the Class are so numerous that joinder of all members is impracticable.  According to the 2018 Form 5500 filed with the Department of Labor, which is the most recent available Form 5500, there were 2,655 participants (including 2,132 active participants, 228 retired or separated participants receiving benefits and 283 retired or separated participants entitled to future benefits) within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7), in the ESOP as of August 31, 2019.

**ANSWER:**  Paragraph 22 states legal conclusions, to which no response is required.  To the extent a response is required, Alerus denies the allegations in paragraph 22.

### Commonality

23.     The issues of liability are common to all members of the Class and are capable of common answers as those issues primarily focus on Defendants' acts (or failure to act).  Questions of law and fact common to the Plaintiff Class as a whole include, but are not limited to, the following:

a.     Whether Defendant Alerus caused the ESOP to engage in prohibited transactions under ERISA by causing or permitting the ESOP to purchase KPC stock for more than adequate consideration in the 2015 ESOP Transaction;

b.     Whether Defendants Dr. Chaudhuri and William Thomas knowingly participated in those prohibited transactions;

ALERUS'S ANSWER TO PLAINTIFF'S FIRST – 14
AMENDED COMPLAINT

c.      Whether Alerus engaged in a prudent investigation of the proposed purchase of KPC stock by the ESOP in the 2015 ESOP Transaction;

d.      Whether Alerus breached its fiduciary duty to ESOP participants by causing the ESOP to purchase KPC stock in 2015 for more than fair market value;

e.      Whether the Committee Defendants violated certain disclosure provisions of ERISA or otherwise breached their fiduciary duties;

f.      Whether KPC (and/or the Director Defendants) breached their fiduciary duties by failing to adequately monitor the ESOP's Trustee and the Committee Defendants;

g.      Whether certain provisions of the Plan Document and Trust Agreement violate ERISA § 410;

h.      The amount of losses suffered by the ESOP as a result of Defendants' fiduciary violations and the nature of other appropriate remedial or equitable relief to remedy Defendants' breaches or violations.

**ANSWER:**  Paragraph 23 states legal conclusions, to which no response is required.  To the extent a response is required, Alerus denies the allegations in paragraph 23.

**Typicality**

24.      Plaintiff's claims are typical of those of the Class because their claims arise from the same event, practice and/or course of conduct.  Specifically, Plaintiff, on behalf of the Class, alleges that Defendants breached their fiduciary duties, engaged in prohibited transactions or otherwise violated ERISA in connection with the sale of stock to the ESOP, management of the Plan or in performing their fiduciary duties to the Plan.  Plaintiff challenges the legality and

appropriateness of a plan-wide transaction and disclosures, and Plaintiff like other ESOP participants in the Class, has received less in her ESOP account based on the same per share purchase price of KPC stock, and continue to suffer such losses in the present because Defendants have failed to correct the overpayment by the ESOP.

**ANSWER:**  Paragraph 24 states legal conclusions, to which no response is required.  To the extent a response is required, Alerus denies the allegations in paragraph 24.

**Adequacy**

25.    Plaintiff will fairly and adequately represent and protect the interests of the Class.

**ANSWER:**  Paragraph 25 states legal conclusions, to which no response is required.  To the extent a response is required, Alerus denies the allegations in paragraph 25.

26.    Plaintiff does not have any interests antagonistic to or in conflict with those of the Class.

**ANSWER:**  Paragraph 26 states legal conclusions, to which no response is required.  To the extent a response is required, Alerus denies the allegations in paragraph 26.

27.    Defendants do not have any unique defenses against Plaintiff that would interfere with Plaintiff's representation of the Class.

**ANSWER:**  Paragraph 27 states legal conclusions, to which no response is required.  To the extent a response is required, Alerus denies the allegations in paragraph 27.

28.    Plaintiff is represented by counsel with experience in complex class actions, ERISA, and with particular experience and expertise in ESOP litigation.

ALERUS'S ANSWER TO PLAINTIFF'S FIRST – 16
AMENDED COMPLAINT

Plaintiff's counsel has been appointed as class counsel in numerous class action ESOP cases.

**ANSWER:**  Alerus lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 28 and therefore denies them.

**Fed. R. Civ. P. Rule 23(b)(1)**

29.    Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(1)(A).  Fiduciaries of ERISA-covered plans have a legal obligation to act consistently with respect to all similarly situated participants and to act in the best interests of the Plan and their participants.  This action challenges whether Defendants acted consistently with their fiduciary duties or otherwise violated ERISA as to the ESOP as a whole.  As a result, prosecution of separate actions by individual members would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct relating to the Plan.

**ANSWER:**  Paragraph 29 states legal conclusions, to which no response is required.  To the extent a response is required, Alerus denies the allegations in paragraph 29.

30.    Class certification is also appropriate pursuant to Fed. R. Civ. P. 23(b)(1)(B).  Administration of an ERISA-covered plan requires that all similarly situated participants be treated the same.  Resolving whether Defendants fulfilled their fiduciary obligations to the Plans, engaged in prohibited transactions with respect to the Plan would, as a practical matter, be dispositive of the interests of the other participants in the ESOP even if they are not parties to this litigation and would substantially impair or impede their ability to protect their interests if they are not made parties to this litigation by being included in the Class.

**ANSWER:**  Paragraph 30 states legal conclusions, to which no response is required.  To the extent a response is required, Alerus denies the allegations in paragraph 30.

**Fed. R. Civ. P. Rule 23(b)(2)**

31.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.  This action challenges whether Defendants acted consistently with their fiduciary duties or otherwise violated ERISA as to the ESOP as a whole.  The members of the Class are entitled to declaratory and injunctive relief to remedy Defendants' fiduciary violations.  As ERISA is based on trust law, any monetary relief consists of equitable monetary relief and is either provided directly by the declaratory or injunctive relief or flows as a necessary consequence of that relief.

**ANSWER:**  Paragraph 31 states legal conclusions, to which no response is required.  To the extent a response is required, Alerus denies the allegations in paragraph 31.

**Fed. R. Civ. P. Rule 23(b)(3)**

32.     The requirements of Fed. R. Civ. P. 23(b)(3) are also satisfied. Common questions related to liability will necessarily predominate over any individual questions precisely because Defendants' duties and obligations were uniform to all participants and therefore all members of the Class.  Plaintiff and all Class members have been harmed by the ESOP paying more than fair market value for KPC stock in the 2015 ESOP Transaction.  As relief and any recovery will be on behalf of the Plan, common questions as to remedies will likewise predominate over any individual issues.

ALERUS'S ANSWER TO PLAINTIFF'S FIRST – 18
AMENDED COMPLAINT

1

2

3

**ANSWER:**  Paragraph 32 states legal conclusions, to which no response is required.  To the extent a response is required, Alerus denies the allegations in paragraph 32.

4

5

6

7

8

9

10

11

12

13

33.    A class action is a superior method to other available methods for the fair and efficient adjudication of this action.  As the claims are brought on behalf of the Plan, resolution of the issues in this litigation will be efficiently resolved in a single proceeding rather than multiple proceedings and each of those individual proceedings could seek recovery for the entire Plan.  The losses suffered by individual Class members are small compared to the expense and burden of individual prosecution of this action.  In addition, class certification is superior because it will obviate the need for unduly duplicative litigation which might result in inconsistent judgments about Defendants' duties with regard to the ESOP.

14

15

**ANSWER:**  Paragraph 33 states legal conclusions, to which no response is required.  To the extent a response is required, Alerus denies the allegations in paragraph 33.

16

17

34.    The following factors set forth in Rule 23(b)(3) also favor certification of this case as a class action:

18

19

20

a. The members of the Class have an interest in a unitary adjudication of the issues presented in this action for the reasons that this case should be certified under Rule 23(b)(1).

21

22

b. No other litigation concerning this controversy has been filed by any other members of the Class.

23

24

25

26

27

c. This District is most desirable location for concentrating the litigation for reasons that include (but are not limited to) the following: (i) KPC is headquartered in this District, (ii) the KPC ESOP is administered in this District, (iii) most of Defendants reside, work and transact

28

ALERUS'S ANSWER TO PLAINTIFF'S FIRST – 19
AMENDED COMPLAINT

business in this District, and (iii) certain non-party witnesses are
located in this District.

d. The names and addresses of the members of the Class are available
from the ESOP.  Notice can be provided to all members of the Class
to the extent required by Rule 23.

**ANSWER:**  Paragraph 34 states legal conclusions, to which no response is
required.  To the extent a response is required, Alerus denies the allegations in
paragraph 34.

## VI.   FACTUAL ALLEGATIONS

### Defendant Dr. Kali Pradip Chaudhuri Finances the Acquisition of Four Hospitals Over Community Objections

35.    Integrated Healthcare Holdings, Inc. ("Integrated Health") was
formerly a publicly traded medical holding company.  According to Integrated
Health's Form 10-K for the fiscal year ended March 31, 2013, the company had no
material operations until March 8, 2005 when it acquired four Orange County,
California hospitals previously operated by Tenet Healthcare Corp.: Western
Medical Center in Santa Ana; Western Medical Center in Anaheim; Coastal
Communities Hospital in Santa Ana; and Chapman Medical Center in Orange.
Integrated Health purchased the hospitals in part through debt financing provided
by Dr. Chaudhuri.

**ANSWER:**  Alerus admits the allegations in the first sentence of paragraph
35.  The second sentence of paragraph 35 purports to paraphrase and/or cite to a
certain Form 10-K.  Alerus relies on that source to speak for itself, rather than on
Plaintiff's characterizations thereof.  To the extent that such characterizations are
inconsistent with the cited Form 10-K, Alerus denies the allegations in the second

sentence of paragraph 35.  Alerus denies the remaining allegations of paragraph 35.

36.     According to an article entitled "KCP Healthcare Bets on ESOP" published in the Orange County Business Journal on March 13, 2017, in 2005 Dr. Chaudhuri initially led Integrated Health's bid to acquire the four Tenet hospitals.

**ANSWER:**  Paragraph 36 purports to paraphrase and/or cite to a certain article.  Alerus relies on that source to speak for itself, rather than on Plaintiff's characterization thereof.  To the extent that characterization is inconsistent with the cited article, Alerus denies the allegations in paragraph 36.

37.     Integrated Health's acquisition of these hospitals was met with vocal public opposition because of Dr. Chaudhuri's involvement.  One of Dr. Chaudhuri's other companies, KPC Medical Management Inc., went bankrupt shortly after acquiring the Southern California provider network of MedPartners, resulting in the abrupt closure of 38 California clinics and abruptly leaving 300,000 patients without medical care.

**ANSWER:**  Alerus lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 37, and therefore denies them.

38.     The KPC Medical Management bankruptcy was dogged by allegations of financial mismanagement and self-dealing by Dr. Chaudhuri. According to an article entitled "KPC Filings Spur More Questions" published by the California American College of Emergency Physicians in February of 2001, a bankrupt affiliate of KPC Medical Management paid $5 million to Dr. Chaudhuri in January 2000, even as KPC Medical Management was negotiating with HMOs for a bailout loan.  The week before KPC Medical Management filed for bankruptcy, it paid $1.5 million to its attorneys, including $150,000 to Dr. Chaudhuri's personal attorney Defendant William Thomas (after he had already

resigned as corporate counsel to KPC Medical Management).  And creditors alleged that Chaudhuri had improperly moved assets between KPC Medical Management and his other businesses.

**ANSWER:**  The allegations in the second sentence of paragraph 38 purport to paraphrase and/or cite to an article.  Alerus relies on that source to speak for itself, rather than on Plaintiff's characterization thereof.  To the extent that characterization is inconsistent with the cited article, Alerus denies the allegations in the second sentence of paragraph 38.  Alerus lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 38, and therefore denies them.

39.    According to documents filed in litigation between Dr. Chaudhuri and Defendant William E. Thomas, among others, on the one hand and two Southern California physician groups on the other hand, Dr. Chaudhuri systematically looted MedPartners—shutting down facilities, firing doctors and staff members, all under the pretense of cutting costs.  Meanwhile, Dr. Chaudhuri lined his own pockets while continuing to draw income from MedPartners while refusing to pay independently contracted specialty physicians.  Dr. Chaudhuri even had staff write checks to show health plans payments were being made while instructing them to stash those same checks in locked filing cabinets (instead of mailing them). Within the first 18 months following the MedPartners acquisition, $30 million in assets had disappeared from the company and it had run up debts of $450 million.

**ANSWER:**  Alerus lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 39, and therefore denies them.

40.    In response to Dr. Chaudhuri's contemplated involvement in the Integrated Health purchase of the Tenet hospitals, a spokeswoman for the California Department of Health Services stated that they had "concerns... about

ALERUS'S ANSWER TO PLAINTIFF'S FIRST – 22
AMENDED COMPLAINT

the applicant's reputable and responsible character."  California state senators Joseph Dunn and Deborah Ortiz stated in a letter to the director of the DHS that they were "deeply concerned" about Chaudhuri's involvement in the venture and sought "assurances that Dr. Chaudhuri's role would not result in the [Western Medical-Santa Ana] hospital going the KPC route."

**ANSWER:**  Paragraph 40 purports to paraphrase, quote, and/or cite to certain statements.  Alerus relies on the statements to speak for themselves, rather than on Plaintiff's characterizations thereof.  To the extent such characterizations are inconsistent with such statements, Alerus denies the allegations in paragraph 40.

41.    According to a January 27, 2005 OC Weekly article entitled, "Now With Less Chaudhuri!" then current and former chiefs of staff at the Western Medical of Santa Ana trauma facility, Michael Fitzgibbons, and Robert Steedman, opposed the deal because of Dr. Chaudhuri's involvement.  Together with more than 70 other doctors, they created a competing acquisition group, Western Medical Center Acquisition, LLC, and organized protests of the Integrated Health purchase.  But Fitzgibbons and Steedman were intimidated into silence and acquiescence to the Integrated Health transaction by Dr. Chaudhuri's litigation threats.  Following the acquisition, Fitzgibbons would continue to face retaliation. The CEO of Integrated Health, Bruce Mogel, planted a loaded handgun in Fitzgibbon's car and called the police on him.  Mogel also caused Fitzgibbon's daughter to be in a serious auto accident after her tires were slashed.  Fitzgibbon would later win a $5.7 million jury verdict against both Integrated Health and Mogel for this conduct.

**ANSWER:**  The allegations in the first sentence of paragraph 41 purport to paraphrase and/or cite to an article.  Alerus relies on that source to speak for itself,

rather than on Plaintiff's characterization thereof.  To the extent that characterization is inconsistent with the cited article, Alerus denies the allegations in the first sentence of paragraph 41.  Alerus lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 41, and therefore denies them.

42.     As a result of the opposition by the public, doctors, regulatory authorities, and legislators to Chaudhuri's involvement in another acquisition of medical facilities, Dr. Chaudhuri reduced his planned stake in Integrated Health and its acquisition of the Tenet hospitals.  According to a March 21, 2005 article in the Los Angeles Times entitled "Doctors Operate This Company, Dr, Chaudhuri took a reduced role at Integrated Health as part of its acquisition of the Tenet hospitals, providing debt financing for the transaction instead of a substantial equity investment.  Cardiologist Anil Shah ("Shah") and a consortium of doctors led by him, Orange County Physicians Investment Network LLC ("OCPIN") provided the bulk of the equity investment and took an 83% ownership interest in Integrated Health.  Chaudhuri also owned 49% of a real estate subsidiary formed by OCPIN to own land associated with three of the four hospitals.  And Dr. Chaudhuri and his lawyer—Defendant William E. Thomas—retained a right to purchase up to 25% of Integrated Health.

**ANSWER:**  The allegations in the second sentence of paragraph 42 purport to paraphrase and/or cite to an article.  Alerus relies on that source to speak for itself, rather than on Plaintiff's characterization thereof.  To the extent that characterization is inconsistent with the cited article, Alerus denies the allegations in the second sentence of paragraph 42.  Alerus lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 42, and therefore denies them.

ALERUS'S ANSWER TO PLAINTIFF'S FIRST – 24
AMENDED COMPLAINT

43.    In that same March 21, 2005 article in the Los Angeles Times, Shah claimed that no one should be concerned by Dr. Chaudhuri's involvement in Integrated Health, because "He will never have a controlling interest."  At the same time, according to the California Healthcare Daily Edition, Larry Anderson, president of Integrated Health, "repeatedly assured critics that Chaudhuri would have no role in the daily operations of the facilities...."

**ANSWER:**  Paragraph 43 purports to paraphrase, quote, and/or cite to certain articles.  Alerus relies on those sources to speak for themselves, rather than on Plaintiff's characterizations thereof.  To the extent that such characterizations are inconsistent with the cited articles, Alerus denies the allegations in paragraph 43.

### Integrated Health's Stock Performance & Value 2010 to 2013

44.    From April 2010 to March 2011, shares of Integrated Health traded on the OTCQB Venture Market at prices between $0.02 and $0.07 per share.  Based on the 255,307,262 shares of common stock of Integrated Health outstanding between April 2010 and March 2011, these stock prices imply a market capitalization and equity value of between approximately $5.1 million and $17.9 million during that period.

**ANSWER:**  Paragraph 44 purports to rely upon, paraphrase and derive calculations from certain unidentified documents and/or data.  Alerus relies on that source to speak for itself, rather than on Plaintiff's characterizations and calculations thereof.  To the extent that such characterizations and calculations are inconsistent with the cited documents or data, Alerus denies the allegations in paragraph 44.

45.    According to Integrated Health's 2011 Form 10-K, for the fiscal year ending March 31, 2011, Integrated Health had assets of $149.2 million and

ALERUS'S ANSWER TO PLAINTIFF'S FIRST – 25
AMENDED COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

liabilities of $167.8 million, for a stockholders' deficiency of approximately $18.7 million.

**ANSWER:**  Paragraph 45 purports to paraphrase and/or cite to a certain Form 10-K.  Alerus relies on that source to speak for itself, rather than on Plaintiff's characterizations thereof.  To the extent that such characterizations are inconsistent with the cited Form 10-K, Alerus denies the allegations in paragraph 45.

46.     From April 2011 to March 2012, shares of Integrated Health traded on the OTCQB Venture Market at prices between $0.01 and $0.22 per share.  Based on the 255,307,262 shares of common stock of Integrated Health outstanding between April 2011 and March 2012, these stock prices imply a market capitalization and equity value of between approximately $2.6 million and $56.2 million during that period.

**ANSWER:**  Paragraph 46 purports to rely upon, paraphrase and derive calculations from certain unidentified documents and/or data.  Alerus relies on that source to speak for itself, rather than on Plaintiff's characterizations and calculations thereof.  To the extent that such characterizations and calculations are inconsistent with the cited documents or data, Alerus denies the allegations in paragraph 46.

47.     According to Integrated Health's 2012 Form 10-K, for the fiscal year ending March 31, 2012, Integrated Health had assets of $145 million and liabilities of $157 million, for a stockholders' deficiency of $11 million.

**ANSWER:**  Paragraph 47 purports to paraphrase and/or cite to a certain Form 10-K.  Alerus relies on that source to speak for itself, rather than on Plaintiff's characterizations thereof.  To the extent that such characterizations are

inconsistent with the cited Form 10-K, Alerus denies the allegations in paragraph 47.

48.    From April 2012 to March 2013, shares of Integrated Health traded on the OTCQB Venture Market at prices between $0.04 and $0.11 per share.  Based on the 255,307,262 shares of common stock of Integrated Health outstanding at that time, this implies a market capitalization and equity value of between approximately $10.2 million and $28.1 million between April 2012 and March 2013.

**ANSWER:**  Paragraph 48 purports to rely upon, paraphrase and derive calculations from certain unidentified documents and/or data.  Alerus relies on that source to speak for itself, rather than on Plaintiff's characterizations and calculations thereof.  To the extent that such characterizations and calculations are inconsistent with the cited documents or data, Alerus denies the allegations in paragraph 48.

49.    According to Integrated Health's 2013 Form 10-K, for the fiscal year ending March 31, 2013, Integrated Health had assets of $167 million and liabilities of $197 million, for a stockholders' deficiency of $30 million.

**ANSWER:**  Paragraph 49 purports to paraphrase and/or cite to a certain Form 10-K.  Alerus relies on that source to speak for itself, rather than on Plaintiff's characterizations thereof.  To the extent that such characterizations are inconsistent with the cited Form 10-K, Alerus denies the allegations in paragraph 49.

**Defendant Dr. Kali Pradip Chaudhuri Purchases 100% of the Shares of Integrated Health and Defendants Dr. Chaudhuri and Thomas Acquire Integrated Health Warrants**

50.     Between 2005 and 2010, Dr. Chaudhuri gradually acquired stock in and consolidated his control over Integrated Health.  According to an Orange County Register article dated January 25, 2010 entitled "Controversial doctor gets more clout at Western Med," by 2010 Dr. Chaudhuri had amassed a majority ownership interest in Integrated Health in addition to being its principal lender.

**ANSWER:**  The allegations in the second sentence of paragraph 50 purport to paraphrase and/or cite to an article.  Alerus relies on that source to speak for itself, rather than on Plaintiff's characterizations thereof.  To the extent that such characterizations are inconsistent with the cited article, Alerus denies the allegations in second sentence of paragraph 50.  Alerus lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 50, and therefore denies them.

51.     Based on documents publicly filed with the Securities and Exchange Commission, in April of 2010 Dr. Chaudhuri acquired two sets of common stock warrants collectively entitling the holder to acquire approximately 309,000 shares of Integrated Health common stock.

**ANSWER:**  The allegations in paragraph 50 purport to paraphrase and/or cite to certain documents. Alerus relies on that source to speak for itself, rather than on Plaintiff's characterizations thereof. To the extent that such characterizations are inconsistent with the cited article, Alerus denies the allegations in Paragraph 51.

52.     SPCP Group, LLC ("SPCP Group") is a Delaware limited liability company and an investment management firm affiliated with Silver Point Capital Partners, a hedge fund.  Based on a Warrant Purchase Agreement between KPC and SPCP Group entered into as part of the 2015 ESOP Transaction, SPCP Group

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

was formerly the holder of a Common Stock Warrant which entitled SPCP Group to acquire common stock of Integrated Healthcare Holdings, Inc.

**ANSWER:**  Alerus admits the allegations in the first sentence of paragraph 52.  The remaining allegations in paragraph 52 purport to paraphrase or characterize detailed documented financial transactions and loan agreements.   To the extent that such characterizations are inconsistent with the cited transaction and loan agreements, Alerus denies the allegations in paragraph 52.

53.    Based on a Warrant Purchase Agreement entered into as part of the 2015 ESOP Transaction, on April 13, 2010, SPCP Group acquired a common stock warrant entitling the holder to acquire 79,182,635 shares of Integrated Health common stock. SPCP Group provided financing for Dr. Chaudhuri's acquisition of IHHI.

**ANSWER:**  The allegations in paragraph 53 purport to paraphrase or characterize detailed documented financial transactions and loan agreements.   To the extent that such characterizations are inconsistent with the cited transaction and loan agreements, Alerus denies the allegations in paragraph 53.

54.    By March 31, 2013, Integrated Health's Form 10-K identified Defendant Kali Pradip Chaudhuri as the beneficial owner of 77.55% of the outstanding stock of the company.

**ANSWER:**  Paragraph 54 purports to paraphrase and/or cite to a certain Form 10-K.  Alerus relies on that source to speak for itself, rather than on Plaintiff's characterizations thereof.  To the extent that such characterizations are inconsistent with the cited Form 10-K, Alerus denies the allegations in paragraph 54.

55.    On September 12, 2013, Defendant Kali Pradip Chaudhuri filed an Amended Schedule 13D with the SEC stating he "had reached an understanding as

ALERUS'S ANSWER TO PLAINTIFF'S FIRST – 29
AMENDED COMPLAINT

to the principal terms of a proposed transaction in which Dr. Chaudhuri or his affiliate will acquire an aggregate of 100,110,430 shares of common stock" held by Shah, OCPIN, and a Mr. Hari S. Lal.  Dr. Chaudhuri further stated that after closing those purchases he intended to "acquire all of the remaining shares of common stock of the Issuer."

**ANSWER:**  Paragraph 55 purports to paraphrase, quote, and/or cite to a certain Amended Schedule 13D.  Alerus relies on that source to speak for itself, rather than on Plaintiff's characterizations thereof.  To the extent that such characterizations are inconsistent with the cited Amended Schedule 13D, Alerus denies the allegations in paragraph 55.

56.     According to an Amended Schedule 13-D filed by Silver Point Capital, L.P. with the SEC on September 12, 2013, Defendant Kali Pradip Chaudhuri agreed to pay $0.203 per share to acquire these 100,110,430 shares of Integrated Health stock and planned "a second step, 'short-form' merger in accordance with the laws of the State of Nevada pursuant to which all other shareholders of the Issuer would receive merger consideration that would approximate the consideration per share received by the Selling Shareholders."

**ANSWER:**  Paragraph 56 purports to paraphrase, quote, and/or cite to a certain Amended Schedule 13-D.  Alerus relies on that source to speak for itself, rather than on Plaintiff's characterizations thereof.  To the extent that such characterizations are inconsistent with the cited Amended Schedule 13-D, Alerus denies the allegations in paragraph 56.

57.     According to the Form 10-Q filed by Integrated Health with the Securities and Exchange Commission on November 14, 2013, Integrated Health had 255,307,262 shares of stock outstanding as of November 7, 2013—the same number that it had outstanding as of August 7, 2013, according to the Form 10-Q

filed by Integrated Health with the Securities and Exchange Commission on August 14, 2013.

**ANSWER:**  Paragraph 57 purports to paraphrase, quote, and/or cite to a certain Form 10-Q.  Alerus relies on that source to speak for itself, rather than on Plaintiff's characterizations thereof.  To the extent that such characterizations are inconsistent with the cited Form 10-Q, Alerus denies the allegations in paragraph 57.

58.     The terms Dr. Chaudhuri disclosed under which he would acquire 100% of the outstanding common stock of Integrated Health therefore implied a value to the entire company of approximately $51,827,374 (255,307,262 shares at $0.203/share).

**ANSWER:**  Alerus lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 58, and therefore denies them.

59.     Integrated Health then terminated the registration of its securities with the SEC effective January 7, 2014.

**ANSWER:**  Alerus lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 59, and therefore denies them.

60.     On information and belief, Dr. Chaudhuri consummated the planned purchase of 100,110,430 shares of Integrated Health stock from Shah, OCPIN, and Mr. Lal. for $0.203 per share.

**ANSWER:**  Alerus lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 60, and therefore denies them.

61.     According to contemporaneous postings to InvestorsHub, an internet forum for discussion of stock trades, remaining shareholders of Integrated Health were cashed out at a price of $0.203 per share in May of 2014—the price at which

Dr. Chaudhuri had previously disclosed he would acquire 100% of the outstanding stock of Integrated Health.

**ANSWER:**  Paragraph 61 purports to paraphrase and/or cite to certain website postings.  Alerus relies on those sources to speak for themselves, rather than on Plaintiff's characterizations thereof.  To the extent that such characterizations are inconsistent with the cited website postings, Alerus denies the allegations in paragraph 61.

62.  Dr. Chaudhuri acquired all the outstanding stock of Integrated Health through these transactions.

**ANSWER:**  Alerus lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 62, and therefore denies them.

63.  Based on a Warrant Purchase Agreement entered into as part of the 2015 ESOP Transaction, on April 29, 2014, Integrated Health issued a common stock warrant to Defendant Thomas which entitled the holder to acquire 19,427,145 shares of common stock of Integrated Health.

**ANSWER:**  The allegations in paragraph 63 purport to paraphrase or characterize detailed documented financial transactions and loan agreements.   To the extent that such characterizations are inconsistent with the cited transaction and loan agreements, Alerus denies the allegations in paragraph 63.

**Defendant Dr. Kali Pradip Chaudhuri Renames Integrated Health as KPC and Sells the Company to the ESOP at an Inflated Price**

64.  Between 2013 and 2015, Integrated Health experienced financial distress.  Repeated rounds of layoffs and rehirings had long been characteristic of Integrated Health's employment practices.  As a result of the financial difficulties and related layoffs, employees such as Plaintiff Gamino believed that their

employment was increasingly precarious and were never sure if they would be employed the next day.

**ANSWER:**  Alerus lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 64, and therefore denies them.

65.    According to the Articles of Incorporation obtained from the State of California Secretary of State, KPC was incorporated on July 24, 2015.

**ANSWER:**  Paragraph 65 purports to paraphrase and/or cite to certain Articles of Incorporation.  Alerus relies on that source to speak for itself, rather than on Plaintiff's characterizations thereof.  To the extent that such characterizations are inconsistent with the cited Articles of Incorporation, Alerus denies the allegations in paragraph 65.

66.    According to an article published in the Press Enterprise on June 11, 2015, KPC was a new name for Integrated Health, which Defendant Kali Pradip Chaudhuri had taken private in 2014.

**ANSWER:** Paragraph 66 purports to paraphrase and/or cite to a certain article.  Alerus relies on that source to speak for itself, rather than on Plaintiff's characterizations thereof.  To the extent that such characterizations are inconsistent with the cited article, Alerus denies the allegations in paragraph 66.

67.    According to an article published in the Orange County Business Journal on March 13, 2017, entitled "KPC Healthcare Bets on ESOP," KPC was owned by Defendant Kali Pradip Chaudhuri prior to the 2015 ESOP Transaction. In that article, Dr. Chaudhuri is quoted as stating that "I give my shares to [employees] but if they stay for five years [or more], it's a win for us."  (emphasis added, brackets in original).  By this statement, Dr. Chaudhuri acknowledged that he sold his share to the ESOP.

**ANSWER:** Paragraph 67 purports to paraphrase, quote, and/or cite to a certain article.  Alerus relies on that source to speak for itself, rather than on Plaintiff's characterizations thereof.  To the extent that such characterizations are inconsistent with the cited article, Alerus denies the allegations in paragraph 67.

68.    According to the 2015 Form 5500 filed with the Department of Labor on June 15, 2017, KPC Healthcare adopted the ESOP effective April 1, 2015.

**ANSWER:**  The allegations in paragraph 68 purport to paraphrase and/or cite to a certain Form 5500.  Alerus relies on that source to speak for itself, rather than on Plaintiff's characterizations thereof.  To the extent that such characterizations are inconsistent with the cited Form 5500, Alerus denies the allegations in the first sentence of paragraph 68.

69.    On August 28, 2015, Alerus, acting as Trustee of the ESOP, caused the ESOP to purchase 100% of the shares of KPC Common Stock.

**ANSWER:**  The allegations in paragraph 69 purport to paraphrase or characterize detailed documented financial transactions and loan agreements.   To the extent that such characterizations are inconsistent with the cited transaction and loan agreements, Alerus denies the allegations in paragraph 69.

70.    Based on a Warrant Purchase Agreement entered into as part of the 2015 ESOP Transaction, as part of the 2015 ESOP Transaction, Defendant Thomas sold his common stock warrant entitling the holder to acquire 19,427,145 shares of common stock of KPC to KPC on August 27, 2015, in exchange for: (a) $2,742,000 in cash; (b) a promissory note in the original principal amount of $3,928,000; (c) a warrant to purchase 111,157 shares of KPC at an exercise price of $2.50 per share; and (d) 2.5% of any net payments received by KPC or its subsidiaries under California's hospital quality assurance fee (QAF) program based on services provided from January 1, 2017, to December 31, 2024.

**ANSWER:**  The allegations in paragraph 70 purport to paraphrase or characterize detailed documented financial transactions and loan agreements.   To the extent that such characterizations are inconsistent with the cited transaction and loan agreements, Alerus denies the allegations in paragraph 70.

71.    Based on a Warrant Purchase Agreement entered into as part of the 2015 ESOP Transaction, as part of the 2015 ESOP Transaction Defendant SPCP Group sold its common stock warrant entitling the holder to acquire 79,182,635 shares of common stock of KPC to KPC on August 27, 2015, in exchange for: (a) $18,810,000 in cash; (b) a promissory note in the original principal amount of $26,946,000; (c) a warrant to purchase 762,592 shares of KPC at an exercise price of $2.50 per share; and (d) 10.2% of any net payments received by KPC or its subsidiaries under California's hospital quality assurance fee (QAF) program based on services provided from January 1, 2017, to December 31, 2024.

**ANSWER:**  The allegations in paragraph 71 purport to paraphrase or characterize detailed documented financial transactions and loan agreements.   To the extent that such characterizations are inconsistent with the cited transaction and loan agreements, Alerus denies the allegations in paragraph 71.

72.    Based on the Warrant Cancellation and Release Agreement entered into as part of the 2015 ESOP Transaction, on August 27, 2015, Defendant Kali Pradip Chaudhuri agreed to the cancellation of common stock warrants previously issued to him by KPC Healthcare, Inc., a subsidiary of KPC, in exchange for 48.3% of any net payments received by KPC or its subsidiaries under California's hospital quality assurance fee (QAF) program based on services provided from January 1, 2017, to December 31, 2024.

**ANSWER:**  The allegations in paragraph 72 purport to paraphrase or characterize detailed documented financial transactions and loan agreements.   To

the extent that such characterizations are inconsistent with the cited transaction and loan agreements, Alerus denies the allegations in paragraph 72.

73.     Based on the Stock Purchase Agreement entered into as part of the 2015 ESOP Transaction, on August 27, 2015, Defendant Dr. Kali Pradip Chaudhuri sold all of the issued and outstanding shares of the common stock of KPC to the KPC Healthcare, Inc. Employee Stock Ownership Trust (the "Trust"), which implements and forms a part of the ESOP. To finance this purchase, Defendant Alerus, acting as Trustee of the ESOP, paid cash to Defendant Dr. Kali Pradip Chaudhuri in the amount of $89,448,000 and issued a promissory note to him in the original principal amount of $128,126,000, for an aggregate purchase price of $217,574,000 (or an implied share price of $21.76).

**ANSWER:** The allegations in paragraph 73 purport to paraphrase or characterize detailed documented financial transactions and loan agreements.   To the extent that such characterizations are inconsistent with the cited transaction and loan agreements, Alerus denies the allegations in paragraph 73.

74.     Based on internal KPC documents describing the distribution of qualified assurance fee (QAF) payments, Eureka Capital Partners—the sell-side financial advisor to Dr. Chaudhuri in the 2015 ESOP Transaction—received .6% of any net payments received by KPC or its subsidiaries under California's hospital quality assurance fee (QAF) program based on services from January 1, 2017, to December 31, 2024, as consideration for its services in connection with the 2015 ESOP Transaction.

**ANSWER:**  The allegations in paragraph 74 purport to paraphrase or characterize detailed documented financial transactions and loan agreements.   To the extent that such characterizations are inconsistent with the cited transaction and loan agreements, Alerus denies the allegations in paragraph 74.

ALERUS'S ANSWER TO PLAINTIFF'S FIRST – 36
AMENDED COMPLAINT

75.     Based on the Stock Purchase Agreement entered into as part of the 2015 ESOP Transaction, Defendant Kali Pradip Chaudhuri received additional consideration in the 2015 ESOP Transaction, including KPC's commitment to paying fees to Chaudhuri's management company.

**ANSWER:**  The allegations in paragraph 75 purport to paraphrase or characterize detailed documented financial transactions and loan agreements.   To the extent that such characterizations are inconsistent with the cited transaction and loan agreements, Alerus denies the allegations in paragraph 75.

76.     The total consideration for the 2015 ESOP Transaction thus consisted of at least the cash, notes, QAF payment rights, and management fee commitments conveyed to Dr. Chaudhuri as well as the QAF payment rights conveyed to Mr. Thomas and SPCP.

**ANSWER:**  The allegations in paragraph 76 purport to paraphrase or characterize detailed documented financial transactions and loan agreements.   To the extent that such characterizations are inconsistent with the cited transaction and loan agreements, Alerus denies the allegations in paragraph 76.

77.     To finance the purchase, the Plan entered into a $207,574,000 term loan agreement with KPC. The remaining $10,000,000 was paid by a contribution of cash from KPC to the Plan.

**ANSWER:**  The allegations in paragraph 77 purport to paraphrase or characterize detailed documented financial transactions and loan agreements.   To the extent that such characterizations are inconsistent with the cited transaction and loan agreements, Alerus denies the allegations in paragraph 77.

78.     This purchase price for the KPC stock component of the 2015 ESOP Transaction represented a more than 419% increase over the equity value implied

ALERUS'S ANSWER TO PLAINTIFF'S FIRST – 37
AMENDED COMPLAINT

by Defendant Kali Pradip Chaudhuri's 2013 proposed and presumed price to acquire the company's stock when it was known as Integrated Health.

**ANSWER:**  Alerus denies the allegations in paragraph 78.

79.    This purchase price for the KPC stock component of the 2015 ESOP Transaction also represented an increase of between 774% and 2,133% from the equity value implied by the prices at which Integrated Health traded on the public market in between April 2012 and March 2013.

**ANSWER:**  Alerus denies the allegations in paragraph 79.

80.    This purportedly spectacular rise in KPC's equity value is belied by KPC's operating results.  In a June 16, 2018 interview with KPC's then-CEO Suzanne Richards, in Modern Healthcare, Ms. Richards candidly admitted that approximately three years before KPC was losing money: "When I came in, the facilities were not even close to making budget, and when you can't make budget you can't have a profit."  She further acknowledged that her tenure had been marked by "reductions in force."  Indeed, the introductory section of the interview explained that when Ms. Richards started at KPC, the four hospitals that KPC then-owned "were losing $2.5 million a month."  A June 19, 2015 article in the Orange County Business Journal, "KPC Health Names Richards CEO of Health Operations," reported that she was named to that position as of June 2015 and had served as interim CEO since October 2014.

**ANSWER:**  Paragraph 80 purports to paraphrase, quote, and/or cite to a certain article and interview.  Alerus relies on those sources to speak for themselves, rather than on Plaintiff's characterizations thereof.  To the extent that such characterizations are inconsistent with the cited sources, Alerus denies the allegations in paragraph 80.  Alerus denies the remaining allegations in paragraph 80.

81.    As shown by the chart below, the reported equity value of the ESOP's KPC stock declined precipitously following the 2015 Transaction and has remained far below the purchase price:



**ANSWER:**  Alerus denies the allegations in paragraph 81.

82.    As explained by the Form 5500s filed with the Department of Labor, the funds borrowed by the ESOP to finance the purchase of KPC are "collateralized by the unallocated shares of stock and guaranteed by the Company."  But "[t]he lenders have no rights against shares once they are allocated under the ESOP."  As explained by the Form 5500, the financial statements present separately the assets and liabilities of the stock allocated to the

accounts of participants from the assets and liabilities of the unallocated shares. As the acquisition indebtedness is only a liability of the unallocated shares, the acquisition debt cannot explain the post-acquisition depressed price of the allocated shares.

**ANSWER:**  Paragraph 82 purports to paraphrase, quote, and/or cite to certain Form 5500s.  Alerus relies on those sources to speak for themselves, rather than on Plaintiff's characterizations thereof.  To the extent such characterizations are inconsistent with the cited Form 5500s, Alerus denies the allegations in paragraph 82.  Alerus denies the remaining allegations in paragraph 82.

83.    According to the 2015 Form 5500 filed with the Department of Labor on June 15, 2017, the purported fair market value for the KPC stock held by the ESOP was $27,600,000 as of August 31, 2015.

**ANSWER:** Paragraph 83 purports to paraphrase and/or cite to a Form 5500. Alerus relies on the document to speak for itself, rather than on Plaintiff's characterizations thereof.  To the extent such characterizations are inconsistent with the cited Form 5500, Alerus denies the allegations in paragraph 83.

84.    According to the 2015 Form 5500 filed with the Department of Labor on June 15, 2017, the purported fair market value for the KPC stock held by the ESOP was $56,000,000 as of August 31, 2016.

**ANSWER:** Paragraph 84 purports to paraphrase and/or cite to a Form 5500. Alerus relies on the document to speak for itself, rather than on Plaintiff's characterizations thereof.  To the extent such characterizations are inconsistent with the cited Form 5500, Alerus denies the allegations in paragraph 84.

85.    According to the 2016 Form 5500 filed with the Department of Labor on February 19, 2019, the purported fair market value for the KPC stock held by the ESOP was $103,000,000 as of August 31, 2017.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ANSWER:** Paragraph 85 purports to paraphrase and/or cite to a Form 5500. Alerus relies on the document to speak for itself, rather than on Plaintiff's characterizations thereof.  To the extent such characterizations are inconsistent with the cited Form 5500, Alerus denies the allegations in paragraph 85.

86.    According to the 2017 Form 5500 filed with the Department of Labor on February 4, 2019, the purported fair market value for the KPC stock held by the ESOP was $123,000,000 as of August 31, 2018.

**ANSWER:** Paragraph 86 purports to paraphrase and/or cite to a Form 5500. Alerus relies on the document to speak for itself, rather than on Plaintiff's characterizations thereof.  To the extent such characterizations are inconsistent with the cited Form 5500, Alerus denies the allegations in paragraph 86.

87.    According to the 2018 Form 5500 filed with the Department of Labor on July 9, 2020, the purported fair market value for the KPC stock held by the ESOP was $123,500,000 as of August 31, 2019.

**ANSWER:**  The allegations in Paragraph 87 purport to paraphrase and/or cite to a certain Form 5500.  Alerus relies on that source to speak for itself, rather than on Plaintiff's characterizations thereof.  To the extent that such characterizations are inconsistent with the cited Form 5500, Alerus denies the allegations in the first sentence of paragraph 87.

88.    The ESOP paid more than fair market value for KPC stock in the 2015 ESOP Transaction.  Based on the information available prior to filing this lawsuit and information obtained in discovery, the purchase price for the 2015 ESOP Transaction was based in part on a valuation report that was unreliable and did not take into account the fact that less than two years before the transaction the selling shareholder had valued the Company at less than a quarter of the sale price

ALERUS'S ANSWER TO PLAINTIFF'S FIRST – 41
AMENDED COMPLAINT

and that during the intervening period the Company had experienced substantial financial distress, instability, layoffs, and persistent inability to make budgets.

**ANSWER:** Alerus denies the allegations in paragraph 88.

89.    A prudent fiduciary who had conducted a prudent investigation would have concluded that the ESOP was paying more than fair market value for the KPC shares and/or the debt incurred in connection with the Transaction was excessive. Defendant Kali Pradip Chaudhuri's proposal to acquire the Company's predecessor in late 2013 was a matter of public record and was known or ought to have been known to the fiduciaries of the Plan.

**ANSWER:** Alerus denies the allegations in paragraph 89.

90.    All of the Defendants would have had access to the financial information upon which the valuation for the 2015 ESOP Transaction was based and the fiduciaries for the ESOP would have had access to the valuation report itself.  The valuation report was not provided to the participants of the ESOP.  And the Plan Administrator refused to provide a copy of the valuation to Plaintiff pursuant to her ERISA § 104(b) request.

**ANSWER:**  Alerus lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 90, and therefore denies them.

91.    Based on documents filed with the Securities and Exchange Commission, Defendant SPCP Group had been an investor in Integrated Health since at least 2010 and participated in the 2014 transaction by which Dr. Chaudhuri took Integrated Healthcare private. Defendant SPCP Group was thus aware that Dr. Chaudhuri was the chairman and CEO of KPC.

**ANSWER:**  The allegations in paragraph 91 purport to paraphrase and/or cite to a certain documents filed with the Securities and Exchange Commission. Alerus relies on that source to speak for itself, rather than on Plaintiff's

characterizations thereof.  To the extent that such characterizations are inconsistent with the cited documents, Alerus denies the allegations in the first sentence of paragraph 91.  Alerus lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of paragraph 91, and therefore denies them.  Alerus further denies that SPCP Group has been added as a Defendant in this case pursuant to the Court's August 6, 2021 Order (Dkt. No. 174).

92.     Based on email correspondence between Defendant Thomas, employees of Eureka Capital (KPC's financial advisor for the 2015 ESOP Transaction), and Thomas Banks (an analyst with Defendant SPCP Group), SPCP Group was provided with information regarding the aggregate transaction value, the consideration paid to Defendant Kali Pradip Chaudhuri in connection with the 2015 ESOP Transaction. Defendant SPCP Group thus knew that the purchase price for KPC stock in the 2015 ESOP Transaction was dramatically in excess of the equity value implied by Dr. Chaudhuri's 2014 purchase of 100% of the outstanding stock of Integrated Health.

**ANSWER:** Alerus lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 92, and therefore denies them. Alerus denies the allegations in the first sentence of paragraph 92.  Alerus further denies that SPCP Group has been added as a Defendant in this case pursuant to the Court's August 6, 2021 Order (Dkt. No. 174).

93.     Based on the Warrant Purchase Agreement entered into by Defendant SPCP Group in connection with the 2015 ESOP Transaction, SPCP Group knew both that the 2015 ESOP Transaction involved the sale of 100% of the stock of KPC to an employee stock ownership plan and that Alerus was acting on behalf of the Plan in the 2015 ESOP Transaction in its capacity as trustee.

ALERUS'S ANSWER TO PLAINTIFF'S FIRST – 43
AMENDED COMPLAINT

1

2

**ANSWER:**  The allegations in paragraph 93 purport to paraphrase or characterize detailed documented financial transactions and loan agreements.  To the extent that such characterizations are inconsistent with the cited transaction and loan agreements, Alerus denies the allegations in paragraph 93.  Alerus lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 93, and therefore denies them.  Alerus further denies that SPCP Group has been added as a Defendant in this case pursuant to the Court's August 6, 2021 Order (Dkt. No. 174).

94.    Defendant SPCP Group participated in the negotiations leading up to the 2015 ESOP Transaction, and reviewed and commented on the terms of draft agreements and transaction terms.

**ANSWER:**  Alerus denies the allegations in paragraph 94.  Alerus further denies that SPCP Group has been added as a Defendant in this case pursuant to the Court's August 6, 2021 Order (Dkt. No. 174).

95.    Even after the 2015 ESOP Transaction closed, the decline in value of the KPC stock owned by the ESOP following the 2015 Transaction should have caused Alerus as well as the ESOP Committee (which consisted of all of the Director Defendants), at a minimum, to investigate whether the ESOP had paid more than fair market value in the 2015 ESOP Transaction.  To the extent that any of the fiduciary Defendants had conducted such an investigation, that investigation as well as any corrective measures would have been reported in one of the Form 5500s filed with the Department of Labor.  As none of the Form 5500s report any such investigation or corrective actions, none of the fiduciary Defendants investigated whether fiduciary violations had occurred in the 2015 ESOP Transaction despite red flags that should have raised concerns.

**ANSWER:**  Alerus denies the allegations in paragraph 95.

ALERUS'S ANSWER TO PLAINTIFF'S FIRST – 44
AMENDED COMPLAINT

**Defendant Dr. Kali Pradip Chaudhuri Continues to Use the Employee Owned Company to Benefit Insiders**

96.     Despite his sale of the Company to the ESOP in 2015 and the ESOP paying a control premium in the 2015 ESOP Transaction, Defendant Dr. Kali Pradip Chaudhuri continues to exercise operational control over KPC both directly and through a group of personally loyal insiders he has installed as directors and directors of the Company.  According to an information statement filed with the California Secretary of State on March 7, 2019, Dr. Chaudhuri is the CEO of KPC as well as the Chairman of the Board.

**ANSWER:**  The allegations in the first sentence of paragraph 96 state legal conclusions, to which no response is required.  To the extent a response is required, Alerus denies them.  Alerus admits that Kali Pradip Chaudhuri currently serves as the Chairman and Chief Executive Officer of KPC Healthcare, Inc.  Alerus lacks knowledge or information sufficient to form a belief as to what Plaintiff's use of the phrase "information statement" refers to and therefore denies this allegation. Alerus denies the remaining allegations in paragraph 96.

97.     According to an information statement filed with the California Secretary of State on March 7, 2019, William E. Thomas is the secretary of and a member of the Board of Directors of KPC.  According to a News Release by University of California Riverside dated June 8, 2018, Defendant Thomas is the Executive Vice-President and General Counsel of the KPC Group of Companies. According to information from the California Bar website directory of lawyers, Defendant Thomas lists his business address as the headquarters for KPC Group. Even before joining KPC Group, Defendant Thomas was Dr. Chaudhuri's attorney.

**ANSWER:**  Alerus admits that William E. Thomas is currently the corporate secretary and a member of the Board of Directors of KPC Healthcare,

ALERUS'S ANSWER TO PLAINTIFF'S FIRST – 45
AMENDED COMPLAINT

Inc.  Alerus lacks knowledge or information sufficient to form a belief as to what Plaintiff's use of the phrase "information statement" refers to and therefore denies this allegation.  The allegations in the second and third sentences of paragraph 79 purport to paraphrase and/or cite to a certain news release and a website.  Alerus relies on those sources to speak for themselves, rather than on Plaintiff's characterizations thereof.  To the extent such characterizations are inconsistent with the cited sources, Alerus denies the allegations in the second and third sentences of paragraph 97.  Alerus lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the fourth sentence of paragraph 97, and therefore denies them.  Alerus denies the remaining allegations of paragraph 97.

98.     According to an information statement filed with the California Secretary of State on March 7, 2019, Defendant Kali Priyo Chaudhuri is the chief financial officer and a director of the Company.  Defendant Kali Priyo Chaudhuri is Defendant Kali Pradip Chaudhuri's son.

**ANSWER:**  The first sentence of paragraph 98purports to paraphrase and/or cite to a certain statements filed with the California Secretary of State.  Alerus relies on those sources to speak for themselves, rather than on Plaintiff's characterizations thereof.  To the extent such characterizations are inaccurate, Alerus denies the allegations in paragraph 98.  Alerus lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 98 and therefore denies them.

99.     Together, Defendant Kali Pradip Chaudhuri, his lawyer, and his son constitute a majority bloc of the five person board of directors of KPC.

ALERUS'S ANSWER TO PLAINTIFF'S FIRST – 46
AMENDED COMPLAINT

**ANSWER:**  Paragraph 99 states a legal conclusion to which no response is required.  To the extent a response is required, Alerus denies the allegations in paragraph 99.

100.   According to a press release issued by "KPC Health" on December 4, 2018, on that date Dr. Sumanta Chaudhuri was appointed the Chief Medical Officer for Hemet Valley Medical Center and Menifee Valley Medical Center, two of the hospitals affiliated with KPC.  According to a video posted to YouTube by Defendant Kali Pradip Chaudhuri on January 8, 2018, Dr. Sumanta Chaudhuri is the Defendant's daughter.

**ANSWER:**  Paragraph 100 purports to paraphrase and/or cite to a certain press release and YouTube video.  Alerus relies on those sources to speak for themselves, rather than on Plaintiff's characterizations thereof.  To the extent such characterizations are inaccurate, Alerus denies the allegations in paragraph 100.

101.   According to an undated press release issued by "KPC Health," KPC is a "subsidiary" of KPC Group.  KPC Group is Defendant Kali Pradip Chaudhuri's $10 billion conglomerate with interests in real state, pharmaceuticals, and engineering as well as healthcare.  Upon information and belief, KPC is simply treated as one of the group of companies that KPC Group owns.

**ANSWER:**  Paragraph 101 purports to paraphrase and/or cite to a certain press release.  Alerus relies on that source to speak for itself, rather than on Plaintiff's characterizations thereof.  To the extent such characterizations are inaccurate, Alerus denies the allegations in paragraph 101.  Alerus lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 101 and therefore denies them.

**Relevant Provisions of the Plan Document**

*Definitions*

ALERUS'S ANSWER TO PLAINTIFF'S FIRST – 47
AMENDED COMPLAINT

102.    Article I of the Plan Document defines the following terms as follows:

a.    **ESOP Committee**: "ESOP Committee" means the KPC Healthcare Holdings, Inc. Employee Stock Ownership Plan Committee, which members are appointed by the Board, as from time to time constituted.

b.    **Fiduciary**: "Fiduciary" means any person who: (a) exercises any discretionary authority or discretionary control and management of this Plan or exercises any authority or control and management or disposition of Plan assets; (b) renders investment advice for a fee or other compensation, direct or indirect, with respect to any monies or other property of the Trust or has any authority or responsibility to do so; or (c) has any discretionary authority or discretionary responsibility in the management of this Plan and the Trust, including, but not limited to, the Trustee, the ESOP Committee, and any person designated under ERISA Section 405(c)(1)(B).

c.    **Plan Administrator**: "Plan Administrator" is the ESOP Committee unless the Company designates another person or persons to hold the position of Plan Administrator.  In addition to its other duties, the Plan Administrator has full responsibility for compliance with the reporting and disclosure rules under ERISA.

d.    **Trust**: "Trust" means the KPC Healthcare, Inc. Stock Ownership Trust which is and becomes a part of this Plan.

e.    **Trustee**: "Trustee" means the trustee or trustees acting at the time in question under the Trust, and its or his or her or their successor(s) as such.

**ANSWER:**  Paragraph 102 purports to paraphrase, quote, and/or cite to Plan provisions.  Alerus relies on those provisions to speak for themselves, rather than

ALERUS'S ANSWER TO PLAINTIFF'S FIRST – 48
AMENDED COMPLAINT

on Plaintiff's characterizations thereof.  To the extent such characterizations are inaccurate, Alerus denies the allegations in paragraph 102.

103.   Section 11.15 of the Plan Document provides that the "Named Fiduciaries" of this Plan are (1) the Trustee, (2) the ESOP Committee, (3) the Appeal Committee (if appointed), and (4) any Investment Manager appointed hereunder.

**ANSWER:**  Paragraph 103 purports to paraphrase, quote, and/or cite to Plan provisions.  Alerus relies on those provisions to speak for themselves, rather than on Plaintiff's characterizations thereof.  To the extent such characterizations are inaccurate, Alerus denies the allegations in paragraph 103.

*The ESOP Committee*

104.   Section 9.1 of the Plan Document provides that "the Company [i.e. KPC] may appoint an ESOP Committee to administer the Plan.  In the absence of an ESOP Committee, the Board of Directors assumes the powers, duties and responsibilities of the ESOP Committee."

**ANSWER:**  Paragraph 104 purports to paraphrase, quote, and/or cite to Plan provisions.  Alerus relies on those provisions to speak for themselves, rather than on Plaintiff's characterizations thereof.  To the extent such characterizations are inaccurate, Alerus denies the allegations in paragraph 104.

105.   Section 9.3 of the Plan Document provides that "the ESOP Committee is empowered to assist the Trustee to satisfy and operate this Plan in accordance with the terms of this Plan, the Trust, the Code, and ERISA."

**ANSWER:**  Paragraph 105 purports to paraphrase, quote, and/or cite to Plan provisions.  Alerus relies on those provisions to speak for themselves, rather than on Plaintiff's characterizations thereof.  To the extent such characterizations are inaccurate, Alerus denies the allegations in paragraph 105.

106.   Section 9.4 of the Plan Document provides that the ESOP Committee has full discretion and authority to perform the following powers and duties, among others:

   a.   To engage the service of agents whom it may deem advisable to assist it with the performance of its duties.

   b.   To engage the services of an Investment Manager or Managers (as defined in ERISA Section 3(38) each of whom will have full power and authority to manage, acquire or dispose (or direct the Trustee with respect to acquisition or disposition) of any Plan asset under its control.

   c.   To construe and interpret this Plan and the rules and regulations adopted and to answer all questions arising in the administration interpretation and application of this Plan document and documents related to this Plan's operation.

   d.   To establish procedures, correct any defect, and resolve any inconsistency in such manner and to such extent as shall be necessary or advisable to carry out the purpose of this Plan.

**ANSWER:** Paragraph 106 purports to paraphrase and/or cite to Plan provisions.  Alerus relies on those provisions to speak for themselves, rather than on Plaintiff's characterizations thereof.  To the extent such characterizations are inaccurate, Alerus denies the allegations in paragraph 106.

107.   Section 9.6 of the Plan Document provides that "the decision of a majority of the members of the ESOP Committee appointed and qualified controls."

**ANSWER:**  Paragraph 107 purports to paraphrase, quote, and/or cite to Plan provisions.  Alerus relies on those provisions to speak for themselves, rather than

ALERUS'S ANSWER TO PLAINTIFF'S FIRST – 50
AMENDED COMPLAINT

on Plaintiff's characterizations thereof.  To the extent such characterizations are inaccurate, Alerus denies the allegations in paragraph 107.

*Trustee*

108.   Section 11.15 of the Plan Document provides that "[t]he ESOP Committee shall have the sole responsibility for the administration of this Plan"

**ANSWER:**  Paragraph 108 purports to paraphrase, quote, and/or cite to Plan provisions.  Alerus relies on those provisions to speak for themselves, rather than on Plaintiff's characterizations thereof.  To the extent such characterizations are inaccurate, Alerus denies the allegations in paragraph 108.

109.   Section 11.15 of the Plan Document provides that the Trustee shall have the sole responsibility to, among other things, "determine that the purchase price paid to purchase Qualifying Employer Securities does not violate the prohibited transaction rules...."

**ANSWER:** Paragraph 109 purports to paraphrase, quote, and/or cite to Plan provisions.  Alerus relies on those provisions to speak for themselves, rather than on Plaintiff's characterizations thereof.  To the extent such characterizations are inaccurate, Alerus denies the allegations in paragraph 109.

**Relevant Provisions of the Trust Agreement**

110.   Section 2.2 of the Trust Agreement provides that the Trustee "is the sole discretionary fiduciary with respect to borrowing money with respect to the purpose of purchasing Employer Securities and for the purchase or sale of Employer Securities."

**ANSWER:**  Paragraph 110 purports to paraphrase, quote, and/or cite to Trust provisions.  Alerus relies on those provisions to speak for themselves, rather than on Plaintiff's characterizations thereof.  To the extent such characterizations are inaccurate, Alerus denies the allegations in paragraph 110.

111.   Section 2.4(a) of the Trust Agreement provides that the Trustee has "full discretion and authority. to invest the Trust Fund primarily in Employer Securities (provided the Trustee does not pay in excess of "Adequate consideration" and such purchase of Employer Securities would not otherwise constitute a "prohibited transaction" as such terms are defined by ERISA and the Code)"

**ANSWER:** Paragraph 111 purports to paraphrase, quote, and/or cite to Trust provisions.  Alerus relies on those provisions to speak for themselves, rather than on Plaintiff's characterizations thereof.  To the extent such characterizations are inaccurate, Alerus denies the allegations in paragraph 111.

112.   Section 6.4 of the Trust Agreement provides that the Company shall fill any vacancy in the office of Trustee.

**ANSWER:**  Paragraph 112 purports to paraphrase and/or cite to Trust provisions.  Alerus relies on those provisions to speak for themselves, rather than on Plaintiff's characterizations thereof.  To the extent such characterizations are inaccurate, Alerus denies the allegations in paragraph 112.

## COUNT I

**Engaging in Prohibited Transaction Forbidden by ERISA §§ 406(a), 29 U.S.C. §§ 1106(a), Against Defendants Alerus, Dr. Kali Pradip Chaudhuri, and William Thomas**

113.   Plaintiff incorporates the preceding paragraphs as though set forth herein.

**ANSWER:**  Alerus incorporates its answers as though set forth herein.

114.   ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1), requires that a plan fiduciary "shall not cause the plan to engage in a transaction, if he knows or should

know that such transaction constitutes a direct or indirect (A) sale or exchange, or leasing of any property between the plan and a party in interest," or a "(D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan."

**ANSWER:**  Paragraph 114 purports to paraphrase, quote, and/or cite to certain ERISA provisions.  Alerus relies on those provisions to speak for themselves, rather than on Plaintiff's characterizations thereof.  To the extent that characterization is inconsistent with the provisions of ERISA, Alerus denies the allegations in paragraph 114.

115.   ERISA § 3(14), 29 U.S.C. § 1002(14) defines a "party in interest" to include (A) any fiduciary ... of such employee benefit plan", (E) a relative -¬which includes a spouse, ancestor, lineal descendant or the spouse of a lineal descendant - - of a fiduciary, (G) a trust of or in which 50 percent or more the beneficial interest of such trust is held by a fiduciary of such plan, and (H) an employee, officer or director or a 10 percent or more shareholder of an employer covered by the Plan.

**ANSWER:**  Paragraph 115 purports to paraphrase, quote, and/or cite to certain ERISA provisions.  Alerus relies on those provisions to speak for themselves, rather than on Plaintiff's characterizations thereof.  To the extent that characterization is inconsistent with the provisions of ERISA, Alerus denies the allegations in paragraph 115.  The allegations in the second sentence of paragraph 115 state legal conclusions, to which no response is required.  To the extent a response is required, Alerus denies the allegations in the second sentence of paragraph 115.

116.   At least as a result of being a fiduciary of the ESOP, and as a result of being an officer of and director of KPC, Defendant Dr. Kali Pradip Chaudhuri qualified as a party in interest within the meaning of ERISA § 3(14).

**ANSWER:**  The allegations in paragraph 116 state legal conclusions, to which no response is required.  To the extent a response is required, Alerus denies the allegations in the second sentence of paragraph 116.

117.   At least as a result of being a fiduciary of the ESOP, and as a result of being an officer of and director of KPC, Defendant Thomas qualified as a party in interest within the meaning of ERISA § 3(14).

**ANSWER:**  The allegations in paragraph 117 state legal conclusions, to which no response is required.  To the extent a response is required, Alerus denies the allegations in the second sentence of paragraph 117.

118.   ERISA § 408(e), 29 U.S.C. § 1108(e) provides a conditional exemption from the prohibited transaction rules for sale of employer securities to or from a plan if a sale is made for adequate consideration.  The burden is on the fiduciary and the parties-in-interest to demonstrate that conditions for the exemption are met.

**ANSWER:**  Paragraph 118 purports to paraphrase and/or cite to certain ERISA provisions.  Alerus relies on those provisions to speak for themselves, rather than on Plaintiff's characterizations thereof.  Paragraph 98 further states legal conclusions, to which no response is required.  To the extent a response is required, Alerus denies the allegations in paragraph 118.

119.   ERISA § 3(18)(B) defines adequate consideration as "the fair market of the asset as determined in good faith by the trustee or named fiduciary."  ERISA § 3(18)(B) requires that the fiduciary or party-in-interest show that the price paid must reflect the fair market value of the asset at the time of the transaction, and the fiduciary conducted a prudent investigation to determine the fair market value of the asset.

ALERUS'S ANSWER TO PLAINTIFF'S FIRST – 54
AMENDED COMPLAINT

**ANSWER:**  Paragraph 119 purports to paraphrase, quote, and/or cite to certain ERISA provisions.  Alerus relies on those provisions to speak for themselves, rather than on Plaintiff's characterizations thereof.  Paragraph 119 further states legal conclusions, to which no response is required.  To the extent a response is required, Alerus denies the allegations in paragraph 119.

120.    As Trustee, Alerus caused the Plan to engage in a prohibited transaction in violation of ERISA §§ 406(a)(1)(A) and (D), 29 U.S.C. §§ 1106(a)(1)(A) and (D), by failing to ensure that the ESOP paid no more than fair market value for KPC stock purchased in the 2015 ESOP Transaction.  Specifically, the ESOP paid more than fair market value for shares sold by Defendant Kali Pradip Chaudhuri.

**ANSWER:**  Alerus denies the allegations in paragraph 120.

121.    As an officer and director of KPC, a fiduciary of the ESOP in the 2015 ESOP Transaction, and as the purchaser of Integrated Health, the selling shareholder of KPC in the 2015 ESOP Transaction, Defendant Kali Pradip Chaudhuri was aware of facts sufficient to establish that the 2015 ESOP Transaction constituted a prohibited transaction with parties-in-interest.  As a party in interest, Defendant Kali Pradip Chaudhuri is liable for the violations of ERISA § 406(a)(1)(A) and (D), 29 U.S.C. § 1106(a)(1)(A) and (D).

**ANSWER:**  Paragraph 121 states legal conclusions, to which no response is required.  To the extent a response is required, Alerus denies the allegations in paragraph 121.

122.    As an officer and director of KPC, a fiduciary of the ESOP in the 2015 ESOP Transaction, and as a seller of warrants to KPC as part of the 2015 ESOP Transaction, Defendant William Thomas was aware of facts sufficient to establish that the 2015 ESOP Transaction constituted a prohibited transaction with parties-in

ALERUS'S ANSWER TO PLAINTIFF'S FIRST – 55
AMENDED COMPLAINT

interest. As a party in interest, Defendant William Thomas is liable for the violations of ERISA § 406(a)(1)(A) and (D), 29 U.S.C. § 1106(a)(1)(A) and (D).

**ANSWER:**  Paragraph 122 states legal conclusions, to which no response is required.  To the extent a response is required, Alerus denies the allegations in paragraph 122.

## COUNT II

## Engaging in Prohibited Transaction Forbidden by ERISA §§ 406(b), 29 U.S.C. §§ 1106(a)-(b), Against Dr. Defendants Kali Pradip Chaudhuri and William Thomas

123.   Plaintiff incorporates the preceding paragraphs as though set forth herein.

**ANSWER:**  Count II is brought solely against Kali Pradip Chaudhuri; therefore, Alerus is not required to answer.  Alerus reserves the right to amend this Answer to respond to the allegations contained in Count II as required by the Court and/or the Federal Rules of Civil Procedure.

124.   ERISA § 406(b), 29 U.S.C. § 1106(b), mandates that a plan fiduciary shall not (1) "act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants," or (2) "deal with the assets of the plan in his own interest or for his own account," or (3) "receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

**ANSWER:**  Count II is brought solely against Kali Pradip Chaudhuri; therefore, Alerus is not required to answer.  Alerus reserves the right to amend this

Answer to respond to the allegations contained in Count II as required by the Court and/or the Federal Rules of Civil Procedure.

125.   As chairman of the Board of Directors of KPC and in turn a member of the ESOP Committee, Defendant Kali Pradip Chaudhuri was a fiduciary of the ESOP at the time of the 2015 ESOP Transaction.

**ANSWER:**  Count II is brought solely against Kali Pradip Chaudhuri; therefore, Alerus is not required to answer.  Alerus reserves the right to amend this Answer to respond to the allegations contained in Count II as required by the Court and/or the Federal Rules of Civil Procedure.

126.   As a member of the Board of Directors of KPC and in turn a member of the ESOP Committee, Defendant Thomas was a fiduciary of the ESOP at the time of the 2015 ESOP Transaction.

**ANSWER:** Count II is brought solely against Kali Pradip Chaudhuri; therefore, Alerus is not required to answer.  Alerus reserves the right to amend this Answer to respond to the allegations contained in Count II as required by the Court and/or the Federal Rules of Civil Procedure.

127.   By selling his shares of KPC stock to the Plan in the 2015 ESOP Transaction, Dr. Chaudhuri acted in a transaction involving a plan where his own interests were adverse to those of the ESOP within the meaning of ERISA § 406(b)(1), he dealt with the assets of the Plan, which purchased his KPC stock, in his own interest within the meaning of ERISA § 406(b)(2), and as a result of the receipt of the proceeds from the sale of his KPC stock received consideration for the his own personal account in connection with a transaction involving assets of a plan within the meaning of ERISA § 406(b)(3).

**ANSWER:**  Count II is brought solely against Kali Pradip Chaudhuri; therefore, Alerus is not required to answer.  Alerus reserves the right to amend this

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Answer to respond to the allegations contained in Count II as required by the Court and/or the Federal Rules of Civil Procedure.

128.   ERISA § 408(e), 29 U.S.C. § 1108(e) provides a conditional exemption from the prohibited transaction rules for sale of employer securities to or from a plan if a sale is made for adequate consideration.  The burden is on the fiduciary to demonstrate that conditions for the exemption are met.

**ANSWER:**  Count II is brought solely against Kali Pradip Chaudhuri; therefore, Alerus is not required to answer.  Alerus reserves the right to amend this Answer to respond to the allegations contained in Count II as required by the Court and/or the Federal Rules of Civil Procedure.

129.   ERISA § 3(18)(B) defines adequate consideration as "the fair market of the asset as determined in good faith by the trustee or named fiduciary."  ERISA § 3(18)(B) requires that the price paid must reflect the fair market value of the asset, and the fiduciary must conduct a prudent investigation to determine the fair market value of the asset.

**ANSWER:**  Count II is brought solely against Kali Pradip Chaudhuri; therefore, Alerus is not required to answer.  Alerus reserves the right to amend this Answer to respond to the allegations contained in Count II as required by the Court and/or the Federal Rules of Civil Procedure.

130.   By selling his shares of KPC stock to the KPC ESOP in the 2015 ESOP Transaction, Defendant Kali Pradip Chaudhuri engaged in a prohibited transaction in violation of ERISA §§ 406(b), 29 U.S.C. §§ 1106(b) for which he is liable to restore the losses caused by these prohibited transactions, to disgorge profits or other appropriate remedial and equitable relief.

**ANSWER:**  Count II is brought solely against Kali Pradip Chaudhuri; therefore, Alerus is not required to answer.  Alerus reserves the right to amend this

ALERUS'S ANSWER TO PLAINTIFF'S FIRST – 58
AMENDED COMPLAINT

1

2
Answer to respond to the allegations contained in Count II as required by the Court
and/or the Federal Rules of Civil Procedure.

3

4
131.   By selling his warrants to purchase KPC stock to KPC in the 2015

5
ESOP Transaction, Defendant William Thomas received consideration for his own
personal account from a party dealing with the ESOP in connection with a

6
transaction involving the assets of the ESOP in violation of ERISA §§ 406(b)(3),

7
29 U.S.C. §§ 1106(b)(3), for which he is liable to restore the losses caused by these

8
prohibited transactions, to disgorge profits or other appropriate remedial and

9
equitable relief.

10
**ANSWER:**  Count II is brought solely against Kali Pradip Chaudhuri;

11
therefore, Alerus is not required to answer.  Alerus reserves the right to amend this

12
Answer to respond to the allegations contained in Count II as required by the Court

13
and/or the Federal Rules of Civil Procedure.

14
132.   As an officer and director of KPC, a fiduciary of the ESOP in the

15
2015 ESOP Transaction, as the purchaser of Integrated Health, and as the selling

16
shareholder of KPC in the 2015 ESOP Transaction, Defendant Dr. Kali Pradip

17
Chaudhuri was aware of facts sufficient to establish that the 2015 ESOP

18
Transaction constituted a prohibited transaction with a Plan fiduciary, Mr. Thomas.

19
As a party in interest, Defendant Kali Pradip Chaudhuri is liable for the violations

20
of ERISA § 406(b), 29 U.S.C. § 1106(b), and/or is subject to appropriate equitable

21
relief for the violations of ERISA § 406(b), 29 U.S.C. § 1106(b).

22
**ANSWER:**  Count II is brought solely against Kali Pradip Chaudhuri;

23
therefore, Alerus is not required to answer.  Alerus reserves the right to amend this

24
Answer to respond to the allegations contained in Count II as required by the Court

25
and/or the Federal Rules of Civil Procedure.

26

27

28
ALERUS'S ANSWER TO PLAINTIFF'S FIRST – 59
AMENDED COMPLAINT

133.   As an officer and director of KPC, a fiduciary of the ESOP in the 2015 ESOP Transaction, and as a seller of warrants to KPC as part of the 2015 ESOP Transaction, Defendant William Thomas was aware of facts sufficient to establish that the 2015 ESOP Transaction constituted a prohibited transaction with a Plan fiduciary, Dr. Chaudhuri. As a party in interest, Defendant William Thomas is liable for the violations of ERISA § 406(b), 29 U.S.C. § 1106(b), and/or is subject to appropriate equitable relief for the violations of ERISA § 406(b), 29 U.S.C. § 1106(b).

**ANSWER:**  Count II is brought solely against Kali Pradip Chaudhuri; therefore, Alerus is not required to answer.  Alerus reserves the right to amend this Answer to respond to the allegations contained in Count II as required by the Court and/or the Federal Rules of Civil Procedure.

## COUNT III

**Breach of Fiduciary Duty Under ERISA §§ 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A) and (B) Against Defendant Alerus, and Knowing Participation in Such Breaches by Defendants Kali Pradip Chaudhuri and William Thomas**

134.   Plaintiff incorporates the preceding paragraphs as though set forth herein.

**ANSWER:**  Alerus incorporates its answers as though set forth herein.

135.   ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries, (A) for the exclusive purpose of providing benefits to participants and the beneficiaries of the plan, (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

**ANSWER:**  Paragraph 135 purports to paraphrase and/or cite to certain ERISA provisions.  Alerus relies on those provisions to speak for themselves, rather than on Plaintiff's characterizations thereof.  To the extent that characterization is inconsistent with the provisions of ERISA, Alerus denies the allegations in paragraph 135.

136.   In the context of a transaction involving the assets of the Plan, the duties of loyalty under ERISA § 404(a)(1)(A) and prudence under ERISA § 404(a)(1)(B) require a fiduciary to undertake an appropriate investigation to determine that the plan and its participants receives adequate consideration for the plan's assets and the participants' account in the plan.

**ANSWER:**  Paragraph 136 purports to paraphrase and/or cite to certain ERISA provisions.  Alerus relies on those provisions to speak for themselves, rather than on Plaintiff's characterizations thereof.  Paragraph 136 further states legal conclusions, to which no response is required.  To the extent a response is required, Alerus denies the allegations in paragraph 136.

137.   Pursuant to ERISA § 3(18), adequate consideration for an asset for which there is no generally recognized market means the fair market value of the asset determined in good faith by the trustee or named fiduciary pursuant to the terms of the plan and in accordance with the Department of Labor regulations.

**ANSWER:**  Paragraph 137 purports to paraphrase and/or cite to certain ERISA provisions.  Alerus relies on those provisions to speak for themselves, rather than on Plaintiff's characterizations thereof.  Paragraph 137 further states legal conclusions, to which no response is required.  To the extent a response is required, Alerus denies the allegations in paragraph 137.

138.   To fulfill its fiduciary duties, Alerus was required to undertake an appropriate and independent investigation of the fair market value of KPC stock in

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

the 2015 ESOP Transaction in order to fulfill its fiduciary duties.  Among other things, Alerus was required to conduct a thorough and independent review of any "independent appraisal," to make certain that reliance on any and all valuation experts' advice was reasonably justified under the circumstances of the 2015 ESOP Transaction; to make an honest, objective effort to read and understand the valuation reports and opinions and question the methods and assumptions that did not make sense.

**ANSWER:**  Paragraph 138 states legal conclusions, to which no response is required.  To the extent a response is required, Alerus denies the allegations in paragraph 138.

139.   An appropriate investigation would have revealed that the valuations used for and the price paid by the ESOP in the 2015 ESOP Transaction did not reflect the fair market value of the KPC stock purchased by the Plan, the 2015 ESOP Transaction was not in the best interests of the Plan participants and the 2015 ESOP Transaction would cause the ESOP to take on excessive debt.

**ANSWER:**  Alerus denies the allegations in paragraph 139.

140.   Additionally, Alerus was required to remedy the ESOP's overpayment for KPC stock after the date of the 2015 ESOP Transaction, including as necessary correcting the prohibited transaction by seeking the overpayment from Defendant Kali Pradip Chaudhuri and/or the breaching Trustee.

**ANSWER:**  Alerus denies the allegations in paragraph 140.

141.   By causing the ESOP to engage in the 2015 Transaction and failing to correct the 2015 ESOP Transaction, Alerus breached its fiduciary duties under ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A), (B) and caused losses to the Plan and the accounts of the Class Members.

**ANSWER:**  Alerus denies the allegations in paragraph 141.

142.   As an officer and director of KPC, a fiduciary of the ESOP in the 2015 ESOP Transaction, and as the purchaser of Integrated Health, the selling shareholder of KPC in the 2015 ESOP Transaction, Defendant Kali Pradip Chaudhuri was aware of sufficient facts that Alerus causing the ESOP to engage in the 2015 ESOP Transaction constituted a breach of fiduciary duty. As a party in interest who knowingly participated in the 2015 ESOP Transaction, Defendant Dr. Chaudhuri is liable for the violations of ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1) and/or is subject to appropriate equitable relief for the violations of ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).

**ANSWER:**  The allegations in  paragraph 142 state legal conclusions, to which no response is required.  To the extent a response is required, Alerus denies the allegations in paragraph 142.

143.   As an officer and director of KPC, a fiduciary of the ESOP in the 2015 ESOP Transaction, and as a seller of warrants to KPC as part of the 2015 ESOP Transaction, Defendant Thomas was aware of sufficient facts that Alerus causing the ESOP to engage in the 2015 ESOP Transaction constituted a breach of fiduciary duty. As a party in interest who knowingly participated in the 2015 ESOP Transaction, Defendant Thomas is liable for the violations of ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1) and/or is subject to appropriate equitable relief for the violations of ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).

**ANSWER:**  The allegations in paragraph 143 state legal conclusions, to which no response is required.  To the extent a response is required, Alerus denies the allegations of paragraph 143.

**COUNT IV**

**Failure to Disclose Information Required by ERISA § 102, 29 U.S.C. § 1022**

**Against the ESOP Committee Defendants as the Plan Administrator**

144.   Plaintiff incorporates the preceding paragraphs as though set forth herein.

**ANSWER:**  Count IV is brought solely against the ESOP Committee Defendants; therefore, Alerus is not required to answer.  Alerus reserves the right to amend this Answer to respond to the allegations contained in Count IV as required by the Court and/or the Federal Rules of Civil Procedure.

145.   As the Plan Administrator within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A), the ESOP Committee Defendants were obligated to comply with ERISA §§ 102 and 104(b), 29 U.S.C. § 1022 and 1024(b).

**ANSWER:** Count IV is brought solely against the ESOP Committee Defendants; therefore, Alerus is not required to answer.  Alerus reserves the right to amend this Answer to respond to the allegations contained in Count IV as required by the Court and/or the Federal Rules of Civil Procedure.

146.   ERISA § 102, 29 U.S.C. § 1022 mandates that an SPD "be furnished to participants and beneficiaries as provided in [ERISA 104(b), 29 U.S.C. §] 1024(b)" and include the information set forth in ERISA § 102(a) & (b), 29 U.S.C. § 1022(a) & (b).  The DOL Regulation, 29 C.F.R. § 2520.102-3, governing the "contents of the summary plan description," requires that "the summary plan description must accurately reflect the contents of the plans" and sets forth specific information that must be required in the SPD.

**ANSWER:**  Count IV is brought solely against the ESOP Committee Defendants; therefore, Alerus is not required to answer.  Alerus reserves the right to amend this Answer to respond to the allegations contained in Count IV as required by the Court and/or the Federal Rules of Civil Procedure.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

147.   Pursuant to ERISA § 104(b)(1), 29 U.S.C. § 1024(b)(1) the Plan Administrator was required to furnish a current version of the SPD and any modifications and changes (A) to new participants within 90 days after that person became a participant and (B) to every participant in the Plan with an updated copy of an SPD to extent that there had been changes within the last 5 years concerning information described in 29 U.S.C. § 1022.

**ANSWER:**  Count IV is brought solely against the ESOP Committee Defendants; therefore, Alerus is not required to answer.  Alerus reserves the right to amend this Answer to respond to the allegations contained in Count IV as required by the Court and/or the Federal Rules of Civil Procedure.

148.   As the Plan Administrator within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A) and a named fiduciary within the meaning of ERISA § 402(a), 29 U.S.C. § 1102(a), the ESOP Committee Defendants had fiduciary duties pursuant to ERISA § 404(a), 29 U.S.C. § 1104(a).

**ANSWER:**  Count IV is brought solely against the ESOP Committee Defendants; therefore, Alerus is not required to answer.  Alerus reserves the right to amend this Answer to respond to the allegations contained in Count IV as required by the Court and/or the Federal Rules of Civil Procedure.

149.   ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and .... (B) with "care, skill, prudence, and diligence."

**ANSWER:**  Count IV is brought solely against the ESOP Committee Defendants; therefore, Alerus is not required to answer.  Alerus reserves the right

to amend this Answer to respond to the allegations contained in Count IV as required by the Court and/or the Federal Rules of Civil Procedure.

150.   An ERISA fiduciary's duty of loyalty and prudence under ERISA § 404(a)(1)(A) and (B) includes a duty to disclose and inform.  Those duties not only require that a fiduciary comply the specific disclosure provisions in ERISA, but also require (a) a duty not to misinform, (b) an affirmative duty to inform when the fiduciary knows or should know that silence might be harmful, and (c) a duty to convey complete and accurate information material to the circumstances of the participants and beneficiaries.

**ANSWER:**  Count IV is brought solely against the ESOP Committee Defendants; therefore, Alerus is not required to answer.  Alerus reserves the right to amend this Answer to respond to the allegations contained in Count IV as required by the Court and/or the Federal Rules of Civil Procedure.

151.   The Ninth Circuit has recognized that a participant in an ERISA plan is entitled to know exactly where he stands with respect to the plan, including the benefits to which he or she may be entitled, the circumstances which may preclude him from obtaining benefits, what procedures he must follow to obtain benefits, and who are the persons to whom the management and investment of his plan funds have been entrusted.

**ANSWER:**  Count IV is brought solely against the ESOP Committee Defendants; therefore, Alerus is not required to answer.  Alerus reserves the right to amend this Answer to respond to the allegations contained in Count IV as required by the Court and/or the Federal Rules of Civil Procedure.

152.   The ESOP's Summary Plan Description dated September 1, 2017 (the "2017 SPD") is most recent SPD distributed to participants and the one provided in response to Plaintiff's ERISA § 104(b) request in February 2019.

ALERUS'S ANSWER TO PLAINTIFF'S FIRST – 66
AMENDED COMPLAINT

**ANSWER:**  Count IV is brought solely against the ESOP Committee Defendants; therefore, Alerus is not required to answer.  Alerus reserves the right to amend this Answer to respond to the allegations contained in Count IV as required by the Court and/or the Federal Rules of Civil Procedure.

153.   ERISA § 102(b), 29 U.S.C. § 1022(B) mandates that an SPD identify "the name and address of the administrator" of the Plan.  29 C.F.R. § 2520.102-3(f) requires that the SPD accurately disclose "the name, business address and business telephone number of the plan administrator as that term is defined by section 3(16) of the Act."

**ANSWER:**  Count IV is brought solely against the ESOP Committee Defendants; therefore, Alerus is not required to answer.  Alerus reserves the right to amend this Answer to respond to the allegations contained in Count IV as required by the Court and/or the Federal Rules of Civil Procedure.

154.   The 2017 SPD does not identify the name, address, or telephone number of the Plan Administrator.

**ANSWER:**  Count IV is brought solely against the ESOP Committee Defendants; therefore, Alerus is not required to answer.  Alerus reserves the right to amend this Answer to respond to the allegations contained in Count IV as required by the Court and/or the Federal Rules of Civil Procedure.

155.   ERISA § 102(b), 29 U.S.C. § 1022(b) mandates that an SPD must contain the "name and address of the person designated as agent for the service of legal process, if such person is not the administrator."  29 C.F.R. § 2520.102-3(g) requires that the SPD identify "[t]he name of the person designated as agent for service of legal process, and the address at which process may be served on such person, and in addition, a statement that service of legal process may be made upon a plan trustee or the plan administrator. While Section 12.4 of the 2017 SPD

identifies the Company as the agent of service of process, the SPD fails to state that service of process may be made on the trustee or plan administrator.

**ANSWER:** Count IV is brought solely against the ESOP Committee Defendants; therefore, Alerus is not required to answer.  Alerus reserves the right to amend this Answer to respond to the allegations contained in Count IV as required by the Court and/or the Federal Rules of Civil Procedure.

156.   ERISA § 102(b), 29 U.S.C. § 1022(b) mandates that an SPD must contain the "names, titles, and addresses of any trustee or trustees (if they are persons different from the administrator)."  29 C.F.R. § 2520.102-3(h) requires that the SPD identify "the name, title and address of the principal place of business of each trustee" of the Plan.

**ANSWER:**  Count IV is brought solely against the ESOP Committee Defendants; therefore, Alerus is not required to answer.  Alerus reserves the right to amend this Answer to respond to the allegations contained in Count IV as required by the Court and/or the Federal Rules of Civil Procedure.

157.   The 2017 SPD identifies Alerus Financial, N.A. as the Trustee in Section 6.2 but does provide Alerus's address, or principal place of business.

**ANSWER:**  Count IV is brought solely against the ESOP Committee Defendants; therefore, Alerus is not required to answer.  Alerus reserves the right to amend this Answer to respond to the allegations contained in Count IV as required by the Court and/or the Federal Rules of Civil Procedure.

158.   By failing to provide an SPD that provides the information required by ERISA § 102 and the DOL Regulations and/or by failing to update the SPD with correct information, the ESOP Committee Defendants, as the Plan Administrator have violated ERISA § 102, 29 U.S.C. § 1022, ERISA § 104(b)(1),

29 U.S.C. § 1024(b)(1) and ERISA § 404(a)(1)(A) & (B), 29 U.S.C. § 1104(a)(1)(A) & (B).

**ANSWER:** Count IV is brought solely against the ESOP Committee Defendants; therefore, Alerus is not required to answer. Alerus reserves the right to amend this Answer to respond to the allegations contained in Count IV as required by the Court and/or the Federal Rules of Civil Procedure.

## COUNT V

**Failure to File Annual Report in violation of ERISA § 104, 29 U.S.C. § 1024 Against the ESOP Committee Defendants as the Plan Administrator**

159.   Plaintiff incorporates the preceding paragraphs as though set forth herein.

**ANSWER:** Count V is brought solely against the ESOP Committee Defendants; therefore, Alerus is not required to answer. Alerus reserves the right to amend this Answer to respond to the allegations contained in Count V as required by the Court and/or the Federal Rules of Civil Procedure.

160.   As the Plan Administrator within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A), the ESOP Committee Defendants were obligated to comply with ERISA §§ 104(a) & (b), 29 U.S.C. § 1024(a) & (b).

**ANSWER:** Count V is brought solely against the ESOP Committee Defendants; therefore, Alerus is not required to answer. Alerus reserves the right to amend this Answer to respond to the allegations contained in Count V as required by the Court and/or the Federal Rules of Civil Procedure.

161.   Pursuant to ERISA § 104(a)(1), 29 U.S.C. § 1024(a)(1), the plan administrator is required to file with the Secretary of the United States Department of Labor the annual report (i.e. the Form 5500) within 210 days after the close the

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

plan year.  Once field, the Secretary of the Department of Labor is required to make such annual reports available for inspection to the public.

**ANSWER:**  Count V is brought solely against the ESOP Committee Defendants; therefore, Alerus is not required to answer.  Alerus reserves the right to amend this Answer to respond to the allegations contained in Count V as required by the Court and/or the Federal Rules of Civil Procedure.

162.   Pursuant to ERISA § 104(b)(3), 29 U.S.C. § 1024(b)(3), the plan administrator is required to provide a copy of the summary annual report to each participant and to each beneficiary receiving benefits under the plan, a copy of the summary annual report.

**ANSWER:**  Count V is brought solely against the ESOP Committee Defendants; therefore, Alerus is not required to answer.  Alerus reserves the right to amend this Answer to respond to the allegations contained in Count V as required by the Court and/or the Federal Rules of Civil Procedure.

163.   The Plan Year for 2018 ended August 31, 2019.  As a result, the Form 5500 Annual Report for 2018 was due by February 29, 2020.  The Form 5500 Annual Report for 2018 was not filed until July 9, 2020 (i.e. after the original complaint in this lawsuit was filed).

**ANSWER:**  Count V is brought solely against the ESOP Committee Defendants; therefore, Alerus is not required to answer.  Alerus reserves the right to amend this Answer to respond to the allegations contained in Count V as required by the Court and/or the Federal Rules of Civil Procedure.

164.   By failing to file an annual report as required by ERISA § 104, the ESOP Committee Defendants, as the Plan Administrator violated ERISA § 104(a), 29 U.S.C. § 1024(a).

**ANSWER:**  Count V is brought solely against the ESOP Committee Defendants; therefore, Alerus is not required to answer.  Alerus reserves the right to amend this Answer to respond to the allegations contained in Count V as required by the Court and/or the Federal Rules of Civil Procedure.

## COUNT VI

**Failure to Provide Documents Upon Request Pursuant to ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4) & ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A) Against the ESOP Committee Defendants as Plan Administrator**

165.   Plaintiff incorporates the preceding paragraphs as though set forth herein.

**ANSWER:**  Count VI is brought solely against the ESOP Committee Defendants; therefore, Alerus is not required to answer.  Alerus reserves the right to amend this Answer to respond to the allegations contained in Count VI as required by the Court and/or the Federal Rules of Civil Procedure.

166.   ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4), provides that the administrator of an employee benefit plan "shall, upon written request of any participant or beneficiary, furnish a copy" of certain enumerated documents as well as "other instruments under which the plan is established or operated" to the requesting participant or beneficiary within 30 days of the Request.

**ANSWER:**  Count VI is brought solely against the ESOP Committee Defendants; therefore, Alerus is not required to answer.  Alerus reserves the right to amend this Answer to respond to the allegations contained in Count VI as required by the Court and/or the Federal Rules of Civil Procedure.

167.   The Ninth Circuit has also recognized that a fiduciary's duty under ERISA § 404(a)(1)(A) to disclose is not limited to those specified in the statute,

but extends to additional disclosures to the extent that they relate to the provision of benefits or the defrayment of expenses.

**ANSWER:**  Count VI is brought solely against the ESOP Committee Defendants; therefore, Alerus is not required to answer.  Alerus reserves the right to amend this Answer to respond to the allegations contained in Count VI as required by the Court and/or the Federal Rules of Civil Procedure.

168.   By a letter dated February 28, 2019, sent by certified mail to the KPC ESOP Plan Administrator pursuant to and referencing ERISA § 104(b) and 404(a)(1), Plaintiff Danielle Gamino requested that the Plan Administrator provide the documents specified by ERISA 104(b).  Among the documents specifically requested by Ms. Gamino's letter was any valuation or other document used to determine the price at which her shares had been allocated and a copy of the most recent valuation and other documents setting forth how the value of her shares was determined.  Plaintiff's letter was received at the address in the SPD for KPC by no later than March 11, 2019.

**ANSWER:**  Count VI is brought solely against the ESOP Committee Defendants; therefore, Alerus is not required to answer.  Alerus reserves the right to amend this Answer to respond to the allegations contained in Count VI as required by the Court and/or the Federal Rules of Civil Procedure.

169.   In a letter dated April 18, 2019, Allison Wilkerson, a partner at the law firm of McDermott Will & Emery in Dallas Texas responded to Plaintiff's February 28, 2019 letter.  This was the first response to Plaintiff's ERISA § 104(b) request, which was sent by Ms. Wilkerson to Ms. Gamino by email on April 18, 2019, 38 days after the February 28, 2019 request was received.

**ANSWER:**  Count VI is brought solely against the ESOP Committee Defendants; therefore, Alerus is not required to answer.  Alerus reserves the right

to amend this Answer to respond to the allegations contained in Count VI as required by the Court and/or the Federal Rules of Civil Procedure.

170.    Enclosed with April 18, 2019 letter were some of the documents that Plaintiff had requested including the 2017 SPD, which was identified as the "current summary plan description;" however, Ms. Wilkerson advised that the Plan Administrator would not provide copies of the valuations that Ms. Gamino had specifically requested.

**ANSWER:**  Count VI is brought solely against the ESOP Committee Defendants; therefore, Alerus is not required to answer.  Alerus reserves the right to amend this Answer to respond to the allegations contained in Count VI as required by the Court and/or the Federal Rules of Civil Procedure.

171.    In letter dated April 22, 2019, Plaintiff responded to Ms. Wilkerson and cited authorities in this Circuit and District recognizing that ESOP valuations must be disclosed in response to a request pursuant to ERISA § 104(b)(4).

**ANSWER:**  Count VI is brought solely against the ESOP Committee Defendants; therefore, Alerus is not required to answer.  Alerus reserves the right to amend this Answer to respond to the allegations contained in Count VI as required by the Court and/or the Federal Rules of Civil Procedure.

172.    In a letter dated May 4, 2019, Theodore Becker, "writing on behalf of the Plan Administrator of the" ESOP responded to Plaintiff's April 22, 2019 letter and again refused to produce the valuations.

**ANSWER:**  Count VI is brought solely against the ESOP Committee Defendants; therefore, Alerus is not required to answer.  Alerus reserves the right to amend this Answer to respond to the allegations contained in Count VI as required by the Court and/or the Federal Rules of Civil Procedure.

173.   By failing to respond to Ms. Gamino's February 28, 2019 within 30 days and by failing to provide the requested valuations, the ESOP Committee Defendants as the Plan Administrator violated ERISA §§ 104(b) and 404(a)(1)(A), 29 U.S.C. §§ 1024(b) and 1104(a)(1)(A).

**ANSWER:**  Count VI is brought solely against the ESOP Committee Defendants; therefore, Alerus is not required to answer.  Alerus reserves the right to amend this Answer to respond to the allegations contained in Count VI as required by the Court and/or the Federal Rules of Civil Procedure.

174.   Pursuant to ERISA § 502(a)(1)(A) a participant may sue for the relief provided in ERISA § 502(c).  Pursuant to ERISA § 502(c), 29 U.S.C. § 1132(c), "[a]ny administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by [ERISA] to furnish" by mailing the requested material to "the requesting participant . . . within 30 days after such request" may be liable for up to $110 per day in civil penalties.  As a result of the failure to produce the requested documents, the Plan Administrator is liable for the penalties available under ERISA § 502(c).

**ANSWER:**  Count VI is brought solely against the ESOP Committee Defendants; therefore, Alerus is not required to answer.  Alerus reserves the right to amend this Answer to respond to the allegations contained in Count VI as required by the Court and/or the Federal Rules of Civil Procedure.

175.   By breaching their fiduciary duties to Plaintiff Gamino pursuant to ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), the Committee Defendants should be liable via surcharge to the equivalent of the penalty under ERISA § 502(c).

**ANSWER:**  Count VI is brought solely against the ESOP Committee Defendants; therefore, Alerus is not required to answer.  Alerus reserves the right

to amend this Answer to respond to the allegations contained in Count VI as required by the Court and/or the Federal Rules of Civil Procedure.

## COUNT VII

### Breach of Fiduciary Duty Under ERISA §§ 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A) and (B) Against Director Defendants & KPC

176.   Plaintiff incorporates the preceding paragraphs as though set forth herein.

**ANSWER:**  Count VII is brought solely against the Director Defendants and KPC Healthcare; therefore, Alerus is not required to answer.  Alerus reserves the right to amend this Answer to respond to the allegations contained in Count VII as required by the Court and/or the Federal Rules of Civil Procedure.

177.   ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries, (A) for the exclusive purpose of providing benefits to participants and the beneficiaries of the plan, (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with ERISA.

**ANSWER:**  Count VII is brought solely against the Director Defendants and KPC Healthcare; therefore, Alerus is not required to answer.  Alerus reserves the right to amend this Answer to respond to the allegations contained in Count VII as required by the Court and/or the Federal Rules of Civil Procedure.

ALERUS'S ANSWER TO PLAINTIFF'S FIRST – 75
AMENDED COMPLAINT

178.   Under ERISA § 404(a)(1)(A) and (B), a fiduciary with the authority to appoint and/or remove other fiduciaries has an obligation to undertake an appropriate investigation that the fiduciary is qualified to serve in the position as fiduciary and at reasonable intervals to ensure that the fiduciary who has been appointed remains qualified to act as fiduciary and is acting in compliance with the terms of the Plan and in accordance with ERISA.

**ANSWER:**  Count VII is brought solely against the Director Defendants and KPC Healthcare; therefore, Alerus is not required to answer.  Alerus reserves the right to amend this Answer to respond to the allegations contained in Count VII as required by the Court and/or the Federal Rules of Civil Procedure.

179.   According to Section 11.15 of the Plan Document (and consistent with Section 6.2 of the Trust Agreement), KPC "has the sole authority to appoint and remove the Trustee."  Pursuant to that authority, KPC had a duty to monitor the Trustee's conduct and to take appropriate action if the Trustee was not adequately protecting the interests of ESOP participants, including removing the Trustee and correcting any breaches.

**ANSWER:**  Count VII is brought solely against the Director Defendants and KPC Healthcare; therefore, Alerus is not required to answer.  Alerus reserves the right to amend this Answer to respond to the allegations contained in Count VII as required by the Court and/or the Federal Rules of Civil Procedure.

180.   According to Section 1.33 of the Plan Document, the members of the ESOP Committee are appointed by the Board of Directors.  Section 9.1 of the Plan Document provides that KPC "may appoint an ESOP Committee to administer this Plan."  Section 11.15 of the Plan Document provides that KPC "has the sole authority to appoint and remove the Trustee."  Pursuant to that authority, KPC (through the Board of Directors) had a duty to monitor the ESOP Committee's

ALERUS'S ANSWER TO PLAINTIFF'S FIRST – 76
AMENDED COMPLAINT

conduct and to take appropriate action if the Committee Defendants were not adequately protecting the interests of ESOP participants, including removing them and correcting any breaches.

**ANSWER:**  Count VII is brought solely against the Director Defendants and KPC Healthcare; therefore, Alerus is not required to answer.  Alerus reserves the right to amend this Answer to respond to the allegations contained in Count VII as required by the Court and/or the Federal Rules of Civil Procedure.

181.   Defendant KPC knew or in the exercise of reasonable diligence should have known that Alerus as Trustee breached its fiduciary duties and engaged in prohibited transactions as set forth in Counts I, II and III because (a) Defendant Kali Pradip Chaudhuri was aware of facts sufficient to establish that the 2015 ESOP Transaction constituted a prohibited transaction, including the terms of the 2015 ESOP Transaction and that the 2015 ESOP Transaction share price did not reflect fair market value for the stock of KPC, (b) Defendant Kali Pradip Chaudhuri knew that Alerus caused and closed the 2015 ESOP Transaction and took no steps to protect the Plan participants or to otherwise remedy the violations and (c) the knowledge of Defendant Kali Pradip Chaudhuri is imputed to KPC.

**ANSWER:**  Count VII is brought solely against the Director Defendants and KPC Healthcare; therefore, Alerus is not required to answer.  Alerus reserves the right to amend this Answer to respond to the allegations contained in Count VII as required by the Court and/or the Federal Rules of Civil Procedure.

182.   Defendants Dr. Chaudhuri, William Thomas, and Kali Priyo Chaudhuri knew that Alerus had breached its fiduciary duties and engaged in prohibited transactions because they were officers and directors of KPC at the time of the 2015 ESOP Transaction and as to Dr. Chaudhuri and Defendant Thomas were parties to the 2015 ESOP Transaction.

ALERUS'S ANSWER TO PLAINTIFF'S FIRST – 77
AMENDED COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ANSWER:**  Count VII is brought solely against the Director Defendants and KPC Healthcare; therefore, Alerus is not required to answer.  Alerus reserves the right to amend this Answer to respond to the allegations contained in Count VII as required by the Court and/or the Federal Rules of Civil Procedure.

183.   Defendants Hippert and van Arsdale knew or should have known that Alerus had breached its fiduciary duties because once they joined the Board of Directors (and thus the ESOP committee) and had responsibility for reviewing the performance of Alerus. Had Hippert and van Arsdale conducted an appropriate review of the performance of Alerus after the Transaction, including a review of the post-performance stock price, they would have concluded that an investigation should have been conducted about or a correction made concerning the 2015 ESOP Transaction.

**ANSWER:**  Count VII is brought solely against the Director Defendants and KPC Healthcare; therefore, Alerus is not required to answer.  Alerus reserves the right to amend this Answer to respond to the allegations contained in Count VII as required by the Court and/or the Federal Rules of Civil Procedure.

184.   The Director Defendants knew that the ESOP Committee breached its fiduciary duties or other statutory obligations as set forth in Counts IV-VI because the Director Defendants were all members of the ESOP Committee at the time of the violations.  To the extent that the power to remove the members of the ESOP Committee belonged to someone at KPC other than the Board of Directors, the knowledge of the Board of Directors is imputed to KPC.

**ANSWER:**  Count VII is brought solely against the Director Defendants and KPC Healthcare; therefore, Alerus is not required to answer.  Alerus reserves the right to amend this Answer to respond to the allegations contained in Count VII as required by the Court and/or the Federal Rules of Civil Procedure.

ALERUS'S ANSWER TO PLAINTIFF'S FIRST – 78
AMENDED COMPLAINT

185.   Despite knowing of the facts about these breaches by the ESOP Committee, nether KPC nor the Director Defendants took any steps to protect the ESOP participants from these breaches and violations, including by stopping or delaying the 2015 ESOP Transaction, removing the—or as to the Director Defendants, resigning as—members of the ESOP Committee, appointing successor members and/or remedying these breaches.

**ANSWER:**  Count VII is brought solely against the Director Defendants and KPC Healthcare; therefore, Alerus is not required to answer.  Alerus reserves the right to amend this Answer to respond to the allegations contained in Count VII as required by the Court and/or the Federal Rules of Civil Procedure.

186.   By failing to properly monitor and/or take appropriate action against the Trustee, KPC and/or the Director Defendants breached their fiduciary duties under ERISA § 404(a)(1)(A) & (B), 29 U.S.C. § 1104(a)(1)(A) & (B).

**ANSWER:**  Count VII is brought solely against the Director Defendants and KPC Healthcare; therefore, Alerus is not required to answer.  Alerus reserves the right to amend this Answer to respond to the allegations contained in Count VII as required by the Court and/or the Federal Rules of Civil Procedure.

## COUNT VIII

### Violation of ERISA § 410 & Breach of Fiduciary Under ERISA §§ 404(a)(1)(A) and (B), 29 U.S.C. § 1110 & §§ 1104(a)(1)(A) and (B) Against KPC, Alerus and the Committee Defendants

187.   Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

**ANSWER:**  Alerus incorporates its answers as though set forth herein**.**

ALERUS'S ANSWER TO PLAINTIFF'S FIRST – 79
AMENDED COMPLAINT

188.   ERISA § 410(a), 29 U.S.C. § 1110(a), provides in relevant part (with exceptions not applicable here) that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part [ERISA Part IV] shall be void as against public policy."  As Part IV of ERISA includes ERISA §§ 404, 405, and 406, 29 U.S.C. §§ 1104, 1105 and 1106, any provision that attempts to relieve a fiduciary of liability is void pursuant to ERISA § 410(a), unless there is an exception or exemption.  No such exception or exemption is applicable here.

**ANSWER:**  Paragraph 187 purports to paraphrase, quote, and/or cite to certain ERISA provisions.  Alerus relies on those provisions to speak for themselves, rather than on Plaintiff's characterizations thereof.  Paragraph 187 further states legal conclusions, to which no response is required.  To the extent a response is required, Alerus denies the allegations in paragraph 187.

189.   The DOL Regulations promulgated under ERISA § 410, 29 C.F.R. § 2509.75-4, renders "void any arrangement for indemnification of a fiduciary of an employee benefit plan by the plan" because it would have "the same result as an exculpatory clause, in that it would, in effect, relieve the fiduciary of responsibility and liability to the plan by abrogating the plan's right to recovery from the fiduciary for breaches of fiduciary obligations."

**ANSWER:**  Paragraph 189 purports to paraphrase, quote, and/or cite to certain ERISA provisions and Department of Labor regulations.  Alerus relies on those regulations to speak for themselves, rather than on Plaintiff's characterizations thereof.  To the extent that characterization is inconsistent with the cited ERISA provisions and Department of Labor regulations, Alerus denies the allegations in paragraph 189.

190.   For a 100% ESOP-owned company, a provision requiring indemnity by the ESOP-owned company is treated as an indemnity provision by the Plan because it effectively requires ESOP participants to pay for the costs of the breaching fiduciaries' liability.

**ANSWER:**  Paragraph 190 states legal conclusions, to which no response is required.  To the extent a response is required, Alerus denies the allegations in paragraph 190.

191.   Section 9.1 of the KPC Healthcare, Inc. Trust effective April 1, 2015 provides that "the Company shall indemnify the Indemnitees [including the Trustee] for any Expense (as herein defined) incurred or Loss (as herein defined suffered by any of the Indemnitees resulting from or incurred with respect to any Proceedings (as herein defined) related in any way to the performance of services by any one or more of the Indemnitees pursuant to this Agreement."

**ANSWER:**  Paragraph 191 purports to paraphrase, quote, and/or cite to certain Trust provisions.  Alerus relies on those provisions to speak for themselves, rather than on Plaintiff's characterization thereof.  To the extent that such characterization is inconsistent with the cited Trust provisions, Alerus denies the allegations in paragraph 191.

192.   Section 7.3 of the KPC Healthcare, Inc. Employee Stock Ownership Plan effective April 1, 2015 provides that KPC "indemnifies and holds harmless the Plan Administrator (if any) and any person or persons delegated with the power, duty, and responsibility to act on behalf of the Plan Administrator, from and against any and all loss resulting from liability to which the Plan Administrator or any person or persons delegated with the power, duty, and responsibility to act on behalf of the Plan Administrator, may be subjected by any reason of any act or conduct (except willful misconduct or gross negligence) associated with such

ALERUS'S ANSWER TO PLAINTIFF'S FIRST – 81
AMENDED COMPLAINT

persons' official capacities in the administration of this Plan, including all court costs and other expenses reasonably incurred in connection with the defense of such persons.."

**ANSWER:**  Paragraph 192 purports to paraphrase, quote, and/or cite to certain Plan provisions.  Alerus relies on those provisions to speak for themselves, rather than on Plaintiff's characterization thereof.  To the extent that such characterization is inconsistent with the Plan provisions, Alerus denies the allegations in paragraph 192.

193.   As these instruments governing the relationship between either the Trustee or the Plan Administrator and KPC attempt to relieve the Trustee and the Plan Administrator (or the members of the Committee) of his, her or its responsibility or liability to discharge his or her fiduciary duties or to have KPC (an ESOP-owned company) and thereby the ESOP be responsible for his or her liability or breaches, such agreements or other instruments are void as against public policy.

**ANSWER:**  Alerus denies the allegations in paragraph 193.

194.   To the extent that Defendants would agree to such a provision that is void against public policy under ERISA § 410, Defendants breached their fiduciary duties under ERISA by failing to discharge their duties with respect to the Plan solely in the interest of the participants and beneficiaries (A) for the exclusive purpose of providing benefits to participants and beneficiaries and (B) with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and aims, in violation of ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B).

**ANSWER:**  Alerus denies the allegations in paragraph 194.

195.   As such these indemnification provisions in these instruments (or any similar agreements) governing the relationship between Defendants and KPC should be declared void ab initio and should be reformed to strike or modified accordingly.

**ANSWER:**  Alerus denies the allegations in paragraph 195.

196.   As a result, Alerus and the Committee Defendants should be ordered to disgorge any indemnification payments made by KPC and/or the ESOP, plus interest.

**ANSWER:**  Alerus denies the allegations in paragraph 196.

**COUNT IX**
**Co-Fiduciary Liability Pursuant to ERISA § 405, 29 U.S.C. § 1105 Against the Committee Defendants, Director Defendants, Kali Pradip Chaudhuri, Alerus, and William Thomas**

197.   Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

**ANSWER:**  Alerus incorporates its answers as though set forth herein**.**

198.   ERISA § 405, 29 U.S.C. § 1105, makes a fiduciary of a Plan liable for another fiduciary of the same plan's breach when (1) "he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission of such other fiduciary is a breach;" (2) "by his failure to comply with section 404(a)(1) in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach;" or (3) "he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach."

**ANSWER:**  Paragraph 198 purports to paraphrase and/or cite to certain ERISA provisions.  Alerus relies on those provisions to speak for themselves, rather than on Plaintiff's characterizations thereof.  Paragraph 198 further states legal conclusions, to which no response is required.  To the extent a response is required, Alerus denies the allegations in paragraph 198.

199.   The Committee Defendants violated ERISA § 405(a)(1)-(3) when they knowingly participated in each other's violations when they acted as a Committee because (1) they each participated knowingly in the actions taken as a Committee and knew or were reckless in not knowing it was a breach, (2) failed to fulfill their duties as members of the Committee set forth in the Plan Document and (3) had knowledge of those breaches and made no apparent efforts to remedy the breach. As such, each of the Committee Defendants is liable for the breaches of the other members of the committee pursuant to ERISA § 405(a)(1)-(3).

**ANSWER:**  Paragraph 199 purports to paraphrase and/or cite to certain ERISA provisions.  Alerus relies on those provisions to speak for themselves, rather than on Plaintiff's characterizations thereof.  Paragraph 199 further states legal conclusions, to which no response is required.  To the extent a response is required, Alerus denies the allegations in paragraph 199.

200.   The Director Defendants violated ERISA § 405(a)(1) and (3) when they knowingly participated in each other's violations when they acted as a board because they each participated knowingly in the actions taken as a board, knew or were reckless in not knowing it was a breach, and had knowledge of those breaches and made no apparent efforts to remedy the breach. As such, each of the Director Defendants is liable for the breaches of the other members of the committee pursuant to ERISA § 405(a)(1), (3).

ALERUS'S ANSWER TO PLAINTIFF'S FIRST – 84
AMENDED COMPLAINT

**ANSWER:**  Paragraph 200 purports to paraphrase and/or cite to certain ERISA provisions.  Alerus relies on those provisions to speak for themselves, rather than on Plaintiff's characterizations thereof.  Paragraph 200 further states legal conclusions, to which no response is required.  To the extent a response is required, Alerus denies the allegations in paragraph 200.

201.   Defendants Kali Pradip Chaudhuri, Alerus, and William Thomas violated ERISA § 405(a)(1) and (3) when they knowingly participated in each other's respective prohibited transactions because they each participated knowingly in the respective prohibited transactions, had knowledge of those breaches, and made no apparent efforts to remedy the breaches. As such, each of them is liable for the breaches of the others as to each of those transactions pursuant to ERISA § 405(a)(1) and (3).

**ANSWER:**  Paragraph 201 purports to paraphrase and/or cite to certain ERISA provisions.  Alerus relies on those provisions to speak for themselves, rather than on Plaintiff's characterizations thereof.  Paragraph 201 further states legal conclusions, to which no response is required.  To the extent a response is required, Alerus denies the allegations in paragraph 201.

## ENTITLEMENT TO RELIEF

202.   By virtue of the violations set forth in the foregoing paragraphs, Plaintiff and the Class are entitled to sue each of the Defendants who are fiduciaries pursuant to ERISA §502(a)(2), 29 U.S.C. § 1132(a)(2), for relief on behalf of the Plan as provided in ERISA § 409, 29 U.S.C. § 1109, including for recovery of any losses to the Plan, the recovery of any profits resulting from the breaches of fiduciary duty, and such other equitable or remedial relief as the Court may deem appropriate.

**ANSWER:** Alerus denies the allegations in paragraph 202.

203.   By virtue of the violations set forth in the foregoing paragraphs, Plaintiff and the Class are entitled pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), to sue any of the Defendants for any appropriate equitable relief to redress the wrongs described above.

**ANSWER:** Alerus denies the allegations in paragraph 203.

## PRAYER FOR RELIEF

Wherefore, Plaintiff on behalf of herself and the Class, pray that judgment be entered against Defendants on each claim and be awarded the following relief:

A.     Declare that Defendants have each breached their fiduciary duties under ERISA;

B.     Declare that Defendants Alerus and Defendant Kali Pradip Chaudhuri have each engaged in prohibited transactions in violation of ERISA §§ 406(a)-(b), 29 U.S.C. §§ 1106(a)-(b), by causing the ESOP to engage in 2015 Transaction;

C.     Enjoin Defendants, and each of them, from further violations of their fiduciary responsibilities, obligations and duties;

D.     Remove each of the Defendants as fiduciaries of the ESOP and/or bar each of them from serving as fiduciaries of the ESOP in the future, and appoint a new independent fiduciary to manage the ESOP and order the costs of such independent fiduciary be paid for by Defendants;

E.     Order that Defendants found to have breached his/her/its fiduciary duties to the ESOP to jointly and severally restore all the losses resulting from their breaches or by virtue of liability pursuant to ERISA § 405and disgorge all profits they have made through use of assets of the ESOP;

ALERUS'S ANSWER TO PLAINTIFF'S FIRST – 86
AMENDED COMPLAINT

F.      Order that Defendants provide other appropriate equitable relief to the ESOP, including but not limited to, by forfeiting their ESOP accounts, providing an accounting for profits, imposing a constructive trust and/or equitable lien on any funds wrongfully held by any of the Defendants;

G.      Order pursuant to ERISA § 206(d)(4) that any amount to be paid to the ESOP accounts of the Class can be satisfied by using or transferring any breaching fiduciary's ESOP account in the Plan (or the proceeds of that account) to the extent of that fiduciary's liability.

H.      Order the Plan Administrator to provide a Summary Plan Description that complies with ERISA § 102, 29 U.S.C. § 1022 and to file an Annual Report pursuant to ERISA § 104, 29 U.S.C. § 104.

I.      Award Plaintiff Gamino statutory penalties in the amount of $110 per day, per violation, for the failure to provide each of the requested documents that the Plan Administrator failed to provide or to the extent appropriate a surcharge against the Committee Defendants in an equivalent amount.

J.      Declare that any indemnification agreement between the Defendants, or any of them, and KPC or the ESOP violates ERISA § 410, 29 U.S.C. § 1110, and is therefore null and void.

K.      Order Defendants to reimburse the ESOP or KPC for any money advanced by the ESOP or KPC, respectively, under any indemnification agreement or other instrument between Defendants and the ESOP or KPC;

L.      Require Defendants to pay attorneys' fees and costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or ordering payment of fees and expenses to Plaintiff's counsel on the basis of the common benefit or common fund doctrine out of any money recovered for the Class;

M.    Order Alerus to disgorge any fees they received in conjunction with the 2015 ESOP Transaction;

N.    Order that Defendants and each of them provide other appropriate equitable relief to the Plan, including but not limited to rescission, surcharge, providing an accounting for profits, and imposing a constructive trust and/or equitable lien on any funds wrongfully held by Defendants;

O.    Award pre-judgment interest and post-judgment interest; and

P.    Award such other and further relief that the Court determines that Plaintiff and the Class are entitled to pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a) or pursuant to Rule 54(c) of the Federal Rules of Civil Procedure or that is equitable and just.

**ANSWER:**  Alerus denies that Plaintiff is entitled to any of the relief requested or to any relief whatsoever.

## ALERUS'S AFFIRMATIVE DEFENSES

**FIRST AFFIRMATIVE DEFENSE: Exemption from Prohibited Transaction.**

1.    Plaintiff's prohibited transaction claims fails in whole or in part because the prohibited transaction rules in ERISA § 406 do not apply to the August 28, 2015 stock purchase transaction.  The transaction satisfies the exemptions set forth in ERISA § 408(e) and/or § 408(b).  The Plan paid no more than adequate consideration and fair market value for Company stock, which Alerus determined in good faith following a prudent investigation prior to approving the transaction. The amount of compensation paid to Alerus for its services in connection with the transaction was reasonable, satisfying the exemptions set forth in ERISA § 408(b) and/or ERISA § 408(c).

2. The transaction satisfies the exemptions set forth in ERISA § 408(e) and/or § 408(b)(12)(A). Those exemptions provide, in relevant, as follows:

    a. ERISA § 408(e) provides that the prohibitions in § 406(a) shall not apply to "the acquisition or sale by a plan of qualifying employer securities . . . if such acquisition, sale, or lease is for adequate consideration . . . (2) if no commission is charged with respect thereto, and (3) if—(A) the plan is an eligible individual account plan," which includes employee stock ownership plans. ERISA § 3(18)(B) defines adequate consideration as "the fair market value of the asset as determined in good faith by the trustee or named fiduciary." See also Proposed Regulation Relating to the Definition of Adequate Consideration, 53 Fed. Reg. 17632-01 (May 17, 1988) (to be codified at 29 C.F.R. pt. 2510).

ERISA § 408(b)(12)(A) provides that the prohibitions in § 406(a) shall not apply to the "sale by a plan to a party in interest Alerus denies the remaining allegations in paragraph 14.

    b. requirements of paragraphs (1) and (2) of subsection (e) of this section are met with respect to such stock, (B) on the later of the date on which the stock was acquired by the plan, or January 1, 1975, such stock constituted a qualifying employer security . . . and (C) such stock does not constitute a qualifying employer security . . . ."

    c. ERISA § 408(b)(3) provides an exemption for a loan to an employee stock ownership plan if the loan is primarily for the benefit of participants and beneficiaries of the plan and such loan is at an interest rate which is not in excess of a reasonable rate, and ERISA §

408(b)(3) allows a plan to give collateral if such collateral are qualifying employer securities.

3. Prior to approving the transaction, Alerus conducted a prudent investigation of the Company stock that was offered for sale.

4. Following this prudent investigation, Alerus determined in good faith that the price of the Company stock was no more than adequate consideration and fair market value.

5. The amount of compensation paid to Alerus for its services in connection with the transaction satisfies the exemptions set forth in ERISA § 408(b) and/or ERISA § 408(c). Those exemptions provide, in relevant part, as follows:

a. ERISA § 408(b)(2) provides that the prohibitions in § 406(b) shall not apply to, "Contracting or making reasonable arrangements with a party in interest for office space, or legal, accounting, or other services necessary for the establishment or operation of the plan, if no more than reasonable compensation is paid therefor."

b. ERISA § 408(c)(2) provides that nothing in ERISA § 406(b) shall prohibit any fiduciary from "receiving any reasonable compensation for services rendered, or for the reimbursement of expenses properly and actually incurred, in the performance of his duties with the plan." Courts have held that ERISA § 408(c)(2) applies to prohibited transactions under § 406(b) and insulates a fiduciary alleged to have influenced its own compensation from liability if the compensation paid was reasonable.

6. The amount of compensation paid to Alerus was reasonable.

7.      Alerus also reserves its right to argue the applicability of other exemptions in response to claims or positions Plaintiff takes in this litigation.

**SECOND AFFIRMATIVE DEFENSE: Lack of Intent.**

8.      ERISA § 406(a)(1)(D) prohibits transactions between a plan and a party in interest that constitute a direct or indirect "transfer to, or use by or for the benefit of a party in interest, of any assets of the plan."

9.      Courts have held that a prohibited use of plan assets for the benefit of a party in interest, as described by ERISA § 406(a)(1)(D), requires a "subjective intent to benefit" a party in interest.

10.      Plaintiff has not alleged and cannot establish that Alerus had any "subjective intent to benefit" any party in interest.

**THIRD AFFIRMATIVE DEFENSE: Waiver/ Estoppel**

11.      Plaintiff's claims are barred in whole or in part based on her acceptance of her benefits.

**FOURTH AFFIRMATIVE DEFENSE: Standing.**

12.      Plaintiff's claims are barred in whole or in part because neither Plaintiff, any other participant or beneficiary, nor the Plan suffered damages and Plaintiff lacks standing to bring claims.

**FIFTH AFFIRMATIVE DEFENSE: Damages Caused by Other Parties**

13.      Plaintiff's alleged damages, if any, were caused by other parties over whom Alerus had no control and for whom Alerus had no responsibility.

### RESERVATION OF DEFENSES

Alerus reserves the right to assert additional affirmative defenses as they may become evident during the course of discovery or during further investigation into the background of this matter.

ALERUS'S ANSWER TO PLAINTIFF'S FIRST – 91
AMENDED COMPLAINT

1

2

Dated:  November 15, 2021                */s/ Lars C. Golumbic*_____

3                                        Lars C. Golumbic, admitted *pro hac vice*

4                                        Sarah M. Adams, admitted *pro hac vice*
William J. Delany, admitted *pro hac vice*

5                                        Shaun A. Gates, admitted *pro hac vice*

6                                        Rachael E. Hancock, admitted *pro hac vice*

7                                        GROOM LAW GROUP, CHARTERED
  1701 Pennsylvania Ave. NW

8                                        Washington, DC 20006
Tel: (202) 857-0620

9                                        Fax: (202) 659-4503
Email: lgolumbic@groom.com

10                                              sadams@groom.com
       wdelany@groom.com

11                                              sgates@groom.com
       rhancock@groom.com

12
Andrew J. Waxler (SBN 113682)

13                                       KAUFMAN DOLOWICH &
VOLUCK LLP

14                                         11755 Wilshire Blvd., Suite 2400
Los Angeles, CA 90025

15                                       Tel: (310) 775-6511
Fax: (310) 575-9720

16                                       Email: awaxler@kdvlaw.com

17

18                                       COUNSEL FOR DEFENDANT
ALERUS FINANCIAL, N.A.

19

20

21

22

23

24

25

26

27

28   ALERUS'S ANSWER TO PLAINTIFF'S FIRST –   92
AMENDED COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

I certify that on November 15, 2021, I caused the foregoing DEFENDANT ALERUS FINANCIAL, N.A.'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT to be filed with the Court's electronic filing system, by operation of which it was served on all counsel of record.

Dated: November, 15 2021

/s/ *Lars C. Golumbic*
Lars C. Golumbic, admitted *pro hac vice*

R. Joseph Barton (SBN 212340)
Colin M. Downes (admitted pro hac vice)
BLOCK & LEVITON LLP
1735 20th Street NW
Washington, DC 20009
Tel: (202) 734-7046
Fax: (617) 507-6020
Email: joe@blockesq.com
Email: colin@blockesq.com

Daniel Feinberg (SBN 135983)
Darin Ranahan (SBN 273532)
FEINBERG JACKSON
WORTHMAN & WASOW LLP
2030 Addison Street, Suite 500
Berkeley, CA 94704
Tel: (510) 269-7998
Fax: (510) 269-7994
Email: dan@feinbergjackson.com
Email: darin@feinbergjackson.com

Richard E. Donahoo (SBN 186957)
Sarah L. Kokonas (SBN 262875)
William E. Donahoo (SBN 322020)
Theodore M. Becker (admitted *pro hac vice*)
MCDERMOTT WILL & EMERY LLP
444 West Lake Street, Suite 4000
Chicago, IL 60606
Tel: (312) 372-2000
Fax: (312) 984-7700
Email: tbecker@mwe.com

Maria Rodriquez (SBN 194201)
MCDERMOTT WILL & EMERY LLP
2049 Century Park East, Suite 3200
Los Angeles, CA 90067
Tel: (310) 277-4110
Fax: (310) 277-4730

ALERUS'S ANSWER TO PLAINTIFF'S FIRST – 93
AMENDED COMPLAINT

1    Email: mcrodriguez@mwe.com          1120 Avenue of the Americas, 4th Fl.
2                                        New York, NY 10036
3                                        Tel: (646) 546-5664
                                         Email: mk@mk-llc.com
4

5

6
     DONAHOO & ASSOCIATES, PC.
7    440 W. First Street, Suite 101.
8    Tustin, CA 92780
     Tel: (714) 953-1010
9    Email: rdonahoo@donahoo.com
10   Email: skokonas@donahoo.com
     Email: wdonahoo@donahoo.com
11

12   Major Khan (admitted pro hac vice)
13   MKLLC LAW

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   ALERUS'S ANSWER TO PLAINTIFF'S FIRST – 94
     AMENDED COMPLAINT