1
2
3
4

MORGAN, LEWIS & BOCKIUS LLP
Aimee Mackay, Bar No. 221690
aimee.mackay@morganlewis.com
300 South Grand Avenue
Los Angeles, CA 90071-3132
Tel:  +1.213.612.2500
Fax:  +1.213.612.2501

5
6
7
8
9

MORGAN, LEWIS & BOCKIUS LLP
Sari Alamuddin (admitted *pro hac vice*)
sari.alamuddin@morganlewis.com
Deborah Davidson (admitted *pro hac vice*)
deborah.davidson@morganlewis.com
110 N. Wacker Drive
Chicago, IL 60606-1511
Tel: +1.312.324.1000
Fax: +1.312.324.1001

10
11

Attorneys for Defendant
SPCP GROUP, LLC

12

13

UNITED STATES DISTRICT COURT

14

CENTRAL DISTRICT OF CALIFORNIA

15

16
17

DANIELLE GAMINO, individually and on behalf of all others similarly situated,

18

Plaintiff,

19

vs.

20

SPCP GROUP, LLC,

21

Defendant,

22

and

23
24

KPC HEALTHCARE INC. EMPLOYEE STOCK OWNERSHIP PLAN,

25

Nominal Defendant.

Case No. 5:20-cv-01126-SB-SHK [Consolidated Case Number]

**JOINT BRIEF RELATING TO DEFENDANT SPCP GROUP, LLC'S MOTION FOR SUMMARY JUDGMENT**

Hearing Date: August 5, 2022
Time:        8:30 am
Judge:      Hon. Stanley Blumenfeld, Jr.
Ctrm:       6C

26
27
28

# TABLE OF CONTENTS

**Page**

I.    Defendant's Introduction.................................................................1

II.   Plaintiff's Introduction ...............................................................3

III.  Issue 1: Whether SPCP "Participated" In The ESOP Transaction ................5

    A.    Argument of SPCP/Moving Party .....................................5

    B.    Argument of Plaintiff/Non-Moving Party ...........................7

        1.    The Stock Purchase and Warrant Sale Were Parts of a
Single Transaction. .........................................................7

        2.    SPCP's Sale of Its Warrants Was an Act in Furtherance of
the 2015 ESOP Transaction.........................................10

IV.   Issue 2: Whether Plaintiff Can Establish "Actual Or Constructive
Knowledge" By SPCP That The Transaction Was Unlawful.....................11

    A.    Argument of SPCP/Moving Party ...................................11

    B.    Argument of Plaintiff/Non-Moving Party .........................20

        1.    There is Sufficient Evidence that SPCP Knew That the
2015 ESOP Transaction Was for More Than Fair Market
Value.........................................................................21

        2.    SPCP Knew the Facts That Rendered the 2015 ESOP
Transaction Prohibited under ERISA § 406(a). ....................25

        3.    SPCP Knew the Facts that Rendered the 2015 ESOP
Transaction Prohibited under ERISA § 406(b). ....................28

V.    Issue 3: Whether the Recovery Plaintiff Seeks is "Appropriate
Equitable Relief".......................................................................30

    A.    Argument of SPCP/Moving Party ...................................30

        1.    General Principles of Equity........................................30

        2.    SPCP Did Not Receive Funds from the ESOP.......................32

        3.    There Is No Specific Fund to Which Plaintiff or the Plan
Beneficiaries are Entitled..............................................35

    B.    Argument by Plaintiff/Non-Moving Party..........................39

        1.    SPCP Need Not Receive Funds from the ESOP. ....................43

        2.    Plaintiff Has Identified a Specific Fund. ................................45

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Acosta v. Brain*,
5
   910 F.3d 502 (9th Cir. 2018).................................................................40

6

*Acosta v. Saakvitne*,
7
   355 F. Supp. 3d 908 (D. Haw. 2019) ...............................12, 14, 28, 29

8

*Acosta v. Vinoskey*,
9
   310 F.Supp.3d 662 (W.D. Va. 2018)...................................................22

10

*In re Agape Litig.*,
   773 F. Supp. 2d 298 (E.D.N.Y. 2011)..............................................7, 11
11

*Bilyeu v. Morgan Stanley Long Term Disability Plan*,
12
   683 F.3d 1083 (9th Cir. 2012)........................................38, 39, 46, 47

13

*Braxton–Secret v. A.H. Robins Co.*,
14
   769 F.2d 528 (9th Cir.1985).........................................................22, 23

15

*Callery v. U.S. Life Ins. Co. in City of New York*,
16
   392 F.3d 401 (10th Cir. 2004).............................................................37

17

*Cent. States, Se. & Sw. Areas Health & Welfare Fund v. First Agency, Inc.*,
18
   756 F.3d 954 (6th Cir. 2014)...............................................................26

19

*Chesemore v. All. Holdings, Inc.*,
20
   886 F.Supp.2d 1007 (W.D. Wis. 2012)................................................7

21

*Del Castillo v. Cmty. Child Care Council of Santa Clara Cty., Inc.*,
   No. 17-CV-07243-BLF, 2019 WL 6841222 (N.D. Cal. Dec. 16,
22
   2019)..........................................................................................*passim*

23

*Depot, Inc. v. Caring for Montanans, Inc.*,
24
   915 F.3d 643 (9th Cir. 2019)...........................................................*passim*

25

*Eslava v. Gulf Tel. Co.*,
   No. CIV A 04-0297-KD-B, 2007 WL 1771416 (S.D. Ala. June 18,
26
   2007)...........................................................................................34, 35, 45

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

- ii -

*Fernandez v. K-M Indus. Holding Co.*,
  646 F.Supp.2d 1150 (N.D. Cal. 2009)................................................44

*Fish v. GreatBanc Tr. Co.*,
  109 F.Supp.3d 1037 (N.D. Ill. 2015)................................................43

*Gamino v. KPC Healthcare Holdings, Inc.*,
  No. 5:20-CV-01126-SB-MRW, 2021 WL 5104382 (C.D. Cal. Nov. 1, 2021)................................................10

*Gamino v. KPC Healthcare Holdings, Inc.*,
  No. 5:20-CV-01126-SB-SHK, 2021 WL 162643 (C.D. Cal. Jan. 15, 2021)................................................27

*Gamino v. SPCP Grp., LLC*,
  No. 5:21-CV-01466-SB-SHK, 2022 WL 336469 (C.D. Cal. Feb. 2, 2022)................................................12, 36, 42, 47

*Great-W. Life & Annuity Ins. Co. v. Knudson*,
  534 U.S. 204 (2002) ................................................31, 39, 40

*Haley v. Tchrs. Ins. & Annuity Ass'n of Am.*,
  No. 17-CV-855 (JPO), 2021 WL 4481598 (S.D.N.Y. Sept. 30, 2021)................................................26

*Haley v. Teachers Ins. and Annuity Assoc. of Am.*,
  377 F.Supp.3d 250 (S.D.N.Y. 2019)................................................21, 26, 27, 28

*Hans v. Tharaldson*,
  No. 3:05-CV-115, 2011 WL 7179644 (D.N.D. Oct. 31, 2011) ................................................20

*Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.*,
  530 U.S. 238 (2000) ................................................11, 20, 21, 28

*Harris Trust. Hurtado v. Rainbow Disposal Co.*,
  No. 8:17-CV-01605-JLS-DFM, 2018 WL 3372752 (C.D. Cal. July 9, 2018)................................................10, 26, 27, 28

*Home Care Ass'n of Am. v. Bonta*,
  No. 21-15617, 2022 WL 445522 (9th Cir. Feb. 14, 2022) ................................................15

*Intel Corp. Inv. Pol'y Comm. v. Sulyma*,
  140 S. Ct. 768 (2020) ................................................12

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

iii

JOINT BRIEF RELATING TO DEFENDANT
SPCP'S MOTION FOR SUMMARY
JUDGMENT

*Johnson v. Couturier*,
   572 F.3d 1067 (9th Cir. 2009)............................................................28, 44

*Keach v. U.S. Tr. Co.*,
   245 F. Supp. 2d 941 (C.D. Ill. 2003)..........................................13, 24

*Keach v. U.S. Tr. Co.*,
   254 F. Supp. 2d 1055 (C.D. Ill. 2003)...............................19, 20, 24

*Liss v. Smith*,
   991 F. Supp. 278 (S.D.N.Y. 1998) ................................................5

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ...................................................................15

*Lumenite Control Tech., Inc. v. Jarvis*,
   252 F.Supp.2d 700 (N.D. Ill. 2003).......................................41, 42, 46

*Mazda Ret. Plans Benefit Comm. v. Franco*,
   No. 8:20-CV-02113-JLS-JDE, 2021 WL 4707041 (C.D. Cal. July
   1, 2021).......................................................................................42

*Meagher v. Int'l Assoc. of Machinists & Aerospace Workers*,
   856 F.2d 1418 (9th Cir. 1988) ......................................................27

*Mertens v. Hewitt Assocs.*,
   508 U.S. 248 (1993) ......................................................32, 35, 40

*Mertens v. Hewitt Assocs.*,
   948 F.2d 607 (9th Cir. 1991) ...................................................32, 33

*Montanile v. Bd. of Trs.*,
   577 U.S. 136 (2016) .....................................................................30, 35

*Neil v. Zell*,
   677 F. Supp. 2d 1010 (N.D. Ill. 2009).........................................*passim*

*Neil v. Zell*,
   753 F.Supp.2d 724 (N.D. Ill. 2010)....................................21, 33, 44, 45

*Neil v. Zell*,
   No. 08 C 6833, 2010 WL 3167293 (N.D. Ill. Aug. 9, 2010)
   ...........................................................................34, 35, 44, 45

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

iv

JOINT BRIEF RELATING TO DEFENDANT
SPCP'S MOTION FOR SUMMARY
JUDGMENT

*Netel v. Netel,*
   No. 11-CV-01935-JVS, 2012 WL 13162839 (C.D. Cal. Mar. 29,
   2012) ......................................................................................................... 10

*North Am. Coal Corp. Ret. Sav. Plan v. Roth,*
   395 F.3d 916 (8th Cir. 2005) ................................................................... 41

*NYSA-ILA Med. & Clinical Servs. Fund v. Catucci,*
   60 F. Supp. 2d 194 (S.D.N.Y. 1999) ...................................... 5, 38, 47

*Patelco Credit Union v. Sahni,*
   262 F.3d 897 (9th Cir. 2001) ............................................. 29, 30, 43

*Pinter v. Dahl,*
   486 U.S. 622 (1988) .................................................................... 37

*Pizzella v. Vinoskey,*
   409 F. Supp. 3d 473 (W.D. Va. 2019).................................... *passim*

*Reich v. Lancaster,*
   55 F.3d 1034 (5th Cir. 1995) ........................................... 12, 20

*Rexford v. Southern Woodland Co.,*
   208 F. 295 (D.S.C. 1913) ........................................................ 37

*Rudman v. Cowles Communications, Inc.,*
   30 N.Y.2d 1 (N.Y. 1972) .......................................................... 37

*Sereboff v. Mid Atl. Med. Servs., Inc.,*
   547 U.S. 356 (2006) ............................................................... 30

*Sheet Metal Workers' Health & Welfare Fund of N. Carolina v. L. Off.
   of Michael A. DeMayo, LLP,*
   21 F.4th 350 (6th Cir. 2021)................................................. 39

*Solis v. Couturier*
   No. 2:08-CV-02732-RRB-GGH, 2009 WL 1748724 (E.D. Cal.
   June 19, 2009)....................................................................... 43

*Spear v. Fenkell,*
   No. 13-CV-02391, 2016 WL 5661720 (E.D. Pa. Sept. 30, 2016) .................. 7, 8

*Sulyma v. Intel Corp. Inv. Pol'y Comm.,*
   909 F.3d 1069 (9th Cir. 2018)............................................... 21

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

v

JOINT BRIEF RELATING TO DEFENDANT
SPCP'S MOTION FOR SUMMARY
JUDGMENT

*Trustees of Upstate New York Engineers Pension Fund v. Ivy Asset Mgmt.*,
  131 F. Supp. 3d 103 (S.D.N.Y. 2015), *aff'd*, 843 F.3d 561 (2d Cir.
  2016) .......................................................................................................... 5, 6, 11

*Walsh v. Vinoskey*,
  19 F.4th 672 (4th Cir. 2021) ..................................................................*passim*

*White v. Moore*,
  22:1-CV-06964-MCS-MAA, 2022 WL 2197004 (C.D. Cal. Apr.
  26, 2022) ......................................................................................................... 48

*Zirbel v. Ford Motor Co.*,
  980 F.3d 520 (6th Cir. 2020) ................................................................ 41, 46

**Statutes**

Employee Retirement Income Security Act of 1974, 29 U.S.C.
  §§ 1001-1461 ...........................................................................................*passim*

**Other Authorities**

29 CFR § 2550.408e(a) ...................................................................................... 30

Local Rule 5-4.3.4(a)(2) .................................................................................... 48

Fed. R. Civ. P. 56(f) ........................................................................................... 48

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

vi

JOINT BRIEF RELATING TO DEFENDANT
SPCP'S MOTION FOR SUMMARY
JUDGMENT

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### I.    **DEFENDANT'S INTRODUCTION**

On August 28, 2015, Defendant Alerus Financial, N.A ("Alerus"), acting as trustee of the KPC Healthcare Holdings Inc. ("KPC") employee stock ownership plan ("ESOP"), caused the ESOP to purchase 100% of the shares of KPC common stock from Defendant Kali Pradip Chaudhuri (the "2015 ESOP Transaction").  Plaintiff Danielle Camino, a former ESOP participant, claims that the ESOP paid more than fair market value for KPC stock in the 2015 ESOP transaction. As a result, she alleges claims for relief under Section 502(a) of Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a) against Alerus and Dr. Chaudhuri for allegedly breaching their fiduciary duties under ERISA Section 404, 29 U.S.C. § 1104, and participating in a transaction prohibited under ERISA Section 406(a), 29 U.S.C. § 1106.

In addition to her claims against Alerus and Dr. Chaudhuri, Plaintiff alleges that Defendant SPCP Group, LLC (together with its affiliates, "SPCP" or "Defendant"), a non-fiduciary, knowingly participated in the ERISA violations committed by Alerus and Dr. Chaudhuri when, also on August 28, 2015, but before the ESOP's purchase of Dr. Chaudhuri's common stock, KPC (not the ESOP) redeemed SPCP's pre-existing warrants from the company then-known as Integrated Health Holdings, Inc. ("IHHI") in exchange for: ▐▐▐▐▐ in cash; a promissory note in the original principal amount of $▐▐▐▐▐; a new warrant callable after the consummation of the ESOP Transaction; and ▐▐▐ of any net payments received by KPC or its subsidiaries under California's hospital quality assurance fee ("QAF") program (which provides supplement payments to hospitals that serve California's Medicaid program and uninsured patients) for services provided from January 1, 2017 to December 31, 2024 ("Warrant Purchase Agreement"). SPCP never held any IHHI Or KPC common stock, the ESOP was not a party to the Warrant Purchase Agreement, and SPCP was not a party to the ESOP Transaction. Plaintiff seeks

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1

JOINT BRIEF RELATING TO DEFENDANT
SPCP'S MOTION FOR SUMMARY
JUDGMENT

equitable relief against SPCP under ERISA Section 502(a)(3), 29 U.S.C § 1132(a)(3).

SPCP now moves for summary judgment.  Even  assuming that Plaintiff can prove a remediable violation of ERISA—to wit, that Alerus or Dr. Chaudhuri breached their fiduciary duties or engaged in a prohibited transaction—she cannot prove that SPCP "participated" in the ESOP Transaction within the meaning of ERISA, that SPCP had "actual or constructive knowledge" that (as she alleges) Dr. Chaudhuri's stock was sold to the ESOP at an inflated price, or that there is "appropriate equitable relief" available against SPCP.  The undisputed material facts show that SPCP is entitled to judgment as a matter of law on Plaintiff's claims. First, SPCP was not a party to the August 28, 2015, stock purchase agreement ("Stock Purchase Agreement") pursuant to which the ESOP purchased the KPC shares from Dr. Chaudhuri.  The ESOP did not exist at the time SPCP acquired its initial warrant (many years before the ESOP Transaction), the ESOP was not a party to the second Warrant Purchase Agreement between SPCP and KPC, and SPCP, as a non-party, received no consideration from the ESOP in the Stock Purchase Agreement (or otherwise).  Thus, SPCP did not participate in the ESOP Transaction.

Second, SPCP neither knew nor should have known of the circumstances allegedly rendering the ESOP Transaction unlawful (the alleged overvaluation of company stock by Alerus and its financial advisor Stout)—a prerequisite to finding SPCP liable for any knowing-participation claim.  SPCP was not privy to the process through which Alerus and its advisors engaged in valuing the stock purchased by the ESOP and did not have access (or any right to access) to any of their due diligence or other materials.  Thus, SPCP neither knew nor should have known of any purported valuation errors.

Moreover, SPCP did not have the requisite independent knowledge to conclude that the ESOP Transaction was imprudent or that more than adequate consideration was paid by the ESOP based on the decision of the independent trustee,

1    Alerus.  To the contrary, SPCP conducted its own independent analysis of the ESOP

2    Transaction, based on the information it did possess, which resulted in a base

3    valuation that was consistent with, but not informed by, Alerus' valuation of ████

4    ████.  Plaintiff's contention that SPCP should have known that Alerus's valuation

5    was for more than adequate consideration because SPCP had access to financial

6    records evidencing IHHI's poor performance in prior years is irrelevant, ignoring

7    how the landscape changed over time—both in terms of SPCP's access to financial

8    records and its knowledge of KPC's significantly improved most recent performance.

9    As to the former, SPCP's access to financial records diminished greatly once SPCP

10   ceased being a lender to IHHI, in February 2014.  As to the latter, by August 2015,

11   SPCP knew that KPC was under new management, who had made significant

12   operational improvements and had transformed KPC's performance and outlook, and

13   that future QAF revenue streams appeared far more certain.

14           SPCP also knew that Credit Suisse, a respected lender, was willing to lead a

15   syndicate of 19 lenders and approve a ████████ loan to the Company (which

16   would not have exceeded 50%-65% of the Company's total capital structure) based

17   on its own independent due diligence.  Indeed, the loan was oversubscribed, and

18   SPCP had to negotiate hard to receive even a small allocation of the ████████

19   loan ($10 million).  Under these circumstances, the only information available to

20   SPCP suggested that the ESOP Transaction occurred at an appropriate valuation, and

21   there is simply no basis in the record to conclude otherwise.

22           Finally, SPCP did not receive ESOP assets.  Plaintiff improperly seeks the

23   "overage" between whatever was fair market value for the common stock acquired

24   by the ESOP from Dr. Chaudhuri, and what SPCP received from KPC as

25   consideration for its warrants.  This mixes apples and oranges.  Such relief would not

26   have been available at equity, so it is not available under ERISA.

27   **II.     PLAINTIFF'S INTRODUCTION**

28           SPCP played a key role in the 2015 ESOP Transaction.  It sold its warrants to

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

3

JOINT BRIEF RELATING TO DEFENDANT
SPCP'S MOTION FOR SUMMARY
JUDGMENT

purchase KPC stock for consideration worth tens of millions of dollars. That warrant sale was expressly a condition of and integrated with the broader 2015 ESOP Transaction because one of the primary goals of Dr. Chaudhuri's sale of his KPC stock to the Plan was to realize a significant tax benefit (which would also benefit SPCP). That tax benefit—which ensured that KPC would not pay income tax on its revenues, including QAF revenues, at the corporate level—could only be achieved by converting to a 100% ESOP-owned S-Corporation, which required taking out SPCP's warrants. SPCP knew the 2015 ESOP Transaction was for more than fair market value because just eight months prior, its own analyst valued the business's equity $200 million lower than the Transaction price. SPCP also had specific information regarding the revenue projections that the Trustee was using to arrive at the Transaction price, and SPCP viewed them as inflated. Contrary to its unsupported assertions, SPCP did not enter the transaction based on the representations of Credit Suisse ("CS"): it did so because selling its warrants to KPC to enable the ESOP's purchase of KPC offered windfall returns for its warrants to purchase the stock of a struggling hospital system. And SPCP did so with knowledge of all the key ransaction terms, including that this transaction involved an ESOP, was being executed by that ESOP's fiduciary, and involved other company insiders and fiduciaries—Dr. Chaudhuri and William Thomas—and thus with knowledge of the circumstances that made the 2015 ESOP Transaction a prohibited transaction under ERISA.

Because SPCP unjustly enriched itself by knowingly participating in violations of ERISA, Plaintiff seeks appropriate equitable relief against it. That relief will consist of an equitable lien against a specific fund, the consideration SPCP received for its warrants. The amount of the equitable lien on this specific fund will be in the amount, determined at trial, at which SPCP was unjustly enriched. Such relief is not only equitable relief, but it is appropriate here, where SPCP has been unjustly enriched at the expense of the Plan and its participants.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

4

JOINT BRIEF RELATING TO DEFENDANT
SPCP'S MOTION FOR SUMMARY
JUDGMENT

## III.   ISSUE 1: WHETHER SPCP "PARTICIPATED" IN THE ESOP TRANSACTION

### A.   Argument of SPCP/Moving Party

To succeed on a "knowing participation" claim, plaintiffs must show that the non-fiduciary participated in the transaction by causing it to occur, knowing it was a breach of fiduciary duty to the plan participants.  Thus, "participation" is an element of "knowing participation," and requires proof of the non-fiduciary's conduct.  *See Liss v. Smith*, 991 F. Supp. 278, 306 (S.D.N.Y. 1998) (noting that in attempting to hold non-fiduciary liable for "knowing participation" in ERISA breaches, "plaintiffs must also establish that [non-fiduciary] sufficiently 'participated' in these breaches"); *NYSA-ILA Med. & Clinical Servs. Fund v. Catucci*, 60 F. Supp. 2d 194, 205 (S.D.N.Y. 1999) (other corporate officers not liable for "knowing participation" in ERISA violations where, despite having executive roles, CEO was "the only true decision-maker" and he controlled funds that were wrongfully diverted from multiemployer benefit plan).

It is not enough to satisfy the "participation" element by showing, for example, that the non-fiduciary defendant had a role in and profited from the transaction.  In *Trustees of Upstate New York Engineers Pension Fund v. Ivy Asset Mgmt.*, 131 F. Supp. 3d 103, 131 (S.D.N.Y. 2015), *aff'd*, 843 F.3d 561 (2d Cir. 2016), the Court considered the potential knowing participant liability of Bank of New York Mellon, which acquired an investment firm known as Ivy Asset Management.  By the time the bank acquired Ivy, Ivy had determined that investments it had previously recommended in assets managed by Bernard Madoff presented substantial risk of fraud to investors.  *Id.* at 110-114. Although Ivy advised other clients to liquidate their investments in Madoff's securities, neither Ivy nor the Bank so advised the plaintiff pension plan.  The Bank continued to accept advisory fees from the pension plan following the Ivy acquisition.  *Id.* at 115.  At the time of Madoff's arrest (years later), the plan's investment became worthless, losing $50 million in value.  *Id.*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

5

JOINT BRIEF RELATING TO DEFENDANT
SPCP'S MOTION FOR SUMMARY
JUDGMENT

Despite the bank's uncontroverted knowledge of Madoff's fraud, the court declined to hold it liable on a knowing- participation theory, rejecting the plan's argument that "[b]y virtue of its acquiescence and its receipt of the investment advisory fees paid by the Plan, Defendant BONY became a knowing participant in [its co-defendants'] fiduciary breach...." *Id.* at 132.  According to the Court, "case law indicates that Plaintiff must plead facts demonstrating that the Bank acted ... [to] caus[e] the prohibited investment." *Id.* (citations omitted).

Here, SPCP did not "cause" the 2015 ESOP Transaction.  SPCP was not a party to the Stock Purchase Agreement and did not cause the ESOP to purchase KPC stock.   Joint Appendix of Facts ("JAF") Nos. 18-36.   SPCP learned about the Transaction after it had been designed by Dr. Chaudhuri and others, and only received sporadic updates about the potential deal's progress.  JAF Nos. 47-49, 66, 79-94. It was not involved in any diligence done on the Transaction, nor was it involved in drafting the papers, determining the transaction price, or consummating the Transaction.  JAF Nos. 16, 91-94.  Instead, SPCP, in a separate transaction to which the ESOP was not a party, relinquished long-standing warrants in KPC in exchange for consideration paid by KPC.  JAF Nos. 1-36.

Plaintiff argues that the ESOP could not have purchased 100% of KPC stock without SPCP agreeing to sell back its warrants to KPC in the first instance.  But, as Michael Harden, former partner at Eureka Capital Partners ("Eureka"), who acted as advisor to KPC regarding the ESOP Transaction, testified, these were separate business decisions.  JAF No. 34.  Mr. Harden testified that "SPCP was simply engaged in the warrant redemption transaction alone."  JAF No. 35.  Moreover, he explained that while the ESOP Transaction might not have occurred without the warrant redemption transactions occurring first (because the exercise of SPCP's pre-existing warrant could have diluted the equity interest represented by Dr. Chaudhuri's common stock), "the warrant transaction[s] could have occurred on [their] own" without the ESOP Transaction. JAF No. 36.

6

That SPCP's agreement to relinquish its pre-existing warrants preceded or facilitated the ESOP's purchase of 100% of KPC shares in the Stock Purchase Agreement does not mean that SPCP participated in that Agreement. *See In re Agape Litig.*, 773 F. Supp. 2d 298, 325 (E.D.N.Y. 2011) (holding that even where a bank engages in "banking activities" that "made it easier for [the actor with fraudulent intent] to effectuate the scheme, these conventional banking transactions [a]re not the proximate cause of the Plaintiffs' damages and therefore do not constitute substantial assistance" in the fraud).

## B.   Argument of Plaintiff/Non-Moving Party

SPCP seeks summary judgment on the participation element of Plaintiff's knowing participation claim on two grounds—that SPCP only participated in the sale of its warrants to KPC, not the Plan's purchase of KPC stock from Dr. Chaudhuri, and that in any event its involvement in the transaction does not constitute participation. *Supra* III.A. But the warrant sale was part of the same transaction as the stock sale because the two components of the 2015 ESOP Transaction were united in purpose and plan. And SPCP's proposed heightened standard for participation, which would require that SPCP have *caused* the transaction as a whole, is inconsistent with the law and this Court's prior decisions.

### 1.   The Stock Purchase and Warrant Sale Were Parts of a Single Transaction.

The ESOP's purchase of Dr. Chaudhuri's KPC stock, KPC's cancellation of Chaudhuri's warrants, and KPC's purchase of Thomas and SPCP's warrants were all "'*a* transaction'" because "the entire set of steps and all the parties were united in a single purpose and plan." *Spear v. Fenkell*, No. 13-CV-02391, 2016 WL 5661720, at *11 (E.D. Pa. Sept. 30, 2016) (emphasis in original); *Chesemore v. All. Holdings, Inc.*, 886 F.Supp.2d 1007, 1056 (W.D. Wis. 2012) (declining to "parse the fiction of individual steps" where transaction was negotiated as "an integrated whole to which [defendant] would benefit"), *aff'd sub nom. Chesemore v. Fenkell*, 829 F.3d 803 (7th

Cir. 2016). In *Spear*, the ESOP trustee brought breach of fiduciary duty and prohibited transaction claims against a former fiduciary regarding a "complex set of transactions" that included a series of loans intended to capture substantial tax benefits, security arrangements, and stock purchases. *Spear,* 2016 WL 5661720 at *4, *12. The *Spear* court rejected defendant's effort "to unspool the transaction, as if the half-billion in loan proceeds arrived… by a series of independent market events that serendipitously coalesced into a profitable whole." *Id.* at *11. The court identified the following facts from the transaction documents to find that the agreements were unified in purpose and plan: the "separate 'transactions' took place at once," each "transaction was dependent on the one before it and the one after it," that "the various steps in the transaction were negotiated as one deal," and "without the first step… none of the secondary steps made sense." *Id.*

Each of these facts is present here. First, as KPC's advisor Michael Harden of Eureka testified, the purportedly separate transactions were "simultaneous." Harden Depo. at 237:24. On August 28, 2015, KPC borrowed ███████ from a consortium of lenders headed by CS. Ex. 11 at 1. That same day, KPC used cash from that loan to purchase SPCP and Thomas's warrants. Ex. 14 at 2; Ex. 16 at 2; Ex. 33 at EUREKA_041140. Also on that same day, KPC used other proceeds of that loan to extend a loan of its own to the Plan—proceeds which the Plan then used to purchase Dr. Chaudhuri's KPC Stock. *Id.* at EUREKA_041149; Ex. 13 at 1-3. It was not a coincidence that these transactions happened on the same day: each was dependent on the others. Ex 7 at 1. Without the CS loan, there could be no financing for the warrant purchases. Ex. 34 at 42. Without those warrant purchases, KPC would not be able to achieve significant tax benefits it stood to gain from converting to a 100% ESOP-owned S-corporation as part of the ESOP transaction. Harden Depo. at 238:9-21; Banks Depo. at 104:20-105:7; Ex. 19 at 1. And those significant tax benefits were themselves part of the underwriting case that had made CS willing to finance the transaction as a whole in the first instance.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

8

JOINT BRIEF RELATING TO DEFENDANT
SPCP'S MOTION FOR SUMMARY
JUDGMENT

These simultaneous, interdependent transactions were negotiated and evaluated by the parties involved as a single deal. A July 2015 lender presentation shows two slides headed "ESOP Transaction" that set out the eight steps of the proposed transaction which are to produce the "End Result" in which Dr. Chaudhuri and the warrant holders receive cash and notes. Ex. 34 at 42-43. KPC's financial advisor, Eureka, identified the objectives of the KPC board in this transaction as creating "a partial liquidity event for the shareholder" and realizing "all available tax benefits for the Company." *Id*. at 2. SPCP notes that Mr. Harden testified that the ESOP stock sale and the warrant transaction were "separate business decisions" involving different parties, but SPCP ignores that Harden also testified that they were "integrated transactions." Harden Depo. at 235:1-14, 16-19. They were "simultaneous" so that they could all be executed at the same price per share. *Id*. at 237:23-238:1. Most importantly, Harden testified that while hypothetically the warrant sale "could have occurred on its own," "we couldn't have done the ESOP transaction without… Dr. Chaudhuri owning a hundred percent of the shares." *Id*. at 238:9-21. This was because with "somebody else either owning shares or having a claim on the shares" such as through warrants, *id*., KPC would not have been able to realize the substantial tax benefits of an S-corporation conversion—which Thomas Banks contemporaneously acknowledged was "[t]he main benefit of the ESOP transaction." Banks Depo. at 104:20-105:7; Ex. 21 at 1. In other words, without SPCP's participation in the 2015 ESOP Transaction through the sale of its warrants, the main benefit of the ESOP transaction – for both Chaudhuri and SPCP -- would have been frustrated. As Thomas Banks of SPCP explained to one of his colleagues at the time: "They sold the company to an ESOP and had to take us out in order to do it." Ex. 35 at 1. Because the warrant sale and stock purchase were part of a single transaction, SPCP's participation in the sale of its warrants was also participation in the 2015 ESOP Transaction.

### 2.     SPCP's Sale of its Warrants was an Act in furtherance of the 2015 ESOP Transaction.

SPCP asserts that Plaintiff must show SPCP caused the 2015 ESOP Transaction. *Supra* III.A. This Court already rejected this argument. The Court denied Defendants Chaudhuri and Thomas's motions to dismiss the First Amended Complaint against them on the theory that "Plaintiff must establish that Thomas and Dr. Chaudhuri 'actively facilitated' each other's violations" to establish their knowing participation in those violations. *Gamino v. KPC Healthcare Holdings, Inc.*, No. 5:20-CV-01126-SB-MRW, 2021 WL 5104382, at *5 (C.D. Cal. Nov. 1, 2021). SPCP's assertion that it must have caused the transaction goes even further. But this Court held that "[a]ctive facilitation is a sufficient—but not necessary—means of pleading knowing participation." *Id*. This is consistent with cases in this District holding that knowingly *receiving* ill-gotten assets constitutes knowing participation under *Harris Trust*. *Hurtado v. Rainbow Disposal Co.*, No. 8:17-CV-01605-JLS-DFM, 2018 WL 3372752, at *15 (C.D. Cal. July 9, 2018) (holding non-party-in-interest purchaser in ESOP transaction participated in fiduciary breaches); *Netel v. Netel*, No. 11-CV-01935-JVS, 2012 WL 13162839, at *2 (C.D. Cal. Mar. 29, 2012) (holding law firm that merely received plan assets knowingly participated in fiduciary breach).

Even under an active facilitation standard, SPCP participated in the 2015 ESOP Transaction. SPCP sold its warrants in exchange for millions of dollars in cash, notes, new warrants, and rights to a portion of KPC's Quality Assurance Fee (QAF) revenue. Ex. 36 at No. 9; Ex. 16 at 2. It did so as part of a larger transaction intended in part to achieve significant tax benefits through a sale to the ESOP, tax benefits that required redemption of SPCP's warrants. Harden Depo. at 235:1-19, 238:9-21. SPCP also participated in the 2015 ESOP Transaction by simultaneously entering into an Investor Rights Agreement with the ESOP, Chaudhuri, Thomas, and KPC providing, among other things, that KPC would not appoint a new Trustee or Plan Administrator

1  without the prior written consent of Dr. Chaudhuri's hand-picked representative. Ex.
2  37 at § 8.1(d)(1). Dr. Chaudhuri was specifically concerned that a trustee might "vote
3  in a rogue board" that would not prioritize his own interests. Ex. 38 at 1. By so
4  agreeing, SPCP reinforced Dr. Chaudhuri's control over KPC.

5         This level of participation is more involved, substantial, and causally linked to
6  the breach than the cases SPCP cites. In *Agape*, the court held that a bank merely
7  providing routine banking services did not constitute "substantial assistance" to
8  support a claim for aiding and abetting fraud under New York law by. *In re Agape*
9  *Litig.*, 773 F.Supp.2d 298, 322-35 (E.D.N.Y. 2011). Here, SPCP's participation went
10 beyond providing routine financial services. SPCP, a sophisticated hedge fund,
11 engaged counsel, negotiated multiple complex transaction documents, and
12 exchanged its existing equity position in KPC for more than ███████ in cash, ██
13 ███ in notes, Ex. 16 at 2, and an "esoteric" asset in the form of QAF rights that
14 required specialized consultant analysis and accounting treatment. Banks Depo. 93:7-
15 22; 171:4-25. Similarly, in *Ivy Asset Management*, the court dismissed a knowing
16 participation claim against a bank where the bank was not alleged to have taken any
17 action at all except receive fees, and there was no allegation that the fees themselves
18 were tainted. *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 131 F.
19 Supp. 3d 103, 132 (S.D.N.Y. 2015). Here, the consideration that SPCP received for
20 its warrants consists of the tainted proceeds of a transaction prohibited by ERISA—
21 that could not have taken place without SPCP's acts in furtherance of it.

22 **IV.  ISSUE 2: WHETHER PLAINTIFF CAN ESTABLISH "ACTUAL OR**
23 **CONSTRUCTIVE KNOWLEDGE" BY SPCP THAT THE**
   **TRANSACTION WAS UNLAWFUL**

24       **A.   Argument of SPCP/Moving Party**

25       Interpreting Section 502(a)(3) of ERISA (29 U.S.C. § 1132(a)(3)), which
26 imposes liability on non-fiduciaries in a limited context, the Supreme Court held in
27 *Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 251
28 (2000), that non-fiduciaries to an ERISA transaction may be held liable for

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

11

JOINT BRIEF RELATING TO DEFENDANT
SPCP'S MOTION FOR SUMMARY
JUDGMENT

knowingly participating in breaches of fiduciary duty and other wrongdoing committed by plan fiduciaries, but only where the non-fiduciary is "demonstrated to have had actual or constructive knowledge of the circumstances that rendered the transaction unlawful." *Gamino v. SPCP Grp., LLC*, No. 5:21-CV-01466-SB-SHK, 2022 WL 336469, at *3 (C.D. Cal. Feb. 2, 2022) (quoting *Del Castillo v. Cmty. Child Care Council of Santa Clara Cty., Inc.*, No. 17-CV-07243-BLF, 2019 WL 6841222, at *3 (N.D. Cal. Dec. 16, 2019) (citing *Harris*, 530 U.S. at 249-251) (plaintiff must show that the defendant had 'actual or constructive knowledge of the circumstances that rendered any prohibited transaction wrongful.'"); *Walsh v. Vinoskey*, 19 F.4th 672, 678 (4th Cir. 2021) (In a knowing-participation claim, "general knowledge of the transaction's circumstances is not enough. The "[non-fidcuiary] must know the circumstances that rendered the transaction unlawful."); *Acosta v. Saakvitne*, 355 F. Supp. 3d 908, 924 (D. Haw. 2019) ("Knowing participation" means "actual or constructive knowledge of the circumstances that rendered the transaction unlawful.") (quoting *Harris*, 530 U.S. at 251). Thus, to prevail, Plaintiff must show that SPCP had actual or constructive knowledge that, as she contends, Alerus overvalued the stock purchased by the ESOP.

In the ERISA context, "to have 'actual knowledge' of a piece of information, one must in fact be aware of it." *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 140 S. Ct. 768, 776 (2020) (noting that "[l]egal dictionaries give 'actual knowledge' the same meaning: '[r]eal knowledge as distinguished from presumed knowledge or knowledge imputed to one.'" (quoting Ballentine's Law Dictionary 24 (3d ed. 1969)). "Constructive knowledge" means that a reasonably prudent person in the defendant's shoes "would [be] alerted…to a probable violation." *Reich v. Lancaster*, 55 F.3d 1034, 1058 (5th Cir. 1995). It does not require the defendant to conduct an investigation into the planned transaction to determine if it might be unlawful. *Del Castillo*, 2019 WL 6841222, at *7 (rejecting the argument that non-fiduciary defendants 'had a common-sense obligation to inquire into whether or not'" the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

12

JOINT BRIEF RELATING TO DEFENDANT
SPCP'S MOTION FOR SUMMARY
JUDGMENT

proposed transaction violated ERISA); *see also Keach v. U.S. Tr. Co.*, 245 F. Supp. 2d 941, 945–46 (C.D. Ill. 2003) ("Plaintiffs argue that the [non-fiduciary] Defendants undertook no independent investigation or inquiry with respect to the transactions. However, this puts the cart before the horse, as these Defendants are not fiduciaries, and the law does not impose such an onerous duty on non-fiduciaries in the absence of notice of the need to do so.").

SPCP cannot be charged with any knowledge – actual or otherwise – regarding any alleged flaws in Stout's valuation process.  It is undisputed that SPCP played no role in the valuation of KPC stock for the ESOP Transaction and did not receive (and had no right to access) any of the due diligence materials—indeed, SPCP never received a copy of Stout's valuation report, or its opinions on solvency and transactional fairness. JAF Nos.91-94. SPCP did not know, for example, that Stout had decided not to tax effect future QAF payments – the crux of Plaintiff's overvaluation claim.  JAF Nos. 91-94, 112.   SPCP did not participate in any due diligence meetings, did not speak with Alerus or any of its advisors (including Stout), and was not otherwise privy to the considerations giving rise to Stout's valuation. JAF Nos. 16, 91-94.  These circumstances—in which SPCP was a complete outsider to the ESOP Transaction and the process leading up to the valuation of the stock by the independent ESOP Trustee Alerus —render meritless Plaintiff's claim for SPCP's knowing participation regarding the valuation of the ESOP.

The *Vinoskey* litigation is instructive.  The District Court carefully considered the "knowing participant" liability of Adam Vinoskey, CEO of a beverage equipment supply company.  *Pizzella v. Vinoskey*, 409 F. Supp. 3d 473, 527 (W.D. Va. 2019), *aff'd in part, rev'd in part sub nom. Walsh v. Vinoskey*, 19 F.4th 672 (4th Cir. 2021). In a detailed opinion, the Court examined Vinoskey's conduct in the transaction through which he sold his remaining shares in the company he founded to the company's ESOP at an inflated price.  Although the ESOP hired an independent fiduciary to represent the ESOP in the transaction, that fiduciary (Evolve) conducted

1  "rushed and cursory" due diligence on the deal and failed to critically evaluate the
2  valuation conducted by the analyst (Napier) hired to value Vinoskey's stock.  409 F.
3  Supp. at 488-508.   Nevertheless, the Court noted that although Evolve met with
4  Vinoskey once at a "due diligence" meeting, "[t]here is no evidence that Adam
5  Vinoskey knew, or should have known, that Evolve failed to question many of the
6  specific flaws in Napier's appraisal,… failed to follow through on the issues it did
7  raise, or failed to review Napier's updated or final appraisal before offering $406.00
8  per share." *Id.* at 527. The Court concluded that "the evidence does not support a
9  finding that Adam Vinoskey had actual or constructive knowledge of the exact details
10 of Evolve's imprudent process." *Id.*

11      Here, SPCP had far less knowledge – in fact, no knowledge – of the details of
12 Alerus' process in approving the ESOP Transaction.   All SPCP knew was the
13 "headline" terms of the deal—the ▮▮▮ Million price and the fact that the trustee had
14 based that price on a ▮▮▮▮▮▮ in company EBITDA projection.   JAF No. 92.
15 Unlike the defendant in *Vinoskey*, SPCP attended no due diligence meetings, had no
16 contact with Alerus or any of its advisors, and had no visibility to any detail—much
17 less the "exact details" of Alerus' allegedly imprudent process. JAF Nos. 91-94. To
18 the extent Stout's methodology was flawed (which SPCP disputes), SPCP had no
19 reason to know. *Cf.*, *e.g.*, *Saakvitne*, 355 F. Supp. 3d at 925 (holding that complaint
20 sufficiently alleged knowing participation claim against company president and vice
21 president, both of whom had "intimate involvement in the ESOP" and failed to
22 correct a valuation which assigned a 30% control premium to the sale of their stock
23 when they both in fact knew "that control of the Company would not change").

24      Despite's SPCP's non-involvement in the valuation process, Plaintiff alleges
25 that SPCP knew or should have known that the stock price determined by the
26 independent ESOP Trustee was too high because it knew that KPC/IHHI "had
27 experienced substantial financial distress, instability, layoffs, and persistent inability
28 to make budgets" due to its historical access to IHHI financial records.  (FAC, Dkt

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

JOINT BRIEF RELATING TO DEFENDANT
SPCP'S MOTION FOR SUMMARY
JUDGMENT

21 ¶ 87).   While this Court determined that these allegations sufficed to survive a pleadings challenge, in opposing summary judgment, "[i]n response to a summary judgment motion, … the plaintiff can no longer rest on such "mere allegations," but must "set forth" by affidavit or other evidence "specific facts" that will be "supported adequately by the evidence adduced at trial." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (internal citation omitted); *Home Care Ass'n of Am. v. Bonta*, No. 21-15617, 2022 WL 445522, at *2 (9th Cir. Feb. 14, 2022).   Here, the undisputed facts learned in discovery confirm that Plaintiff's "independent knowledge" claim fails as a matter of law.

Plaintiff's "independent knowledge" theory utterly ignores how the landscape changed over time – both in terms of SPCP's access to financial records and KPC's performance.   First, while it is true that SPCP had at one time regular access to certain of IHHI's financial records and occasionally attended board meetings pursuant to observer rights, that access changed materially on February 7, 2014, when SPCP ceased to be a lender to IHHI as a result of IHHI's decision to refinance the existing loan through a separate loan with MidCap Financial.   JAF Nos. 39-49.   Thereafter, SPCP lost its right to demand inspection of KPC's financial statements and any observer rights it previously held.   JAF Nos. 47.   And, because SPCP then owned only a "very small position in exercised warrants, SPCP "w[as]n't in frequent communication with IHHI" about anything, including its financial health or performance.   JAF No. 48. Indeed, following the loan refinancing, SPCP would request KPC's financial statements once a year, when preparing its annual fair valuation memo of the warrants it held.   JAF No. 49. Thus, at the time of the ESOP Transaction, SPCP's access to KPC's finances was much more limited.

The *Vinsokey* litigation is again instructive.   The court held Vinoskey liable on an "independent knowledge" theory similar to that asserted by Plaintiff, but based on markedly different evidence, falling into four categories:

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

15

JOINT BRIEF RELATING TO DEFENDANT
SPCP'S MOTION FOR SUMMARY
JUDGMENT

- Adam Vinoskey had reviewed both the appraisal and the company's financials before agreeing to the $406.00 per share price
- Adam Vinoskey had reviewed the stock price in each of an independent appraiser's annual appraisals; knew that from 2004 to 2009, the appraised price ranged from $220.00 to $285.00 per share; and understood the appraiser's general methodology
- Adam Vinoskey had reviewed the company's financials on a regular basis, and had a "keen understanding" of certain fundamentals, such as, for instance, how much working capital the company required to operate and the fact that the company's earnings had been lackluster in 2009
- Adam Vinoskey knew that he was not really relinquishing control over the company by selling his shares to the ESOP, and, by extension, knew that the ESOP did not stand to gain absolute control over the company after the 2010 Transaction

*Vinoskey*, 409 F. Supp. 3d at 527-28. The Court concluded that "[t]aken together, the above evidence supports a reasonable inference that Adam Vinoskey knew that the $406.00 per share—a price justified largely on an assumption that he would be ceding full control over [the company] to the ESOP—he received exceeded the fair market value of his stock." *Id.*

Unlike Vinoskey, SPCP did not review Stout's appraisal, approve the share price or sell shares directly to the ESOP. Moreover, following the loan refinancing, it did not review "financials on a regular basis" and was not a corporate insider. Finally, SPCP was not aware of any deception embedded in the ESOP Transaction (unlike the false representation in *Vinoskey* that Vinoskey was relinquishing control over the company when, in fact, he was not).

Second, while as a former lender SPCP was aware of IHHI's historical struggles, what matters is what SPCP knew *as of August 2015*. By that time, SCPC had learned "new facts" concerning both "operating improvements in the company and…higher amounts of QAF that it would stand to get." JAF 74. SPCP was aware that under KPC's new management, the company's performance "significantly improved in the past few months…." JAF 75. For example, KPC experienced positive EBITDA for fiscal year 2015 ███████ compared to negative

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

16

JOINT BRIEF RELATING TO DEFENDANT
SPCP'S MOTION FOR SUMMARY
JUDGMENT

1   EBITDA of ████████ the previous fiscal year in 2014 (a one-year improvement

2   of ████████) due primarily to operational improvements undertaken once

3   ownership and management of KPC was consolidated.  JAF No. 76.  SPCP was also

4   aware that KPC was predicting higher amounts of future QAF—namely, ████

5   ████ over the next three years, which would allow the company to completely

6   retire its outstanding debt.  JAF No. 77.  Moreover, SPCP had discussed the future

7   of the QAF program with a consultant who had concluded that there was "very little

8   risk" to the program and that it was "highly likely" to continue beyond 2016 "as the

9   legislation for continuing it had already been approved."  JAF Nos. 107-109.  SPCP

10  believed that the potential for future QAF payments, in turn, substantially increased

11  the value of the company. JAF No. 78.

12       In *Vinoskey*, the Court concluded that Adam Vinoskey was in a prime position

13  to know that the price paid for his stock was overvalued, particularly given his

14  awareness that the market was shifting and the years ahead likely would see

15  worsening financial performance.  409 F. Supp. 3d at 510.  Vinoskey "regularly

16  examined what the cash balance was, what receivables were, what the liabilities

17  were;" reviewed "dump sheets that included information about the profit margin of

18  jobs currently in progress"; and was also present during the due diligence meeting

19  when the company told the valuation firm about the "lack of growth in the soft drink

20  industry" that would impact the company's upcoming financial performance." *Id*.

21  Here, just the opposite is true.  SPCP was provided with information indicating

22  KPC's financial performance was improving and had a positive outlook.

23       Indeed, as an outsider and potential investor, SPCP applied what it knew as of

24  August 2015, to independently consider whether to enter into the Warrant Purchase

25  Agreement.  Although it knew nothing of Stout's valuation methodology, SPCP's

26  internal analysis, dated August 6, 2015, provided a range of three equity values for

27  KPC stock: (1) a "low" equity value of ████████, based on the company's

28  reported EBITDA of ████████; (2) a "base" equity value of ████████, based

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

17

JOINT BRIEF RELATING TO DEFENDANT
SPCP'S MOTION FOR SUMMARY
JUDGMENT

1    on SPCP's expectation that the company would achieve ████████ of EBITDA at

2    the end of its fiscal year in March 2016; and (3) a "high" equity value of ████████

3    based on the Trustee's projected ████████ in EBITDA.   JAF No. 98.   SPCP

4    concluded that its own base valuation "is consistent" with KPC's equity valuation of

5    ████████, because the "the deal is slightly better than our base case and

6    meaningfully above our low case."  JAF No. 99.  In reaching that valuation, SPCP's

7    internal analysis observed that "[t]he company has seen significant turnaround since

8    Dr. Chaudhuri consolidated ownership and replaced management[,] with EBITDA

9    before QAF reaching ████████ at the end of [the company's] fiscal year" in March

10   2015. JAF No. 101.    The August 6, 2015, memo also stated that KPC generated

11   positive EBITDA of ████████ in the previous quarter ending June 30, 2015,

12   compared to negative EBITDA in the same period of the previous year.  JAF No.

13   102.

14        Moreover, in conducting its independent analysis, in contrast to Stout, SPCP

15   *did* tax effect QAF payments and assumed QAF payments would continue after 2016.

16   JAF Nos. 110-112. This emphasizes that SPCP had no reason to know of Stout's

17   decision not to tax effect QAF payments—the centerpiece of Plaintiff's attack on the

18   valuation price.  It also shows that a different methodology led SPCP to the same

19   ballpark conclusion as Stout – further underscoring that SPCP did not have actual or

20   constructive knowledge that the stock acquired by the ESOP from Dr. Chaudhuri was

21   overvalued.

22        At the time of the ESOP Transaction, SPCP was also aware that Credit Suisse

23   had decided to underwrite a ████████ loan syndicate (compromised of 19 lenders)

24   after conducting its own due diligence into the deal—which included hiring its own

25   independent experts, FTI and Marwood JAF No. 120.  After meeting with KPC's

26   management team and conducting its due diligence, Credit Suisse determined that

27   the company's financials and the reasonable certainty of future QAF payments

28   supported the loan. JAF Nos. 118-133. It defies logic to conclude that Credit Suisse

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

18

JOINT BRIEF RELATING TO DEFENDANT
SPCP'S MOTION FOR SUMMARY
JUDGMENT

would agree to such a substantial loan if it believed that the ESOP Transaction was unfairly valued – particularly since, as a creditor, it has only downside risk but cannot share in the upside.  SPCP knew that Credit Suisse was a sophisticated lender that would not have agreed to provide a ███████ traditional leverage loan (i.e., a loan without warrants or other equity consideration) to KPC had it believed that the loan amount exceeded 50%-65% of the company's total capital structure (i.e., both debt and equity).  JAF Nos. 141-142.  In fact, the loan was oversubscribed and SPCP had to negotiate hard to receive even a small $10 million allocation in the deal.  JAF No. 139.  Tellingly, SPCP had just launched a new investment fund specializing in *healthy* performing companies (as opposed to distressed debt) with a different set of investors to whom it owed independent fiduciaries duties.  JAF Nos. 134-135.  SPC viewed KPC as a good investment for that fund, which was wholly distinct from the fund that participated in the Warrant Purchase Agreement.  *Id*.

That multiple separate, sophisticated investors such as SPCP and Credit Suisse independently determined that the ESOP transaction made financial sense—and the fact that SPCP was willing to commit $10 million of its own money to the loan syndicate—underscores that there is no basis in the record to support that SPCP either knew or should have known that the ESOP transaction was over-valued or unlawful.  *Keach v. U.S. Tr. Co.*, 254 F. Supp. 2d 1055 (C.D. Ill. 2003), is instructive.  In that case, the Court concluded that an executive of a subsidiary company should not be held liable as a non-fiduciary in an ERISA transaction in which the company's ESOP purchased a large quantity of stock from officers and other shareholders at an inflated value.  The Court determined that the non-fiduciary "was aware that highly qualified and sophisticated firms were involved in investigating, structuring, negotiating, and consummating the stock purchase transactions." *Id*. at 1061.  The Court also found it instructive that (1) the executive "reinvested a significant portion of his proceeds from [an earlier stock transaction] in [the company], which is suggestive of a lack of knowledge of impending financial catastrophe," and (2) the executive "relied on the

representations made to him by these outside firms, and Plaintiffs… failed to introduce evidence from which a trier of fact could reasonably determine that this reliance was unreasonable." *Id.*[1]

Similarly, here, SPCP conducted its own valuation, and also knew that Credit Suisse was willing to underwrite a ████████ loan. And it invested $10 million of its own money into the new loan. Given these undisputed facts, no trier of fact could reasonably determine that SPCP knew or should have known that the stock price determined by the independent ESOP Trustee was inflated.

At most, plaintiff could claim to disagree with the proper valuation of KPC as of August 28, 2015. That plainly does not suffice to create a genuine dispute of fact as to whether SPCP knew or should have known that the ESOP Transaction was unlawful—particularly given that it was not involved in the due diligence for the deal and its own, independent analysis (behind which it put up new money) led to a comparable valuation. *See e.g.*, *Reich*, 55 F.3d at 1059 (holding that reasonable person would not be on notice of potential violation, sufficient for constructive knowledge standard where "comparative assessments of [certain data] would have to be made, and inferences would need to be drawn from the data before the [transaction] would notify a reasonable person of a likely ERISA violation").

## B.     Argument of Plaintiff/Non-Moving Party

SPCP "had actual or constructive knowledge of the circumstances that rendered" the 2015 ESOP Transaction "unlawful." *Harris Tr.*, 530 U.S. at 251. SPCP asserts that because it was not involved in Stout's valuation process, it could not have had such knowledge. *Supra* IV.A. But this assertion ignores the underlying breaches of ERISA in which SPCP knowingly participated: a prohibited transaction under ERISA § 406(a), a prohibited transaction under ERISA § 406(b), and a breach of

---

[1] *See also Hans v. Tharaldson*, No. 3:05-CV-115, 2011 WL 7179644, at *17 (D.N.D. Oct. 31, 2011) (holding that non-fiduciary shareholders who sold shares to ESOP were not liable for knowing participation where they relied on professional valuations conducted by others and had no other knowledge valuation might be wrong).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

20

JOINT BRIEF RELATING TO DEFENDANT
SPCP'S MOTION FOR SUMMARY
JUDGMENT

fiduciary duty by Alerus in violation of ERISA § 404(a)(1). FAC ¶¶ 112-25. As the Ninth Circuit has held in the context of the ERISA statute of limitations, "[t]he exact knowledge required will … vary depending on the plaintiff's claim." *Sulyma v. Intel Corp. Inv. Pol'y Comm.*, 909 F.3d 1069, 1075 (9th Cir. 2018).

With respect to SPCP's knowing participation in Alerus's breach of fiduciary duty, it is enough for Plaintiff to show that SPCP was aware that the 2015 ESOP Transaction was for more than fair market value. Knowing participation liability for violations of ERISA's *per se* prohibited transaction rules requires only that SPCP have known of the circumstances that rendered the transaction unlawful—that is, "actual or constructive knowledge of the facts satisfying the elements of a § 406(a) transaction." *Harris Tr.*, 530 U.S. at 251; *see Haley v. Teachers Ins. and Annuity Assoc. of Am.*, 377 F.Supp.3d 250, 261 (S.D.N.Y. 2019) (reading *Harris Trust* to require the non-fiduciary know "(1) that the transferor is an ERISA plan fiduciary; (2) that the fiduciary caused the plan to engage in the transaction; (3) that the fiduciary had knowledge of the facts underlying the transaction that subjected it to § 406(a); and (4) any facts relevant to the transaction that bring it under § 406(a)"); *Neil v. Zell*, 753 F.Supp.2d 724, 731 (N.D. Ill. 2010) (holding fiduciary and non-fiduciary defendants need only "actual or constructive knowledge of the deal's details"). The undisputed facts show SPCP knew of those circumstances.

### 1. There is Sufficient Evidence that SPCP Knew that the 2015 ESOP Transaction was for more than Fair Market Value.

The first underlying breach in which SPCP participated was Alerus's breach of its fiduciary duties in causing the Plan to pay more than fair market value for KPC stock. FAC ¶¶ 121-25. SPCP did not have Stout's faulty valuation report, but as SPCP acknowledges, its own case holds that a knowing participant need not have "actual or constructive knowledge of the exact details of [a fiduciary's] imprudent process" to be liable. *Pizzella v. Vinoskey*, 409 F. Supp. 3d 473, 527 (W.D. Va. 2019). Actual knowledge that the fiduciary caused the ESOP to pay a price higher than fair market

21

1    value for company stock will suffice. *Id*. SPCP had such knowledge.

2        Whether the ESOP paid more than fair market value for KPC stock (and by

3 how much) cannot be resolved on summary judgment. *Acosta v. Vinoskey*, 310

4 F.Supp.3d 662, 685 (W.D. Va. 2018) (denying motion for summary judgment as to

5 knowing participation claim because "the Court is unable to determine whether any

6 other fiduciary breach occurred"). "Questions involving a person's state of mind, e.g.,

7 whether a party knew or should have known of a particular condition, are generally

8 factual issues inappropriate for resolution by summary judgment." *Braxton–Secret v.*

9 *A.H. Robins Co.*, 769 F.2d 528, 531 (9th Cir.1985).

10        SPCP cannot establish that, as a matter of law, it did not know the 2015 ESOP

11 Transaction price was for more than fair market value. SPCP had a long relationship

12 with IHHI, KPC's predecessor. In 2010, SPCP purchased distressed debt of IHHI

13 after its existing creditor was placed in receivership. Banks Depo. at 16:13-17:23.

14 Soon after, SPCP and IHHI restructured the debt, and SPCP acquired IHHI warrants.

15 *Id*. at 19:4-8. Until IHHI refinanced that loan in 2014, SPCP received monthly

16 financial reporting and enjoyed board observer rights. *Id*. at 74:15-75:2. As IHHI was

17 publicly traded at that time, SPCP also had access to securities filings as well as stock

18 market pricing data. *Id*. at 74:15-22; Ex. 17 at 1. After the refinance, SPCP retained

19 its warrant position, and continued to receive financial statements from IHHI upon

20 request. Banks Depo. at 75:9-13. SPCP asserts it did not review such statements on

21 a "regular basis," but IHHI would provide their most recent financial statements upon

22 request, *id*. and SPCP used these statements, at a minimum, to prepare annual fair

23 value memoranda for SPCP's auditors. *Id*. at 54:4-17, 75:18-25.

24        Mr. Banks issued a fair value memorandum dated December 31, 2014, that

25 calculated a value for SPCP's warrants. Ex. 18. There was a mathematical

26 relationship between the value of those warrants and the equity value of IHHI:

27 SPCP's conclusion that its IHHI warrants were worth ▮▮▮▮ each as of December

28 31, 2014, implied and was based on a total IHHI equity value of ▮▮▮▮. Banks

Depo. 92 at 11-18. Ex. 18 at 6. In March 2015, Banks was told that KPC was exploring a potential ESOP deal at a valuation of ███████. Ex. 19 at 1. A SPCP analyst working for Banks reminded him, "[T]his is substantially higher than the equity value we'd previously ascribed to the operating business (+100MM.)." Ex. 39 at 1. This was six months before the close of the 2015 ESOP Transaction at a ███████ ███████ price, Ex. 40 at 78, ███████ more than SPCP's calculation of the IHHI equity value at year-end 2014. Ex. 18 at 6.

The *Vinoskey* court held that a combination of familiarity with the company's circumstances and finances and stark difference between the transaction price and near in time financial evaluations raised a reasonable inference of knowledge of a breach (following a bench trial). *Vinoskey*, 409 F.Supp.3d at 528. Like here, the knowing participant had access to company financials and pricing information over a period of several years and reviewed them "on a regular basis." *Id.* The *Vinoskey* court held that a 42% increase between the highest price indicator available to the defendant in the last five years before the transaction and the ESOP transaction price raised a reasonable inference of knowledge of a breach. *Id.* at 527. Here, SPCP had access to (and recorded in its fair value memoranda) publicly traded stock price data that implied a market capitalization of $20.5 million as of December 31, 2013. Ex. 17 at 1. It also had an in-house calculation of the value of IHHI equity at ███████ at the end of 2014, Ex. 18 at 1— in contrast to an August 2015 transaction price of ███████. Ex. 40 at 78. Here, there was a 285% increase. This inference alone precludes summary judgment, because "summary judgment should not be granted where contradictory inferences" regarding a party's knowledge or state of mind may be drawn, even if from undisputed facts. *Braxton-Secret*, 769 F.2d at 531.

SPCP cites its transaction analysis in August 2015 showing a base equity value in the "ballpark" of SRR's valuation. *Supra* IV.A. However, SPCP's "low-end" case valued KPC at ███████ ███████ dollars *below* the equity valuation for the 2015 ESOP Transaction. Ex. 21 at 1, 2. This "low-end" case was based on KPC's

1   last twelve months of actual EBITDA, ████████, which was consistent with its

2   run rate as of June 30, 2015. *Id.* at 2. But Thomas told SPCP that Alerus was using a

3   significantly higher EBITDA figures for its own valuation, "a run-rate EBITDA of

4   ████████." Ex. 41 at 1; Thomas Depo. at 229:13-231:23; Banks Depo. at 158:7-

5   159:4. Thomas's email and Banks's own analysis show that SPCP was aware that the

6   Trustee was using valuation assumptions that SPCP viewed as inflated. SPCP based

7   its "high-end" case on the flawed figures it knew Alerus was using, despite its

8   understanding that this was significantly higher than KPC's actual run rate. Ex. 21 at

9   2. SPCP was skeptical of the underlying projections. Banks Depo. at 159:14-160:12.

10   SPCP's "base case" valuation off a ████████ EBITDA simply represented the

11   midpoint between an analysis based on KPC's actual financial performance and

12   Alerus's assumptions, which SPCP considered speculative. *Id.*; Ex. 21 at 2.

13         CS's willingness to finance the ESOP Transaction is irrelevant to whether the

14   ESOP paid more than fair market value. CS never performed a valuation of KPC.

15   Ernberg Depo. at 56:23-57:2. The primary source of repayment for the CS loan was

16   the QAF payments that were used as security for the loan. *Id.* at 37:20-38:6. CS was

17   so focused on QAF revenues as the source of repayment that it negotiated not only a

18   first priority lien on KPC's QAF receivables but also a cash sweep guaranteeing that

19   those receivables were used to repay the loan before anything else. *Id.* at 38:24-39:8

20   CS's interest in KPC's finances focused on the five-year term of the loan, *id.* at 117:5-

21   20, but an equity buyer would need to consider a much longer time horizon.

22         *Keach v. U.S. Trust* is distinguishable. In *Keach*, a defendant lacked

23   knowledge of a breach because he had essentially no personal involvement in a

24   transaction and relied entirely on representations made to him by outside firms.

25   *Keach v. U.S. Tr. Co.*, 254 F.Supp.2d 1055, 1061 (C.D. Ill. 2003). Here, there is no

26   evidence that SPCP relied on CS in determining whether to sell its warrants. Banks's

27   contemporaneous memorandum recommending the sale does not refer to CS's

28   involvement in the deal as a reason for doing so. Ex. 21 at 8. It makes no reference

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

24

JOINT BRIEF RELATING TO DEFENDANT
SPCP'S MOTION FOR SUMMARY
JUDGMENT

to any representations by CS at all. *Id*. Indeed, at the earliest stages of SPCP's involvement, Banks's view was that SPCP should sell its warrants but not seek a position in the debt financing of the ESOP deal. Ex. 19 at 1. That SPCP only subsequently sought to participate in that loan suggests that SPCP's willingness to sell its warrants was not based in on any representations by CS.[2]

### 2. SPCP Knew the Facts That Rendered the 2015 ESOP Transaction Prohibited under ERISA § 406(a).

The Complaint alleges that Alerus committed two underlying breaches of the prohibited transaction rules under ERISA § 406(a). FAC ¶¶ 112-17. SPCP knew of the circumstances giving rise to both breaches.

First, ERISA § 406(a)(1)(A) prohibits a plan fiduciary from causing a plan to engage in a transaction that "constitutes a direct or indirect… sale or exchange… of any property between the plan and a party in interest." 29 U.S.C. § 1104(a)(1)(A). SPCP has admitted that, at the time of the 2015 ESOP Transaction, SPCP was aware that each of these elements were satisfied. It knew that Alerus was the Trustee of the ESOP, Ex. 42 at No. 13, and thus a fiduciary. 29 U.S.C. § 1002(21)(A). It knew that Dr. Chaudhuri owned 100% of the stock of KPC, Ex. 42 at No. 14, which made him a party in interest under ERISA. 29 U.S.C. § 1002(14)(E), (H). And it knew that as part of the 2015 ESOP Transaction, Alerus caused the plan to purchase Dr. Chaudhuri's stock, Ex. 42 at No. 15, and thus to engage in a "sale" of "property between the plan and a party in interest." 29 U.S.C. § 1104(a)(1)(A).

Second, SPCP knew of the circumstances rendering the 2015 ESOP Transaction prohibited under section 406(a)(1)(D), which prohibits a plan fiduciary from causing a plan to engaging in a transaction that constitutes a direct or indirect… transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan." 29 U.S.C. § 1104(a)(1)(D). SPCP knew that Alerus was the ESOP Trustee and

---

[2] While Banks avers that he believed CS would not provide a traditional leverage loan that exceeded 50%-65% of the company's capital structure, JAF ¶¶ 141-42, he does not suggest he relied on this understanding in evaluating the 2015 ESOP Transaction. Nor is there any record evidence that he did so.

1    thus a fiduciary transferring Plan assets—the payment for KPC stock—to Dr.

2    Chaudhuri, who it knew, again, was the owner of KPC and thus a party in interest.

3    Ex. 42 at Nos. 13-15. In addition to admitting its knowledge of these facts, SPCP

4    knew them because the Warrant Purchase Agreement between SPCP and KPC recites

5    all the key terms of the stock purchase component of the transaction: that Alerus will

6    cause the ESOP to pay ██████████ in cash to Dr. Chaudhuri and issue a promissory

7    note payable to him in the amount of ██████████. Ex. 16 at 3.

8         These undisputed facts establish the requisite scienter for SPCP's knowing

9    participation in fiduciary violations. SPCP's arguments about its knowledge

10   regarding Alerus's fiduciary process or the value of KPC do not address the elements

11   of a prohibited transaction but SPCP's affirmative defenses: that the 2015 ESOP

12   Transaction was exempt because it purchased qualifying employer securities for

13   adequate consideration. Answer at 14. While sufficient evidence shows that SPCP

14   knew that the 2015 ESOP Transaction was for more than fair market value, Plaintiff

15   need not show that SPCP knew that transaction was not exempt from any of the

16   dozens of exemptions to establish SPCP's knowing participation.

17        In *Haley*, the court held that a plaintiff "need not allege awareness of the non-

18   applicability of a § 408 exemption on the part of the fiduciary or non-fiduciary

19   defendant" for knowing participation liability to lie. *Haley v. Tchrs. Ins. & Annuity

20   Assoc. of Am.*, 377 F.Supp.3d 250, 260 (S.D.N.Y. 2019).[3] First, this is the most

21   natural reading of the Supreme Court's articulation of knowing participation liability

22   for a prohibited transaction in *Harris Trust*. *Harris Trust* made no reference to a

23   requirement that a participant know the transaction is non-exempt but rather

24   emphasized "actual or constructive knowledge of the facts satisfying the elements of

25   a § 406(a) transaction." *Id.* at 261 (quoting *Harris Tr.*, 530 U.S. at 251). Second, it

26   accords with the treatment of exemptions to the prohibited transaction rules as

27   ─────────────────────────
28   [3] The court reaffirmed this holding on summary judgment. *Haley v. Tchrs. Ins. & Annuity Ass'n of Am.*, No. 17-CV-855 (JPO), 2021 WL 4481598, at *3 (S.D.N.Y. Sept. 30, 2021).

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

26                     JOINT BRIEF RELATING TO DEFENDANT
                       SPCP'S MOTION FOR SUMMARY
                       JUDGMENT

affirmative defenses. Defendants bear the burden of proof on such exemptions. *See Gamino v. KPC Healthcare Holdings, Inc.*, No. 5:20-CV-01126-SB-SHK, 2021 WL 162643, at \*4 (C.D. Cal. Jan. 15, 2021). It would be "incongruous" to require Plaintiff to show SPCP had knowledge of the non-applicability of an exemption where Plaintiff does not actually have the burden to show the non-applicability of the exemption in the first instance. *Haley*, 377 F.Supp.3d. at 264. SPCP may seek to show at trial that the 2015 ESOP Transaction was exempt as an affirmative defense, but it may not effectively reverse the burden of proof by requiring Plaintiff to affirmatively show that the exemption was *not* satisfied—which she logically must do in order to show SPCP *knew it*. <u>Third</u>, it accords with the well-established rule that "knowledge" for purposes of ERISA does not mean knowledge of ERISA (such as the multitude of exemptions under section 408), but rather of underlying facts. *Haley*, 377 F.Supp.3d at 261; *accord Meagher v. Int'l Assoc. of Machinists & Aerospace Workers*, 856 F.2d 1418, 1423 (9th Cir. 1988). <u>Fourth</u>, it "is consistent with the treatment of § 406 prohibited transactions as per se violations of ERISA which pose unique risks to the health of the plans." *Haley*, 377 F.Supp.3d at 264-65. Requiring "plaintiffs to demonstrate that fiduciary transferors and non-fiduciary transferees knew the transaction violated ERISA would come close to creating" a "good faith" defense to prohibited transaction claims, which "would be inconsistent with ERISA's treatment of prohibited transactions as per se violations of the statute." *Haley*, 377 F.Supp.3d at 265 n.8.

SPCP's cases are either not to the contrary or are unreasoned. The *Del Castillo* court suggests that knowing participation requires knowledge of the non-exempt character of a transaction because ERISA prohibits most transactions between a plan and a party in interest. *Del Castillo v. Cmty. Child Care Council of Santa Clara Cnty.*, Inc., No. 17-CV-07243-BLF, 2019 WL 6841222, at \*6 (N.D. Cal. Dec. 16, 2019). But the fact that most transactions between a plan and a party in interest are prohibited has no connection to the principles articulated by *Harris Trust*. And as the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

27

JOINT BRIEF RELATING TO DEFENDANT
SPCP'S MOTION FOR SUMMARY
JUDGMENT

*Haley* court explained, "concerns that § 406 would impose too high a burden on the non-fiduciary defendants can be accommodated by 'inform[ing] courts' determinations of what a transferee should (or should not) be expected to know when engaging in a transaction with a fiduciary.'" *Haley*, 377 F.Supp.3d at 265. The *Vinoskey* court merely assumed that a claim for knowing participation in a prohibited transaction requires knowledge that an exemption is not satisfied. *Walsh v. Vinoskey*, 19 F.4th 672, 678 (4th Cir. 2021). These cases also do not grapple with the consequences of the rule they suggest. There are dozens of exemptions under section 1108. To establish liability for knowing participation, does a plaintiff need to show the defendant had specific knowledge that *none* were satisfied? The first exemption is a specific exemption for a transaction approved by the Department of Labor. 29 U.S.C. § 1108(a). Does a plaintiff need to show the defendant had specific knowledge that nobody had made a request to the Department of Labor for an exemption or received one? This cannot be the law, but neither *Vinoskey* nor *Del Castillo* provide a limiting principle that would cabin the inquiry into the "circumstances that rendered the transaction unlawful." *Harris Tr.*, 530 U.S. at 251.[4]

### 3.   SPCP Knew the Facts that Rendered the 2015 ESOP Transaction Prohibited under ERISA § 406(b).

SPCP knew the facts that rendered the 2015 ESOP Transaction prohibited under 29 U.S.C. § 1106(b). SPCP knew that Dr. Chaudhuri was a fiduciary of the Plan because it knew that Chaudhuri and Thomas had hired Alerus as Trustee. Banks Depo. 133 at 9-12. In an email in July 2015, with Dr. Chaudhuri copied, Thomas told Banks "We have engaged a company called Alerus as a potential ESOP trustee." Ex. 20. Hiring an ESOP trustee is a fiduciary act. *Johnson v. Couturier*, 572 F.3d 1067, 1077 (9th Cir. 2009) (holding "the de facto decision makers of closely held and related entities" are "ERISA fiduciaries with respect to appointment and removal of

---

[4] SPCP's other case merely recites the language of *Harris Trust* and did not hold that a knowing participant must have knowledge of the non-applicability of an exemption. *Acosta v. Saakvitne*, 355 F.Supp.3d 908, 924 (D. Haw. 2019).

28

JOINT BRIEF RELATING TO DEFENDANT SPCP'S MOTION FOR SUMMARY JUDGMENT

ESOP trustees"). As SPCP's knew that Dr. Chaudhuri and Thomas had hired a Trustee for the ESOP, SPCP knew the facts that they were ESOP fiduciaries.[5]

SPCP also had knowledge that the elements of each of the three subsections of ERISA §406(b) were satisfied and thus that the 2015 ESOP Transaction was a self-dealing transaction involving a Plan fiduciary. It knew that Dr. Chaudhuri was "deal[ing] with the assets of the plan in his own interest or for his own account," 29 U.S.C. § 1106(b)(1), because it knew he was selling his KPC stock to the Plan. Ex. 42 at Nos. 13-15. SPCP also knew that Dr. Chaudhuri was acting in a "transaction involving the plan on behalf of a party," namely himself, "whose interests [were] adverse to the interests of the plan," 29 U.S.C. § 1106(b)(2), because it knew that Chaudhuri and the Plan were counterparties in that sale. Ex. 42 at Nos. 13-15. And it knew that in connection with that transaction, which involved the assets of the Plan, Chaudhuri has receiving "consideration for his own personal account" from Alerus, a party dealing with the Plan. 29 U.S.C. § 1106(b)(3); Ex. 16 at 3.

As with ERISA § 406(a), Plaintiff need not show that SPCP had knowledge of the non-applicability of any of the prohibited transaction exemptions to establish liability for knowing participation in a transaction prohibited by section 406(b). *Supra* IV.B.2. Ninth Circuit precedent holds that violations of section 406(b) are not subject to affirmative defenses based on the exemptions found in section 408. *Patelco Credit Union v. Sahni*, 262 F.3d 897, 911 (9th Cir. 2001). As only ERISA § 406(a)— not 406(b)—refers to the exceptions, the Ninth Circuit found that the reasonable compensation exemption did not apply to violations of Section 1106(b), which it held "creates a per se ERISA violation; even in the absence of bad faith, or in the presence of a fair and reasonable transaction," and "establishes a blanket prohibition of certain acts, easily applied, in order to facilitate Congress' remedial interest in protecting

---

[5] Dr. Chaudhuri was fiduciary although he signed Alerus's engagement agreement on behalf of KPC Healthcare, Inc. *Acosta v. Saakvitne*, 355 F.Supp.3d 908, 922 (D. Haw. 2019) (holding that *de facto* corporate decisionmakers who hired trustee were fiduciaries under ERISA's functional test even where company had formally appointed said trustee).

employee benefit plans." *Id.* at 911 (quotation omitted). The prohibited transaction exemptions are not defenses to fiduciary self-dealing.[6]

## V.   ISSUE 3: WHETHER THE RECOVERY PLAINTIFF SEEKS IS "APPROPRIATE EQUITABLE RELIEF"

### A.   Argument of SPCP/Moving Party

#### 1.   General Principles of Equity

Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), provides "a cause of action to remedy plan or ERISA violations—including prohibited interested-party transactions—with 'appropriate equitable relief.'" *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 653 (9th Cir. 2019), *cert. denied,* 140 S. Ct. 223 (2019). To succeed on such a claim, however, the relief sought must be equitable rather than legal in nature.

"[T]he term 'equitable relief'...is limited to 'those categories of relief that were *typically* available in equity' during the days of the divided bench (meaning, the period before 1938 when courts of law and equity were separate)." *Montanile v. Bd. of Trs.*, 577 U.S. 136, 142, (2016) (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993)). The label a plaintiff attaches to a particular form of relief is not dispositive; rather, whether a remedy is legal or equitable "depends on the basis for the plaintiff's claim and the nature of the underlying remedies sought." *Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 363 (2006) (internal quotation marks and brackets omitted); *see also Depot, Inc.*, 915 F.3d at 661 (noting that the court "must 'look to the substance of the remedy sought rather than the label placed on that remedy'") (quoting *Mathews v. Chevron Corp.*, 362 F.3d 1172, 1185 (9th Cir. 2004) (citation and internal alteration omitted)).

---

[6] Department of Labor regulations state section 408(e) exempts transactions that would otherwise be prohibited under section 406(b)(1) and 406(b)(2)—but not transactions prohibited by 406(b)(3). 29 CFR § 2550.408e(a). The Court should apply *Patelco*'s holding that the section 408 exemptions do not apply to fiduciary self-dealing, but even if it found *Patelco* not controlling it ought to defer to the Department and hold that, at a minimum, Plaintiff's section 408(b)(3) claim is not subject to a section 408(e) defense.

The Supreme Court has explained the limits imposed by the dichotomy between law and equity in terms of a plaintiff's right to recover funds allegedly in the possession of the defendant pursuant to ERISA's statutory framework:

> [A] plaintiff could seek restitution in equity, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could *clearly be traced* to particular funds or property in the defendant's possession. *See* 1 Dobbs § 4.3(1), at 587–588; Restatement of Restitution… § 160, Comment a, at 641–642 [1936]; 1 G. Palmer, *Law of Restitution* § 1.4, p. 17; § 3.7, p. 262 (1978). A court of equity could then order a defendant to transfer title (in the case of the constructive trust) or to give a security interest (in the case of the equitable lien) to a plaintiff who was, in the eyes of equity, the true owner. But where "the property [sought to be recovered] or its proceeds have been dissipated so that no product remains, [the plaintiff's] claim is only that of a general creditor," and the plaintiff "cannot enforce a constructive trust of or an equitable lien upon other property of the [defendant]." Restatement of Restitution, *supra*, § 215, Comment a, at 867. Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession.

*Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213–14 (2002) (emphasis added).  In *Knudson*, the Court confirmed that only traditionally equitable restitution is available in an ERISA case. *Id.* at 214 (affirming dismissal of attempt to recover funds under ERISA because "[t]he basis for petitioners' claim is not that respondents hold particular funds that, in good conscience, belong to petitioners, but that petitioners are contractually entitled to some funds for benefits that they conferred" and "[t]he kind of restitution that petitioners seek, therefore, is not equitable—the imposition of a constructive trust or equitable lien on particular property—but legal—the imposition of personal liability for the benefits that they conferred upon respondents").  And in the specific context of ERISA claims, whether the relief sought can be characterized as legal or equitable turns on whether the money or property sought is "in the defendants' possession." *See Depot*, 915 F.3d at 661.

Here, Plaintiffs attempt to lay claim to the consideration SPCP received pursuant to the Warrant Purchase Transaction.  Because SPCP was not a party to the

31

ESOP transaction, received no consideration in such transaction, and Plaintiff has not pointed to a specifically identifiable fund on which to impose equitable relief, Plaintiff's claims for equitable relief fail as a matter of law.

In addition, Plaintiffs have no basis to claim entitlement to all of the proceeds of the Warrant Purchase Agreement, as SPCP plainly relinquished something of value and should have received, even based on Plaintiff's valuation of KPC, substantial value in return. Thus, there is no basis for any assertion that the entirety of the consideration paid to SPCP belongs "in good conscience to the plaintiff." *Depot*, 915 F.3d at 661. At most, Plaintiff has a disguised claim for monetary relief for the "excess" between the amount SPCP received in the Warrant Purchase Agreement and the amount that it should have received (if some lesser valuation of KPC were ultimately determined to be correct, which SPCP disputes). Since any such claim for undifferentiated funds and "excess" compensation is tantamount to a claim for legal, rather than equitable, relief, Plaintiff's claim fails under ERISA.

## 2. SPCP did not receive funds from the ESOP

As a threshold matter, Plaintiff is barred from seeking disgorgement or other equitable relief from SPCP because SPCP never received funds from the ESOP. *Mertens v. Hewitt Assocs.*, 948 F.2d 607, 612 (9th Cir. 1991), *aff'd*, 508 U.S. 248 (1993); *Del Castillo*, 2019 WL 6841222, at *4 (noting that an element of a section 502(a)(3) claim "against non-fiduciaries" requires proof that "funds rightfully belonging to a plan were wrongfully transferred to the non-fiduciary").

In *Mertens*, the Ninth Circuit declined to hold a plan actuary liable for "appropriate equitable relief" under ERISA where it failed to advise plan administrators that actuarial assumptions should be updated in light of the shift in the plan's retiree population, which led to unanticipated increased costs to the fund. 948 F.2d at 609. The Court noted that "[t]he plaintiffs allege that [the actuary] was paid by [the employer], *not from assets of the plan*. It is not possible, therefore, to frame a claim for restitution in terms of the recovery of plan assets wrongfully obtained by

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

32

JOINT BRIEF RELATING TO DEFENDANT
SPCP'S MOTION FOR SUMMARY
JUDGMENT

[the actuary]." *Id.* at 612 (emphasis added).

Similarly, In *Neil v. Zell*, the court considered an analogous situation relating to the ESOP transaction undertaken by Tribune Company, ultimately ruling that plan beneficiaries could not obtain equitable relief from investors who aided in an ESOP transaction (but received no money from the ESOP). *Neil v. Zell*, 677 F. Supp. 2d 1010, 1015 (N.D. Ill. 2009) ("*Neil I*"), *as amended* (Mar. 11, 2010). Until 2006, Tribune was a publicly traded company. Facing mounting debt, the company decided to engage in an ESOP transaction, to reduce the company's tax burden. To achieve the ESOP transaction several steps were taken: first, the ESOP bought 8,928,571 newly issued shares of Tribune Company's common stock from Tribune Company, which the ESOP paid for with a promissory note in the principal amount of $250 million to be paid to Tribune Company over 30 years. *Id.* at 1016. Then, EGI–TRB, an entity controlled by investor Sam Zell, invested $250 million in Tribune Company in exchange for 1,470,588 shares of Tribune Company's common stock and a promissory note from the Company in the principal amount of $200 million, which the Company repaid after the merger. *Id.* at 1017. In exchange for his investment, Zell gained control of the company. *Id.* Tribune then made a tender offer for 126 million new shares that eventually were retired; as a result, Tribune Company, the ESOP, and EGI–TRB together controlled more than 50% of the Tribune's shares. *Id.* Months later, the ESOP merged with Tribune Company. *Id.* As part of the merger, Tribune borrowed yet another $4 billion to retire the 118 million shares of common stock remaining after the tender offer that were not owned by the Company or by the ESOP. After the merger, the Company became wholly owned by the ESOP, and was able to convert from a C-corporation to an S-corporation, thereby avoiding most corporate taxes. *Id.*

In its first confrontation with plaintiff's argument that they could obtain appropriate equitable relief from Zell and/or EGI-TRB, the Court noted that "[t]ypical equitable relief against a party that knowingly participates in a fiduciary

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

33

JOINT BRIEF RELATING TO DEFENDANT
SPCP'S MOTION FOR SUMMARY
JUDGMENT

breach would be *an order requiring the party to return whatever plan assets it obtained in the transaction. Here, though, the only entity that directly obtained any plan assets is Tribune Company*, which is not a party. Thus, whatever equitable relief may be available against Zell and EGI–TRB is more complicated." *Id.* at 1022 (emphasis added) (citing *Landwehr v. DuPree*, 72 F.3d 726 (9th Cir. 1995)).

Subsequently, the Court held that plaintiffs could not recover from funds via disgorgement from Zell or EGI-TRB. *Neil v. Zell*, No. 08 C 6833, 2010 WL 3167293, at *2 (N.D. Ill. Aug. 9, 2010) ("*Neil II*"). Plaintiffs sought various monies Tribune had paid in connection with Zell's and EGI-TRB's investment in the transaction, including interest on loans that were paid and the difference between the amount paid to EGI–TRB in the stock buyback and the stock's fair market value. The Court noted that while "[p]laintiffs are no doubt correct that ordering the repayment of funds unjustly received constitutes equitable relief[,]" they "cannot explain why they are entitled to repayment of funds that originated with *Tribune*." *Id.* Because the monies were paid not by the ESOP but by another entity (and most before the ESOP was even established), plaintiffs could establish no right to disgorgement.

Other cases are in accord. In *Eslava v. Gulf Tel. Co.*, No. CIV A 04-0297-KD-B, 2007 WL 1771416, at *1 (S.D. Ala. June 18, 2007), the Court considered whether plaintiffs could recover from a third party who purchased stock owned by the employer, in which the company's ESOP had a 48% interest. The plaintiffs alleged that certain officers of the company caused the stock to be sold at less than fair market value, as evidenced by a later transaction in which the buyer sold the stock at a much higher price. *Id.* As the Court described it, the plaintiffs argued that because the proceeds of the sale by the employer of stock it owned in another company "was part of the consideration to be ultimately received by the ESOP for their… shares [in the employer[,]" the buyer of the stock was subject to equitable restitution. *Id.* at *6. "Plaintiffs argue that equitable restitution is due from [the buyer] because [it] is in

possession of the proceeds from their subsequent sale of [the stock]." *Id.* The Court noted that "[i]t is undisputed that the [buyer] did not engage in any transaction with the ESOP," and the stock was not a plan asset at the time it was sold, so "[a]ccordingly, [the buyer] cannot be deemed to possess any ESOP assets and any subsequent sale of [the stock] by [the buyer] to a third-party did not involve ESOP assets. Thus, [the buyer] does not possess any funds or assets that are subject to equitable restitution or disgorgement." *Id.* at *7.

Here, Plaintiff seeks money coming from a transaction with KPC, not the ESOP. JAF Nos. 23-32. As in the Tribune litigation, the "Plaintiffs' theory is that they can recover in equity any profits that [the investors, Zell and ERI-TRB] netted by their knowing participation in a fiduciary breach or by engaging in a prohibited transaction." *Neil II*, 2010 WL 3167293, at *2. But as in that case, the transaction at issue (the redemption of the warrants) occurred under a separate agreement. *Neil I*, 677 F. Supp. 2d at 1017 (noting that Zell and EGI-TRB invested in Tribune before the ESOP merged with Tribune and acquired its shares). The Warrant Purchase Agreement was designed to allow KPC to buy back some of its stock to achieve 100% ownership by the ESOP of KPC stock. The money which changed hands was in consideration for an asset held by SPCP—the warrants—and which KPC desired to own. Plaintiff has no plausible claim to that money.

Under *Mertens*, Plaintiff cannot seek equitable relief against SPCP, because it is not (and has never been) in possession of "plan assets."

### 3.    There is no specific fund to which Plaintiff or the plan beneficiaries are entitled.

As the Supreme Court recently explained, "[e]quitable remedies 'are, as a general rule, directed against some specific thing,'" not "a sum of money generally." *Montanile*, 577 U.S. at 145 (2016) (quoting 4 S. Symons, *Pomeroy's Equity Jurisprudence* § 1234, p. 694 (5th ed. 1941)). Although restitution or disgorgement generically are considered equitable remedies, whether such remedies

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

35

JOINT BRIEF RELATING TO DEFENDANT
SPCP'S MOTION FOR SUMMARY
JUDGMENT

1   are available against a non-fiduciary under ERISA depends on the historical
2   distinction between law and equity: "A plaintiff seeks 'restitution at law' when the
3   plaintiff cannot 'assert title or right to possession of particular property' but instead
4   seeks to 'impose personal liability on the defendant' as a means of 'recovering money
5   to pay for some benefit the defendant ... received from [the plaintiff]." *Depot*, 915
6   F.3d at 661 (quoting *Great-West*, 534 U.S. at 213–14). "By contrast, a plaintiff seeks
7   'restitution in equity, ordinarily in the form of a constructive trust or an equitable
8   lien, where money or property identified as belonging in good conscience to the
9   plaintiff [can] clearly be traced to particular funds or property in the defendant's
10  possession." *Id.* (quoting *Great-West*, 534 U.S. at 213) (alteration in original)."
11  Therefore, a Plaintiff must identify a specific fund or item of property to which they
12  are entitled from SPCP.

13      At the motion to dismiss stage, the Court held that Plaintiff's allegations in the
14  First Amended Complaint—identifying "(a) ▮▮▮▮▮▮ in cash; (b) a promissory
15  note in the original principal amount of ▮▮▮▮▮; (c) a warrant to purchase
16  ▮▮▮▮ shares of KPC at an exercise price of ▮▮ per share; and (d) ▮▮▮ of any
17  net payments received by KPC or its subsidiaries under California's hospital quality
18  assurance fee (QAF) program based on services provided from January 1, 2017, to
19  December 31, 2024" (FAC, Dkt. 21 ¶ 73)—was sufficient to survive a pleading
20  challenge to Plaintiff's burden to identify a "fund" to which the participants are
21  entitled. *Gamino*, 2022 WL 336469 at *4. Subsequent undisputed facts learned in
22  discovery, however, lead to the opposite conclusion.

23      This is not a case where SPCP gave nothing in return for receiving
24  compensation as part of the ESOP Transaction, such that Plaintiff is legally entitled
25  to recover the entirety of the consideration paid to SPCP. Whatever the ultimate
26  amount of the ESOP Transaction, and whether or not this Court determines that the
27  consideration was overvalued, there can be no dispute that the SPCP warrants were
28  not worthless when surrendered as part of the Warrant Purchase Agreement. Indeed,

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

36

JOINT BRIEF RELATING TO DEFENDANT
SPCP'S MOTION FOR SUMMARY
JUDGMENT

the crux of Plaintiff's claim is that "[t]he ESOP paid more than fair market value for KPC stock in the 2015 ESOP Transaction."  (FAC ¶ 87, Dkt 21.)  Thus, KPC stock had *some* value and KPC received *something* of value for SPCP's warrants.  Even if restitution in equity were available, SPCP cannot be liable for the entire amount of consideration it received in the Warrant Redemption Agreement.  *See*, *e.g., Callery v. U.S. Life Ins. Co. in City of New York*, 392 F.3d 401, 406 (10th Cir. 2004) (holding that plaintiff's demand for face amount of insurance policy was not "restitution" because "restitution recoveries are based upon a defendant's gain, not on a plaintiff loss" (citing *Great–West*, 534 U.S. at 229 (Ginsburg, J., dissenting)).  Nor may Plaintiff pursue rescission of the Warrant Purchase Agreement, since a rescission in equity requires that the parties be returned to the status quo before the transaction— here, SPCP's warrants cannot be restored.  *See*, *e.g.*, *Pinter v. Dahl*, 486 U.S. 622, 641 n. 18 (1988) (noting that equitable rescission provides "for restoration of the status quo by requiring the buyer to return what he received from the seller"); *Rexford v. Southern Woodland Co.*, 208 F. 295, 314 (D.S.C. 1913) ("The duty of one party to a contract, who seeks to rescind, to restore to the other party the amount received by him in part performance, or on account of the contract, is well settled and always enforced."); *Rudman v. Cowles Communications, Inc.*, 30 N.Y.2d 1, 13–14 (N.Y. 1972) (explaining that rescission is an equitable remedy that should be invoked "where the status quo may be substantially restored.... [If] damages appear adequate and it is impracticable to restore the status quo," rescission is inappropriate).

Plaintiff may argue instead that she is entitled to any "excess" profits that SPCP received.  But any such "excess" is not recoverable as appropriate *equitable* relief.  As the Ninth Circuit explained in *Depot* (where the Court denied plaintiffs' attempt to lay claim to a portion of premium payments for an ERISA-covered health insurance plan that allegedly exceeded "reasonable compensation"), those "excess" profits are not a readily identifiable fund subject to equitable relief.

As the Ninth Circuit described the case:

1
2
3
4
5
6

> Plaintiffs are three small employers in Montana who are members of the Montana Chamber of Commerce. Defendants are health insurance companies that marketed fully insured health insurance plans to the Chamber's members branded "Chamber Choices." From 2006 until 2014, plaintiffs provided their employees with healthcare coverage under Chamber Choices plans, and did so based on defendants' representations that the monthly premiums would reflect only the cost of providing benefits. But according to plaintiffs, these representations were false—defendants padded the premiums with hidden surcharges, which they used to pay kickbacks to the Chamber and to buy unauthorized insurance products.

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

*Depot*, 915 F.3d at 650.  In evaluating the plaintiffs' demand for appropriate equitable relief pursuant to their claim that defendants engaged in a prohibited transaction, the Court rejected the notion that plaintiffs could simply seek recovery of any alleged overpayment: "[P]laintiffs have not identified a 'specific fund' to which they are entitled. Plaintiffs…seek to recover not a specific thing but instead some unidentified portion of the many premium payments that exceeded 'reasonable compensation.'" *Id.* at 662.  Since "[t]he premium surcharges plaintiffs [sought] to recover 'never existed as a distinct object or fund'; rather, they reflect[ed] 'a specific amount of money encompassed *within* a particular fund'—the total premiums paid to defendants," the funds were not recoverable in an action under ERISA.  *Id.* (citing *Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083, 1093 (9th Cir. 2012)).   As the *Depot* Court noted, "even if the amount of the overcharges is measurable or otherwise identifiable, '[i]t is the *fund*, not its *size*, that must be identifiable.'" *Id.* (quoting *Cent. States, Se. & Sw. Areas Health & Welfare Fund v. First Agency, Inc.*, 756 F.3d 954, 960 (6th Cir. 2014) and *Bilyeu*, 683 F.3d at 1093 (distinguishing between a specific "amount of money" and a specific "fund")).

23
24
25
26
27
28

Likewise, in *Bilyeu*, the Ninth Circuit denied an insurer's counterclaim for "restitution" of overpaid long-term disability benefits under ERISA: "the overpaid disability benefits are not a particular fund, but a specific amount of money encompassed within a particular fund—the long-term disability benefits Unum paid to Bilyeu. As an amount of money, the overpayment is specific. As property or as a fund, however, the overpayment is lacking in specificity because it is an

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

38

JOINT BRIEF RELATING TO DEFENDANT
SPCP'S MOTION FOR SUMMARY
JUDGMENT

undifferentiated component of a larger fund. The overpayment has never existed as a distinct object or fund." *Bilyeu*, 683 F.3d at 1093. *See also Del Castillo*, 2019 WL 6841222, at *7 (plaintiffs desired to "return of the 'unreasonable' portion of funds received by [non-fiduciary]" but where the plaintiff "fail[ed] to allege what those 'unreasonable' amounts are and how they can be traced," "Plaintiffs' request for return of 'unreasonable' compensation is… legal in nature, not equitable.")

Here, too, any purported "excess profits" that SPCP received were an "undifferentiated component of a larger fund" – the consideration that SPCP received for surrendering its warrants—and "never existed as a distinct object or fund." *Bilyeu*, 683 F.3d at 1093. Thus, Plaintiff is not entitled to recover any purported "excess" compensation SPCP received for its warrants over and above whatever Plaintiff contends was their fair market value. Such a claim is nothing more than a disguised claim for legal relief, which is prohibited under ERISA.

## B.   <u>Argument by Plaintiff/Non-Moving Party</u>

Plaintiff seeks appropriate equitable relief under ERISA § 502(a)(3). Equitable relief under § 502(a)(3) includes "restitution *in equity*, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002). Restitution is equitable where it seeks "to restore to the plaintiff particular funds or property in the defendant's possession." *Id.* at 214. Put another way, "[w]here a plaintiff asserts a right to possess specific, identifiable property that is in the defendant's possession (including a specific sum of money), the plaintiff seeks an equitable remedy." *Sheet Metal Workers' Health & Welfare Fund of N. Carolina v. L. Off. of Michael A. DeMayo, LLP*, 21 F.4th 350, 354 (6th Cir. 2021) (citing *Knudson*, 534 U.S. at 213).

Here, Plaintiff seeks to a right to "specific, identifiable property that is in the defendant's possession" – namely, the property that SPCP received for its existing

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

39

JOINT BRIEF RELATING TO DEFENDANT
SPCP'S MOTION FOR SUMMARY
JUDGMENT

1   warrants in the 2015 ESOP Transaction (or the proceeds from that property). SPCP
2   unjustly enriched itself through its knowing participation in the Transaction, whereby
3   it exchanged its existing warrants to purchase KPC stock for (a) ▨▨▨▨▨ in cash;
4   (b) a 10-year subordinated note in the original principal amount of ▨▨▨▨; (c)
5   a warrant to purchase ▨▨▨ shares of KPC at an exercise price of ▨▨▨ per share;
6   and (d) ▨▨▨ of any net payments received by KPC or its subsidiaries under
7   California's QAF program based on hospital services provided from 2017-2024. Ex.
8   40 at 9-10; Ex. 36 at 2-5. The 2015 ESOP Transaction involved both KPC's purchase
9   of the existing warrants for ▨▨▨▨ and ▨▨ of certain future QAF payments
10  and the Plan's purchase of 100% of KPC stock for the aggregated price of
11  ▨▨▨▨. *Id.* at 7-9; Harden Depo. at 238:9-21. The Transaction valuation of
12  KPC's equity was vastly inflated. Ex. 31 at 7-8. Thus, SPCP was overpaid in the 2015
13  ESOP Transaction because the consideration it received for its warrants was based
14  on an inflated valuation of KPC and exceeded the warrants' fair market value. Harden
15  Depo. at 237:24-238:1. Plaintiff seeks to recover the value of that overpayment which
16  "belong[s] in good conscience to the plaintiff[.]" *Knudson*, 534 U.S. 204, 213 (2002).
17  Plaintiff has identified a "particular fund[]" within SPCP's possession: the four items
18  that constitute the consideration that SPCP received in the 2015 ESOP Transaction.
19  *Id*. In addition to other remedies, an equitable lien over that fund in the amount of the
20  difference between the consideration received for the warrants and their fair market
21  value, constitutes appropriate equitable relief under ERISA § 502(a)(3).

22      First, "injunction is inherently an equitable remedy[.]" *Knudson*, 534 U.S. at
23  211 n.1. "Without a doubt, injunctions are a type of traditional equitable relief
24  appropriate under section 503(a)(5)." *Acosta v. Brain*, 910 F.3d 502, 522 (9th Cir.
25  2018); *see Mertens*, 508 U.S. at 260 (the term "equitable relief" has the same meaning
26  in §§ 502(a)(3) and (5)). SPCP is still receiving an income stream from the 2015
27  ESOP Transaction because payments on the 10-year subordinated notes will not be
28  completed until 2025 and SPCP's QAF payments based on hospital services

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

JOINT BRIEF RELATING TO DEFENDANT
SPCP'S MOTION FOR SUMMARY
JUDGMENT

performed from 2017-2024 will continue until 2026 due to the delayed receipt of QAF payments. Blake Depo. at 70:22-72:13 (explaining that QAF managed care payments are typically delayed up to two years); Ex. 16. As one form of relief, the Court can order injunctive relief reducing these future payments, directing all or a portion of these payments to the ESOP, or imposing a constructive trust or equitable lien on funds already received by SPCP. Each of these remedies constitutes appropriate equitable relief under § 502(a)(3).

Second, equitable relief, in the form of an equitable lien or a constructive trust, is available under § 502(a)(3) to recover an overpayment. *Zirbel v. Ford Motor Co.*, 980 F.3d 520, 524 (6th Cir. 2020); *North Am. Coal Corp. Ret. Sav. Plan v. Roth,* 395 F.3d 916, 917 (8th Cir. 2005) (finding it was "proper for the district court to impose a constructive trust over the overpaid benefits, permanently enjoin appellants from disposing of or transferring any of the funds still in their possession and control, and require the return of such funds and a tracing of any portion of the funds no longer in appellants' possession or control"). in *Zirbel*, an employee received a $243,000 overpayment in retirement benefits. 980 F.3d at 522. It was undisputed that the employee was entitled to *some* benefits—but not the entire amount she was paid. *Id.* In an action to recoup the overpayment, the Sixth Circuit held that "the remedy in this case amounts to equitable restitution." *Id.* at 524. And, commingling did not prevent the equitable remedy: the "commingling gave [plaintiff] an equitable lien against those accounts up to the overpayment." *Id.* Other cases have reached similar conclusions. In *Lumenite Control Tech., Inc. v. Jarvis*, 252 F.Supp.2d 700 (N.D. Ill. 2003), an employee accrued pension benefits in an ERISA plan, but the plan erroneously paid her $22,270.64—about $14,000 more than she had accrued. *Id.* The plan administrator sued to recover the overpayment. *Id.* The court held that the plan administrator sought appropriate equitable relief under § 502(a)(3) because plaintiff "does not seek to impose personal liability on [defendant], it simply seeks to recover the particular funds that it allegedly overpaid to [her]." *Id.* at 704. Undisputedly, the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

41

JOINT BRIEF RELATING TO DEFENDANT
SPCP'S MOTION FOR SUMMARY
JUDGMENT

employee was entitled to *some* benefits, but the entire $22,270.64 had been deposited into an IRA and "the IRA contained both the alleged overpayment as well as money that undisputedly belonged to [the employee]." *Id*. The fact that these monies had been commingled did not bar recovery: "Where a single account contains money to which the account holder is entitled as well as money that rightfully belongs to another person, the rightful owner is entitled to a lien on the commingled fund in the amount of his own monies traceable to it." *Id*. (citing 2 Dan B. Dobbs, *Law of Remedies* § 6.1(4) (2d ed.1993)); *Mazda Ret. Plans Benefit Comm. v. Franco*, No. 8:20-CV-02113-JLS-JDE, 2021 WL 4707041, at *3 (C.D. Cal. July 1, 2021) (finding an equitable lien or constructive trust was proper remedy for overpayment of retirement benefits).

SPCP argues that it was entitled to receive some consideration for its existing warrants in the 2015 ESOP Transaction. But like defendants in the overpayment cases, SPCP received more than it was entitled. As in those cases, Plaintiff here seeks an appropriate equitable remedy: "to recover the particular funds that [were] allegedly overpaid to" SPCP. *Lumenite*, 252 F.Supp.2d at 704. This Court recognized that identification of "several funds—each obtained by Defendant as consideration in the Warrant Purchase Agreement—from which she might potentially recover" – namely money, notes, new warrants and entitlement to QAF payments – would be sufficient to identify a particular fund. *Gamino*, 2022 WL 336469, at *4. The fact that the specific fund has identified contains "money to which [defendant] is entitled[,]" – here consideration for the fair market value of the warrants – "as well as money that rightfully belongs to" plaintiff – here, the difference between the consideration SPCP received and the fair market value of the warrants, does not foreclose Plaintiff's claim for equitable relief. *Lumenite*, 252 F.Supp.2d at 704. On the contrary, in such a circumstance plaintiff "is entitled to a lien on the commingled fund in the amount of [her] own monies traceable to it." *Id*.

Moreover, among the things of value SPCP received as consideration for its

warrants were shares in future payments to KPC under the QAF program. Ex. 40, at 9-10. Plaintiff is entitled to seek constructive trust over these specifically identifiable assets which by their nonmonetary character are necessarily not part of SPCP's general funds. *Fish v. GreatBanc Tr. Co.*, 109 F.Supp.3d 1037, 1042 (N.D. Ill. 2015) (holding "appropriate equitable relief" included action for constructive trust over non-plan asset proceeds of prohibited transaction).

For these reasons, Plaintiff seeks appropriate equitable relief.

### 1.    SPCP Need Not Receive Funds from the ESOP.

SPCP argues that "[a]s a threshold matter, Plaintiff is barred from seeking disgorgement or other equitable relief from SPCP because SPCP never received funds from the ESOP." *Supra* V.A.2. SPCP contends Plaintiff can only recover plan assets in equity under section 1132(a)(3), but the proceeds of SPCP's sale of warrants were assets of KPC Holdings rather than the Plan. But there is no such "plan assets" element to be found in statute, caselaw, or in the principles of equity.

First, the Ninth Circuit allowed disgorgement of kickbacks paid by a third-party to a plan fiduciary for the fiduciary's participation in a fiduciary breach to be disgorged *to the plan*. *Patelco Credit Union,* 262 F.3d at 911-12. The court in *Solis v. Couturier* No. 2:08-CV-02732-RRB-GGH, 2009 WL 1748724, at *5 (E.D. Cal. June 19, 2009). applied *Patelco* to misconduct by a non-fiduciary. In *Solis* a law firm knowingly participated in a prohibited transaction. *Id.* at *4-5. There, as here, the monies received by the knowing participant were "'underlying assets' of an 'operating company' in which the Plan had an equity interest" rather than plan assets. *Id.* at *4. Synthesizing the Ninth Circuit's holdings in ERISA disgorgement actions, the court held that what matters is not whether the assets the plaintiff would seek through equitable relief are plan assets, but whether the equitable relief sought would be legal or equitable in character. *Id.* at *5-6. The *Solis* court held disgorgement of the knowing participant's unjust enrichment to the "original owners"—*i.e.*, the operating company—was appropriate equitable relief. *Id.* at *6. So here: plaintiff

seeks among other remedies the return of the assets wrongfully received by SPCP (and any profits earned thereon).[7] This falls comfortably within the ambit of appropriate equitable relief available for unjust enrichment.

Second, since the ESOP owns 100% of KPC, the note payments and QAF payments that SPCP has received since 2015 and will receive in the future are tantamount to a payment by the ESOP. *Johnson*, 572 F.3d at 1080. In *Johnson,* the Ninth Circuit recognized that "any proceeds taken from [the plan sponsor's] remaining funds …. will, dollar for dollar, reduce the funds available for distribution to ESOP participants." *Id.* at 1080; *Fernandez v. K-M Indus. Holding Co.*, 646 F.Supp.2d 1150, 1155 (N.D. Cal. 2009) (rejecting arguments that *Johnson* should be limited only to situations where the company was in the process of liquidation).

SPCP relies on two decisions in *Neil v. Zell*, contending that the court "rul[ed] that plan beneficiaries could not obtain equitable relief from investors who aided in an ESOP transaction (but received no money from the ESOP)." *Supra* V.A.2. (citing 677 F.Supp.2d 1010, 1015 (N.D. Ill. 2009) ("*Neil I*") and 2010 WL 3167293, at *2 (N.D. Ill. Aug. 9, 2010) ("*Neil II*"). But *Neil* is distinguishable in two important ways.

First, in finding that plaintiffs in *Neil* could not recover funds that originated with Tribune, the ESOP-owned company, the court emphasized that Tribune was not a party to the case, which precluded the court's ability to order relief including the repayment of funds that originated with Tribune. *Neil II*, 2010 WL 3167293, at *2. The court expressly distinguished circumstances where the ESOP-owned company was a party to the litigation. *Id.* Such circumstances exist here: the ESOP-owned company from which the assets exchanged in the 2015 Transaction originated—

---

[7] Even if paid to KPC rather than directly to the Plan, the return of these assets will represent a substantial benefit to Plan participants. Returning the proceeds of SPCP's warrant transaction to KPC would add millions of dollars to KPC's balance sheet, remove tens of millions of dollars in debt (or force the return of amounts already paid on the promissory note), prevent the dilution of the Plan's KPC stock through the future exercise of SPCP's warrants, and return significant revenues to KPC in the form of SPCP's shares of QAF payments. This increase in the value of KPC's assets would be reflected in a higher share price and thus additional benefits paid to ESOP participants.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

44

JOINT BRIEF RELATING TO DEFENDANT
SPCP'S MOTION FOR SUMMARY
JUDGMENT

KPC—is a party to this case. So the court's reasoning in *Neil II* that it could not order repayment of funds paid by Tribune because Tribune was not a party to the litigation is inapplicable. *Neil II*, 2010 WL 3167293, at *2.

Moreover, the 2015 Transaction differs from the Tribune transaction. In *Neil*, Tribune repurchased 126 million shares of stock from EGI-TRB at a premium over its trading value more than six months before the ESOP purchased Tribune. *Neil I*, 677 F.Supp.2d at 1017; *see Supra* V.A.2. But here, KPC purchased SPCP's existing warrants in excess of fair market value *simultaneously* with and as part of an integrated transaction with the sale of KPC to the ESOP. *Supra* II.B.1. Therefore, the distinction important to the *Neil* court between assets paid by the ESOP-owned company versus assets paid by the ESOP does not apply because the consideration paid to SPCP came from KPC's assets at the same moment that KPC's stock became the Plan's asset. *See Neil II*, 2010 WL 3167293 at *2. In other words, the consideration SPCP received came at the expense of the Plan because the purchase of KPC by the ESOP occurred simultaneously with the warrant purchase. Here, the Plan is "entitled to repayment of funds that originated with" KPC because SPCP's enrichment came at the expense of KPC through violations of ERISA, and continues to negatively affect KPC, which is the sole asset of the ESOP.[8]

### 2.   Plaintiff Has Identified a Specific Fund.

SPCP contends that Plaintiff does not seek appropriate equitable relief because "[t]here is no specific fund to which Plaintiff or the plan beneficiaries are entitled." *Supra* V.A.3.

---

[8] This case differs from *Eslava v. Gulf Tel. Co.*, No. 04-CV-00297-KDB, 2007 WL 1771416, at *1 (S.D. Ala. June 18, 2007), where the court determined that plaintiffs could not recover from a third party that had been sold stock owned by the employer, in which the ESOP had a 48% interest. There it was "undisputed" that the defendants "did not engage in any transaction with the ESOP" and the court had "previously held that [the stock] was not a plan asset at the time it was sold to" the third party. *Id.* at *7. The transactions in that case were distinct whereas here the 2015 Transaction was a single, integrated transaction.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

45

JOINT BRIEF RELATING TO DEFENDANT
SPCP'S MOTION FOR SUMMARY
JUDGMENT

But Plaintiff "asserts a right to possess specific, identifiable property that is in the defendant's possession": the money and other things of value which SPCP received in exchange for its common stock warrants as part of the 2015 transaction. *Supra* V.B.1. That property exists in a particular fund: the total consideration SPCP received (and the stream of income from that consideration) for its pre-Transaction warrants. *Supra* V.B.1. Plaintiff seeks an equitable lien over that fund in the amount that SPCP was unjustly enriched, that is, the difference between the consideration SPCP received and the fair market value of the warrants, which is appropriate equitable relief. *Supra* V.B.

SPCP argues that "[t]his is not a case where SPCP gave nothing in return for receiving compensation as part of the ESOP Transaction." *Supra* V.A.3 (citing *Depot* and *Bilyeu*). SPCP argues that Plaintiff is not entitled "to any 'excess' profits that SPCP received"—that is, the amount in which SPCP was overpaid for the warrants—because "any such 'excess' is not recoverable as appropriate *equitable* relief." *Supra* V.A.3. As in pension benefit overpayment cases where a participant receives more than she or he was entitled to (and gave something in return for the compensation), the plaintiff can recover the overpayment as equitable relief. *E.g. Lumenite*, 252 F.Supp.2d at 704; *Zirbel*, 980 F.3d at 524. The appropriate remedy is an equitable lien or constructive trust over the total amount of benefits paid in the specific amount of the overpayment. *See id.* If the consideration SPCP claims it was rightfully entitled to for the warrants is comingled with the amount it was overpaid, the overpayment is recoverable. *Zirbel*, 980 F.3d at 524 (finding that "commingling gave [plaintiff] an equitable lien against th[e] accounts up to the overpayment").

Contrary to SPCP's assertions, *Depot* and *Bilyeu* do not dictate otherwise. *Supra* V.A.3. In *Depot* (1) plaintiffs sought to recover against the general assets of the defendants through "disgorgement," and (2) plaintiffs pleaded that defendants had dissipated the proceeds of the prohibited transactions on "nontraceable items" such as "kickbacks and unwanted insurance products." *Depot*, 915 F.3d at 663-65.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

46

JOINT BRIEF RELATING TO DEFENDANT
SPCP'S MOTION FOR SUMMARY
JUDGMENT

The *Depot* plaintiffs conceded that there was no traceable res. *Id.* at 663-65. But this case is distinguishable, Plaintiff identifies a specific fund from which she can recover: the consideration that SPCP received for the warrants. *See* <u>Gamino</u>, 2022 WL 336469, at *4. SPCP does not contend that these assets have been dissipated.

In *Bilyeu* the Ninth Circuit denied an insurer's claim for restitution of overpaid benefits where the insurer identified the overpaid benefits as the "particular fund" from which it sought recovery. *Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083, 1093 (9th Cir. 2012). The Ninth Circuit explained that "the overpaid disability benefits are not a particular *fund,* but a specific amount of money encompassed *within* a particular fund—the long-term disability benefits Unum paid to Bilyeu." *Id.* at 1093. But the Ninth Circuit recognized that the total long-term disability benefits paid to Bilyeu *did* constitute a particular fund and that the insurer would have sought appropriate equitable relief if it "had identified the third party recovery—here, Bilyeu's social security disability benefits—as the particular fund enlisted to serve as security for the overpayment of benefits." *Id.* That was not possible in *Bilyeu* only because under federal law "Bilyeu could not assign her social security benefits, and [the insurer] could not attach them." *Id.* Consistent with *Bilyeu,* the specific fund is the total compensation that SPCP received in exchange for the warrants, *not* the amount of the overpayment. As a result, Plaintiff seeks an equitable lien over the specific fund (i.e. the total consideration received), in the amount of the overpayment, that is, the difference between what SPCP received for the warrants and their fair market value. Thus, Plaintiff seeks appropriate equitable relief.

## VI.   <u>CONCLUSION</u>

For all of the foregoing reasons, Defendant SPCP respectfully requests that this Court grant summary judgment in its favor on Plaintiff's claim against it.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

JOINT BRIEF RELATING TO DEFENDANT
SPCP'S MOTION FOR SUMMARY
JUDGMENT

For all the foregoing reasons, Plaintiff respectfully requests that Defendant SPCP's motion for summary judgment be denied.[9]

## CERTIFICATION PURSUANT TO LOCAL RULE 5-4.3.4(a)(2)

Pursuant to Local Rule 5-4.3.4(a)(2), Defendant's counsel attests that all other signatories listed, and on whose behalf this filing is jointly submitted, concur in the filing's content and have authorized the filing.

Dated: July 5, 2022                    MORGAN, LEWIS & BOCKIUS LLP


                                       By */s/ Aimee Mackay*
                                           Aimee Mackay
                                           Sari Alamuddin (*pro hac vice*)
                                           Deborah Davidson (*pro hac vice*)

                                           *Attorneys for Defendant*
                                           SPCP GROUP, LLC

Dated: July 5, 2022                    BLOCK & LEVITON LLP


                                       By */s/ R. Joseph Barton*
                                           R. Joseph Barton

                                           *Attorneys for Plaintiff*
                                           Danielle Gamino

---

[9] Rule 56(f) authorizes a court to grant summary judgment for a nonmovant. R. *White v. Moore,* 221CV06964MCSMAA, 2022 WL 2197004, at *2 (C.D. Cal. Apr. 26, 2022) (citing Ninth Circuit authority and granting summary judgment on one issue in favor of non-movant). Here, the Court could conclude that there is no issue of disputed fact as to whether there was stock purchase and warrant purchase were a single transaction.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

48

JOINT BRIEF RELATING TO DEFENDANT
SPCP'S MOTION FOR SUMMARY
JUDGMENT