MORGAN, LEWIS & BOCKIUS LLP
Aimee Mackay, Bar No. 221690
aimee.mackay@morganlewis.com
300 South Grand Avenue
Los Angeles, CA 90071-3132
Tel:  +1.213.612.2500
Fax:  +1.213.612.2501

MORGAN, LEWIS & BOCKIUS LLP
Sari Alamuddin (admitted *pro hac vice*)
sari.alamuddin@morganlewis.com
Deborah Davidson (admitted *pro hac vice*)
deborah.davidson@morganlewis.com
110 N. Wacker Drive
Chicago, IL 60606-1511
Tel: +1.312.324.1000
Fax: +1.312.324.1001

Attorneys for Defendant
SPCP GROUP, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIELLE GAMINO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>SPCP GROUP, LLC,<br><br>Defendant,<br><br>and<br><br>KPC HEALTHCARE INC. EMPLOYEE STOCK OWNERSHIP PLAN,<br><br>Nominal Defendant. | Case No. 5:20-cv-01126-SB-SHK [Consolidated Case Number]<br><br>**JOINT APPENDIX OF FACTS RE: MOTION FOR SUMMARY JUDGEMENT**<br><br>Hearing Date: August 5, 2022<br>Time:     8:30 am<br>Judge:    Hon. Stanley Blumenfeld, Jr.<br>Ctrm:    6C |

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| **ISSUE 1: WHETHER DEFENDANT "PARTICIPATED" IN THE ESOP TRANSACTION** | | | |
| 1 | Silver Point Capital, L.P. ("Silver Point") makes investments on behalf of its clients. | Joint Appendix of Evidence ("JAE"), Exhibit 24 [Excerpts of Transcript of the Deposition of Thomas Banks ("Banks Dep. Tr.") at 14:21-25.] | Not disputed. |
| 2 | SPCP Group LLC ("SPCP") is owned by two Silver Point-related entities. | JAE Exhibit 32 [Excerpts of Defendant SPCP Group LLC's Amended Responses to Plaintiff's Fifth Set of Interrogatories (no. 15)]. | Not disputed |
| 3 | Tom Banks is a managing director at Silver Point Capital, L.P. | JAE Exhibit 24 [Banks Dep. Tr. at 10:10-12.] | Not disputed |
| 4 | KPC Healthcare Holdings, Inc. ("KPC") is a California corporation, formerly known as Integrated Healthcare Holdings, Inc. ("IHHI"). | FAC ¶¶ 13, 62, 69. | Disputed. Integrated Healthcare Holdings, Inc. became KPC Healthcare, Inc., not KPC |

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | | | Healthcare Holdings, Inc. Ex. 16 at 1 ("on or about February 9, 2015, Integrated Healthcare Holdings, Inc. changed its legal name to 'KPC Healthcare, Inc.'"). |
| 5 | Bill Thomas is general counsel and executive vice president at KPC. | JAE Exhibit 28 [Excerpts of Transcript of Deposition of William Thomas ("Thomas Dep. Tr.") at 10:24-11:3.] | Not disputed. |
| 6 | On April 13, 2010, SPCP entered into a credit agreement with IHHI whereby SPCP provided IHHI a secured term loan. | JAE Exhibit 30 [Form 10-K filed by Integrated Healthcare Holdings, Inc. with U.S. Securities and Exchange Commission (fiscal year ended March 31, 2012), SPCP_0000001187, at -1213.] | Not disputed. |

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| 7 | The credit agreement was amended and restated on February 7, 2013. | JAE Exhibit 2, [Banks Decl., Ex. A, Amendment and Restatement to the Credit Agreement (Feb. 7, 2013) ("2013 Credit Agreement"), SPCP_0000004312.] | Not disputed. |
| 8 | In return for its loan to IHHI, SPCP received, among other things, warrants to purchase IHHI's common stock. | JAE Exhibit 30, [Form 10-K filed by Integrated Healthcare Holdings, Inc. with U.S. Securities and Exchange Commission (fiscal year ended March 31, 2012), SPCP_0000001187, at -1215; Banks Dep. Tr. 19:4-15; 56:2-10.] | Not disputed. |
| 9 | Mr. Banks testified that "[a] warrant is akin to an option[,] in that it allows or provides the holder the right to buy a share of newly issued stock…." | JAE Exhibit 24, [Banks Dep. Tr. 56:11-16.] | Not disputed. |

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| 10 | Mr. Thomas testified that pursuant to a separate agreement, he also held certain warrants to purchase IHHI's common stock. | JAE Exhibit 28, [Thomas Dep. Tr. 35:2-8.] | Not disputed. |
| 11 | On August 5, 2015, Mr. Thomas sent an e-mail to Mr. Banks attaching two documents: (1) a Letter of Intent & Summary Term Sheet, and (2) a Subordinated Debt Offering & Detachable Warrants Term Sheet, both dated August 3, 2015. | JAE Exhibit 7, [Banks Decl., Ex. F, Letter of Intent & Summary Term Sheet ("Letter of Intent & Summary Term Sheet"), SPCP_0000018838]; JAE Exhibit 8, [Banks Decl., Ex. G, Subordinated Debt Offering & Detachable Warrants Term Sheet, SPCP_0000018856.] | Not disputed. |
| 12 | The Letter of Intent & Summary Term Sheet contemplated a series of simultaneous transactions. | JAE Exhibit 7, [Letter of Intent & Summary Term Sheet, SPCP_0000018838.] | Not disputed. |
| 13 | The Letter of Intent & Summary Term Sheet | JAE Exhibit 7, [Letter of Intent & Summary Term | Not disputed. |

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | contemplated KPC would purchase the outstanding warrants to buy KPC stock held by SPCP. | Sheet, SPCP_0000018838.] | |
| 14 | The Letter of Intent & Summary Term Sheet contemplated KPC would purchase the outstanding warrants to buy KPC stock held by Mr. Thomas. | JAE Exhibit 7, [Letter of Intent & Summary Term Sheet, SPCP_0000018838.] | Not disputed. |
| 15 | The Letter of Intent & Summary Term Sheet contemplated the ESOP would purchase 100% of the KPC shares held by Dr. Kali Pradip Chaudhuri. | JAE Exhibit 7, [Letter of Intent & Summary Term Sheet, SPCP_0000018838.] | Not disputed. |
| 16 | SPCP had not been involved in the negotiation of any terms related to the proposed transactions. | JAE Exhibit 29, [Excerpts of Deposition of Allision Wilkerson ("Wilkerson Depo. Tr.") at 182:19-183:16.] | Disputed. SPCP was involved in the negotiations of the terms of SPCP's sale of its warrants including through their |

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | | | counsel, Skadden Arps. Wilkerson Depo. at 149:19-150:4; Banks Depo. at 134:8-11; Ex. 44 at EUREKA_046978 (referring to comments by Skadden to transaction documents and discussion of substantive items with counsel for other parties). |
| 17 | Mr. Banks testified that SPCP understood that, in light of the proposed transactions, it would have to decide whether or not to sell its KPC warrants back to KPC. | JAE Exhibit 24, [Banks Dep. Tr. 151:11-20.] | Not disputed. |
| 18 | The Thomas Warrant Redemption Transaction was | JAE Exhibit 31, [Banks Decl., Ex. M, Warrant Purchase Agreement | Not disputed. |

JOINT APPENDIX OF FACTS RE MOTION FOR SUMMARY JUDGMENT

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | conducted between Mr. Thomas and KPC pursuant to an August 28, 2015, warrant purchase agreement (the "Thomas Warrant Purchase Agreement"). | between KPC and William Thomas, dated August 28, 2015 ("Thomas Warrant Purchase Agreement"), KPCDEF_002368.] | |
| 19 | Pursuant to the Thomas Warrant Purchase Agreement, KPC purchased all of Mr. Thomas's warrants to buy KPC stock for the following consideration: (a) ▮▮▮▮ in cash; (b) a promissory note in the original principal amount of ▮▮▮▮; (c) a warrant to purchase ▮▮▮▮ shares of KPC at an exercise price of ▮▮▮▮ per share; and (d) ▮▮▮▮ of any net payments received by KPC or its | JAE Exhibit 31, [Thomas Warrant Purchase Agreement, KPCDEF_002368.] | Not disputed. |

JOINT APPENDIX OF FACTS RE MOTION FOR SUMMARY JUDGMENT

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | subsidiaries under California's hospital quality assurance fee (QAF) program based on services provided from January 1, 2017, to December 31, 2024. | | |
| 20 | Dr. Chaudhuri, Alerus Financial, N.A. ("Alerus"), and SPCP were not parties to the Thomas Warrant Purchase Agreement. | JAE Exhibit 31, [Thomas Warrant Purchase Agreement, KPCDEF_002368.] | Not disputed. |
| 21 | Dr. Chaudhuri, Alerus, and SPCP received no consideration under the terms of the Thomas Warrant Redemption Transaction. | JAE Exhibit 31, [Thomas Warrant Purchase Agreement, KPCDEF_002368.] | Not disputed. |
| 22 | The Thomas Warrant Purchase Agreement states that the ESOP's purchase of KPC stock from Dr. Chaudhuri was a "coincident" transaction conducted | JAE Exhibit 31, [Thomas Warrant Purchase Agreement, KPCDEF_002368.] | Not disputed. |

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | by different parties pursuant to the terms of the Stock Purchase Agreement. | | |
| 23 | The SPCP Warrant Redemption Transaction was conducted between SPCP and KPC pursuant to an August 28, 2015, warrant purchase agreement (the "SPCP Warrant Purchase Agreement"). | JAE Exhibit 16, [Ex. 58, Warrant Purchase Agreement between KPC and SPCP, dated August 28, 2015 ("SPCP Warrant Purchase Agreement"), MCD00044381.] | Not disputed. |
| 24 | Pursuant to the SPCP Warrant Purchase Agreement, KPC purchased all of SPCP's warrants to buy KPC stock for the following consideration: (a) ███████ in cash; (b) a promissory note in the original principal amount of | JAE Exhibit 16, [SPCP Warrant Purchase Agreement, MCD00044381.] | Not disputed. |

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | ▮▮▮; (c) a warrant to purchase ▮▮▮ shares of KPC at an exercise price of ▮▮▮ per share; and (d) ▮▮ of any net payments received by KPC or its subsidiaries under California's hospital quality assurance fee (QAF) program based on services provided from January 1, 2017, to December 31, 2024. | | |
| 25 | Dr. Chaudhuri, Alerus, and Mr. Thomas were not parties to the SPCP Warrant Purchase Agreement. | JAE Exhibit 16, [SPCP Warrant Purchase Agreement, MCD00044381.] | Not disputed. |
| 26 | Dr. Chaudhuri, Alerus, and Mr. Thomas received no consideration under the terms of the SPCP | JAE Exhibit 16, [SPCP Warrant Purchase Agreement, MCD00044381.] | Not disputed. |

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | Warrant Redemption Transaction. | | |
| 27 | The SPCP Warrant Purchase Agreement states that the ESOP's purchase of KPC stock from Dr. Chaudhuri was a "coincident" transaction conducted by different parties pursuant to the terms of the Stock Purchase Agreement. | JAE Exhibit 16, [SPCP Warrant Purchase Agreement, MCD00044381.] | Not disputed. |
| 28 | On August 28, 2015, KPC, Alerus and Dr. Chaudhuri entered into a stock purchase agreement (the "Stock Purchase Agreement"). | JAE Exhibit 13, [Banks Decl., Ex. L, Stock Purchase Agreement between the KPC Healthcare, Inc. Employee Stock Ownership Trust, Dr. Kali Pradip Chaudhuri, and KPC, dated August 28, 2015 ("Stock Purchase Agreement"), MCD00000144.] | Not disputed. |

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| 29 | Pursuant to the Stock Purchase Agreement, Alerus caused the ESOP to pay Dr. Chaudhuri cash in the amount of ████ and to issue a promissory note to him in the original principal amount of ████, for an aggregate purchase price of ████. | JAE Exhibit 13, [Stock Purchase Agreement, MCD00000144.] | Not disputed. |
| 30 | Mr. Thomas and SPCP were not parties to the Stock Purchase Agreement. | JAE Exhibit 13, [Stock Purchase Agreement, MCD00000144.] | Not disputed. |
| 31 | Mr. Thomas and SPCP received no consideration under the terms of the Stock Purchase Transaction. | JAE Exhibit 13, [Stock Purchase Agreement, MCD00000144.] | Not disputed. |
| 32 | The Stock Purchase Agreement states that, in relation to the ESOP's purchase of | JAE Exhibit 13, [Stock Purchase Agreement, MCD00000144.] | Not disputed. |

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | Dr. Chaudhuri's KPC stock, the redemption of Mr. Thomas's and SPCP's warrants were "coincident" transactions conducted by different parties "pursuant to the terms of those certain warrant purchase agreements . . . by and between [KPC] and each of Mr. Thomas and SPCP Group . . ." | | |
| 33 | Michael Harden, a former partner at Eureka Capital Partners ("Eureka"), acted as advisor to KPC regarding the three *separate* transactions. | JAE Exhibit 27, [Excerpts of Transcript of Deposition of Michael Harden ("Harden Dep. Tr.") at 16:14-17:2; 29:6-12.] | Disputed in part. Not disputed that Harden acted as an advisor to KPC (as well Dr. Chaudhuri), but disputed that these were entirely separate transactions. They were "simultaneous and |

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | | | "integrated transactions." Harden Depo. at 235:1-14, 16-19, 237:23-238:1. 238:9-21. |
| 34 | Mr. Harden testified that *Eureka treated the Stock Purchase Transaction and the two warrant redemption transactions as "separate" transactions because they were "separate business decisions."* | JAE Exhibit 27, [Harden Dep. Tr. 235:6-14.] | Disputed in part. Not disputed that Harden so testified; disputed that Eureka treated the Stock Purchase Transaction and the warrant redemption transactions as "separate." Harden testified they were "integrated" transactions. Harden Depo. at 235:6. Eureka's contemporaneous presentation to |

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | | | lenders characterized them as steps in a single, overarching transaction. Ex. 34 at 42-43. |
| 35 | Mr. Harden testified that SPCP was not a party to the Stock Purchase Transaction and that "SPCP was simply engaged in the warrant redemption transaction" alone. | JAE Exhibit 27, [Harden Dep. Tr. 236:19-237:2.] | Not disputed. |
| 36 | Mr. Harden testified that while the Stock Purchase Transaction *might not have occurred* without the warrant redemption transactions occurring first (because Dr. Chaudhuri wanted to own 100% of KPC stock before selling | JAE Exhibit 27, [Harden Dep. Tr. 238:8-21.] | Disputed in Part. Mr. Harden testified that while hypothetically the warrant sale "could have occurred on its own," he explained that they could not "have done the |

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | KPC to the ESOP), "the warrant transaction[s] could have occurred on [their] own" without execution of the Stock Purchase Transaction. | | ESOP transaction without" both 100% of the equity (shares and warrants) because KPC would not have realized the tax benefit. Harden Depo . at 238:9-21. |
| **ISSUE 2: WHETHER PLAINTIFF CAN ESTABLISH "ACTUAL OR CONSTRUCTIVE KNOWLEDGE" BY SPCP THAT THE TRANSACTION WAS UNLAWFUL** | | | |
| • | *See* SUF 6-8. | | |
| 37 | Tom Banks, managing director at Silver Point Capital, L.P., testified that Silver Point Capital, L.P. specializes in distressed debt and special-situation lending, which means that its focus is to invest in companies like IHHI (KPC), which arose out of the | JAE Exhibit 24, [Banks Dep. Tr. 146:6-8.] | Not disputed. |

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | bankruptcy of another entity. | | |
| 38 | Mr. Banks testified that IHHI was "a company that we thought had significant potential" even if it "had never achieved that potential and had underperformed…." | JAE Exhibit 24, [Banks Dep. Tr. 159:19-160:12.] | Not disputed. |
| 39 | Under the terms of the various credit agreements between SPCP and IHHI, SPCP was entitled to IHHI's "financial statements and information," and was authorized "to communicate and/or meet" with IHHI's accountants "with regard to any and all financial statements and supporting financial documents relating to [IHHI] with | JAE Exhibit 2 [2013 Credit Agreement, SPCP_0000004312, at -4367]; JAE Exhibit 24, [Banks Dep. Tr. 74:15-22.] | Not disputed. |

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | respect to the business, results of operations and financial condition of [IHHI]." | | |
| 40 | Mr. Banks testified that he reviewed IHHI's financials because "as a lender… our loan required the payment of cash interest so we tracked it to ensure that the company would be able to pay the interest on our loan and any required principal amortization." | JAE Exhibit 24, [Banks Dep. Tr. 74:25-75:2.] | Not disputed. |
| 41 | The credit agreements also gave SPCP "observer status" "with respect to all meetings of [IHHI's] board of directors (and committees thereof) and all meetings of its shareholders (and | JAE Exhibit 2 [2013 Credit Agreement, SPCP_0000004312, at -4371]; JAE Exhibit 24, [Banks Dep. Tr. 74:23-24.] | Not disputed. |

JOINT APPENDIX OF FACTS RE MOTION FOR SUMMARY JUDGMENT

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | committees thereof)…." | | |
| 42 | Mr. Banks testified that "on occasion" he attended IHHI board meetings on behalf of SPCP. | JAE Exhibit 24, [Banks Dep. Tr. 33:5-12.] | Not disputed. |
| 43 | IHHI became a private company on January 7, 2014, and was renamed KPC Health Care Holdings, Inc. (KPC) | FAC ¶¶ 62, 69; JAE Exhibit 20, [Ex. 194, July 14, 2015 E-mail SPCP_0000024183.] | Disputed. Integrated Healthcare Holdings, Inc. became KPC Healthcare, Inc., not KPC Healthcare Holdings, Inc. Ex. 16 at 1 ("on or about February 9, 2015, Integrated Healthcare Holdings, Inc. changed its legal name to 'KPC Healthcare, Inc.'"). |

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---------|------|---------------------|----------------|
| 44 | In connection with that transaction, IHHI (now KPC) decided "to repay in full all amounts outstanding under the Credit Agreement [with SPCP]" through refinancing the loan with a company known as MidCap Financial. | JAE Exhibit 3, [Banks Decl. Ex. B, Payoff Letter (Feb. 14, 2014) ("Payoff Letter"), SPCP_0000003147.] | Not disputed. |
| 45 | The debt was refinanced—and SPCP ceased being a lender to KPC—effective February 14, 2014. | JAE Exhibit 3, [Payoff Letter (Feb. 14, 2014), SPCP_0000003147]; JAE Exhibit 24, [Banks Dep. Tr. 27:25-28:3.] | Not disputed |
| 46 | Mr. Banks testified that once the loan was re-financed, SPCP held nothing but warrants to purchase KPC stock. | JAE Exhibit 24, [Banks Dep. Tr. 87:15-18.] | Not disputed. |
| 47 | Mr. Banks testified that once the loan was re-financed, SPCP lost *its right to demand inspection of KPC's* | JAE Exhibit 24, [Banks Depo Tr. 74:9-76:7.] | Disputed in part. Not disputed that SPCP lost its board observer rights after its debt |

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

JOINT APPENDIX OF FACTS RE MOTION FOR SUMMARY JUDGMENT

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---------|------|---------------------|----------------|
| | ***financial statements*** and any observer rights it previously held. | | position was refinanced. Disputed that SPCP lost its right to demand inspection of KPC's financial statements. Mr. Banks testified that SPCP continued to produce these statements upon request. Banks Depo. at 75:9-13. |
| 48 | Mr. Banks testified that after the MidCap re-finance, SPCP "owned… [only] a very small position in unexercised warrants" so SPCP "w[as]n't in frequent communication with IHHI" about anything, | JAE Exhibit 24, [Banks Dep. Tr. 132:12-15.] | Not disputed. |

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | including its financial health or performance. | | |
| 49 | Mr. Banks testified that, following the refinance, SPCP would request KPC's financial statements once a year, when preparing its annual fair valuation memo of the warrants it held. | JAE Exhibit 24, [Banks Dep. Tr. 75:9-20.] | Disputed. Mr. Banks testified that he "wouldn't say that would be the only time" that SPCP would request and receive financial statements from KPC. Banks Depo. at 75:21-25. |
| 50 | Mr. Banks testified that SPCP prepared yearly fair value memoranda for its auditors, assessing the estimated value of its position in investments like KPC warrants which have no observable public price. | JAE Exhibit 24, [Banks Dep. Tr. 54:14-55:25.] | Not disputed. |
| 51 | The fair value memoranda purport to value SPCP's position | JAE Exhibit 1, [Banks Decl. at ¶ 6.] | Disputed. The fair value memoranda derive the value of |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

22

JOINT APPENDIX OF FACTS RE MOTION
FOR SUMMARY JUDGMENT

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | related to a company or asset, not the company or asset itself. | | SPCP's warrants to purchase equity in the company from the equity value of the company itself. *E.g.* JAE Ex. 17 at 7 ("We value IHHI using an EBITDA multiple approach and a borrowing base approach."); JAE Ex. 18 at 6 ("We value IHHI using a sum of the parts valuation…."); *see also infra* ¶ 53. |
| 52 | In its fair value memorandum from December 2013 (issued just before IHHI refinanced its term loan with SPCP through MidCap), SPCP used two approaches to | JAE Exhibit 17, [Ex. 185, Fair Value Memo (Dec. 31, 2013), SPCP_0000000798]; JAE Exhibit 24, [Banks Dep. Tr. 64:20-65:4.] | Not disputed. |

JOINT APPENDIX OF FACTS RE MOTION FOR SUMMARY JUDGMENT

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | estimate the value of its unexercised IHHI warrants from the perspective of a lender. | | |
| 53 | First, SPCP used an EBITDA multiple approach to determine the value of its warrant position based on IHHI's equity value. | JAE Exhibit 24, [Banks Dep. Tr. 61:16-62:9]; JAE Exhibit 17, [Ex. 185, Fair Value Memo (Dec. 31, 2013), SPCP_0000000798, at -0804-805.] | Not disputed. |
| 54 | Second, the December 2013 fair value memorandum performed a liquidation analysis, which considers the value of the assets if the business was not sold as a going concern and the assets were sold for fair market value. | JAE Exhibit 24, [Banks Dep. Tr. 62:10-18]; JAE Exhibit 17, [Ex. 185, Fair Value Memo (Dec. 31, 2013), SPCP_0000000798, at -0804-805.] | Not disputed. |
| 55 | The December 2013 fair value memo considered the value of QAF revenue that had | JAE Exhibit 24, [Banks Dep. Tr. 64:2-65:4.] | Not disputed. |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

24

JOINT APPENDIX OF FACTS RE MOTION
FOR SUMMARY JUDGMENT

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | already been approved by CMS, but discounted any future QAF since the program had not yet been authorized to continue in the future. | | |
| 56 | Mr. Banks testified that, as a lender with no participation rights in the QAF, SPCP's concern at the time was whether IHHI could meet its obligation under the loans, not the potential upside of an uncertain revenue source (QAF). | JAE Exhibit 24, [Banks Dep. Tr. 64:2-65:4.] | Not disputed. |
| 57 | Mr. Banks testified that the December 2013 fair value memo "reflect[ed] our value of the warrant. *We were not in this exercise valuing IHHI's equity.* We | JAE Exhibit 24, [Banks Dep. Tr. 68:22-69:5.] | Disputed in part. The 2013 fair value memorandum derives the value of SPCP's warrants to purchase equity in |

JOINT APPENDIX OF FACTS RE MOTION FOR SUMMARY JUDGMENT

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | were valuing what is the warrant held by Silver Point worth." | | the company from the equity value of the company itself. *See, e.g.,* JAE Ex. 17 at 7 ("We value IHHI using an EBITDA multiple approach and a borrowing base approach."); *supra* ¶ 53. |
| 58 | Mr. Banks testified that in its KPC fair value memo from December 2014, SPCP no longer valued its position in the company through the eyes of a creditor, whereby SPCP had to consider "enforcing [SPCP's] collateral and looking at a liquidation which "doesn't produce the highest value," but for a creditor "could reflect | JAE Exhibit 24, [Banks Dep. Tr. 88:19-91:2]; JAE Exhibit 18, [Ex. 190, Fair Value Memo (Dec. 31, 2014) SPCP_0000028064.] | Not disputed. |

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | a meaningful recovery and represents a wors[t] case scenario." | | |
| 59 | Mr. Banks testified that, because SPCP was no longer a creditor, SPCP only had to value its equity position in KPC (meaning, the value of the unexercised warrants). | JAE Exhibit 24, [Banks Dep. Tr. 88:19-91:2.] | Not disputed. |
| 60 | The December 2014 fair value memorandum used a "sum of the parts" valuation, which added together the value of the operating business via an EBITDA multiple approach and the present value of the probability weighted after-tax QAF cash flows. | JAE Exhibit 18, [Fair Value Memo (Dec. 31, 2014) SPCP_0000028064, at -28069.] | Not disputed. |

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| 61 | Mr. Banks testified that the value of the potential after-tax QAF cash flows was developed in conjunction with the advice of an independent consultant, Matt Absher, who Mr. Banks considered an expert on the topic of QAF. | JAE Exhibit 24, [Banks Dep. Tr. 92:19-93:12; 97:13-25; 161:14-24.] | Not disputed. |
| 62 | The December 2014 fair value memo valued SPCP's unexercised KPC warrants at ███ per warrant, which implied a total midpoint equity value of the company (including QAF) of ███. | JAE Exhibit 18, [Fair Value Memo (Dec. 31, 2014), SPCP_0000028064, at -28065-28069]; JAE Exhibit 24, [Banks Dep. Tr. 92:14-18.] | Not disputed. |
| 63 | Mr. Banks testified that *the December 2014 memo "[was] not a valuation memo [for]* | JAE Exhibit 24, [Banks Dep. Tr. 107:11-13.] | Disputed in part. Not disputed that he so testified, but the valuation of |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | ***IHHI.  This [was] a valuation for the warrant[s].***  We didn't own IHHI.  We owned the warrants." | | SPCP's unexercised warrants was derived from the value of KPC's equity. Ex. 18 at 6. |
| 64 | Mr. Banks testified KPC's EBITDA was negative at the time, which would have decreased any valuation of SPCP's warrants. | JAE Exhibit 24, [Banks Dep. Tr. 135:15-20.] | Not disputed. |
| 65 | Mr. Banks testified that SPCP valued its warrants for KPC shares "significantly less" than it would have valued its ownership of "shares in the company or the entire company," because SPCP held unexercised warrants amounting to a | JAE Exhibit 24, [Banks Dep. Tr. 108:2-9, 109:7-15.] | Not disputed. |

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | "minority position" in a company owned by someone else, with no shareholder rights, and where SPCP would be unable to exit its position. | | |
| 66 | On February 19, 2015, Mr. Thomas notified Mr. Banks by e-mail that Dr. Chaudhuri was contemplating an ESOP transaction whereby the ESOP would purchase KPC's stock. | JAE Exhibit 4, [Banks Decl., Ex. C, Feb. 19, 2015 E-mail, SPCP_0000027769.] | Not disputed. |
| 67 | In his e-mail to Mr. Banks, Mr. Thomas wrote that IHHI "retained Eureka Capital [Partners], an ESOP industry leader, to advise it" regarding the potential ESOP transaction. | JAE Exhibit 4, [Feb. 19, 2015 E-mail, SPCP_0000027769.] | Not disputed. |

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| 68 | In his February 19, 2015, e-mail, Mr. Thomas wrote that KPC had begun "generating positive EBITDA without QAF" for the first time. | JAE Exhibit 4, [Feb. 19, 2015 E-mail, SPCP_0000027769.] | Not disputed. |
| 69 | In the same March 5, 2015, e-mail about the potential ESOP Transaction, Mr. Banks informed others at SPCP that KPC initially expected its stock to be valued at approximately ▮▮▮ ▮▮▮ | JAE Exhibit 19, [Ex. 191, March 5, 2015 E-mail, SPCP_0000020617.] | Not disputed. |
| 70 | In the e-mail, Mr. Banks noted that SPCP's warrants to buy KPC stock "would be taken out in an ESOP deal." | JAE Exhibit 19, [Ex. 191, March 5, 2015 E-mail, SPCP_0000020617.] | Not disputed. |
| 71 | In Mr. Banks' opinion, "the valuation [of ▮▮▮ for KPC stock] | JAE Exhibit 19, [Ex. 191, March 5, 2015 E- | Disputed in part. Not disputed that Mr. Banks stated |

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

JOINT APPENDIX OF FACTS RE MOTION FOR SUMMARY JUDGMENT

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | was low," even though the implied equity value of KPC as determined in SPCP's 2014 fair value memorandum was ██████████ *based on the valuation of SPCP's unexercised warrants.* | mail, SPCP_0000020617.] | in an email that he viewed the $170 million valuation of KPC stock as low. Not disputed that the equity value of KPC stated in SPCP's fair value memorandum was $70.4 million. Disputed that the equity value of KPC in SPCP's fair value memorandum was "based on" the valuation of SPCP's unexercised warrants. The valuation of SPCP's unexercised warrants was derived from the |

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | | | value of KPC's equity, not the other way around. Ex. 18 at 6. |
| 72 | Mr. Banks testified that the value of SPCP's unexercised warrants was diminished by the fact that exercising those warrants would give SPCP "a minority position [in a company] controlled by someone else with no rights and no ability to actually exit which makes it worth significantly less than either shares in the company or in the sale of the entire company, which presumably would have a control premium." | JAE Exhibit 24, [Banks Dep. Tr. 108:2-9, 109:7-15.] | Not disputed. |
| 73 | Mr. Banks testified that, in contrast to | JAE Exhibit 24, [Banks Dep. Tr. 108:2-9.] | Not disputed. |

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | SPCP, KPC would enjoy a control premium associated with the sale of its stock. | | |
| 74 | Mr. Banks testified that SPCP had learned "new facts…relating to [KPC] since the time of [2014] memo" concerning both "operating improvements in the company and…higher amounts of QAF that it would stand to get." | JAE Exhibit 24, [Banks Dep. Tr. 108:14-22.] | Not disputed. |
| 75 | Mr. Banks understood that under KPC's new management, the company's performance "significantly improved in the past few months…." | JAE Exhibit 19, [Ex. 191, March 5, 2015 E-mail, SPCP_0000020617.] | Not disputed. |
| 76 | KPC experienced positive EBITDA for | JAE Exhibit 31, [Excerpts of Expert | Not disputed. |

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | fiscal year 2015 (███████, compared to negative EBITDA of ███████ the previous fiscal year in 2014. | Report of Annapoorani Bhat (May 27, 2022) ("Bhat Report"), at Fig. 2.] | |
| 77 | In his March 5, 2015, email, Mr. Banks wrote that KPC was predicting higher amounts of future QAF—namely, █████ over the next three years, which would allow the company to completely retire its outstanding debt. | JAE Exhibit 19, [Ex. 191, March 5, 2015 E-mail, SPCP_0000020617.] | Not disputed. |
| 78 | Mr. Banks testified that he believed that the potential for more future QAF payments in turn increased the value of the company. | JAE Exhibit 24, [Banks Dep. Tr. 113:9-15.] | Not disputed. |
| 79 | On July 14, 2015, Bill Thomas e-mailed Mr. | JAE Exhibit 20, [Ex. 194, July 14, 2015, E- | Not disputed. |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

JOINT APPENDIX OF FACTS RE MOTION
FOR SUMMARY JUDGMENT

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | Banks to provide an update on KPC's potential ESOP Transaction. | mail SPCP_0000024183.] | |
| 80 | In the July 14, 2015, e-mail, Mr. Thomas wrote that "Dr. Chaudhuri ha[d] not made a final decision" about whether to sell his shares. | JAE Exhibit 20, [Ex. 194, July 14, 2015 E-mail SPCP_0000024183.] | Not disputed. |
| 81 | In the July 14, 2015, e-mail, Mr. Thomas stated *that the ESOP had engaged Alerus* as its trustee. | JAE Exhibit 20, [Ex. 194, July 14, 2015 E-mail SPCP_0000024183.] | Disputed in part. Disputed that the email conveyed that the ESOP had engaged Alerus. The email states "we have engaged Alerus". JAE Ex. 20. Banks testified that Thomas and Chaudhuri "engage[d] Alerus as the ESOP |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---------|------|---------------------|----------------|
| | | | Trustee." Banks. Depo. 133:9-12. |
| 82 | Mr. Banks testified that before receiving Mr. Thomas' July 14, 2015, e-mail, he had not known the ESOP had engaged Alerus. | JAE Exhibit 24, [Banks Dep. Tr. 132:16-133:12.] | Not disputed. |
| 83 | On August 5, 2015, Mr. Thomas informed Mr. Banks by e-mail that the parties to the proposed ESOP deal "would like to close the deal as soon as possible." | JAE Exhibit 6, [Banks Decl., Ex. E, Aug. 5, 2015 E-mail, SPCP_0000018837.] | Not disputed. |
| 84 | Mr. Thomas' August 5, 2015, e-mail also stated: "The agreed value of the company is ███████." | JAE Exhibit 6, [Aug. 5, 2015 E-mail, SPCP_0000018837.] | Not disputed. |
| 85 | Mr. Thomas' August 5, 2015, e-mail also stated: "[W]e were able to significantly increase our percentage | JAE Exhibit 6, [Aug. 5, 2015 E-mail, SPCP_0000018837.] | Not disputed. |

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | of Future QAF beyond the current 2016 program." | | |
| 86 | Mr. Thomas' August 5, 2015, e-mail also stated: "The trustee has agreed to pay ▮ of all QAF attributable to years ▮▮ ▮▮ ▮ ." | JAE Exhibit 6, [Aug. 5, 2015 E-mail, SPCP_0000018837.] | Not disputed. |
| 87 | Mr. Thomas' August 5, 2015, e-mail also stated: "That's a substantial improvement over the trustees' previous offer of a 50/50 split of QAF over three years." | JAE Exhibit 6, [Aug. 5, 2015 E-mail, SPCP_0000018837.] | Not disputed. |
| • | *See* SUF 11-17. | | |
| 88 | On August 6, 2015, Eureka provided some additional information to SPCP by e-mail about the valuation of KPC as part of the | JAE Exhibit 9, [Banks Decl., Ex. H, Aug. 13, 2015 E-mail, SPCP_0000019081.] | Not disputed. |

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | proposed ESOP Transaction. | | |
| 89 | In its August 6, 2015, e-mail, Eureka stated that the ESOP's trustee based its valuation of KPC stock on ███ ███ in company EBITDA | JAE Exhibit 9, [Aug. 13, 2015 E-mail, SPCP_0000019081.] | Not disputed. |
| 90 | In its August 6, 2015, e-mail, Eureka stated that Eureka's own valuation was based on ████ in EBITDA (normalized over the previous twelve months). | JAE Exhibit 9, [Aug. 13, 2015 E-mail, SPCP_0000019081.] | Not disputed. |
| 91 | Mr. Banks testified that only in preparing for his deposition in this litigation did he learn that Alerus had hired Stout Risius Ross ("Stout") to conduct a valuation of KPC stock on its behalf. | JAE Exhibit 24, [Banks Dep. Tr. 136:12-18.] | Not disputed. |

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| 92 | Mr. Banks testified that SPCP did not receive any additional information about Stout's valuation methodologies, aside from the "headline" terms of the deal. | JAE Exhibit 24, [Banks Dep. Tr. 152:6-7.] | Not disputed. |
| 93 | Mr. Banks testified that SPCP did not request and was not provided a copy of any of the reports commissioned by Alerus and performed by Stout. | JAE Exhibit 24, [Banks Dep. Tr. 135:15-137:6.] | Not disputed. |
| 94 | SPCP did not participate in any due diligence meetings regarding the Stock Purchase with KPC or any other party to the transaction or its agents, advisors, or consultants | JAE Exhibit 1, [Banks Decl. at ¶ 9. | Not disputed. |
| 95 | SPCP conducted its own valuation of its | JAE Exhibit 24, [Banks Dep. Tr. 151:9-22]; JAE | Not disputed. |

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | KPC warrants to determine whether it should sell them to KPC. | Exhibit 21, [Ex. 197, Valuation Memo (August 6, 2015), SPCP_0000029617.] | |
| 96 | Mr. Banks testified that the valuation was created to answer a specific question: Would SPCP stand to gain more by selling its warrants or by keeping them? | JAE Exhibit 24, [Banks Dep. Tr. 151:18-20.] | Not disputed. |
| 97 | Mr. Banks testified that SPCP was evaluating whether it should sell its warrants at the offered price implied by the company's own valuations of KPC stock. | JAE Exhibit 24, [Banks Dep. Tr. 153:23-154:4.] | Not disputed. |
| 98 | Mr. Banks drafted a valuation memo dated August 6, 2015, that provided a range of three equity values for KPC stock: (1) a "low" | JAE Exhibit 21, [Ex. 197, Valuation Memo (August 6, 2015), SPCP_0000029617, at -29618.] | Disputed in part. Disputed only to the extent that the "base" equity value was not based on "SPCP's |

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | equity value of ▮▮ ▮▮ based on the company's reported EBITDA of ▮▮ ▮▮; (2) a "base" equity value of ▮▮ ▮▮ **based on SPCP's expectation that the company would achieve** ▮▮ **of EBITDA at the end of its fiscal year in March 2016**; and (3) a "high" equity value of ▮▮▮▮ based on the Trustee's projected ▮▮▮▮ in EBITDA. | | expectation that the company would achieve ▮▮▮▮ of EBITDA." There is no statement in the August 5, 2015 valuation memo that SPCP had such an expectation. The ▮▮▮▮ of EBITDA used for the base case simply represents the rounded midpoint between the company's actual EBITDA of ▮▮▮▮ and the Trustee's projected ▮▮ ▮▮ in EBITDA. Ex. 21 at 2. |

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| 99 | The August 6, 2015, memo concluded that its base valuation "is consistent" with the company's equity valuation of ██████ ████, because the "the deal is slightly better than our base case and meaningfully above our low case." | JAE Exhibit 21, [Ex. 197, Valuation Memo (August 6, 2015), SPCP_0000029617.] | Not disputed. |
| 100 | The August 6, 2015, memo separately valued the company's financial performance and its receipt of QAF payments. | JAE Exhibit 21, [Ex. 197, Valuation Memo (August 6, 2015), SPCP_0000029617.] | Not disputed. |
| 101 | The August 6, 2015 memo stated that "[t]he company has seen significant turnaround since Dr. Chaudhuri consolidated ownership and replaced management[,] with EBITDA before QAF | JAE Exhibit 21, [Ex. 197, Valuation Memo (August 6, 2015), SPCP_0000029617, at -29621.] | Not disputed. |

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | reaching ███████ at the end of [the company's] fiscal year" in March 2015. | | |
| 102 | The August 6, 2015, memo also stated that KPC generated positive EBITDA of ████ ██████ dollars in the previous quarter ending June 30, 2015, compared to negative EBITDA in the same period of the previous year. | JAE Exhibit 21, [Ex. 197, Valuation Memo (August 6, 2015), SPCP_0000029617, at -29621.] | Not disputed. |
| 103 | SPCP viewed KPC's recent performance positively, despite noting: "[T]he [ESOP] trustee is valuing the business off of a ███ ██████ EBITDA before QAF run rate based on management's ██████ forecast for | JAE Exhibit 21, [Ex. 197, Valuation Memo (August 6, 2015), SPCP_0000029617, at -29621.] | Not disputed. |

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | year end....We are skeptical of this forecast, especially that the business will achieve ███████ of EBITDA that quickly." | | |
| 104 | Mr. Banks testified "I do think *we believed the business would get to* ███████ *of EBITDA, we just weren't sure it would get there in that year.*" | JAE Exhibit 24, [Banks Dep. Tr. 160:9-12.] | Disputed in part. Not disputed that he so testified, but the August 6, 2015 memo relates that KPCs' management was "usually aggressive in their forecasting" and based on the most recent results "suggests this continues to be the case" and KPC "has not done better than ███████ of EBITDA in the |

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | | | [last] 5 years." JAE Ex. 21 at JAE 1207. |
| 105 | With respect to the 2016 QAF program, the August 6, 2015, memo stated: "The 2016 QAF program has been passed by the California legislature, signed by the Governor, and CMS has approved the fee for service portion of the entire program[.]" | JAE Exhibit 21, [Ex. 197, Valuation Memo (August 6, 2015), SPCP_0000029617, at -29620.] | Not disputed. |
| 106 | The August 6, 2015, memo further stated: "In addition, CMS has approved the managed care portion, by far the largest portion for [KPC], for the period of Jan[.] 2014 to June 2014 . . . ." | JAE Exhibit 21, [Ex. 197, Valuation Memo (August 6, 2015), SPCP_0000029617, at -29620.] | Not disputed. |
| 107 | The August 6, 2015, memo further stated: | JAE Exhibit 21, [Ex. 197, Valuation Memo | Not disputed |

JOINT APPENDIX OF FACTS RE MOTION FOR SUMMARY JUDGMENT

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | "According to our CMS consultant, Matt Absher, it is highly likely that CMS will approve the rest of the managed care program and that next approval with be for the 12 month period from July 2014 to July 2015[.]" | (August 6, 2015), SPCP0000029617, at -29620.] | |
| 108 | The August 6, 2015, memo further stated: "Absher sees **very little risk to this program** and expects it to be fully approved prior to a new administration taking office in January 2017[.]" | JAE Exhibit 21, [Ex. 197, Valuation Memo (August 6, 2015), SPCP_0000029617, at -29620.] | **Disputed in Part.** Not disputed that the memo so states, but it also identifies three risks at the federal level.  JAE Exhibit 21 at JAE 1209. And there were concerns about the future of the QAF program. Thomas Depo. at 109:21-112:1. Banks also discussed the |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

47                    JOINT APPENDIX OF FACTS RE MOTION
FOR SUMMARY JUDGMENT

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | | | future of the QAF program with William Thomas. Thomas Depo. at 236:14-237:8. |
| 109 | The August 6, 2015, memo further stated: "Further, he believes it is highly likely that the QAF program will continue beyond the 2016 program as the legislation for continuing it has already been approved . . . ." | JAE Exhibit 21, [Ex. 197, Valuation Memo (August 6, 2015), SPCP_0000029617, at -29620.] | Not disputed. |
| 110 | The memo applied a 50% tax rate on all QAF proceeds. | JAE Exhibit 21, [Ex. 197, Valuation Memo (August 6, 2015), SPCP_0000029617, at -29618.] | Not disputed. |
| 111 | The memo also applied a 50% tax rate on all future QAF proceeds after 2016. | JAE Exhibit 21, [Ex. 197, Valuation Memo (August 6, 2015), SPCP_0000029617, at -29618.] | Not disputed. |

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

JOINT APPENDIX OF FACTS RE MOTION FOR SUMMARY JUDGMENT

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---------|------|---------------------|----------------|
| 112 | This is in contrast to Stout's valuation, which treated QAF differently by (a) applying no tax rate to QAF proceeds, and (b) assuming that QAF payments would cease after 2016. | JAE Exhibit 15, [Ex. 33, SRR Analysis of Transaction Fairness, ALERUS_0000016, at -0000034, -0000135]; JAE Exhibit 26, [Transcript of Deposition of Mark Fournier ("Fournier Dep Tr.") at 173:1-10]; JAE Exhibit 27, [Harden Dep. Tr. 193:10-194:5.] | Not disputed. |
| 113 | Overall, the August 6, 2015, memo concluded that "IHHI stands to receive ▇▇ ▇▇▇ net from [the QAF] program, or ▇▇ ▇▇ per year." | JAE Exhibit 21, [Ex. 197, Valuation Memo (August 6, 2015), SPCP_0000029617, at -29620.] | Not disputed. |
| 114 | Banks testified that the consideration offered to SPCP in exchange for its warrants was "equivalent value to what [SPCP was] surrendering." | JAE Exhibit 24, [Banks Dep. Tr. 157:5-11.] | Not disputed. |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| 115 | To finance the ESOP transaction, KPC sought a ███████ loan. | JAE Exhibit 10, [Banks Decl. Ex. I, Silver Point Capital Memo (Sept. 16, 2015), SPCP_0000018948.] | Not disputed. |
| 116 | KPC engaged Credit Suisse to finance the loan. | JAE Exhibit 20, [Ex. 194, July 14, 2015 E-mail SPCP_0000024183.] | Not disputed. |
| 117 | Credit Suisse developed a syndicate of other lenders to participate in the loan to KPC. | JAE Exhibit 25, [Transcript of Deposition of Jens Ernberg ("Ernberg Dep. Tr.") at 62:3-22. | Not disputed. |
| 118 | Jen Ernberg, a former co-portfolio manager at Credit Suisse who oversaw the loan, testified that Credit Suisse collaborated with the other lenders to perform due diligence on KPC. | JAE Exhibit 25, [Ernberg Dep. Tr. 62:23-63:8.] | Not disputed. |
| 119 | Mr. Ernberg testified that the other lenders "have to do their own | JAE Exhibit 25, [Ernberg Dep. Tr. 65:5-7.] | Not disputed. |

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | diligence on the opportunity to conclude that they're interested in participating." | | |
| 120 | Mr. Ernberg testified that as part of its own diligence process in assessing KPC as a debtor, Credit Suisse engaged several third-party advisors or consultants, including FTI Consulting, Marwood Group Advisory LLC, and Orrick, Herrington & Sutcliffe LLP. | JAE Exhibit 25, [Ernberg Dep. Tr. 49:10-52:14.] | Not disputed. |
| 121 | Mr. Ernberg testified that FTI "focused on the financial performance of the business, including looking at historical numbers," and "conduct[ed] what's | JAE Exhibit 25, [Ernberg Dep. Tr. 49:10-15; 52:23-53:20.] | Not disputed. |

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | called a quality of earnings report." | | |
| 122 | Mr. Ernberg testified that the quality of earnings report "look[ed] at the [company's] financial performance, validates the numbers, does sort of forensic accounting of the numbers." | JAE Exhibit 25, [Ernberg Dep. Tr. 49:15-18.] | Not disputed. |
| 123 | Mr. Ernberg testified that FTI "spen[t] a lot of time understanding all aspects of the . . . profit and loss statement," "the balance sheet," and the "working capital needs of the business." | JAE Exhibit 25, [Ernberg Dep. Tr. 52:23-53:20.] | Not disputed. |
| 124 | Mr. Ernberg testified that FTI also met in person with KPC's management. | JAE Exhibit 25, [Ernberg Dep. Tr. 50:20-52:2.] | Not disputed. |
| 125 | FTI provided a 111-page report to Credit | JAE Exhibit 22, [Ex. 259, FTI Project Solus | Not disputed. |

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

JOINT APPENDIX OF FACTS RE MOTION FOR SUMMARY JUDGMENT

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | Suisse dated August 4, 2015. | Draft Due Diligence Report (Aug. 4, 2015), FTI-CSPV_0000452.] | |
| 126 | Mr. Ernberg testified that "Marwood is a specialist in the healthcare space around really the regulatory environments and reimbursement rates." | JAE Exhibit 25, [Ernberg Dep. Tr. 53:21-54:12.] | Not disputed. |
| 127 | As part of its diligence on KPC, Credit Suisse asked Marwood to examine the QAF program. | JAE Exhibit 25, [Ernberg Dep. Tr. 54:13-20.] | Not disputed. |
| 128 | Marwood concluded that "the current Quality Assurance Fee (QAF) will be approved by CMS and is likely to continue beyond 2016, as it has strong support in the state from advocates, | JAE Exhibit 23, [Ex. 260, Marwood Project Solus Report, EUREKA_045308, at -45316]; JAE Exhibit 25, [Ernberg Dep. Tr. 121:10-14.] | Not disputed. |

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | DHCS, the governor, and legislature." | | |
| 129 | Mr. Ernberg testified that Credit Suisse met with KPC's management team and "[made] sure the business had sufficient liquidity to maneuver [its] working capital needs…." | JAE Exhibit 25, [Ernberg Dep. Tr. 44:6-15; 46:4-47:12, 49:10-15.] | Not disputed. |
| 130 | Mr. Ernberg testified that Credit Suisse also tested "how the business would perform under various circumstances" to understand "the creditworthiness of the business [and its] ability in particular to service the debt obligations over time." | JAE Exhibit 25, [Ernberg Dep. Tr. 56:19-57:11.] | Not disputed. |
| 131 | The loan negotiated between the parties was secured by, among | JAE Exhibit 25, [Ernberg Dep. Tr. 35:15-36:2]; JAE | Not disputed. |

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | other things, a first priority lien on KPC's QAF receivables, where QAF was "the primary source of repayment." | Exhibit 10, [Silver Point Capital Memo (Sept. 16, 2015), SPCP_0000018948.] | |
| 132 | Mr. Ernberg testified that Credit Suisse became comfortable with QAF receivables as collateral for the loan after it received information about "the history of the QAF payments [to the company]," "had several calls with the program administrator" to discuss "[t]he reliability and validity of payments over time," and "contracted with a third-party named Marwood to evaluate the program…." | JAE Exhibit 25, [Ernberg Dep. Tr. 38:15-39:12.] | Not disputed. |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

55

JOINT APPENDIX OF FACTS RE MOTION
FOR SUMMARY JUDGMENT

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| 133 | Mr. Ernberg testified that the "***payments out of [the QAF] program***" were "***generally quite predictable in nature and in size.***" | JAE Exhibit 25, [Ernberg Dep. Tr. 28:20-29:6.] | Disputed in part. Not disputed that Mr. Ernberg so testified, but the payments on the QAF program were not predictable in nature or size. Priyo Depo. at 75:11-20 ("[T]he QAF payments varied widely from year to year"); Richards Depo. 171:5-11 ("Every year we were always having delays with payments from the government". |
| 134 | Mr. Banks testified that SPCP reconsidered its decision to participate in the loan to finance the ESOP stock | JAE Exhibit 24, [Banks Dep. Tr. 145:8-22.] | Not disputed. |

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

JOINT APPENDIX OF FACTS RE MOTION FOR SUMMARY JUDGMENT

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | purchase because it had just launched a new investment fund specializing in healthy performing companies (as opposed to distressed debt) and viewed KPC as a good investment for that fund. | | |
| 135 | The new fund was called the Silver Point Specialty Credit Fund, L.P. | JAE Exhibit 1, [Banks Decl. at ¶ 3.] | Not disputed. |
| 136 | SPCP negotiated with Credit Suisse to provide a $10 million portion of the loan to finance the ESOP Transaction. | JAE Exhibit 24, [Banks Dep. Tr. 142:7-143:24.] | Not disputed. |
| 137 | SPCP joined 18 other lenders (for a total of 19) that participated in the loan to finance the ESOP Transaction. | JAE Exhibit 11, [Banks Decl., Ex. J, Credit Agreement dated August 28, 2015, KPCDEF_000433]; JAE Exhibit 12, [Banks | Not disputed. |

JOINT APPENDIX OF FACTS RE MOTION FOR SUMMARY JUDGMENT

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---|---|---|---|
| | | Decl., Ex. K, Schedule 2.01 to Credit Agreement (Lenders and Commitments), KPCDEF_000546, at -547.] | |
| 138 | Mr. Banks testified that "there was significant demand for the loan and so a number of [Mr. Ernberg's] close institutional relationships thought this was a very good loan an wanted as much of it as they [could] get…." | JAE Exhibit 24, [Banks Dep. Tr. 147:15-18.] | Not disputed. |
| 139 | Because of the demand among other lenders to participate in the loan to finance the ESOP Transaction, SPCP had to ask Credit Suisse to accommodate its request to participate in the loan. | JAE Exhibit 24, [Banks Dep. Tr. 147:14-149:21.] | Not disputed. |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

58                    JOINT APPENDIX OF FACTS RE MOTION
                      FOR SUMMARY JUDGMENT

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---------|------|---------------------|----------------|
| 140 | SPCP's decision to finance a part of the loan was governed by its own internal analysis of KPC's potential value, which was based only on the information SPCP already had about the company and the information shared by KPC and its principals. | JAE Exhibit 1, [Banks Decl. at 11.] | Disputed. Thomas Banks's valuation as of August 2015 was based not only on its existing information about the company but in part on information about Alerus and Stout's EBITDA projections for KPC, which became the basis of the high end case (and thus the base case, which was simply based on the midpoint EBITDA between KPC's actual performance and the Trustee's projections). Ex. 21 at 2. |

JOINT APPENDIX OF FACTS RE MOTION FOR SUMMARY JUDGMENT

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

| SUF No. | Fact | Supporting Evidence | Pl.'s Response |
|---------|------|---------------------|----------------|
| 141 | Mr. Banks believed that Credit Suisse was a sophisticated lender. | JAE Exhibit 1, [Banks Decl. at 13.] | Not disputed. |
| 142 | In Mr. Banks' experience, a sophisticated lender would not provide a traditional leverage loan (i.e., a loan without warrants or equity consideration) if it believed the loan amount exceeded 50%-65% of the company's total capital structure (i.e., both debt and equity). | JAE Exhibit 1, [Banks Decl. at 12.] | Not disputed. |
| **ISSUE 3: WHETHER THE RECOVERY PLAINTIFF SEEKS IS "APPROPRIATE EQUITABLE RELIEF"** | | | |
| • | *See* SUF 1-36. | | |

JOINT APPENDIX OF FACTS RE MOTION FOR SUMMARY JUDGMENT

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

## <u>CERTIFICATION PURSUANT TO LOCAL RULE 5-4.3.4(a)(2)</u>

Pursuant to Local Rule 5-4.3.4(a)(2), Defendant's counsel attests that all other signatories listed, and on whose behalf this filing is jointly submitted, concur in the filing's content and have authorized the filing.

Dated: July 5, 2022                    MORGAN, LEWIS & BOCKIUS LLP


By */s/ Aimee Mackay*
   Aimee Mackay
   Sari Alamuddin (*pro hac vice*)
   Deborah Davidson (*pro hac vice*)

*Attorneys for Defendant*
SPCP GROUP, LLC

Dated: July 5, 2022                    BLOCK & LEVITON LLP


By */s/ R. Joseph Barton*
   R. Joseph Barton

*Attorneys for Plaintiff*
Danielle Gamino

1

JOINT APPENDIX OF FACTS RE MOTION
FOR SUMMARY JUDGMENT