UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIELLE GAMINO,<br><br>      Plaintiff,<br><br>v.<br><br>KPC HEALTHCARE HOLDINGS, INC. et al.,<br><br>      Defendants. | Case No. 5:20-cv-01126-SB-SHK<br><br>ORDER GRANTING SPCP GROUP, LLC'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 296] |

      On August 28, 2015, Defendant Alerus Financial, N.A. (Alerus), acting as the appointed trustee of the KPC Healthcare Holdings, Inc. (KPC) employee stock ownership plan (ESOP), caused the ESOP to purchase 100% of the shares of KPC common stock from Defendant Dr. Kali Pradip Chaudhuri (the 2015 ESOP Transaction).  Plaintiff Danielle Gamino, a former KPC employee and ESOP participant, sued Dr. Chaudhuri and Alerus (as well as other KPC executives and board members), bringing breach of fiduciary duty and prohibited transaction claims under the Employee Retirement Income Security Act of 1974 (ERISA) based on allegations that Alerus had caused the ESOP to overpay for KPC stock. Plaintiff also seeks to hold Defendant SPCP Group, LLC (SPCP)—a lender to and investor in KPC—liable for appropriate equitable relief under ERISA § 502(a)(3) for knowingly participating in Alerus's and Dr. Chaudhuri's ERISA violations when it sold its KPC common stock warrants to KPC based on a valuation of the company it allegedly knew to be inflated.  SPCP now moves for summary judgment.  For the reasons below, SPCP's motion is **granted**.

                                 **I.     FACTUAL BACKGROUND**

      Integrated Healthcare Holdings, Inc. (IHHI) was a publicly traded medical holding company.  Joint Appendix of Facts (JAF) 4, Dkt. No. 296-2.  In the spring

1

of 2010, SPCP—an investment management firm owned by two entities related to the hedge fund Silver Point Capital, L.P. (Silver Point)—agreed to provide IHHI with a secured term loan in exchange for warrants to purchase IHHI's common stock.  JAF 1-2, 6, 8.  Under the terms of the initial loan agreement (and the February 2013 amended version, JAF 7), SPCP was entitled to IHHI's financial statements and information and was authorized to speak with IHHI's accountants about any financial statements and documents relating to IHHI's business, financial condition, and results of operations.  JAF 39.  The loan agreements also gave SPCP "observer status" with respect to all meetings of both IHHI's board of directors and shareholders; and Tom Banks, a managing director at Silver Point, would sometimes attend IHHI board meetings on SPCP's behalf.  JAF 3, 41-42.

On January 7, 2014, IHHI became a private company and was renamed KPC Healthcare Holdings, Inc.  JAF 43.  In connection with that transaction, IHHI (now KPC) decided to refinance its debt with another company and repaid in full its outstanding loan to SPCP.  JAF 44-45.  After the refinancing, SPCP's involvement with KPC diminished.  SPCP lost its observer rights as well as its financial inspection rights, although KPC sent financial statements to SPCP on a few occasions, including to help SPCP prepare its annual fair valuation memo of its KPC stock warrants.  JAF 46-49.  The December 2014 fair value memo valued SPCP's unexercised KPC warrants at $773,000 per warrant, which implied a total equity value for KPC of $70.4 million, including consideration of payments from KPC's participation in California's hospital quality assurance fee (QAF) program.[1]  JAF 62.  At that time, KPC had negative earnings before interest, taxes, depreciation, and amortization (EBITDA), which decreased SPCP's valuation of its warrants.  JAF 64.

On February 19, 2015, Bill Thomas, KPC's general counsel and executive vice president, emailed Banks that Dr. Chaudhuri was contemplating a transaction in which an ESOP would purchase all of KPC's stock.  JAF 66.  A few weeks later, Banks wrote to others at SPCP that KPC expected its stock to be valued at approximately $170 million.  JAF 69.  Banks informed his colleagues that he told KPC he thought that valuation was low.  JAF 71.  In the few months between the December 2014 fair value memo and Thomas's email, SPCP had learned that KPC—under new management—experienced positive EBITDA of $9.19 million

---

[1] The QAF program "provides supplement payments to hospitals that serve California's Medicaid program and uninsured patients."  Joint Brief (Joint Br.), Dkt. No. 296-1 at 1.

for fiscal year 2015 compared to negative EBITDA of $23.3 million for fiscal year 2014, a one-year improvement of $32.49 million. JAF 74, 76. Banks's opinion that the $170 million valuation was low was based on other factors in addition to KPC's much-improved performance, including that KPC "essentially gave away the option of future QAF payments."[2] JAF 73; Ex. 19, Joint Appendix of Exhibits (JAE) Vol. 3, Dkt. 296-5 at 105.

On July 14, 2015, Thomas informed SPCP that the ESOP had engaged Alerus as its trustee to execute the planned deal. JAF 82. A few weeks later, Thomas emailed SPCP a letter of intent and term sheet that contemplated a series of simultaneous transactions in which KPC would purchase SPCP's outstanding KPC warrants (as well as those held by Thomas) and the ESOP would purchase 100% of the KPC shares from Dr. Chaudhuri. JAF 5, 11-15. Thomas informed SPCP that Alerus valued KPC at $270 million and had agreed to pay 60% of all QAF payments through 2024 as part of the ESOP transaction. JAF 84-86. The $270 million figure was produced by Stout Risius Ross (Stout), which Alerus hired to value KPC stock, and was based on a projected EBITDA of $25 million. JAF 89, 91. SPCP received only Alerus's "headline" valuation from Thomas. JAF 91. SPCP did not receive Stout's valuation report, had no insight into Stout's valuation process, did not participate in any due diligence meetings with the parties to the ESOP transaction or their agents and advisors, and did not learn of Stout's involvement until Banks prepared for his deposition in this case. JAF 92-94.

SPCP conducted its own valuation of its KPC warrants to determine whether it would stand to gain more by selling the warrants to KPC or retaining them. JAF 95-97. On August 6, 2015, Banks drafted a valuation memo that listed a range of three equity values for KPC stock: (1) a "low" value of $222 million, based on KPC's last twelve months of reported EBITDA of $17.5 million; (2) a "base" equity value of $250 million, based on an EBITDA of $21.3 million, which represented the midpoint between the reported and projected EBITDA figures; and (3) a "high" equity value of $280 million, based on Alerus's projected EBITDA of $25 million. JAF 98; *see also* Ex. 21, JAE Vol. 3 at 109 (the SPCP Valuation Memo). The SPCP Valuation Memo concluded that Alerus's $270 million valuation was "slightly better than our base case and meaningfully above our low case." JAF 99. SPCP viewed KPC's recent performance positively. It described

---

[2] KPC was projecting $220 million in QAF payments over the next three years, which would allow the company to completely retire its outstanding debt and increase its value. JAF 77-78.

3

the "significant turnaround" under new management, including the $9.19 million of EBITDA before QAF for fiscal year 2015 and the $4.4 million of EBITDA KPC had generated in the previous quarter ending June 30, 2015, compared to negative EBITDA in the same quarter of the previous year. JAF 101-102. While SPCP questioned whether KPC would reach $25 million in EBITDA by the end of the fiscal year as projected, SPCP did believe KPC would eventually reach that target. JAF 103-104.

The SPCP Valuation Memo also factored in the increased likelihood that KPC would receive substantial QAF payments. JAF 100. As reported in the memorandum, SPCP's Centers for Medicare & Medicaid Services (CMS) consultant saw "very little risk" to the program and expected it to be "fully approved" before a new presidential administration took office in January 2017. JAF 107-109. Unlike Stout's report, which applied no tax rate to QAF proceeds and assumed QAF payments would cease after 2016, the SPCP Valuation Memo applied a 50% tax rate on all future QAF proceeds after 2016, projecting a total of $203.6 million after taxes ($67 million per year). JAF 110-113.

To finance the ESOP transaction, KPC engaged Credit Suisse to secure a $140 million loan. JAF 115-116. Credit Suisse conducted its own thorough due diligence on KPC as a potential debtor, meeting with KPC's management team and engaging multiple third-party advisors and consultants. JAF 120. After completing its due diligence process, Credit Suisse was sufficiently satisfied with KPC's creditworthiness and the likelihood of future QAF payments[3] that it elected to put together a syndicate of 19 lenders to participate in the loan. JAF 117, 130-132, 137. There was significant demand for the loan, and SPCP had to negotiate with Credit Suisse to accommodate its request to participate. JAF 136-137, 139. SPCP ultimately invested $10 million in the syndicated loan from a new fund targeting healthy companies instead of its main fund, which specialized in distressed debt and post-bankruptcy lending. JAF 37, 134, 136. SPCP believed that Credit Suisse was a sophisticated lender that would not provide a traditional leverage loan (i.e., a loan without warrants or equity consideration) if it believed that the loan amount exceeded 50%–65% of KPC's total capital structure. JAF 142.

---

[3] The loan was secured in part by a first priority lien on KPC's QAF receivables, which Credit Suisse considered "the primary source of repayment." JAF 131.

On August 28, 2015, Alerus caused the ESOP to purchase all outstanding KPC stock from Dr. Chaudhuri for an aggregate purchase price of $217,574,000 (the 2015 ESOP Transaction). JAF 28-29. The same day, KPC purchased SPCP's warrants in exchange for $18,810,000 in cash, a promissory note in the original principal amount of $26,946,000, a warrant to purchase KPC shares in the future, and 10.2% of any net QAF payments based on services provided from January 1, 2017 to December 31, 2024 (the Warrant Sale). JAF 23-24. KPC also purchased Thomas's stock warrants on the same day. JAF 18.

## II.     PROCEDURAL HISTORY

On June 1, 2020, Plaintiff sued Dr. Chaudhuri, Alerus, KPC, KPC Healthcare, Inc., Employee Stock Ownership Plan, Kali Priyo Chaudhuri, Amelia Hippert, and Lori Van Arsdale (collectively, the KPC Defendants), alleging various violations of ERISA stemming from the 2015 ESOP Transaction, including that Alerus and Dr. Chaudhuri breached their fiduciary duties under ERISA § 404(a) and participated in a prohibited transaction under ERISA § 406(a) and (b). Dkt. No. 1. The Court denied Alerus's and the KPC Defendants' motions to dismiss. Dkt. No. 76. The Court granted Plaintiff leave to file a first amended complaint (FAC), Dkt. No. 179, which added Thomas[4] as a defendant to the existing claims for breach of fiduciary duty and engaging in prohibited transactions and added a claim under ERISA § 405's co-fiduciary liability provision against Alerus, Thomas, Dr. Chaudhuri, the KPC ESOP Committee, and KPC's Board of Directors. The Court denied Alerus's and the KPC Defendants' motions to dismiss except as to the co-fiduciary claim against the KPC ESOP Committee and Board of Directors. Dkt. No. 209. The Court stayed the litigation against the KPC Defendants after they reached a tentative settlement with Plaintiff. Dkt. No. 282. Plaintiff filed a motion for preliminary approval of settlement with the KPC Defendants that is set for hearing on August 26, 2022. Dkt. No. 322-1.

Plaintiff also sought leave to amend her complaint to add SPCP as a defendant, but the Court denied her request. Dkt. No. 174. On August 27, 2021, Plaintiff filed a separate complaint against SPCP, SPCP Dkt. No. 1,[5] and then filed the operative FAC a few months later, SPCP Dkt. No. 21. The FAC seeks

---

[4] All future references to the "KPC Defendants" in this order include Thomas.

[5] "SPCP Dkt." refers to the clerk's record in the closed case *Gamino v. SPCP Group, LLC et al.*, No. 5:21-cv-01466-SB-SHK. All other citations in this Order refer to the docket in the consolidated case, No. 5:20-cv-01126-SB-SHK.

appropriate equitable relief from SPCP under ERISA § 502(a)(3) based on SPCP's alleged knowing participation in the violations of ERISA §§ 404, 406(a), and 406(b) committed by Dr. Chaudhuri and Alerus. Plaintiff filed a motion to consolidate the two cases, SPCP Dkt. No. 18, which the Court granted on January 21, 2022, SPCP Dkt. No. 49. The Court denied SPCP's motion to dismiss on the same day. SPCP Dkt. No. 50. SPCP now moves for summary judgment. The parties filed a joint summary judgment brief, Dkt. No. 296-1, and SPCP timely filed a supplemental brief, Supp. Br., Dkt. No. 302.

### III. LEGAL STANDARD

Summary judgment is appropriate where the record, read in the light most favorable to the non-moving party, shows that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Material facts are those necessary to the proof or defense of a claim, as determined by reference to substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" based on the issue. *Id*. In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. But if the evidence of the nonmoving party "is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249-50.

The burden is first on the moving party to show an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party satisfies this burden either by showing an absence of evidence to support the nonmoving party's case when the nonmoving party bears the burden of proof at trial, or by introducing enough evidence to entitle the moving party to a directed verdict when the moving party bears the burden of proof at trial. *See id*. at 325; *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). If the moving party satisfies this requirement, the burden shifts to the nonmoving party to designate specific facts, supported by evidence, showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. If the nonmovant "fails to properly address another party's assertions of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for the purposes of the motion [or] . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed— show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

## IV. DISCUSSION

ERISA § 502 governs civil enforcement of ERISA violations. Plaintiff brings her sole cause of action against SPCP under ERISA § 502(a)(3), which states that

> [a] civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3).

In *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 239 (2000), the Supreme Court held that liability under § 502(a)(3) extends to nonfiduciaries who knowingly participate in a fiduciary's ERISA violation. To prevail on a § 502(a)(3) cause of action under *Harris Trust*, a plaintiff must show that: (1) there was an underlying ERISA violation; (2) the nonfiduciary defendant had "actual or constructive knowledge of the circumstances that rendered the transaction unlawful"; and (3) the relief sought is appropriate equitable relief. *See id*. at 249-51; *see also Del Castillo v. Cmty. Child Care Council of Santa Clara Cty., Inc*. No. 17-CV-07243-BLF, 2019 WL 6841222, at *3 (N.D. Cal. Dec. 16, 2019).

Plaintiff asserts that SPCP knew Alerus overvalued KPC in the 2015 ESOP Transaction[6] and that SPCP sold its warrants to KPC as part of the transaction in order to make a windfall profit. SPCP moves for summary judgment on the grounds that: (1) the Warrant Sale was not part of the 2015 ESOP Transaction, and thus SPCP did not "participate" in the 2015 ESOP Transaction; (2) SPCP lacked actual or constructive knowledge of the circumstances that rendered the

---

[6] For the purposes of this motion, the Court will assume without deciding that Alerus breached its fiduciary duty by causing the ESOP to purchase KPC stock from Dr. Chaudhuri, a party in interest, for more than adequate consideration. *See* 29 U.S.C. §§ 1104, 1106(a)(1)(A), 1108(e)(1) (prohibiting an ERISA fiduciary from causing an a plan to engage in a sale of property between the plan and a party in interest except, as applicable here, for "adequate consideration").

2015 ESOP Transaction unlawful (i.e., that Alerus overvalued KPC and overpaid Dr. Chaudhuri for his KPC shares as a result); and (3) Plaintiff improperly seeks legal, rather than appropriate equitable, relief.  Joint Br. at 2-3.  Because the Court finds the second ground dispositive, it does not address the other two.

### A.     The Knowledge Requirement

SPCP argues that Plaintiff has failed to demonstrate it had the requisite knowledge of the allegedly unlawful transaction to be held liable under ERISA § 502(a)(3).

In *Harris Trust*, the Supreme Court held that a nonfiduciary can be held liable for participating in a prohibited transaction if it "had actual or constructive knowledge of the circumstances that rendered the transaction unlawful." 530 U.S. at 251.  The Court explained:

> Importantly, that a transferee was not "the original wrongdoer" does not insulate him from liability for restitution.  It also bears emphasis that the common law of trusts sets limits on restitution actions against defendants other than the principal "wrongdoer."  Only a transferee of ill-gotten trust assets may be held liable, and then only when the transferee (assuming he has purchased for value) knew or should have known of the existence of the trust and the circumstances that rendered the transfer in breach of the trust.  Translated to the instant context, the transferee must be demonstrated to have had actual or constructive knowledge of the circumstances that rendered the transaction unlawful.  Those circumstances, in turn, involve a showing that the *plan fiduciary*, with actual or constructive knowledge of the facts satisfying the elements of a § 406(a) transaction, caused the plan to engage in the transaction.

530 U.S. at 251 (cleaned up).

The legal question raised by the parties in their dispute over scienter focuses on the meaning of "the circumstances that rendered the transaction unlawful." Plaintiff argues that SPCP had the requisite knowledge if it knew that the 2015 ESOP Transaction was prohibited under §§ 406(a) and 406(b).  In other words, Plaintiff asserts that all that must be shown under these two sections, respectively, is that the nonfiduciary (SPCP) knew:  (a) a fiduciary (Alerus) caused the plan (the

8

ESOP) to engage in a sale of property with a party in interest (by buying Dr. Chaudhuri's KPC stock) and (b) a fiduciary (Dr. Chaudhuri) dealt with the assets of a plan (the ESOP) in his own interest (by selling his KPC stock to the ESOP). Joint Br. at 25-27.  For its part, SPCP contends that it did not have the requisite knowledge unless it knew that the prohibited transactions were unlawful in that the fiduciaries caused the ESOP to pay more than fair market value for the property. Supp. Br. at 3-5.

The proper resolution of this dispute requires consideration not only of the language in *Harris Trust*, but also the equitable principles upon which it relied. The Supreme Court stated that the circumstances rendering the transaction unlawful will depend on the specific "context" of the case; and it then observed that the circumstances in the case before it "involve[d] a showing that the *plan fiduciary*, with actual or constructive knowledge of the facts satisfying the elements of a § 406(a) transaction, caused the plan to engage in the transaction." 530 U.S. at 251 (emphasis in original).  While this observation identifies that a nonfiduciary must have had knowledge of the facts making the transaction prohibited, the Supreme Court did not purport to define the scope of scienter required in all such cases.  Indeed, the Supreme Court recognized the potential pitfalls of imposing a rigid definition, stating a few paragraphs later:

> We note, however, that our interpretation of § 502(a)(3) to incorporate common-law remedial principles does not necessarily foreclose accommodation of [the defendant's] underlying concern that ERISA should not be construed to require counterparties to transactions with a plan to monitor the plan for compliance with each of ERISA's intricate details. . . . While we have no occasion to decide the matter here, *it may be that such concerns should inform courts' determinations of what a transferee should (or should not) be expected to know when engaging in a transaction with a fiduciary*.

*Id*. at 252-53 (emphasis added).

Recently, the Fourth Circuit applied the *Harris Trust* principles in a context similar to the one presented here.  See *Walsh v. Vinoskey*, 19 F. 4th 672 (4th Cir. 2021).  In that case, Adam Vinoskey had founded a company called Sentry Equipment Erectors and later sold his company shares to Sentry's ESOP in a transaction overseen by the ESOP's independent fiduciary, Evolve Bank and Trust. *Id*. at 675.  Vinoskey was sued, under one theory of liability, as a knowing

9

participant in a prohibited transaction. *Id.* at 676. The Fourth Circuit addressed the question presented here—namely, what must the nonfiduciary know about the "the circumstances that rendered the transaction unlawful"? *Id.* at 677-78. In answering that question, the court analyzed *Harris Trust* and concluded: "The circumstances that made the transaction here unlawful are straightforward—Evolve, as a fiduciary, caused the ESOP to purchase Sentry stock from a party in interest for more than fair market value." *Id*. (citing §§ 406(a)(1)(A) & 408(e)(1)).

Contrary to Plaintiff's assertion, *Walsh* did not "merely assume[]" that the scienter requirement extended to actual or constructive knowledge that the ESOP paid more than fair market value for the stock. Joint Br. at 27. The Fourth Circuit analyzed the precise issue raised in this case, asking: "But what exactly does it mean to knowingly participate in a fiduciary's violation?" *Walsh*, 9 F.4th at 677. The court then sought to answer that question by examining the relevant language in *Harris Trust*. *Id*. (analyzing the meaning of the phrase "actual or constructive knowledge of the circumstances that rendered the transaction unlawful" as stated in *Harris Trust*). The analysis in *Walsh* led to the conclusion that the nonfiduciary must know or have reason to know of the circumstances that made the transaction unlawful, beyond the mere fact that it is prohibited from the perspective of a fiduciary. Several district court decisions are in accord. *See Teets v. Great-W. Life & Annuity Ins. Co*., 286 F. Supp. 3d 1192, 1209 (D. Colo. 2017) ("[A]n ERISA plaintiff cannot rely solely on the knowledge that would satisfy a fiduciary's liability for a prohibited transaction to likewise hold a nonfiduciary party in interest liable for that transaction. Rather, the plaintiff must show that the defendant knew or should have known that the transaction violated ERISA."); Rozo v. Principal Life Ins. Co., 344 F. Supp. 3d 1025, 1037-38 (granting summary judgment to nonfiduciary defendant where the plaintiff failed to meet the "heightened standard" for nonfiduciary liability under *Harris Trust*, i.e., "the rule that a nonfiduciary can only be held liable if it knew or should have known that the transaction violated ERISA"), *rev'd on other grounds*, 949 F.3d 1071 (8th Cir. 2020); Hans v. Tharaldson, No. 3:05-cv-115, 2011 WL 7179644, at *16 (D. N.D. Oct. 31, 2011) ("Plaintiffs must come forward with evidence to raise a genuine issue for trial that the nonfiduciaries have actual or constructive knowledge that the fiduciary engaged in a prohibited transaction under § 406(a) that was not exempted under § 408(e).").

Plaintiff's reliance on Haley v. Tchrs. Ins. & Annuity Ass'n of Am., 377 F. Supp. 3d 250 (S.D.N.Y. 2019), is not persuasive. In denying a motion to dismiss, the district court concluded that the "most natural reading of 'actual or constructive knowledge of the circumstances that rendered the transaction unlawful' requires

knowledge of the underlying factual circumstances relevant to lawfulness, not knowledge of the *legal conclusion* that the transaction was unlawful." *Id.* at 262 (quoting *Harris Trust*, 530 U.S. at 251) (emphasis in original).  It is certainly correct, as acknowledged in *Walsh*, that "[n]othing in *Harris Trust* suggests that the non-fiduciary must possess knowledge of legal conclusions." 19 F.4th at 678. But this acknowledgment does not address, much less, end the inquiry.  As *Walsh* recognized, the requisite scienter is not knowledge of legal conclusions but the factual circumstances making the transaction unlawful.

A further look at *Harris Trust* supports the Fourth Circuit's conclusion.  In its cautionary note, the Supreme Court stated that the definition of scienter should be informed by the fact "that ERISA should not be construed to require counterparties to transactions with a plan to monitor the plan for compliance with each of ERISA's intricate details." 530 U.S. at 252-53.  ERISA holds a fiduciary to a very high standard and imposes what amounts to a rebuttable presumption of illegality when a fiduciary engages in a prohibited transaction.  While it is reasonable to impose liability on a nonfiduciary when it participates in a prohibited transaction and knows or should know that a fiduciary caused the plan to buy property for more than its fair market value, it goes too far to hold the counterparty to virtually the same standard as the fiduciary.  Nor does this approach place an undue burden on a party who sues a nonfiduciary based on the latter's involvement in a prohibited transaction.  That party does not have to demonstrate that none of the many § 408 exemptions apply, as Plaintiff suggests. Joint Br. at 28.  As in both *Walsh* and this case, the circumstances rendering the transaction unlawful are typically "straightforward." 19 F. 4th 678.

Accordingly, the Court finds that the knowledge required under *Harris Trust* as applied to this case is knowledge that the 2015 ESOP Transaction was a prohibited transaction and that the purchase of the stock and warrants was for more than fair market value. See *Walsh*, 19 F.4th at 677 ("general knowledge of the transaction's circumstances is not enough" to hold a nonfiduciary liable); *see also Del Castillo*, 2019 WL 6841222, at *3 ("mere knowledge that a transaction is (or might be) 'prohibited' . . . does not mean that [the defendants] knew or should have known of any wrongdoing, as required under *Harris* [*Trust*]").[7]

---

[7] The parties also dispute who bears the burden of proof.  The Court need not resolve this question because SPCP would be entitled to summary judgment even if it had to prove lack of actual or constructive knowledge (as explained in the text following this footnote).

### B.  Unlawful Knowledge Not Established Here

Applying the knowledge requirement to the facts of this case, the Court concludes that SPCP is entitled to summary judgment.

#### 1.  § 406(a)

As stated, to establish that SPCP knowingly participated in Alerus's and Dr. Chaudhuri's § 406(a) violation, SPCP must have had actual or constructive knowledge that Alerus, as a fiduciary, caused the ESOP to purchase KPC stock from Dr. Chaudhuri for more than fair market value in the 2015 ESOP Transaction.

To have actual knowledge "of a piece of information, one must in fact be aware of it." *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 140 S. Ct. 768, 776 (2020). Plaintiff conclusorily asserts that SPCP had actual knowledge that Alerus "caused the ESOP to pay a price higher than fair market value for [KPC] stock." Joint Br. at 21-22.  There is no evidence in the record to support this contention.  It is undisputed that SPCP was not involved in Alerus's valuation of KPC stock.  SPCP did not participate in any of Alerus's due diligence meetings, have access to any of the materials relied upon by Alerus (or Stout), receive Stout's valuation report, or even learn that Alerus had engaged Stout until this litigation advanced into discovery.  To the contrary, SPCP prepared its own valuation of KPC, using its own valuation method, and independently determined that the planned price of the 2015 ESOP Transaction was fair based on the limited information it had about KPC after losing its observer and inspection rights.  Thus, SPCP did not have actual knowledge that Alerus had overvalued KPC stock.

The crux of Plaintiff's claim is that SPCP had constructive knowledge that the ESOP was overpaying for Dr. Chaudhuri's KPC stock.  Constructive knowledge is "an objective standard," *Castro v. Cnty of Los Angeles*, 797 F.3d 654, 673 (9th Cir. 2015), and may be imputed "to a person who fails to learn something that a reasonably diligent person would have learned," *Intel*, 140 S. Ct. at 776.  In the ERISA context, "a nonfiduciary's knowledge of a fiduciary's breach can be inferred from surrounding circumstances raising a reasonable inference of knowledge." *Brock v. Hendershott*, 840 F.2d 339, 342 (6th Cir. 1988).

Plaintiff argues that SPCP's knowledge can be inferred from the disparity between the three KPC valuations known to SPCP in the nine months leading up to and including the 2015 ESOP Transaction.  Joint Br. at 22-23.  Those three

12

valuations were: $70 million in December 2014 (SPCP's fair valuation memo); $170 million in March 2015 (Thomas's email to Banks announcing KPC's intention to execute an ESOP transaction); and $270 million in August 2015 (the valuation implied by the 2015 ESOP Transaction). Plaintiff asserts that the "stark difference between the transaction price and near in time financial evaluations raise[s] a reasonable inference of knowledge" that the 2015 ESOP Transaction overvalued KPC. Joint Br. at 23.

      Plaintiff's argument is not persuasive. It treats KPC stock as a static asset, unchanging in value, and ignores the substantial improvement in KPC's performance between December 2014 and August 2015. When SPCP prepared its fair valuation memo of the warrants in December 2014, KPC had a negative EBITDA of $23.2 million for fiscal year 2014. By the time Thomas emailed Banks in March 2015, SPCP had learned that KPC, under new management, experienced positive EBITDA of $9.19 million for fiscal year 2015, a one-year improvement of $32.49 million. Banks told KPC that he believed the $170 million valuation was too low given how much its business had already improved. And by the time the SPCP Valuation Memo was produced shortly before the 2015 ESOP Transaction, KPC's EBITDA over the last twelve months was $17.5 million, an even greater increase over the negative EBITDA figure from the last full fiscal year. Plaintiff argues that SPCP should have known Alerus's valuation of KPC was inflated because it was based on a $25 million projected EBITDA. But this projection was only $7.5 million greater than KPC's actual last twelve months of reported EBITDA. Considering the extent to which KPC's EBITDA had already improved by that time, the Court cannot say that SPCP should have known that Alerus's projected valuation was improperly inflated. *Compare United States v. Cnty. of Clark*, No. 2:17-cv-02303-MMD-PAL, 2018 WL 4148849, at *6 (D. Nev. Aug. 30, 2018) (defendant's constructive knowledge that it was not paying fair market rent could be inferred where the fair market rent was more than 22 times greater than what it was paying).

      The lack of constructive knowledge is further supported by other promising financial facts known at the time of the 2015 ESOP Transaction, including facts about the QAF program. When SPCP was assessing whether to sell its warrants to KPC, the QAF program had already been renewed for 2016, and SPCP's specialized CMS consultant concluded that there was "very little risk" to the program and that he expected it to be "fully approved" before a change in presidential administrations in January 2017. That SPCP reasonably expected KPC to continue receiving substantial QAF payments ($67 million per year) for

13

years to come further cuts against a finding that SPCP knew Alerus had overvalued KPC.

A comparison to *Walsh*, cited by both parties, is instructive.  In that case, the Fourth Circuit affirmed the district court's finding that a nonfiduciary defendant knew the price paid for his stock exceeded fair market value.  *Walsh*, 19 F.4th at 680.  The Fourth Circuit found it "plausible to infer that [the defendant] knew something was off" when "the same appraiser that valued the stock at $406 per share in 2010 valued it at $220 to $285 per share between 2004 and 2009."  *Id.* at 680-81.  Plaintiff argues that the "40% spike in price" in *Walsh* that supported a finding of constructive knowledge pales in comparison to the difference between the valuations of KPC stated in the December 2014 fair valuation memo and the August 2015 ESOP Transaction, thus supporting an even stronger inference of constructive knowledge.  But *Walsh* is distinguishable in two important respects: (1) "there had been no significant change in the company's performance" and (2) "[p]rojections . . . had [the company] performing more or less the same, if not slightly worse, in 2010 compared to prior years."  *Id.* at 681.  Here, there was a significant change in KPC's performance in the months leading up to the 2015 ESOP Transaction, and KPC was projecting stronger growth ahead, in addition to the increased likelihood of receiving future QAF payments.  KPC had undisputedly turned its business around and was projected to remain on the upswing.  Thus, its poor performance before the turnaround has limited relevance to SPCP's state of mind at the time of the 2015 ESOP Transaction.

Credit Suisse's decision to finance a $140 million loan to KPC further weighs against a finding that SPCP knew or should have known that Alerus overvalued KPC stock in the 2015 ESOP Transaction.  It is undisputed that SPCP regarded Credit Suisse as a sophisticated lender that would conduct substantial due diligence on a company's creditworthiness before agreeing to finance such a large loan.  While it is unclear whether SPCP had access to the multiple due diligence reports on KPC commissioned by Credit Suisse, Plaintiff does not dispute that SPCP believed Credit Suisse would not provide a traditional leverage loan to a company if it believed the loan amount exceeded 50%–65% of the company's total capital structure.  The loan amount Credit Suisse agreed to finance for KPC, $140 million, was 52% of Alerus's $270 million valuation. This weighs further in favor or SPCP's position that Credit Suisse's independent assessment of KPC bolstered SPCP's own belief that Alerus's valuation of KPC was fair.

Further supporting the inference that SPCP believed the valuation was fair is the fact that Credit Suisse's loan syndicate was oversubscribed.  SPCP observed 18

other sophisticated investors lining up to loan KPC money to facilitate its transition into a 100% employee-owned corporation.  Whether or not the 18 lenders were correct that lending KPC money was in fact a sound investment is not the point.  The point is that SPCP knew that many other lenders considered KPC a worthy investment, which cuts against an inference that SPCP should have known Alerus had overvalued KPC.  Indeed, SPCP thought lending to KPC was a good enough investment for it to negotiate a loan of $10 million of its own money from a new fund devoted to healthy companies.  The fact that SPCP was willing to put up its own funds for a loan to KPC does not "raise a reasonable reference of knowledge" by SPCP that KPC stock was overvalued—it suggests the opposite.  *Brock,* 840 F.2d at 342.

Ultimately, the undisputed evidence in the record shows that SPCP did not have actual or constructive knowledge of the circumstances that rendered the 2015 ESOP Transaction unlawful.  Thus, SPCP is entitled to summary judgment on Plaintiff's claim that SPCP knowingly participated in a § 406(a) prohibited transaction.

### 2. §§ 404 and 406(b)

*Harris Trust* addressed nonfiduciary liability only for knowing participation in a transaction prohibited by § 406(a).  530 U.S. at 251.  Plaintiff also alleges that SPCP knowingly participated in in Alerus's § 404 breach of fiduciary duty and in Alerus's and the KPC Defendants' § 406(b) violations.

"Neither the Ninth Circuit nor the Supreme Court has addressed the scope of [knowing participation] liability under ERISA § 404," *Perez v. Brain*, No. LA CV14-03911 JAK, 2015 WL 3505249, at *12 (C.D. Cal. Jan. 30, 2015), and the Ninth Circuit has not addressed whether *Harris Trust* extends to § 406(b) violations.  But even if the Court were to extend *Harris Trust* that far here—an issue it does not decide—those claims against SPCP would fail for the same reason the claim for SPCP's knowing participation in a § 406(a) violation fails:  the undisputed facts show that SPCP neither actually nor constructively knew that the plan paid more than fair market value for the 2015 ESOP Transaction.

By Plaintiff's own admission, this is fatal to her knowing participation claim based on a § 404 breach of fiduciary duty.  *See* Joint Br. at 21 ("With respect to SPCP's knowing participation in Alerus's breach of fiduciary duty, it is enough for Plaintiff to show that SPCP was aware that the 2015 ESOP Transaction was for more than fair market value.").  As to the § 406(b) claim, Plaintiff argues that

15

adequate consideration is irrelevant because under Ninth Circuit law, § 406(b) violations are not subject to affirmative defenses based on § 408 exemptions. Joint Br. at 29. Plaintiff is incorrect. The Ninth Circuit has expressly stated that the adequate consideration exemption in § 408(e) applies to a § 406(b) violation. *See Howard*, 100 F.3d at 1488.[8] Thus, the Court's conclusion that SPCP did not actually or constructively know that the plan overpaid for the 2015 ESOP Transaction defeats Plaintiff's knowing participation claim based on a prohibited transaction under § 406(b) for self-dealing.

## V. CONCLUSION

There is no triable issue of fact as to whether SPCP had actual or constructive knowledge of the circumstances that rendered the 2015 ESOP Transaction unlawful. SPCP is thus entitled to the entry of summary judgment. The Court does not reach the issue of whether Plaintiff seeks appropriate equitable relief. SPCP's motion for summary judgment is therefore **granted**.

Date: August 15, 2022

Hon. Stanley Blumenfeld, Jr.
United States District Judge

---

[8] Plaintiff cites to *Patelco Credit Union v. Sahni*, 262 F.3d 897 (9th Cir. 2001) for its contention, but that case does not address § 408(e). Instead, *Patelco* addresses the applicability of the § 408(c) exemption to § 406(b) self-dealing claims. *Id*. at 910 (concluding that "the reasonable compensation exception [in § 408(c)] applies only to transactions with parties in interest (in violation of 29 U.S.C. § 1106(a)) and not to fiduciary self-dealing (in violation of § 1106(b)) or a breach of the general duty of loyalty (in violation of 29 U.S.C. § 1104(a)(1)(A))") (footnote omitted).)