UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

DANIELLE GAMINO,

       Plaintiffs,

v.

KPC HEALTHCARE HOLDINGS,
INC. et al.,

       Defendants.

Case No. 5:20-cv-01126-SB-SHK

ORDER GRANTING IN PART
MOTION FOR FINAL APPROVAL
OF CLASS ACTION
SETTLEMENT, FOR
ATTORNEYS' FEES AND COSTS,
AND FOR CLASS
REPRESENTATIVE SERVICE
AWARD [DKT. NOS. 404, 405,
414]

On August 28, 2015, Defendant Alerus Financial, N.A. (Alerus), acting as the appointed trustee of the KPC Healthcare Holdings, Inc. (KPC) employee stock ownership plan (ESOP), caused the ESOP to purchase 100% of the shares of KPC common stock from Defendant Dr. Kali Pradip Chaudhuri. Plaintiff Danielle Gamino, a former KPC employee and ESOP participant, sued Dr. Chaudhuri and Alerus (as well as other KPC executives and board members), bringing breach of fiduciary duty and prohibited transaction claims under the Employee Retirement Income Security Act of 1974 (ERISA) based on allegations that Alerus had caused the ESOP to overpay for KPC stock. Plaintiff also sued a lender and investor in KPC, SPCP Group, LLC (SPCP). On August 15, 2022, the Court granted SPCP's motion for summary judgment, Dkt. No. 338. After extensive discovery and mediation, the Court preliminarily approved Plaintiff's settlement with the KPC Defendants[1] and then with Alerus (collectively, the Settlement). Dkt. Nos. 391,

---

[1] The KPC Defendants are KPC Healthcare Holdings, Inc., the Administrative Committee of the KPC Healthcare, Inc. Employee Stock Ownership Plan, Kali

399.  Plaintiff now moves for final approval of the parties' settlements, attorneys' fees and costs, and a class representative service award.  Dkt. Nos. 404, 405, 414. Just one class member, Victoria Gonzalez, objected to the settlement.  Dkt. Nos. 412, 413.  For the reasons stated below, Ms. Gonzalez's objection is OVERRULED and Plaintiffs' motions for final approval of the class action settlement, for attorneys' fees and costs, and for a service award are GRANTED IN PART, as the Court MODIFIES the requested award to the settlement administrator and DENIES the request for a reserve of the fund.

I.

The Court granted class certification and appointed class counsel prior to settlement.  Dkt. No. 174.  The class definition is:[2]

> All participants in the KPC Healthcare, Inc. Employee Stock Ownership Plan from August 28, 2015, through August 31, 2021 (unless they terminated employment without vesting in the ESOP) and those participants' beneficiaries.  Excluded from the class are (a) Defendants in the Action; (b) any fiduciary of the Plan; (c) the officers and directors of KPC Healthcare Holdings, Inc. or of any entity in which one of the individual Defendants has a controlling interest; (d) the immediate family members of any of the foregoing excluded persons; and (e) the legal representatives, successors, and assigns of any such excluded persons."

Dkt. Nos. 391 at 5–6, 399 at 5–6.

The terms of the proposed Settlement are detailed in the settlement agreements with the KPC Defendants (Dkt. No. 322-3) and with Alerus (Dkt. No. 395-3).  Under the agreements' terms, Alerus agrees to make a $4,000,000 payment and the KPC Defendants a $5,000,000 payment for a collective settlement fund of $9,000,000, to be allocated as follows:

---

Pradip Chaudhuri, William E. Thomas, Kali Priyo Chaudhuri, Amelia Hippert, and Lori Van Arsdale.  Dkt. No. 395-3 § I.EE.

[2] The Court modified the parties' proposed class definition in its orders granting preliminary approval of the settlements with the KPC Defendants and Alerus to add an end date to facilitate effective settlement.  Dkt. Nos. 391, 399.

2

- Up to 33.33% of the settlement amount in attorneys' fees for Class Counsel;[3]

- Up to $725,000 in attorneys' costs;

- Fees for Settlement Administrator CPT Group, Inc.;

- A $10,000 service award for Class Representative Danielle Gamino; and

- The remainder to class members on a pro rata basis based on the number of shares of KPC stock "in their ESOP account as of August 31, 2021 or, if a Class Member terminated employment prior to August 31, 2021, the number of vested shares in such Class Member's ESOP account at the date of termination [] plus any previously unvested shares that vested upon plan termination.  The Plan of Allocation does not include shares in the ESOP's suspense account that were allocated to active employee participants upon plan termination or unvested shares that were previously forfeited pursuant to the terms of the Plan."

Dkt. Nos. 322-3 (KPC Settlement Agreement), 395-3 (Alerus Settlement Agreement), 361 (revised plan of allocation), 414-3 (notice).  In their motions for final approval, for attorneys' fees and costs, and for a service award, Plaintiff seeks approval of:  attorneys' fees of 30% of the settlement fund; $664,715.96[4] in reimbursement for costs litigating this action; up to $16,000 for the Settlement Administrator CPT Group, Inc.; and $10,000 for the Class Representative.  Dkt. Nos. 405, 414-3, 404, 416.  After those deductions, the average award to class members will be approximately $2,900, paid to class members through either the ESOP or the KPC 401(k) Plan.  Dkt. No. 405-1 at 13.

In general, the agreements release the KPC Defendants and Alerus from liability to class members for claims asserted against them in Plaintiff's First

---

[3]  The Class Counsel are R. Joseph Barton of Barton & Downes LLP, Daniel Feinberg of Feinberg, Jackson, Worthman & Wasow LLP, and Richard Donahoo of Donahoo & Associates, P.C.  Dkt. No. 174 at 12–13.

[4] In its initial request, Plaintiff requested $662,919.53 in costs.  Dkt. No. 405. Since the filing of that motion, Plaintiff incurred or will incur $1,796.43 in additional expenses, and its total request is now $664,715.96.  Dkt. No. 416.

Amended Complaint and claims based on or arising from the same facts alleged in that Complaint. Dkt. No. 322-3 at 9, 395-3 at 8–9.

## II.

The Court certified the class on August 6, 2021. Dkt. No. 174. In preliminarily approving the settlements, the Court evaluated the parties' proposed procedures for noticing class members, which included emailing, if available, or sending by first-class US mail copies of the notice. Dkt. Nos. 391 at 5, 399 at 5. The Settlement Administrator received the class list on October 27, 2022 and processed the 3,131 names, emails, and addresses received through a ZeroBounce report to validate the email addresses and against the National Change of Address Database to update and confirm the class members' mailing addresses. Dkt. No. 414-3 ¶¶ 8–9. The notice packet was then emailed to 3,013 class members and mailed by first class mail to 134 class members who did not have a validated email address available. *Id.* at ¶¶ 10–11. Fourteen notices were returned as undeliverable by the U.S. Postal Service, and the Settlement Administrator performed a skip trace to find updated addresses for those class members. *Id.* ¶ 13. As of February 24, just six notice packets were undeliverable. *Id.* ¶ 14. The complaint, relevant motions and orders, the settlement agreements, plan of allocation, and other information was made available on a website and included a telephone support number. *Id.* ¶ 7. The Court finds that this notice complies with the requirements of Rule 23 and due process.

There was one objection to the settlement, filed by class member Victoria Gonzales. Dkt. No. 412. In it, she states she "do[es] not agree with" the calculation of her settlement payment, which was estimated to be $768.98 based on 426.504 shares. Dkt. No. 412-1 at 3 of 3. The Settlement Administrator asked Ms. Gonzalez whether her objection was to the calculation of her payment or to the dollar value of the proposed settlement, Dkt. No. 413-1, and Ms. Gonzalez responded that she objected to both, Dkt. No. 413-2. As to her shares, Ms. Gonzalez attached documentation that confirmed her total number of shares as of August 31, 2021 was 426.504, the same number as calculated by the Settlement Administrator. Dkt. No. 413-3.

III.

A.

Plaintiff seeks final approval of the Settlement.  Final approval may only be granted if the Court, after "evaluat[ing] the fairness of a settlement as a whole," finds that the settlement is "fair, reasonable, and adequate." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818–19 (9th Cir. 2012) (quoting Fed. R. Civ. P. 23(e)(2)).  The Court's inquiry is guided by several, non-exclusive factors:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.* (internal quotation marks omitted) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).  "Each factor does not necessarily apply to every class action settlement, and others may also be considered." *Miller v. Wise Co.*, No. 17-cv-00616-JAK, 2020 WL 1129863, at *5 (C.D. Cal. Feb. 11, 2020).

When there is a settlement prior to formal class certification, a court must also determine whether the settlement is the "product of collusion among the negotiating parties." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (quoting *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000)).  A settlement reached after class certification "ameliorate[s] the concerns regarding collusion expressed by the *Bluetooth* court." *In re Ferrero Litig.*, 583 F. App'x 665, 668 (9th Cir. 2014).

B.

The *Hanlon* factors support a finding that the settlements are fair, reasonable, and adequate.  First, the Court evaluates together the strength of Plaintiffs' case, the risk of continued litigation, and the settlement amount.  To determine if a settlement is fair, the Court must balance the strengths and weaknesses of Plaintiffs' case against the risks and expenses of continued litigation. *In re Mego*, 213 F.3d at 458–59.  "[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive

5

litigation with uncertain results." *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).  No one formula governs the Court's determination of the likelihood of Plaintiffs' success, which the Ninth Circuit has described as "nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (quoting *Officers for Just. v. Civ. Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)).

The risks of further litigation justify approval.  Plaintiff identifies three significant risks to bringing this case to trial.  First, citing to *Walsh v. Bowers*, 561 F.Supp.3d 973, 977 (D. Haw. 2021), Plaintiff states that the outcome of ERISA cases is generally uncertain, even those litigated by experienced counsel.  Second, even if Plaintiff proved that Defendants breached their fiduciary duty to Plaintiff and the class, some courts have concluded that plaintiffs were not entitled to damages because the relevant breach did not result in harm.  Third, Plaintiff asserts that appeal is likely given the substantial liability at issue, which could delay recovery by the class.  Based on its familiarity with this litigation, the Court agrees that these are substantial risks that weigh in favor of finding that the settlement amount is fair and reasonable.

Class counsel calculate a maximum recovery of between $122 and $128 million.  Dkt. No. 414-1 at 21.  Under the proposed Settlement, the total recovery to the class will be $9,000,000, though administrative and attorneys' fees will be deducted from that amount.  *Id.*  This represents approximately 7% of the estimated total recovery, which compares favorably to other approved ERISA settlements.  *See, e.g.*, *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 463 (D. Md. 2014) (approving ERISA settlement that recovered 3.2% of estimated losses).  This case has been ongoing since June 2020, and the ultimate results are uncertain.  An immediate recovery for class members (allocated with tax benefits through the ESOP or 401(k)) is preferable to prolonged risk and further litigation expense.  All things considered, this amount is fair and adequate.  *See In re Mego*, 213 F.3d at 459 (holding that a settlement amounting to "only a fraction of the potential recovery" was fair "given the difficulties in proving the case").

The Defendants also engaged an experienced Independent Fiduciary to review the Settlement under Prohibited Transaction Exemption 2003-39.  Dkt. No. 395-3 at 32–33; 322-3 at 34–35.  Pursuant to the settlement agreements, the parties filed the report of the Independent Fiduciary with the Court.  Dkt. No. 415.  The Independent Fiduciary found that the terms of the proposed Settlement "reasonable in light of the Plan's likelihood of full recovery, the risks and costs of litigation,

and the value of claims forgone." Dkt. No. 415-1 at 4 of 17. Accordingly, the Fiduciary "approve[d] and authorize[d] the Settlement on behalf of the Plan in accordance with PTE 2003-39." *Id.* The Independent Fiduciary's approval provides further support for finding the Settlement fair.

Second, the Court examines the extent of discovery completed and the stage of the proceedings. A court may presume a settlement is fair "following sufficient discovery and genuine arms-length negotiation." *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 528. The parties have engaged in significant discovery. Plaintiff represents that Class Counsel reviewed 240,000 documents, brought discovery disputes, took 16 depositions, and defended four others. Dkt. No. 405-1 at 25–26. Plaintiff and the KPC Defendants engaged in a full-day of mediation before reaching agreement, while Plaintiff and Alerus mediated for three full days before finally accepting a mediator's proposal. Dkt. No. 414-1 at 14–15. That the parties engaged in formal mediation with an experienced mediator further weighs "in favor of a finding of non-collusiveness." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011). The Court finds that there was sufficient discovery and an arms-length negotiation. Accordingly, the work completed to date favors settlement.

Third, the Court looks at the experience and views of Class Counsel. Where Class Counsel recommend the proposed terms of settlement, courts are to give their determination "[g]reat weight," because counsel "are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 528. Plaintiff is represented by experienced counsel with significant ERISA and ESOP-specific experience. *See* Dkt. Nos. 405-2 ¶¶ 3–9, 405-12 ¶¶ 2–5, 405-15 ¶¶ 3–8 (declarations from lead counsel). Class Counsel have worked on this case for more than two-and-a-half years and have conducted enough discovery to make their views on settlement informed. Class Counsel support approval. Dkt. No. 414-1 at 23. Counsel's agreement that the settlement is favorable to the class weighs in favor of approval.

Fourth, the Court considers the presence of a governmental participant. Since there is no government entity participating in this case, this factor is neutral. *See, e.g.*, *Brown v. CVS Pharmacy, Inc.*, No. 15-cv-7631-PSG, 2017 WL 3494297 (C.D. Cal. Apr. 24, 2017) (finding factor neutral and granting final approval).

Finally, the Court examines the reactions of class members. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to

the class members." *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 529.  As noted above, just one class member objected to the settlement, and her objection appears based on an erroneous assertion that her payment from the settlement was incorrectly calculated, and she otherwise provides no argument to support her assertion that the settlement amount is unfair.  She received notice of the settlement sufficient to lodge her objection and further explained her objection to the Settlement Administrator.  Overall, class members overwhelmingly support the Settlement, which favors approval.

*     *     *

Based on its analysis of the factors for final approval, the Court finds that the Settlement is "fair, reasonable, and adequate." *Lane*, 696 F.3d at 818.  The Court therefore GRANTS Plaintiffs' motion for final approval of the class action settlement.

IV.

Plaintiff also seeks an award of attorneys' fees in the amount of $2,700,000—30% of the settlement amount, an award of costs in the amount of $664,715.96, a class representative service award of $10,000, and up to $16,000 to CPT Group, Inc. for the fees and costs of settlement administration.  Dkt. Nos. 405, 414, 414-3, 416.  Plaintiff also seeks authorization to reserve a portion of the settlement to fund the fees and costs of Defendant SPCP, in whose favor the Court granted summary judgment.  Dkt. Nos. 405-1 at 29–30, 338.  The Court addresses each of these in turn.

A.

First, the Court considers the appropriate attorneys' fees to award.  Courts may exercise discretion in cases "where a settlement produces a common fund for the benefit of the entire class" and may "employ either the lodestar method or the percentage-of-recovery method." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 942.  Regardless of which method the court applies, "the Ninth Circuit requires only that fee awards in common fund cases be reasonable under the circumstances." *Fernandez v. Victoria Secret Stores, LLC*, No. 06-cv-04149-MMM, 2008 WL 8150856, at *8 (C.D. Cal. July 21, 2008) (cleaned up).

Under the percentage method, the court awards counsel a percentage of the common fund in attorneys' fees, for which the Ninth Circuit has established a 25%

8

benchmark. *Hanlon*, 150 F.3d at 1029. The benchmark should be adjusted or replaced with a lodestar calculation when "special circumstances" justify a departure. *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). Courts consider the following factors in determining whether the requested adjustment is reasonable: "(1) the results achieved; (2) the risk of litigation; (3) the skill required; (4) the quality of work performed; (5) the contingent nature of the fee and the financial burden; and (6) the awards made in similar cases." *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 449 (E.D. Cal. 2013).

These factors support an attorneys' fee award of $2,700,000 in this case, which constitutes 30% of the gross settlement amount. Class Counsel has extensive experience in litigating class actions and obtained a significant recovery for class members in the face of substantial litigation risks. Dkt. Nos. 405-2 ¶¶ 3–9 , 405-12 ¶¶ 2–5, 405-15 ¶¶ 3–8. Courts in the Ninth Circuit commonly find acceptable requests for attorneys' fees that represent 20% to 33.33% of the total settlement. *Benitez v. W. Milling, LLC*, No. 18-cv-01484-SKO, 2020 WL 3412725, at *8–9 (E.D. Cal. June 22, 2020) (collecting cases); *Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (noting that "25% is substantially below the average class fund fee nationally").

The requested fee is further supported by a cross-check against a rough estimate of the lodestar value. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) ("[T]he lodestar may provide a useful perspective on the reasonableness of a given percentage award."); *Barbosa*, 297 F.R.D. at 451 (noting that a cross-check of the lodestar "can be performed with a less exhaustive cataloguing and review of counsel's hours"). The lodestar is calculated by multiplying the hours reasonably expended by a reasonable hourly rate based on the experience of counsel and the prevailing market rate in the community. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 941. Once this "lodestar" is calculated, it "may be increased or decreased by a multiplier that reflects any factors not subsumed within the calculation, such as the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 981 (E.D. Cal. 2012) (internal quotations and citations omitted).

Counsel state that their respective three firms collectively have spent approximately 5,000 hours prosecuting this case, excluding the hours spent pursuing the claims against SPCP. Dkt. No. 405-1 at 7. They litigated this case for over two-and-a-half years and devoted time to the various pretrial aspects of

this case, including discovery, opposing motions to dismiss, class certification, mediation, and settlement negotiations.  Counsel assigned work to junior lawyers and staff where possible and divided work among the three firms to avoid duplication.  *Id.* at 26.  Counsel also represent that they removed time entries that were duplicative.  *Id.* at 26–27.  In light of counsel's extensive work on this case over a long period of time, the Court finds the hours expended reasonable.  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008) (noting that hours are reasonable where "the time could reasonably have been billed to a private client").

"Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).  In complex ERISA cases, the relevant hourly rate is the nationwide market.  *Marshall v. Northrop Grumman Corp.*, No. 16-cv-6794-AB, 2020 WL 5668935, at *6 (C.D. Cal. Sept. 18, 2020).  Class Counsel's declarations and exhibits summarize hours and rates by lawyer or staff member and calculate the total lodestar per person.  Dkt. No. 405-2 ¶ 24, 405-13, 405-15 ¶ 13.  Counsel submit rates ranging from $280 to $1,050 at each of the three firms.  Dkt. No. 405-1 at 22.  They assert that those rates reflect current billing rates based on the level of skill and experience of each timekeeper.  *Id.*  Block & Leviton LLP[5] and Feinberg Jackson Worthman & Wasow LLP's rates have been found reasonable and have been approved recently by other courts.  *See, e.g.*, *Foster v. Adams & Assocs., Inc.*, No. 18-cv-02723-JSC, 2022 WL 425559, at *9 (N.D. Cal. Feb. 11, 2022) (approving rates for timekeepers from Block & Leviton LLP and Feinberg Jackson Worthman & Wasow LLP between $275 and $975).  And the rates for all counsel are supported by declarations from attorneys familiar with the prevailing rates for ERISA actions nationally and in Los Angeles.  Dkt. Nos. 409-1 ¶¶ 18–19, 409-2 ¶¶ 21.  Based on the supported submission provided by counsel, the Court finds the rate reasonable for use in the analysis.

Class Counsel's hours and rates yield a lodestar of $3,893,691.35.  Dkt. No. 405-1 at 21.  Since they seek $2,700,000, the discount multiplier is 0.69.  *Id.* at 27. "[C]ourts have found that multipliers less than one may support the reasonableness of the award." *Feao v. UFP Riverside, LLC*, No. 17-cv-3080-PSG, 2019 WL 12340202, at *8 (C.D. Cal. Oct. 22, 2019).  Accordingly, the Court finds that the

---

[5] Block & Leviton LLP was Mr. Barton's previous law firm.  *See* Dkt. No. 410.

requested fees are reasonable under the percentage method as supported by a lodestar cross-check.

Plaintiff also requests $664,715.96 in costs. These costs include: court and filing fees; delivery and messenger fees; expert witness fees; mediation fees; legal research fees; and postage and mailing. Dkt. No. 405-2 ¶ 34; 405-15 ¶ 20; 405-12 ¶ 17. Plaintiff also seeks costs incurred or that it will incur after it filed its initial motion for fees and costs, which include travel and lodging for Counsel to attend the Fairness Hearing. Dkt. No. 416. These are typical litigation costs in class actions and are reasonable given the length and complexity of this case. Accordingly, the Court finds that the requested costs should be approved.

### B.

Plaintiff seeks a $10,000 Class Representative service award for the Class Representative, Danielle Gamino. Incentive awards are discretionary and meant to compensate a class representative "for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59. Awards typically range from $2,000 to $10,000, and a $5,000 award is considered presumptively reasonable. *Bellinghausen*, 306 F.R.D. at 266–67. Several factors guide the Court's determination of whether Plaintiff's requested award is reasonable:

> (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the representative; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Stuart v. Radioshack Corp.*, No. 07-4499-EMC, 2010 WL 3155645, at *7 (N.D. Cal. Aug. 9, 2010).

The Court preliminarily expressed its concern about the appropriateness of Plaintiff's award, which is double the amount considered presumptively reasonable in the Ninth Circuit. Dkt. Nos. 391 at 4, 399 at 4. Upon review of a more developed record, Plaintiff's request is reasonable. The Class Representative still works in the healthcare industry and exposed herself to risk as the named Plaintiff in a case that has received media coverage; and she was deposed twice, produced

11

documents, participated in four mediations, and communicated with Class Counsel for years during the pendency of this action.  Dkt. Nos. 404 at 3–6, 403-2 (declaration).  The Court therefore finds the $10,000 award to be reasonable.

C.

Plaintiff seeks an award of fees for the third-party settlement administrator, CPT Group, Inc, up to $16,000.  Dkt. Nos. 405-1 at 29, 414-3.  The Court previously confirmed CPT Group, Inc. as the Settlement Administrator.  CPT Group, Inc. declares that it expects that its total administration expenses will be no more than $13,000, which includes fees and costs incurred to date, as well as anticipated fees and costs for completion of the administration.  Dkt. No. 414-3 ¶ 16.  The Court grants the request in part, and awards fees up to $13,000 (rather than $16,000) to CPT Group, Inc.

D.

Finally, Plaintiff requests that the Court "authorize[] the establishment of a 'reserve amount' of the settlement fund to cover an award of fees or costs to SPCP."  Dkt. No. 414-4 ¶ 15.  Class Counsel assert that they anticipate filing a notice of appeal of the Court's order granting summary judgment in favor of SPCP, and that "SPCP will seek its costs and may file a motion for attorneys' fees" to dissuade them from pursuing that appeal,  Dkt. No. 405-1 at 29–30.  They argue that a reserve "to pay any amounts awarded to SPCP in fees and costs would effectively allow Plaintiff, on behalf of the Class, to pursue the appeal."  *Id.* at 30.  They state that the amount of the reserve would be known 14 days from final judgment entered concurrently with this order finally approving settlement, and the Court should therefore "authorize Class Counsel to reserve a portion of the settlement fund—in the amount of 100% of whatever the Court awards SPCP in fees and/or costs—for payment of those fees and costs."  *Id.*

The Court heard argument from the parties at the Fairness Hearing on the propriety of Plaintiff's request to reserve part of the settlement fund.  Because Class Counsel's reserve request was not contemplated by the settlement agreements or included in the class notice, the request is DENIED.[6]

---

[6] The cases Plaintiff relies on in support of establishing a reserve are distinguishable.  *See, e.g.*, *Fed. Ins. Co. v. Caldera Med., Inc.*, No. 15-cv-00393-SVW, 2017 WL 1103739, at *2 (C.D. Cal. Jan. 31, 2017) (reserve contemplated in settlement agreements); *In re WorldCom, Inc. Sec. Litig.*, No. 02-3288, 2004 WL

V.

For the foregoing reasons, Plaintiffs' motions for final approval of their class action settlement, for attorneys' fees and costs, and for a service award are GRANTED IN PART.  The Court has jurisdiction over the parties and finally approves the settlements between Plaintiff and the KPC Defendants and Alerus.  The Court awards $2,700,000 in attorneys' fees to Class Counsel, $664,715.96 in costs to Class Counsel, up to $13,000 to CPT Group, Inc., and $10,000 to Class Representative Danielle Gamino.  Plaintiff's request to reserve part of the settlement fund for fees and costs to the non-settling Defendant is DENIED.  The parties are directed to implement the settlements according to their terms, and the releases in the agreements are incorporated by reference to this order.  Dkt. Nos. 322-3, 395-3.

A Final Judgment dismissing this action with prejudice will be entered separately.


IT IS SO ORDERED.


Date: March 11, 2023

_____
Stanley Blumenfeld, Jr.
United States District Judge

---

2591402, at *17 (S.D.N.Y. Nov. 12, 2004) (finding that the notice to class members advised the class that an amount "would be requested for this purpose"); _Guerrero v. Wells Fargo Bank, N.A._, No. 12-04026-WHA, 2014 WL 4351113, at *3 (N.D. Cal. Sept. 2, 2014) (reserving part of the fund for administering distributions to class members).